No. 22-1954

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

INGE BERGE,

*Plaintiff-Appellant*,

v.

SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, IN HIS
PERSONAL CAPACITY; ROBERTA A. EASON, IN HER PERSONAL
CAPACITY; AND STEPHANIE DELISI, IN HER PERSONAL CAPACITY

*Defendants-Appellees*.

ON APPEAL FROM
United States District Court for the District of Massachusetts
No. 1:22-cv-10346
The Honorable Angel Kelley

_____

BRIEF OF THE STANTON FOUNDATION FIRST AMENDMENT CLINIC AT
VANDERBILT LAW SCHOOL AND THE NATIONAL PRESS
PHOTOGRAPHERS ASSOCIATION AS AMICI CURIAE IN SUPPORT OF
PLAINTIFF-APPELLANT

_____

Jennifer Safstrom
Stanton Foundation First Amendment
Clinic at Vanderbilt Law School
131 21st Ave South
Nashville, TN 37203–1181
(615) 322-4964
jennifer.safstrom@vanderbilt.edu

Mickey H. Osterreicher
National Press Photographers
Association
120 Hooper Street
Athens, GA 30602
(716) 983-7800
lawyer@NPPA.org

*Counsel for Amici Curiae*

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Stanton Foundation First Amendment Clinic at Vanderbilt Law School and the National Press Photographers Association, by and through their undersigned counsel, hereby certify that they have no parent corporations and that no publicly held corporation owns 10% or more of their stock.

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom

`

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................... ii

INTEREST OF AMICI CURIAE ........................................................1

INTRODUCTION.................................................................3

ARGUMENT .......................................................................4

  I.  **The District Court Incorrectly Concluded That the Right to Publish Is Not a Clearly Established Constitutional Right.** ......................5

    A. **Plaintiff-Appellant Has a Constitutionally-Protected Right to Publish the Recordings of His Conversation with Public Officials on Facebook.** ..........................5

    B. **Plaintiff-Appellant's Conduct is Protected Under the First Amendment Because the Recording Was of Public Officials in a Public Space and the Recording Did Not Interfere with the Officials' Duties.** ......................7

  II. **The District Court Erred in Concluding That Defendants-Appellees Were Entitled to Qualified Immunity.** ......................12

    A. **Plaintiff-Appellant Alleged Facts Showing That Defendants-Appellees Violated His Constitutionally-Protected Right to Record and Publish Videos of Public Officials.** ......................13

    B. **The Right to Record and Publish Videos of Public Officials Was a Clearly Established First Amendment Right at the Time of Defendants-Appellees' Alleged Violation.** ......................14

CONCLUSION.....................................................................19

# TABLE OF AUTHORITIES

## Cases

*Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ...................... 8, 16

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .............................................. 15

*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) ................ 8

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
　457 U.S. 853, 73 L. Ed. 2d 435 (1982) ............................................... 6

*Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v.
　Martinez*, 561 U.S. 661, 177 L. Ed. 2d 838 (2010) ................................. 10

*Cirelli v. Town of Johnston Sch. Dist.*, 897 F. Supp. 663 (D.R.I. 1995) ....... 8, 9, 18

*Connick v. Myers*, 461 U.S. 138 (1983)..................................................... 8

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ............................... 15

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995) ………….………...…….…14, 16

*Fields v. City of Phila.*, 862 F.3d 353 (3d Cir. 2017) ................................ 8

*Garrison v. Louisiana*, 379 U.S. 64, 13 L.Ed.2d 125 (1964) ......................... 6

*Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011) .................................... *passim*

*Gericke v. Begin*, 2012 WL 4893218 (D.N.H. Oct. 15, 2012) ……….... 7, 16, 17, 18

*Houchins v. KQED, Inc.*, 438 U.S. 1, 57 L.Ed.2d 553 (1978) ...................... 5, 6, 7

*Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999) ............................... *passim*

*Irizarry v. Yehia*, 38 F.4th 1282 (10th Cir. 2022) ........................... 8, 16, 18

*Lambert v. Polk Cnty.*, 723 F.Supp. 128 (S.D. Iowa 1989) .......................... 18

*Maldonado v. Fontanes*, 568 F.3d 263 (1st Cir. 2009)...................... 12, 13, 14, 18

*Mills v. Alabama*, 384 U.S. 214 (1966) ........................................... 5, 18

*Minn. Voters All. v. Mansky*,
　201 L. Ed. 2d 201, 138 S. Ct. 1876 (2018) ........................................ 10

*Pearson v. Callahan*, 555 U.S. 223 (2009) ..................................... 12, 17

*Pell v. Procunier*, 417 U.S. 817, 41 L. Ed. 2d 495 (1974) ...................................... 6

*Reichle v. Howards*, 566 U.S. 658 (2012) ............................................................ 15

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) ................. 8, 10, 15, 16

*Toole v. City of Atlanta*, 798 F. App'x 381 (11th Cir. 2019) ................................. 8

*Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017) ................................. 8

*United States v. Mitchell*, 85 F.3d 800 (1st Cir. 1996) …………….…………….....7

*United States v. Rodriguez*, 311 F.3d 435 (1st Cir. 2002) ...................................... 7


## Federal Statutes

20 U.S.C. § 1232g ................................................................................................ 10


## State Statutes

Mass Ann. Laws ch. 272, § 99 .............................................................................. 4


## Rules

Fed. R. App. P. 29 ................................................................................................. 2

## INTEREST OF AMICI CURIAE

The Stanton Foundation First Amendment Clinic at Vanderbilt Law School ("Vanderbilt First Amendment Clinic" or "Clinic") introduces students to civil litigation implicating the First Amendment rights of persons and organizations. The Clinic defends and advances freedoms of speech, press, assembly, and petition through court advocacy, serves as an educational resource on issues of free expression and press rights, and provides law students with the real-world practice experience to become leaders on First Amendment issues. The Clinic engages in advocacy and representation on First Amendment issues across the country. Accordingly, the Clinic has an interest in promoting the sound interpretation of the First Amendment in a way that preserves the important freedoms of petition, assembly, and association afforded by the U.S. Constitution and subsequent court precedents.

The National Press Photographers Association ("NPPA") is a 501(c)(6) not-for-profit organization dedicated to the advancement of visual journalism in its creation, editing, and distribution. NPPA's members include video and still photographers, editors, students, and representatives of businesses that serve the visual journalism community. Since its founding in 1946, the NPPA has been the Voice of Visual Journalists, vigorously promoting the constitutional and intellectual

property rights of journalists as well as freedom of the press in all its forms, especially as it relates to visual journalism.

The Clinic and NPPA file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure. Plaintiff-Appellant consents to the filing and Defendants-Appellees are unopposed to the filing of this brief.

Counsel for the parties did not author the brief in whole or in part. Amici curiae did not receive financial support to fund the preparation or submission of this brief from the parties or counsel to this litigation. No other individual(s) or organization(s) contributed financial support intended to fund the preparation or submission of this brief.

## INTRODUCTION

The First Amendment protects an individual's right to record and publish videos of public officials carrying out their duties in a public space. In failing to consider case law that establishes this recognized right, the U.S. District Court for the District of Massachusetts ("District Court") incorrectly concluded that Defendants-Appellees were entitled to qualified immunity despite their blatant violations of Plaintiff-Appellant's First Amendment rights. As such, this Court should reverse the decision of the District Court and find that Defendants-Appellees were not entitled to qualified immunity. Allowing this holding to stand would incorrectly cabin this well-established First Amendment right to record and publish videos of public officials and expand the Qualified Immunity Doctrine far beyond its intended scope.

Inge Berge ("Plaintiff-Appellant"), a citizen-journalist of Gloucester, Massachusetts, recorded and later published his conversations with various officials of Gloucester Public Schools ("Defendants-Appellees"). Upon entering the publicly accessible Administrative Offices for Gloucester Public Schools, Plaintiff-Appellant held his camera in plain sight, verbally confirmed that he was filming, and began recording his conversations with various officials about the school district's COVID-19 policies. After uploading the video recording of these interactions to his public Facebook account, Gloucester Public Schools sent Plaintiff-Appellant a letter

3

claiming he was in violation of the Massachusetts wiretapping statute, Mass Ann. Laws ch. 272, § 99 ("Wiretapping Law") and demanding that he immediately remove the post to avoid adverse legal repercussions. As a result, Plaintiff-Appellant was forced to choose between exercising his constitutionally-protected right and the possibility of criminal sanctions.

This Court should reverse the District Court's decision and find that Defendants-Appellees violated Plaintiff-Appellant's constitutional right to record and publish, and that Defendants-Appellees are not entitled to qualified immunity. "Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses, but also may have a salutary effect on the functioning of government more generally." *Glik v. Cunniffe*, 655 F.3d 78, 82–83 (1st Cir. 2011). Furthermore, a contrary holding would significantly limit the intended scope of the First Amendment and unjustly allow public officials to be insulated from liability for their deliberate civil rights violations.

## ARGUMENT

The District Court erred in two critical respects in granting Defendants-Appellees' motion to dismiss. First, the District Court incorrectly concluded that the right to publish is not a clearly established constitutional right. Second, the District Court erred in finding that Defendants-Appellees were entitled to qualified immunity.

## I. The District Court Incorrectly Concluded That the Right to Publish Is Not a Clearly Established Constitutional Right.

The District Court erred in concluding that Plaintiff-Appellant failed to prove that the right to publish is a clearly established constitutional right. Order, 12, ECF 32. The right to publish is a right guaranteed by the Constitution, which includes the right to publish information and the right to record public officials. *See Glik*, 655 F.3d at 82; *Houchins v. KQED, Inc.*, 438 U.S. 1, 11, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). Constitutionally-protected recordings of public officials that occur in a public space are subject to reasonable time, place, and manner restrictions—namely, the recording must not interfere with the official's performance of their duties. *See Glik*, 655 F.3d at 84. Plaintiff-Appellant had a right to record Defendants-Appellees because they were public school officials, the recording occurred in a public space, and the recording did not interfere with the performance of Defendants-Appellees' duties. Order, 2-4, ECF 32; Am. Compl. at ¶¶ 8–14.

### A. Plaintiff-Appellant Has a Constitutionally-Protected Right to Publish the Recordings of His Conversation with Public Officials on Facebook.

The right to publish information is a clearly established constitutional right. "Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Glik*, 655 F.3d at 82 (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). Correspondingly, the First

5

Amendment protects the right of the public to receive information and ideas that are published. *Pell v. Procunier*, 417 U.S. 817, 832, 94 S. Ct. 2800, 2809, 41 L. Ed. 2d 495 (1974); *see also Garrison v. Louisiana*, 379 U.S. 64, 77, 85 S.Ct. 209, 217, 13 L.Ed.2d 125 (1964) (finding that the constitutional guarantee of a free press secures the paramount public interest in a free flow of information to the people concerning public officials). Accordingly, the right of the general public to receive information and ideas "follows [inescapably] from the *sender's* First Amendment right to publish and disseminate them." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867, 102 S. Ct. 2799, 2808, 73 L. Ed. 2d 435 (1982). Thus, when Plaintiff-Appellant published his recorded conversations regarding the Gloucester School District's COVID-19 policies to his Facebook account, he was exercising a well-documented and clearly established right to publish information. *Glik*, 655 F.3d at 82; Am. Compl. at ¶ 15; *see* Inge Berge, FACEBOOK (Mar. 3, 2022, 1:37 PM), https://www.facebook.com/inge.berge.9/videos/1571702173204109.

Moreover, an important corollary to this right to publish and receive information is the "undoubted right to gather [information] 'from any source by means within the law.'" *Houchins*, 438 U.S. at 11. The First Circuit has previously recognized that filming government officials (e.g., police officers, town officials, etc.) in a public place performing their responsibilities is consistent with these

6

principles.[1] *See, e.g.*, *Glik*, 655 F.3d at 82–83; *Gericke v. Begin*, No. 11-CV-231-SM, 2012 WL 4893218 (D.N.H. Oct. 15, 2012), *aff'd*, 753 F.3d 1 (1st Cir. 2014) (finding that plaintiff had the First Amendment right to record police officers during an arrest); *Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999) (finding that plaintiff had the First Amendment right to record government officials after a town hall meeting). Thus, the right to gather information by way of electronic recording of public officials fits comfortably within the boundaries of the constitutionally-recognized right to publish.[2]

### B. Plaintiff-Appellant's Conduct is Protected Under the First Amendment Because the Recording Was of Public Officials in a Public Space and the Recording Did Not Interfere with the Officials' Duties.

The First Circuit, along with its sister circuits, has recognized that recordings of public officials fall within the bounds of the Constitution's protections, as has been widely held in other cases, including those regarding the right to record law

---

[1] It is of no significance that the present case involves a private individual, and not a reporter, gathering information about public officials. The First Amendment right to gather news is "not one that inures solely to the benefit of the news media; rather, the public's right of access to information is coextensive with that of the press." *Glik*, 655 F.3d. at 83 (quoting *Houchins*, 438 U.S. at 16 (Stewart, J., concurring)).

[2] Contrary to the District Court's assertion that Plaintiff-Appellant waived the 'right to record' argument, this argument was properly before the District Court. Compl. ¶ 30; Dkt. 18-2 at 2; Order, 6-7, ECF 32. Moreover, the First Circuit maintains that a party waives a right when he *intentionally* relinquishes or abandons it. *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United States v. Mitchell*, 85 F.3d 800, 807 (1st Cir.1996)).

enforcement officials. *See Glik*, 655 F.3d at 84; *Irizarry v. Yehia*, 38 F.4th 1282 (10th Cir. 2022); *Toole v. City of Atlanta*, 798 F. App'x 381 (11th Cir. 2019); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018); *Fields v. City of Phila.*, 862 F.3d 353 (3d Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017); *Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). In *Glik*, a man was arrested for using his cell phone to record police officers performing an arrest. 655 F.3d at 79. After the charges against the recorder were dismissed, he brought suit against the individual officers and the City of Boston, claiming that his arrest for filming the officers constituted a violation of his First Amendment rights. *Id*. In concluding that the recorder was exercising a clearly-established First Amendment right to film, the court distilled several key factors that help determine whether a recording of public officials is constitutionally protected. *See id*. at 83–84. These considerations include whether the recording: (1) was of a public official, (2) was in a public space, and (3) interfered with the performance of the official's duties.[3] *See id.*

---

[3] Another relevant factor considered by some courts is whether the content of the recording is on a matter of public concern, "relating to a[n issue]of political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). A plaintiff's personal interest in an issue that potentially affects others does not strip such an issue of its public nature. *See Cirelli v. Town of Johnston Sch. Dist.*, 897 F. Supp. 663, 666 (D.R.I. 1995). Thus, Plaintiff-Appellant's personal interest in attending his daughter's play is a microcosm of the greater health and safety policies affecting the entire school district.

Firstly, school officers acting in their official capacity are encompassed within the "public official" label. *See, e.g.*, *Cirelli v. Town of Johnston Sch. Dist.*, 897 F. Supp. 663 (D.R.I. 1995) (allowing employee-teacher to sue high school principal, superintendent of schools, and administrative assistant in their official capacities for violating teacher's First Amendment right to record). Thus, Defendants-Appellees, whose positions include Superintendent, Executive Secretary, and Assistant Superintendent of Teaching & Learning of Gloucester Public Schools, are considered public officials. Am. Compl. at ¶¶ 5, 8, 14.

Secondly, the First Amendment protects the filming of public officials in public spaces. *Glik*, 655 F.3d at 82. In *Glik*, the recorder filmed the police officers in the Boston Common, one of the oldest city parks, where the rights of the state to limit the exercise of First Amendment activity are sharply circumscribed. *Id.* (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)). In the present case, the Administrative Offices for Gloucester Public Schools are in a public building that is accessible to the general population.[4] Order, 3, ECF 32; Am. Compl. at ¶ 9. Public spaces, whether a park or

---

[4] Unlike a traditional school building, the Administrative Offices for Gloucester Public Schools were publicly accessible and students were not present. Therefore, there are no student privacy concerns at issue. Additionally, because Mr. Berge is a private individual and not an "educational agency or institution," the Family Educational Rights and Privacy Act ("FERPA")—which prohibits the disclosure of student education records by a federally funded "educational agency or institution"

9

an administrative building, are afforded the same First Amendment protections, and thus, viewpoint restrictions are impermissible.[5]

Moreover, Plaintiff-Appellant is a parent of a student in the Gloucester School District who visited the offices to speak with and record his interactions with Defendant-Appellee Superintendent Lummis regarding the district's COVID-19 policies, which were making it difficult for Plaintiff-Appellant to purchase tickets to his daughter's middle school play. Order, 2-4, ECF 32; Am. Compl. at ¶¶ 8, 10–14. Thus, Plaintiff-Appellant had a legitimate purpose for visiting the building and recording his conversations. *See* Am. Compl. at ¶ 8.

Finally, an individual's exercise of their First Amendment right to film in public is subject only to reasonable time, place, and manner restrictions, such as not interfering with the performance of an official's duties. *Glik*, 655 F.3d at 84 (citing *Smith*, 212 F.3d at 1332). In *Iacobucci*, for example, this Court held that because the plaintiff's journalistic activities—recording officials in the hallway outside a public

---

without consent—is not implicated in the present case. *See* 20 U.S.C. § 1232g; Appellant's Br., 26, ECF No. 10.

[5] Limited or designated public forums include properties that are dedicated for certain uses or intentionally opened up for a particular purpose. *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n. 11, 130 S. Ct. 2971, 177 L. Ed. 2d 838 (2010). In traditional or designated/limited public forums, First Amendment speech rights are all subject to reasonable time, place, and manner restrictions. *Minn. Voters All. v. Mansky*, 201 L. Ed. 2d 201, 138 S. Ct. 1876, 1885 (2018). In both forums, individuals are protected against content and viewpoint discrimination. *Id.*

meeting of a historic district commission—"were peaceful, [and] not performed in derogation of any law," his actions fell well within protected First Amendment conduct and the officer lacked the authority to stop him. 193 F.3d at 25. In the present case, Plaintiff-Appellant did not interfere with the school officials' performance of their duties. *See* Order, 3, ECF 32; Am. Compl. at ¶¶ 10–14. As soon as Plaintiff-Appellant entered the building, he held the camera out in the open and verbally confirmed that he was filming by stating, "I'm filming this, I'm doing a story on it." *Id.* at ¶ 12. Following a short conversation with officials regarding the district's COVID-19 policies, Plaintiff-Appellant promptly left the building. *Id.* at ¶ 14. Like the plaintiff in *Glik*, Plaintiff-Appellant Berge "filmed [the officials] from a comfortable remove" and "neither spoke to nor molested them in any way" (except in directly responding to the officials when they addressed him). 655 F.3d at 84 (quoting *Iacobucci*, 193 F.3d at 25); Am. Compl. at ¶¶ 11–14. Thus, as was the case in *Iacobucci*, Plaintiff-Appellant exercised his fundamental First Amendment right to film within constitutional parameters. *See* 193 F.3d at 25; Am. Compl. at ¶¶ 11–14. Accordingly, Plaintiff-Appellant's actions satisfy the non-interference prong and are, consequently, constitutionally protected. Order, 12, ECF 32.

In conclusion, the District Court erred in finding that Plaintiff-Appellant's right to publish information, which includes the right to record public officials by lawful means, is not a clearly established right under the Constitution.

## II. The District Court Erred in Concluding That Defendants-Appellees Were Entitled to Qualified Immunity.

The District Court determined, incorrectly, that the right to record and publish is not an established rule, and thus erred in concluding that Defendants-Appellees were entitled to qualified immunity. *See* Order, 8–10, ECF No. 32. The school district and its officials are not entitled to qualified immunity because this protection only applies when the conduct of government officials "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). The Supreme Court has created a two-part test for courts to apply when deciding whether an official is entitled to qualified immunity. *Maldonado v. Fontanes*, 568 F.3d 263, 269–70 (1st Cir. 2009); *see Pearson*, 555 U.S. at 237. When both prongs of the test are satisfied, as they are here, then the official is not entitled to qualified immunity. *See Maldonado*, 568 F.3d at 270. Because Plaintiff-Appellant (1) alleged facts that made out a violation of his constitutional right to record and publish, and (2) this right was clearly established at the time of Defendants-Appellees' alleged violation, the school district and its officials are not entitled to qualified immunity. *See id.*

### A. Plaintiff-Appellant Alleged Facts Showing That Defendants-Appellees Violated His Constitutionally-Protected Right to Record and Publish Videos of Public Officials.

First, Plaintiff-Appellant successfully alleged facts that made out a violation of his constitutional right.[6] As discussed above, Mr. Berge exercised his constitutional right to record and publish his interactions with the Gloucester Public Schools' officials. Order, 2–4, ECF No. 32. After doing so, Gloucester Public Schools, through a letter signed and approved by Defendants-Appellees, threatened Plaintiff-Appellant with adverse legal repercussions if he did not delete the video. Order, 3–4, ECF No. 32. This threat was intended to prohibit Plaintiff-Appellant from exercising his constitutional right to record and publish in this instance and chill any future attempts to exercise them. *See supra* Section I. These facts are sufficient to satisfy the first prong of the Supreme Court's qualified immunity test. *See Maldonado*, 568 F.3d at 270.

---

[6] The District Court did not analyze whether Plaintiff-Appellant satisfied this prong of the test because it began and ended its qualified immunity analysis at the second prong. Order, 8–10, ECF No. 32 While this non-sequential approach is permissible, its practical effect is to leave a gap in the doctrine. *See Maldonado*, 568 F.3d at 270–71. When conducting its qualified immunity analysis, this Court should consider both prongs of the two-part analysis. *See id.*

**B. The Right to Record and Publish Videos of Public Officials Was a Clearly Established First Amendment Right at the Time of Defendants-Appellees' Alleged Violation.**

The second prong of the qualified immunity analysis is also satisfied. When analyzing the clearly established prong, courts break down the inquiry into two additional sub-parts: firstly, looking at the clarity of the law at the time of the alleged violation and, secondly, deciding whether a reasonable defendant would have understood that their actions were a violation of the plaintiff's constitutional rights. *Glik*, 655 F.3d at 82; *see Maldonado*, 568 F.3d at 270. Here, the law at the time of Defendants-Appellees' alleged violations gave them a "fair warning that [their] particular conduct was unconstitutional," and therefore, the second prong of the test is satisfied, and Defendants-Appellees are not entitled to qualified immunity. *See Maldonado*, 568 F.3d at 270; *Glik*, 655 F.3d at 80 (finding that the plaintiff "was exercising clearly-established First Amendment rights in filming the [police] officers in a public space," and therefore, the officers were not entitled to qualified immunity).

The right to record and publish interactions with public officials, such as school district officials, is a clearly established First Amendment right. *See id.* at 84 (emphasizing that the "videotaping of public officials is an exercise of First Amendment liberties"); *Fordyce v. City of Seattle*, 55. F.3d 436, 439 (9th Cir. 1995) (holding that there is a "First Amendment right to film matters of public interest");

*Smith*, 212 F.3d at 1334 (finding that included in the First Amendment is "the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest"). In coming to the opposite conclusion, the District Court employed an overly-rigid approach that incorrectly expands the scope of the Qualified Immunity Doctrine at the expense of individuals' First Amendment rights. *See* Order, 8–12, ECF No. 32.

The District Court correctly pointed to language from *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) and *Reichle v. Howards*, 566 U.S. 658 (2012), that establishes that the right allegedly violated must not be defined at a high level of generality, but rather must be particularized to the facts. Order, 9, ECF No. 32. However, this language does not dictate that the precedent establishing the right must follow the exact same fact pattern or that there must be "a case directly on point." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, the precedent needs to be particularized enough so that the constitutional right is "clear to a reasonable official." *Reichle*, 566 U.S. at 665. Therefore, although there are limited cases dealing with the right of individuals to record and publish their interactions specifically with *school district* officials, this is not dispositive to the question of whether the right was clearly established at the time of Defendants-Appellees' alleged violation. *See Glik*, 655 F.3d at 85–86; Order, 9, ECF No. 32. For example, in *Glik*, this Court recognized that the "terseness" of its analysis in *Iacobucci*,

establishing a constitutional right to film government officials, "implicitly speaks to the fundamental and virtually self-evident nature of the First Amendment's protections in this area." 655 F.3d at 85–86.

This Court should also rely on the plethora of case law establishing the right to record and publish interactions with public officials, generally, in conducting its analysis under the second prong of the Supreme Court's qualified immunity test. *See, e.g.*, *Glik*, 655 F.3d at 82; *Gericke*, 753 F.3d at 8–11. The First Circuit "ha[s] previously recognized that the videotaping of *public officials* is an exercise of First Amendment liberties." *Glik*, 655 F.3d at 83 (emphasis added). The application of the Qualified Immunity Doctrine must be accordingly tailored to the Court's holdings: because school officials, like police officers, are public officials, Plaintiff-Appellant's First Amendment right is clearly established. *See id.* The First Circuit's holding in *Glik*—and its progeny—establishes that the right to record and publish interactions with *all* government officials is a recognized right under the First Amendment. 655 F.3d at 83–86; *see, e.g.*, *Gericke*, 753 F.3d at 10; *Irizarry*, 38 F.4th at 1290; *Alvarez*, 679 F.3d at 601–02. In *Glik*, this Court found that police officers were not entitled to qualified immunity because the plaintiff successfully alleged a violation of his constitutional right to record public officials and that the right was well-established at the time of the alleged violation. *Id.* at 86 (citing *Iacobucci*, 193 F.3d at 25; *Smith,* 212 F.3d at 1333; *Fordyce*, 55. F.3d at 439). This Court adopted

16

a broad approach when conducting the qualified immunity analysis. *See id.* at 83–86. In reaching its conclusion, this Court's analysis emphasized more generally the right to record public officials, which includes police officers. *Id.* at 83. Specifically, this Court said that "a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space is a basic, vital, and well-established liberty safeguarded by the First Amendment." *Id.* at 86. Keeping in line with its decision and reasoning in *Glik*, this Court should find that the well-established right to film public officials includes school district officers and, thus, the second prong of the qualified immunity analysis is satisfied. *See id.* at 83–87.

This Court reiterated the First Amendment right to film and publish videos of public officials in *Gericke*. 753 F.3d at 10. In *Gericke*, this Court recognized that it is "firmly establish[ed] that the First Amendment protects a range of conduct surrounding the gathering and dissemination of information." *Id.* at 8 (internal quotations omitted). The Court reasoned that this right to seek and publish information helps limit government misconduct and may, as a result, ensure a better functioning government. *See id.* The *Gericke* decision is further evidence that the constitutional right to film public officials carrying out their duties in public is a well-established right "which a reasonable person would have known." 753 F.3d at 8–10; *see Pearson*, 555 U.S. at 232. As such, this Court should hold that the District

17

Court incorrectly concluded that Defendants-Appellees were entitled to qualified immunity. *See Gericke*, 753 F.3d at 8–10.

The First Amendment right to record and publish videos of public officials has also been well established through precedent involving newsgathering and journalism. *See Glik*, 655 F.3d at 83; *Mills*, 384 U.S. at 219 ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."); *Cirelli*, 897 F. Supp. at 666. This precedent is aptly applied in the instant case because it is well established that these same First Amendment rights extend to private individuals, such as Plaintiff-Appellant. *See Glik*, 655 F.3d at 83. In *Glik*, this Court stated that "the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *Id.* Other courts have also held that "it is not just news organizations . . . who have First Amendment rights to make and display videotapes of events." *Lambert v. Polk Cnty.*, 723 F.Supp. 128, 133 (S.D. Iowa 1989). This holding has been reiterated in more recent cases involving private citizens filming police officers. *See, e.g.*, *Glik*, 655 F.3d at 83; *Gericke*, 753 F.3d at 8–10; *Irizarry*, 38 F.4th at 1295. These cases further support a finding that the First Amendment right to record and publish videos of public officials conducting their

18

official duties in public is well established within the meaning of the second prong of the qualified immunity test. *See Maldonado*, 568 F.3d at 270.

In conclusion, because Plaintiff-Appellant showed that Defendants-Appellees violated his constitutional right to record and publish videos of public officials, and that this right was well established at the time of the violation, this Court should reverse the District Court's decision and find that Defendants-Appellees were not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be reversed, and the case remanded for consideration of Plaintiff-Appellant's claims on the merits.

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom
Stanton Foundation First
Amendment Clinic
Vanderbilt Law School
131 21st Ave South
Nashville, TN 37203-
1181
(615) 322-4964
jennifer.safstrom@vande
rbilt.edu

/s/ Mickey H.
Osterreicher
Mickey H. Osterreicher

National Press
Photographers
Association
120 Hooper Street
Athens, GA 20602
(716) 983-7800
lawyer@NPPA.org

*Kristen Smith and
Christine Jiha, student-
attorneys with the Clinic,
assisted substantially in
the preparation of this
brief.

## CERTIFICATE OF COMPLIANCE

I am the attorney or self-represented party. This brief contains 3,593 words and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

The undersigned hereby certify that this amici brief complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system on March 3, 2023. All participants in the case are registered CM/ECF users who will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom