No. 22-1954

# United States Court of Appeals
# For the First Circuit

---

INGE BERGE,
Plaintiff - Appellant,

v.

SCHOOL COMMITTEE OF GLOUCESTER;
BEN LUMMIS, in his personal capacity;
ROBERTA A. EASON, in her personal capacity;
STEPHANIE DELISI, in her personal capacity,
Defendants - Appellees.

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS, BOSTON

---

**BRIEF FOR DEFENDANTS - APPELLEES
SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A. EASON, in her personal capacity;
STEPHANIE DELISI, in her personal capacity**

---

JOHN J. DAVIS, ESQ.
FIRST CIRCUIT NO. 40366
PIERCE DAVIS & PERRITANO LLP
10 Post Office Square – Suite 1100N
Boston, Massachusetts 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: April 27, 2023

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES..............................................................2

STATEMENT OF THE CASE................................................................2

SUMMARY OF THE ARGUMENT .......................................................9

ARGUMENT ...................................................................................13

    I.     Standard of Review. ...........................................................13

    II.    Plaintiff Voluntarily Withdrew His Claim Regarding a First
           Amendment Right to Record................................................14

    III.   Defendants Did Not Deprive Plaintiff of a First Amendment
           Right to Record. ................................................................17

          A.    Plaintiff's Alleged Right to Record Was Not Protected
                Under the First Amendment.....................................17

          B.    Even if Plaintiff's Alleged Right to Record Was
                Protected, Defendants Did Not Deprive Plaintiff of Such
                Right..................................................................25

    IV.   Defendants Did Not Deprive Plaintiff of a First Amendment
           Right to Publish a Recording on Social Media. ..................29

          A.    Plaintiff's Alleged Right to Publish a Recording on
                Social Media Was Not Protected Under the First
                Amendment.......................................................29

          B.    Even if Plaintiff's Alleged Right to Publish a Recording
                on Social Media Was Protected, Defendants Did Not
                Deprive Plaintiff of Such Right. ..............................32

i

V.      The Individual Defendants Are Entitled to Qualified Immunity. .......36

VI.     Plaintiff Failed to State a Claim of Municipal Liability Against
        the School Committee of Gloucester. ..................................................40

VII.    Plaintiff's Demands for Declaratory Judgment Are Moot..................43

VIII.   The District Court Properly Denied Plaintiff's Motion for a
        Temporary Restraining Order and a Preliminary Injunction. .............45

        A.      Plaintiff's Motion for a Temporary Restraining Order and
                a Preliminary Injunction is Moot. ...............................................45

        B.      Plaintiff Failed to Meet the Preliminary Injunction
                Standard. .....................................................................................47

CONCLUSION .................................................................................................50

CERTIFICATE OF COMPLIANCE.......................................................................52

CERTIFICATE OF SERVICE ...............................................................................53

# TABLE OF AUTHORITIES

**CASES:**

ACLU of Mass. v. United States Conf. of Catholic Bishops,
 705 F.3d 44 (1st Cir. 2013) ................................................................... 43

Adickes v. S.H. Kress & Co.,
 398 U.S. 144 (1970) ............................................................................... 42

Allinova v. Worcester Sch. Comm.,
 994 F.2d 905 (1st Cir. 1993) ................................................................. 31

Alston v. Spiegel,
 988 F.3d 564 (1st Cir. 2021) ................................................................. 14

Arizonians for Official English v. Arizona,
 520 U.S. 43 (1997) ................................................................................. 46

Artuso v. Vertex Pharm, Inc.,
 637 F.3d 1 (1st Cir. 2011) ..................................................................... 15

Ashcroft v. al-Kidd,
 563 U.S. 731 (2011) ............................................................................... 40

Back Beach Neighbors Comm. v. Town of Rockport,
 63 F.4th 126 (1st Cir. 2023) .................................................................. 14

Ballinger v. Town of Kingston,
 2019 WL 6726689 (D. Mass. Dec. 10, 2019) .................................. 38-39

Bartnicki v. Vopper,
 532 U.S. 514 (2001) ............................................................................... 29

Belsito Communications, Inc. v. Decker,
 845 F.3d 13 (1st Cir. 2016) ............................................................. 37, 40

Board of Educ. v. Barnette,
 319 U.S. 624 (1943) ............................................................................... 27

Boston Bit Labs, Inc. v. Baker,
  11 F.4th 3 (1st Cir. 2021) ................................................................... 44

Bowen v. City of Manchester,
  966 F.2d 13 (1st Cir. 1992) ................................................................ 42

Braintree Labs., Inc. v. Citigroup Global Mkts. Inc.,
  622 F.3d 36 (1st Cir. 2010) ................................................................ 49

Camona-Rivera v. Puerto Rico,
  464 F.3d 14 (1st Cir. 2006) ................................................................ 33

Charlesbank Equity Fund II v. Blinds To Go, Inc.,
  370 F.3d 151 (1st Cir. 2004) .............................................................. 49

Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez,
  561 U.S. 661 (2010) ........................................................................... 23

City of Los Angeles v. Heller,
  475 U.S. 796 (1986) ........................................................................... 41

City of Los Angeles v. Lyons,
  461 U.S. 95 (1983) ............................................................................. 49

City of Lowell v. Enel North America, Inc.,
  705 F. Supp. 2d 116 (D. Mass. 2010) ................................................. 49

City of St. Louis v. Praprotnik,
  485 U.S. 112 (1988) ........................................................................... 42

Collins v. City of Harker Heights, Tex.,
  503 U.S. 115 (1992) ........................................................................... 41

Connick v. Myers,
  461 U.S. 138 (1983) ........................................................................... 31

Constantine v. Rectors & Visitors of George Mason Univ.,
  411 F.3d 474 (4th Cir. 2005) ....................................................... 33, 34

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
    473 U.S. 788 (1985) ............................................................. 24

County of Los Angeles v. Davis,
    440 U.S. 625 (1979) ............................................................. 46

Curran v. Cousins,
    509 F.3d 36 (1st Cir. 2007) ................................................. 38

D.B., *ex rel.* Elizabeth B. v. Esposito,
    675 F.3d 26 (1st Cir. 2012) ................................................. 33

Davignon v. Hodgson,
    524 F.3d 91 (1st Cir. 2008) ................................................. 38

Dawes v. Walker,
    239 F.3d 489 (2d Cir. 2001) ................................................ 33

Demarest v. Athol/Orange Cmty. Television, Inc.,
    188 F. Supp. 2d 82 (D. Mass. 2002) ................................... 25

Douglas v. Hirshon,
    63 F.4th 49 (1st Cir. 2023) .................................................. 28

Farhat v. Jopke,
    370 F.3d 580 (6th Cir. 2004) ............................................... 38

Febus-Rodriguez v. Betancourt-Lebron,
    14 F.3d 87 (1st Cir. 1994) ................................................... 36

Fordyce v. City of Seattle,
    5 F.3d (9th Cir. 1995) .................................................... 24, 25

Frazier v. Bailey,
    957 F.2d 920 (1st Cir. 1992) ............................................... 36

Garcia v. City of Trenton,
    348 F.3d 726 (8th Cir. 2003) ............................................... 34

Gent v. CUNA Mut. Ins. Society,
    611 F.3d 79 (1st Cir. 2010) ................................................................. 21

Gericke v. Begin,
    753 F.3d 1 (1st Cir. 2014) ........................................... 18, 19, 20, 23, 39

Glik v. Cunniffe,
    655 F.3d 78 (1st Cir. 2011) ........................................................... *passim*

Goodwin v. C.N.J., Inc.,
    436 F.3d 44 (1st Cir. 2006) ................................................................. 46

Gorelik v. Costin,
    605 F.3d 118 (1st Cir. 2020) ............................................................... 33

Gutierrez-Rodriguez v. Cartagena,
    882 F.2d 553 (1st Cir. 1989) ............................................................... 26

Haley v. City of Boston,
    657 F.3d 39 (1st Cir. 2011) ................................................................. 15

Harper & Row, Publishers, Inc. v. Nation Enterprises,
    471 U.S. 539 (1985) ........................................................................... 22

Harris v. University of Mass. Lowell,
    43 F.4th 187 (1st Cir. 2022) ............................................................... 46

Ho v. City of Boynton Beach,
    2023 WL 2293517 (11th Cir. March 1, 2023) .................................... 48

Hunter v. Bryant,
    502 U.S. 224 (1991) ........................................................................... 37

Iacobucci v. Boulter,
    193 F.3d 14 (1st Cir. 1999) ........................................................... 17, 18

In re Colonial Mortg. Bankers Corp.,
    324 F.3d 12 (1st Cir. 2003) ................................................................. 15

In re Financial Oversight & Mgmt. Bd.,
    16 F.4th 954 (1st Cir. 2021) ................................................................. 44

Jean v. Massachusetts State Police,
    492 F.3d 24 (1st Cir. 2007) ................................................................. 30

Laird v. Tatum,
    408 U.S. 1 (1972) ................................................................. 29, 34

Lane v. Franks,
    573 U.S. 228 (2014) ................................................................. 31

Lawless v. Steward Health Care Sys., LLC,
    894 F.3d 9 (1st Cir. 2018) ................................................................. 40

Lawless v. Town of Freetown,
    63 F.4th 61 (1st Cir. 2023) ................................................................. 37

Legal Sea Foods, LLC v. Strathmore Ins. Co.,
    36 F.4th 29 (1st Cir. 2022) ................................................................. 14

Lowinger v. Broderick,
    50 F.3d 61 (1st Cir. 1995) ................................................................. 36, 37

Lu v. Hulme,
    133 F. Supp. 3d 312 (D. Mass. 2015) ................................................................. 23

Maldonado Santiago v. Velazquez Garcia,
    821 F.2d 822 (1st Cir. 1987) ................................................................. 26, 32

Maldonado v. Fontanes,
    568 F.3d 263 (1st Cir. 2009) ................................................................. 38

Mangual v. Rotger-Sabat,
    317 F.3d 45 (1st Cir. 2003) ................................................................. 43

McGunigle v. City of Quincy,
    132 F. Supp. 3d 155 (D. Mass. 2015) ................................................................. 39

McIntosh v. Antonino,
   71 F.3d 29 (1st Cir. 1995) .................................................................................. 47

Meaney v. Dever,
   326 F.3d 283 (1st Cir. 2003) ............................................................................ 31

Metro-Goldwyn Mayer, Inc. v. 007 Safety Prods., Inc.,
   183 F.3d 10 (1st Cir. 1999) .............................................................................. 46

Monell v. New York City Dep't of Social Services,
   436 U.S. 658 (1978) .......................................................................................... 41

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,
   429 U.S. 274 (1977) .......................................................................................... 33

Mullenix v. Luna,
   136 S.Ct. 305 (2015) .................................................................................. 37, 38

New Comm Wireless Servs., Inc. v. SprintCom, Inc.,
   287 F.3d 1 (1st Cir. 2002) ................................................................................ 48

NuVasive, Inc. v. Day,
   954 F.3d 439 (1st Cir. 2020) ............................................................................ 48

O'Brien v. United States,
   56 F.4th 139 (1st Cir. 2022) ........................................................................ 13-14

Olisky v. Town of East Longmeadow,
   642 Fed. Appx. 1 (1st Cir. 2016) ..................................................................... 15

Osediacz v. City of Cranston,
   414 F.3d 136 (1st Cir. 2005) ...................................................................... 34, 36

Pagan-Gonzalez v. Moreno,
   919 F.3d 582 (1st Cir. 2019) ............................................................................ 37

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
   460 U.S. 37 (1983) ............................................................................................ 23

Pickering v. Board of Educ. of Township High Sch. Dist. 205,
   391 U.S. 563 (1968) ............................................................... 38

Pittsley v. Warish,
   927 F.2d 3 (1st Cir. 1991) ................................................... 41

Pleasant Grove City, Utah v. Summum,
   555 U.S. 460 (2009) ............................................................. 23

Preiser v. Newkirk,
   422 U.S. 395 (1975) ............................................................. 43

Project Veritas Action Fund v. Rollins,
   982 F.3d 813 (1st Cir. 2020) ..................................... *passim*

Punsky v. City of Portland,
   54 F.4th 62 (1st Cir. 2022) ................................................. 37

Ridley v. MBTA,
   390 F.3d 65 (1st Cir. 2004) ................................................ 23

Rife v. One West Bank, F.S.B.,
   873 F.3d 17 (1st Cir. 2017) ................................................ 16

Rivera v. Kress Stores of P.R., Inc.,
   30 F.4th 98 (1st Cir. 2022) ................................................ 14

Rogan v. Menino,
   175 F.3d 75 (1st Cir. 1999) ................................................ 26

Rosado-Quinones v. Toledo,
   528 F.3d 1 (1st Cir. 2008) .................................................. 31

Rushia v. Town of Ashburnham, Mass.,
   701 F.2d 7 (1st Cir. 1983) .................................................. 49

Savard v. Rhode Island,
   338 F.3d 23 (1st Cir. 2003) ................................................ 37

Schatz v. Republican State Leadership Comm.,
    669 F.3d 50 (1st Cir. 2012) .................................................................. 15

Smith v. City of Boston,
    413 Mass. 607 (1992)........................................................................... 41

Smith v. City of Cumming,
    212 F.3d 1332 (11th Cir. 2000)............................................................ 24

Smith v. Fruin,
    28 F.3d 646 (7th Cir. 1994).................................................................. 32

Snyder v. Phelps,
    562 U.S. 443 (2011) ............................................................................. 31

Sparkle Hill, Inc. v. Interstate Mat Corp.,
    788 F.3d 25 (1st Cir. 2015) .................................................................. 16

Starr v. Dube,
    334 Fed. Appx. 341 (1st Cir. 2009) ..................................................... 33

Starr v. Moore,
    849 F. Supp. 2d 205 (D. N.H. 2012)..................................................... 34

Steir v. Girl Scouts of the USA,
    383 F.3d 7 (1st Cir. 2004) .................................................................... 47

Stevens v. St. Tammany Parish Government,
    17 F.4th 563 (6th Cir. 2021) ................................................................ 48

Sullivan v. Carrick,
    888 F.2d 1 (1st Cir. 1989) .............................................................. 28, 35

Thant v. Karyopharm Therapeutics Inc.,
    43 F.4th 214 (1st Cir. 2022)................................................................. 26

Tower v. Leslie-Brown,
    326 F.3d 290 (1st Cir. 2003)................................................................ 40

Town of Portsmouth, R.I. v. Lewis,
   813 F.3d 54 (1st Cir. 2016) ................................................................ 44

United States v. Bongiorno,
   106 F.3d 1027 (1st Cir. 1997) ........................................................... 40

United States v. George,
   886 F.3d 31 (1st Cir. 2018) ................................................................ 26

United States v. Harriss,
   347 U.S. 612 (1954) ........................................................................... 29

United States v. Weikart,
   504 F.3d 1 (1st Cir. 2007) .................................................................. 14

United States v. Zannino,
   895 F.2d 1 (1st Cir. 1990) .................................................................. 40

Wine & Spirits Retailers, Inc. v. Rhode Island,
   418 F.3d 36 (1st Cir. 2005) ................................................................ 14

Wooley v. Maynard,
   430 U.S. 707 (1977) ........................................................................... 27

Yacubian v. United States,
   750 F.3d 100 (1st Cir. 2014) .............................................................. 15

Young v. City of Providence,
   404 F.3d 4 (1st Cir. 2005) .................................................................. 42

Young v. Wells Fargo Bank, N.A.,
   717 F.3d 224 (1st Cir. 2013) .............................................................. 15

ZigZag, LLC v. Kerry,
   2015 WL 1061503 (D. Mass. Mar. 10, 2015) ................................... 48

CONSTITUTIONAL PROVISIONS:

First Amendment.............................................................................. *passim*

STATUTES:

28 U.S.C. § 1331 ....................................................................................... 1
28 U.S.C. §§ 1291 & 1294(1) .................................................................. 1
42 U.S.C. § 1983 ............................................................................... *passim*

M.G.L. c. 71, § 37H ................................................................................. 4
M.G.L. c. 272, § 99 ......................................................................... 5, 20

RULES:

Fed. R. App. P. 28(a)(8)(A) ................................................................. 16

Fed. R. Civ. P. 6(b)(1)(B) ..................................................................... 47

Fed. R. Evid. 201(b), (f) ........................................................................ 21

OTHER AUTHORITIES:

M. Kaminski, Privacy and the Right to Record,
   97 B.U. L. Rev. 167 (Jan. 2017) .......................................................... 22

J. Mullen, Note, Information Gathering or Speech Creation: How to Think
   About a First Amendment Right to Record, 28 Wm. & Mary Bill of Rts. J.
   803 (March 2020)................................................................................... 19

S. Skinner-Thompson, Recording as Heckling,
   108 Geo. L.J. 125 (Oct. 2019)............................................................... 22

E. Ugland & C. Mazzeo, Hacks, Leaks, and Data Dumps: The Right to Publish
   Illegally Acquired Information Twenty Years After Bartnicki v. Vopper,
   96 Wash. L. Rev. 139 (March 2021).................................................... 30

## JURISDICTIONAL STATEMENT

(A)  Plaintiff seeks relief under 42 U.S.C. § 1983. The United States District Court for the District of Massachusetts has original jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

(B)  The United States Court of Appeals for the First Circuit has jurisdiction over appeals from all final decisions of the United States District Court for the District of Massachusetts. 28 U.S.C. §§ 1291 & 1294(1).

(C)  On December 5, 2022, the United States District Court entered a Memorandum & Order granting defendants' Motion to Dismiss Plaintiff's Verified First Amended Complaint Under Rule 12(b)(6). In its Memorandum & Order, the District Court also denied as moot plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction.

(D)  On December 5, 2022, the District Court entered an Order Dismissing Case. On that same date, plaintiff filed a Notice of Appeal from the Memorandum & Order granting defendants' Motion to Dismiss and denying plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction.

(E)  This appeal is taken from a final Order disposing of all of plaintiff's claims.

## STATEMENT OF THE ISSUES

(1)  Whether plaintiff voluntarily withdrew his claim that he had a First Amendment right to record his visit to the Gloucester Public Schools Administration Office on March 3, 2022.[1]

(2)  Whether defendants deprived plaintiff of a First Amendment right to record.

(3)  Whether defendants deprived plaintiff of a First Amendment right to publish a recording on social media.

(4)  Whether the individual defendants are entitled to qualified immunity.

(5)  Whether plaintiff failed to state a claim of municipal liability against the School Committee of Gloucester.

(6)  Whether plaintiff's demands for declaratory relief are moot.

(7)  Whether plaintiff's demands for injunctive relief are moot.

## STATEMENT OF THE CASE

This is a civil rights action brought by plaintiff, Inge Berge, a resident of Gloucester, MA, against four defendants: (1) the School Committee of Gloucester;

---

[1] Plaintiff cited and provided a link to the recording of his visit to the Gloucester Public School Administration Building in both his Verified First Amended Complaint. (AA023, ¶ 15, n.1) and his Motion for a Temporary Restraining Order and a Preliminary Injunction. (AA009, n.1). The recording also appears at https://youtube.com/watch?v=Lf4hLo53mas. For convenience, defendants will refer to plaintiff's video as the "Recording."

(2) Superintendent of Gloucester Public Schools ("GPS"), Ben Lummis; (3) the Superintendent's Executive Secretary, Stephanie Delisi; and (4) GPS Director of Human Resources, Roberta A. Eason. The individual defendants are sued in their personal capacities only.

On March 3, 2022, plaintiff entered the GPS Administration Office at 2 Blackburn Drive, Gloucester, MA,[2] for the purpose of obtaining five tickets to the opening night performance of "The Little Mermaid, Jr.," a student production to be held at the O'Maley Innovation Middle School.[3] Plaintiff's daughter was playing a lead in the production and Mr. Berge wished to attend.[4] Mr. Berge, however, had "totally messed up."[5] He was supposed to buy five tickets for opening night but had somehow failed to do so.[6] Now, on March 3, 2022, all tickets were sold out.[7] As Mr. Berge put it: "I'm so in the dog house with everyone because I didn't get these tickets for opening night."[8] Although Mr. Berge questioned O'Maley's restriction on the number of available seats, he nonetheless admitted his issue was not one of great

---

[2] Two Blackburn Drive is also the location of the GPS Pre-School Program. Recording, at 00:57.

[3] Id., at 00:15, 05:03.

[4] Id., at 03:40. 06:48.

[5] Id., at 05:40.

[6] Id., at 03:40, 06:48.

[7] Id., at 00:22, 04:32.

[8] Id., at 05:48.

public importance. "[It's] a very small situation that should have been solved very quickly and easily ...."[9] Indeed, "it's the smallest thing in the world."[10]

For security reasons, the public entrance to the GPS Administration Office is kept locked.[11] Upon arrival, Mr. Berge pressed the intercom and was buzzed in.[12] Plaintiff began recording his visit even before entry. (AA022, ¶ 11). After first speaking with the receptionist at the front desk, he was approached by defendant, Stephanie Delisi, in an adjoining office. Ms. Delisi inquired: "What can I help you with?"[13] Mr. Berge informed her: "I'm filming this. I'm doing a story on it. If that's OK with you." (AA022, ¶ 12). He then asked: "Is that alright?" Ms. Delisi replied: "No, no I don't want to be filmed."[14] (AA022, ¶ 13). Even though Ms. Delisi denied him permission, Mr. Berge kept recording. Ms. Delisi went into Superintendent Lummis's adjacent office. The Superintendent came to his door and spoke to plaintiff. He asked Mr. Berge to shut off the recording: "You do not have permission to film in this area."[15] Mr. Berge kept recording. The Superintendent continued: "I'm

---

[9] Id., at 03:40.

[10] Id., at 05:30.

[11] Massachusetts law requires school districts to adopt "standards and procedures to assure school building security and safety of students and school personnel." M.G.L. c. 71, § 37H.

[12] Recording, at 00:58.

[13] Id., at 01:49.

[14] Id., at 01:50 – 01:57.

[15] Id., at 02:24.

happy to speak with you about O'Maley if you turn that off. You do not have my permission to film here right now."[16] Mr. Berge kept recording. The Superintendent returned to his office and shut the door.[17]

Assistant Superintendent Gregory Bach then met with Mr. Berge and took down the information regarding plaintiff's self-styled "unpleasant situation."[18] (AA022-23, ¶ 14). Unlike Ms. Delisi, Mr. Berge did not ask for Mr. Bach's permission to record their meeting, and Mr. Bach voiced no objection to the recording. (AA023, ¶ 14). Following their meeting, Mr. Berge commented: "Well that seemed to go pretty well. Ah, Mr. Bach there. We shall see."[19]

That afternoon, plaintiff uploaded the recording made in the GPS Administration Office to his Facebook page, together with commentary. (AA023, ¶ 15, n.1). On the same day, defendant, H.R. Director Roberta A. Eason, advised Mr. Berge by letter that the recording and/or dissemination of communications without the consent of all contributing parties was prohibited under the Massachusetts Wiretap Statute, M.G.L. c. 272, § 99. (AA023, ¶ 16, AA019). In her letter, Ms. Eason demanded plaintiff "immediately remove the post from your Facebook account

---

[16] <u>Id.</u>, at 02:33 – 02:42. Despite the video evidence to the contrary, plaintiff alleged that "[a]t no point did anyone inform Mr. Berge that filming was not permitted." (AA022, ¶ 13).

[17] <u>Id.</u>, at 02:44.

[18] <u>Id.</u>, at 03:40.

[19] <u>Id.</u>, at 08:04. Mr. Berge did not receive the requested tickets. <u>Id.</u>, at 08:12.

and/or any other communications to prevent the pursuit of legal action in this matter." (AA019). Plaintiff, however, did not comply with Ms. Eason's demand or remove the recording from his Facebook account. Indeed, the letter had no chilling effect on plaintiff whatsoever. As plaintiff explained, "[a]ny reasonable person would know" that he (Mr. Berge) did not violate the Wiretap Statute, and "[a]ny level of review of the law would inform the average person that recording a conversation with the knowledge of all participants does not violate [the Wiretap Statute]." (AA023, ¶ 20).

On March 11, 2022, district counsel for GPS withdrew the March 3, 2022 letter during a telephone conversation with plaintiff's counsel, a measure confirmed in writing shortly thereafter. (AA036). Specifically, district counsel advised plaintiff's counsel that the March 3, 2022 letter was "withdraw[n]" and that GPS "would not be taking any legal action against Mr. Berge …." (AA036). District counsel memorialized this communication by letter to plaintiff's counsel dated March 22, 2022. (AA036).

Plaintiff filed this suit on March 7, 2022, four days after making and posting his recording on Facebook. (AA163). In this action, plaintiff sought recovery under 42 U.S.C. § 1983 for the alleged violation of his rights to free speech as protected under the First Amendment. In his Verified First Amended Complaint, plaintiff claimed he engaged in protected activity when he recorded his interactions with

school officials in the Administration Office on March 3, 2022 and subsequently posted such recording on Facebook. (AA024-25, AA028). The letter to Mr. Berge from the H.R. Director (so plaintiff alleged) was sent in retaliation for such activity. (AA024, ¶ 26). In addition to damages under Section 1983, plaintiff sought declaratory relief under the Massachusetts Wiretap Statute, the Family Educational Rights and Privacy Act of 1974 ("FERPA") and the First Amendment. (AA026-28). Plaintiff also sought injunctive relief in a separate Motion for a Temporary Restraining Order and a Preliminary Injunction. (AA008).

On April 27, 2022, defendants filed a Motion to Dismiss all Counts of plaintiff's Verified First Amended Complaint under Rule 12(b)(6) for failure to state claims upon which relief can be granted, together with a Memorandum of Law in support. (AA032-57). As grounds for dismissal, defendants argued (among other things) that plaintiff's video recording and subsequent posting of the recording on social media were not protected under the First Amendment. (AA042-48). Additionally (and alternatively), the individual defendants argued they were protected from suit and liability under the doctrine of qualified immunity because it was not clearly established (in March 2022) that plaintiff had a constitutional right to record non-law enforcement personnel in a secure setting on a subject of personal interest to the plaintiff, then post such recording on Facebook. (AA051-53). Defendants also argued that plaintiff failed to state a claim of municipal liability

7

against the School Committee. (AA053-54). Finally, defendants argued that plaintiff's requests for declaratory relief were moot because the H.R. Director's letter of March 3, 2022 had been withdrawn and plaintiff's purported "need" for such relief was neither immediate nor real. (AA054-56). On May 11, 2022, plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. (AA058-77).

Three months later, on August 24, 2022, plaintiff (knowing full-well defendants' position) filed a Notice of Non-Opposition to Motion for a Temporary Restraining Order and for a Preliminary Injunction. (AA115-16). In his Notice, plaintiff requested the District Court to grant him a temporary restraining order and preliminary injunction on the grounds such relief was "unopposed" by defendants. On August 29, 2022, defendants filed an Opposition to plaintiff's Motion for a Temporary Restraining Order and a Temporary Restraining Order. (AA117-26). On September 13, 2022, plaintiff (with leave of Court) filed a Reply Brief to defendants' Opposition. (AA127-35). On the same date, defendants filed a Motion to Extend the Time to File an Opposition to Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction up to and including August 29, 2022, together with a Memorandum of Law in support. (AA145-51).

On December 5, 2022, the District Court issued a Memorandum & Order granting defendants' Motion to Dismiss plaintiff's Verified First Amended Complaint under Rule 12(b)(6). (ADD1-16). As grounds therefor, the District Court

ruled that: (1) plaintiff had withdrawn his claim that he had a First Amendment right to record his visit to the Administration Office on March 3, 2022 (ADD6-7); (2) the individual defendants were entitled to qualified immunity on plaintiff's claim that he had a First Amendment right to publish the recording of his visit on social media (ADD8-12); and (3) defendants' withdrawal of the alleged "threatening" letter to plaintiff dated March 3, 2022 rendered moot plaintiff's claims for declaratory relief. (ADD12-15). The Court also denied as moot plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction and defendants' Motion to Extend the Time to File an Opposition to Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction. (ADD15). On December 5, 2022, the District Court entered an Order of Dismissal. (ADD17). This appeal ensued.

## SUMMARY OF THE ARGUMENT

This Court should affirm the Order of Dismissal entered below in all respects. At the outset, plaintiff withdrew any claim that his right to record school officials in the GPS Administration Office on March 3, 2022 was protected under the First Amendment. Such withdrawal was amply demonstrated in an email from plaintiff's counsel to district counsel wherein plaintiff's counsel thrice confirmed his client was not claiming a First Amendment right to record in the context of this action. On appeal, plaintiff expressly admits that his Verified First Amended Complaint seeks no such relief, and his Appellate Brief presents no challenge to the contrary.

9

Even if plaintiff still insists he had a right to record his visit to the GPS Administration Office, such right was not protected under the factual circumstances alleged in his Amended Complaint. As this Court has recognized in the law enforcement setting, the right to record government officials in the performance of their duties remains subject to reasonable time, place and manner restrictions. Restricting the recording of school officials performing their duties in a secure Administration Office is reasonable under the First Amendment as a content-neutral restriction of general applicability. Such restriction also safeguards government interests in the efficient performance of school business and in the privacy and speech rights of school officials. Further, the GPS Administration Office is, at most, a non-public forum where reasonable restrictions on speech are routinely permitted provided they are viewpoint neutral. Defendants' recording ban met such criteria. Finally, despite plaintiff's spin, the expressed purpose of his visit to the Administration Office was not to record matters of public interest. The First Amendment does not protect plaintiff's recording of personal matters.

Plaintiff also fails to allege sufficient facts to show that defendants – Ms. Delisi, Superintendent Lummis and Ms. Eason – by their own actions, actually deprived him of a protected right. Nor does plaintiff sufficiently allege a causal connection between each defendant's conduct and such deprivation. Over the objections of Ms. Delisi and Superintendent Lummis, plaintiff successfully recorded

his visit to the Administration Office. Unwilling to appear in plaintiff's video, Ms. Delisi and Superintendent Lummis exercised their rights to withdraw to another room. Neither their unheeded requests to refrain from recording nor their retreat from plaintiff's lens actually deprived plaintiff of a protected right. Even the March 3, 2022 letter to plaintiff from Ms. Eason demanding he remove the recording from his Facebook account neither deprived plaintiff of a protected right to record nor chilled his speech. As plaintiff expressly admitted, "[my] right to record was not chilled."

Plaintiff's alleged right to publish fairs no better than his alleged right to record. Without a viable right to record, plaintiff's posting on Facebook enjoys no First Amendment protection. This is especially so where plaintiff's recording was not on a matter of public concern. Words matter. Plaintiff told GPS school officials he had a "ticket snafu," "an unpleasant situation," and a "very small situation." He was in the "dog house" because he had neglected to "score" tickets for the opening night of his daughter's performance in "The Little Mermaid, Jr." at the O'Maley Innovation Middle School. Speech on such a personal issue is not protected under the First Amendment.

Even if it is protected, defendants did not actually deprive plaintiff of such speech. Plaintiff immediately published his personal recording on Facebook. He never removed it or suffered any adverse consequences for such publication. And

even though Ms. Eason initially demanded plaintiff remove the recording from social media, plaintiff ignored Ms. Eason since, in his view, "[a]ny reasonable person would know" his publication was not unlawful. One week later, district counsel withdrew the demand for removal and confirmed that no legal action would be taken against plaintiff. Focusing again (as this Court must) on the alleged conduct of each individual, defendants did not violate plaintiff's First Amendment rights.

The District Court did not err in finding the individual defendants entitled to qualified immunity. Even if plaintiff's rights to record and/or publish were protected under the First Amendment, such rights were not clearly established on the afternoon of March 3, 2022 when plaintiff was buzzed into the GPS Administration Office by the receptionist and promptly announced: "I'm filming this." The previous guidance of this Court's law enforcement cases notwithstanding, reasonable public officials in the position of the Superintendent, his Executive Secretary and the H.R. Director were not on notice that any citizen had a First Amendment right to record inside the GPS Administration Office without their permission on a subject such as securing tickets to a sold-out school play, then post that recording on social media. If the individual defendants violated plaintiff's First Amendment rights, they did so in error, not out of incompetence or in willful violation of the law. The fact-bound nature of the circumstances facing the individual defendants during those few

12

minutes (or seconds) on March 3, 2022 compels this Court to uphold the Order of Dismissal entered below.

Plaintiff advanced no argument of municipal liability on the part of the School Committee of Gloucester. Nor can he do so under the principles of Monell v. New York City Dep't of Social Services or City of St. Louis v. Praprotnik.

Plaintiff's demands for declaratory judgment are moot in light of his failure to establish a right to record or right to publish his recording under the First Amendment. Further, defendants' prompt withdrawal of the demand letter at the dawn of litigation effectively eliminated any live controversy, thereby rendering declaratory relief in this matter no more than advisory.

Finally, plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction was rendered moot by defendants' prompt withdrawal of the demand letter. Plaintiff also failed to show that he was entitled to the extraordinary remedy of injunctive relief by failing to demonstrate a substantial likelihood of success on the merits, a significant risk of irreparable harm, or a balance of hardships that weighed in his favor.

## **ARGUMENT**

### I.    **Standard of Review.**

The Court of Appeals "'review[s] de novo a district court's allowance of a motion to dismiss for failure to state a claim under Rule 12(b)(6).'" O'Brien v.

13

United States, 56 F.4th 139, 145 (1st Cir. 2022) (quoting Rivera v. Kress Stores of P.R., Inc., 30 F.4th 98, 102 (1st Cir. 2022)). This Court is "not wedded to the district court's reasoning but, rather, may resolve the appeal on any basis that is apparent from the record." Id. (citing Alston v. Spiegel, 988 F.3d 564, 571 (1st Cir. 2021)). Like the court below, the Court of Appeals must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the [plaintiff's] favor." Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 128 (1st Cir. 2023) (quoting Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29, 34 (1st Cir. 2022)). However, this Court should "credit neither conclusory legal allegations nor factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." Legal Sea Foods, at 33 (citations and internal quotations omitted)).

On appeal, this Court reviews the grant or denial of a preliminary injunction for abuse of discretion. United States v. Weikart, 504 F.3d 1, 6 (1st Cir. 2007). "[F]indings of fact are reviewed for clear error and issues of law are reviewed de novo." Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005).

## II. Plaintiff Voluntarily Withdrew His Claim Regarding a First Amendment Right to Record.

As set forth above, on a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts and draw all reasonable inferences therefrom in

plaintiff's favor. Artuso v. Vertex Pharm, Inc., 637 F.3d 1, 5 (1st Cir. 2011). In reviewing plaintiff's complaint, however, a court may also augment such facts and inferences "with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003)). Indeed, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Yacubian v. United States, 750 F.3d 100, 108 (1st Cir. 2014) (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 229 n.1 (1st Cir. 2013)). Finally, a court may also consider "concessions in plaintiff's response to the motion to dismiss." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal quotations omitted). See Olisky v. Town of East Longmeadow, 642 Fed. Appx. 1, 4 (1st Cir. 2016) (describing consideration of concessions in response as a "long-settled rule").

Guided by these instructions, the District Court concluded that plaintiff had withdrawn his claim that he had a First Amendment right to record a video in the GPS Administration Office on March 3, 2022. (ADD6-7). In an email attached as an exhibit to his Opposition to defendants' Motion to Dismiss, plaintiff (through counsel) plainly conceded he was asserting no First Amendment right to record in this action.

> We have accepted, for the sake of peace at this time, your position that there was no First Amendment right to record in that office. (We do disagree, but had not sought your admission of this, *nor do we bring that claim in the amended complaint*).

(AA081) (emphasis added). In support of its conclusion that plaintiff had conceded any claim based on a First Amendment right to record, the District Court also cited plaintiff's counsel's statement that his client had "specifically omit[ted] a First Amendment right to record in the building" from his operative pleading. (ADD6-7, AA081). Finally, regarding his client's alleged right to record a visit to the GPS Administration Office, plaintiff's counsel admitted: "We believe there are other legal reasons that he could do that, but in the interest of compromise, *we backed down from claiming a First Amendment right to record.*" (AA081) (emphasis added). The District Court accordingly dismissed those "portions of [plaintiff's] claim relating to that professed right." (ADD7).

In his Appellate Brief, plaintiff does not challenge the District Court's ruling that he was no longer claiming a First Amendment right to record. Therefore, any such argument is now deemed waived. Rife v. One West Bank, F.S.B., 873 F.3d 17, 19 (1st Cir. 2017); Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29-30 (1st Cir. 2015). See Fed. R. App. P. 28(a)(8)(A) (appellant's brief "must contain ... appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies …"). In fact, plaintiff admits his Verified First Amended Complaint "[does] not contain a separate claim for relief for

violation of the right to record." (Plaintiff's Appellate Brief, at 22). The dismissal of such claim was, therefore, appropriate.

## III. Defendants Did Not Deprive Plaintiff of a First Amendment Right to Record.

Without citation, plaintiff states that "the fact he had a right to record is a necessary predicate to his claim for the right to publish." (Id.) If that is so, plaintiff was not deprived of a protected right to record and, therefore, cannot establish the so-called "necessary predicate."

### A. Plaintiff's Alleged Right to Record Was Not Protected Under the First Amendment.

To support his alleged right to record the activities of the Superintendent of Schools and other personnel in the GPS Administration Office, plaintiff relies almost exclusively on case law regarding the right to record law enforcement officers performing their duties in public spaces. Iacobucci v. Boulter, 193 F.3d 14 (1st Cir. 1999) involved a Section 1983 claim brought by a local journalist against a police officer who arrested him for disorderly conduct. At the time of his arrest, Iacobucci was filming members of a local historic district commission in a hallway outside a public meeting. Id., at 18. While Iacobucci's claim was grounded in the Fourth Amendment, the First Circuit nonetheless noted, in rejecting the police officer's appeal from the denial of his defense of qualified immunity, that Iacobucci's

17

activities were performed "in the exercise of his First Amendment rights" and the police officer "lacked the authority to stop them." Id., at 25.

In Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011), this Court cited Iacobucci for "recogniz[ing] that the videotaping of public officials is an exercise of First Amendment liberties." Id., at 83. Glik involved a pedestrian charged with violating the Massachusetts Wiretap Statute for using his cellphone to record several police officers arresting a young man on Boston Common. After the wiretap charge was dismissed, Glik filed suit against the arresting officers under Section 1983 for violating his First Amendment rights. Following the denial of their Rule 12(b)(6) motion based on qualified immunity, the arresting officers took an interlocutory appeal. This Court affirmed, ruling that the First Amendment protects the right of the public to record "government officials, including law enforcement officers, in the discharge of their duties in a public space ...." Id., at 85. The Court nonetheless cautioned that the right to record may "be subject to reasonable time, place and manner restrictions." Id., at 84. Yet, given the location of the recording at issue – "the oldest city park in the United States and the apotheosis of a public forum" – the Glik Court found "no occasion to explore those limitations here." Id., at 84.

Three years later, this Court again upheld the right to record government officials in a case involving law enforcement officers in the discharge of their duties in a public space. Gericke v. Begin, 753 F.3d 1, 9 (1st Cir. 2014). Weare, NH police

officers arrested Gericke for attempting to record a late night traffic stop on a public way. Gericke sued the arresting officers under Section 1983 for violating her First Amendment rights. The officers' appeal from a denial of their Rule 12(b)(6) motion based on qualified immunity grounds was again unsuccessful. This Court affirmed the denial, ruling that "an individual's exercise of her First Amendment right to film police activity carried out in public, including a traffic stop, necessarily remains unfettered unless and until a reasonable restriction is imposed or in place." Id., at 7-8. Once more, however, the Court (citing Glik) warned that "[r]easonable restrictions on the exercise of the right to film may be imposed when the circumstances justify them." Id., at 7. Although it neither expanded upon the nature of such restrictions nor explained under what circumstances such restrictions may be justified, the Court characterized as "significant" the failure of the officer in question to order Gericke "to stop filming or leave the area …." Id., at 3 & 10.

While Mr. Berge's reliance on Glik and Gericke is not misplaced, the cases left undefined the scope of the First Amendment right to record the activities of other government officials. See J. Mullen, Note, Information Gathering or Speech Creation: How to Think About a First Amendment Right to Record, 28 Wm. & Mary Bill of Rts. J. 803, 808 (March 2020) (Glik and Gericke "leave[ ] open the question of whether the contours of the right to record are the same when recording non-law enforcement public officials.")

In late 2020, this Court further clarified reasonable time, place and manner restrictions in the context of the right to record. In Project Veritas Action Fund v. Rollins, 982 F.3d 813 (1st Cir. 2020), civil rights activists sued the Boston Police Commissioner and others under Section 1983 claiming that the Massachusetts Wiretap Statute's prohibition against secret, nonconsensual recordings of police officers discharging their official duties in public places was overbroad as applied and in violation of the First Amendment. This Court agreed, extending Glik and Gericke to secret recordings of police officers in public spaces. Id., at 836-37. In so doing, the First Circuit analyzed the Wiretap Statute under an intermediate level of scrutiny, which provides that a content-neutral restriction of general applicability shall be upheld if it is "narrowly tailored to serve a significant government interest" and leaves open "ample alternative channels for communication." Id., at 834-35 ("application of intermediate scrutiny … accords with the approach that we took in Glik and Gericke ….") (quotations and citations omitted). After affirming the lower court's conclusion that M.G.L. c. 272, § 99 is a "content-neutral law of general applicability," id., at 834, the First Circuit acknowledged that the interests at stake – i.e., preventing interference with police activities and protecting individual privacy – are legitimate and important governmental interests. Id., at 836-37. Even police officers engaged in the performance of their official duties, acknowledged the Court, "have some privacy interest that the prospect of secret recording could threaten …."

Id., at 838. Yet, the Court concluded that an "outright ban" on the secret recording of police activities conducted in public was not narrowly tailored to further such interests and, therefore, unconstitutionally overbroad. Id., at 837.

Barring the recording of school business activities conducted in the GPS Administration Office (whether open or secret) is a content-neutral restriction of general applicability. Further, such restriction serves legitimate and important governmental interests. The Superintendent and other GPS administrators share numerous duties and responsibilities, including the day-to-day operation and oversight of eight public schools with an enrollment of over 2,800 students in grades Pre-K through 12.[20] The efficient performance of such duties and responsibilities should not be disrupted by the recording of school administrators as they go about their day-to-day business, much of which concerns confidential information regarding minor students and their families. See Glik, 655 F.3d at 84 (upholding peaceful recording of arrest in public "that [did] not interfere with the police officers' performance of their duties"). If plaintiff's interpretation of the First Amendment is correct, anyone with a camera can enter 2 Blackburn Drive – which houses not only

---

[20] See Department of Education School District Profiles: https://profiles.doe.mass.edu/general/general.aspx?topNavID=1&leftNavId=100&orgcode=01070000&orgtypecode=5. A court may take judicial notice of relevant facts provided on a website which are "not subject to reasonable dispute." Gent v. CUNA Mut. Ins. Society, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (quoting Fed. R. Evid. 201(b), (f)).

the Administration Office but also the GPS Pre-School Program – at any time and record whomever they wish simply by chanting the magic phrase: "I am doing a story." This cannot be the law.

Further, school officials (like police officers) do not lose all privacy interests by virtue of their status as public employees. See Project Veritas, at 838 (under certain circumstances, recording of police officers working in public spaces could threaten officers' privacy interests). See M. Kaminski, Privacy and the Right to Record, 97 B.U. L. Rev. 167, 203 (Jan. 2017) ("Privacy in the context of recording is the ability of an individual to dynamically manage her social accessibility at a particular moment, given features of the physical environment."). "Speech rights are implicated on both sides of the ledger: by those recording and by those trying to avoid being recorded." S. Skinner-Thompson, Recording as Heckling, 108 Geo. L.J. 125, 131 (Oct. 2019). As the Supreme Court has recognized, freedom of thought and expression contain "both the right to speak freely and the right to refrain from speaking at all." Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 559 (1985). Any reasonable time, place and manner restrictions on the right to record government officials must recognize the First Amendment rights of *all* participants in the recording, not only the person behind the camera. Unlike the plaintiff in

Gericke, Mr. Berge was twice asked to stop recording, but he refused.[21] This Court (like the Gericke Court) should treat that request as "significant."

While the Project Veritas Court did not conduct a forum analysis, it nonetheless recognized that a governmental interest (such as the interest in privacy) may be more significant in different spaces. Project Veritas, at 838. First Amendment law typically recognizes three types of fora: the traditional public forum; the designated public forum; and the limited or non-public forum. Ridley v. MBTA, 390 F.3d 65, 76 (1st Cir. 2004). The traditional public forum consists of "places which by long tradition or by government fiat have been devoted to assembly and debate …," such as streets, parks and public sidewalks. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). Glik and Gericke both involved the recording of police officers in traditional public fora. A designated public forum consists of public property that government has, by both expressed intention and actual practice, opened up as a place for expressive activity. Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469 (2009). A limited or non-public forum is created "when the government opens its property only to use by certain groups or for the discussion of certain subjects." Lu v. Hulme, 133 F. Supp. 3d 312, 324-25 (D. Mass. 2015) (citing Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez, 561 U.S. 661, 679 n.11 (2010)). In traditional and

---

[21] Recording, at 01:50 – 01:57, 02:33 – 02:42.

designated public fora, restrictions on speech are subject to strict scrutiny. In limited or non-public fora, restrictions based on subject matter and speaker identity are permitted "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985).

The GPS Administration Office is neither a public park nor a public way. It is an office where school officials conduct the administrative business of Gloucester Public Schools. As such, the Administration Office, if it is a public forum at all, qualifies as a limited or non-public forum where reasonable, viewpoint-neutral restrictions are permitted. The ban on the recording of schools officials in the GPS Administration Office is a reasonable, viewpoint-neutral restriction permissible under the First Amendment.

In recognizing that the First Amendment "protects the filming of government officials in public spaces," the Glik Court cited with approval the decisions of several other circuit courts, including Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000), and Fordyce v. City of Seattle, 5 F.3d 436 (9th Cir. 1995). In Smith, the Eleventh Circuit held: "The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record *matters of public interest*." Smith, at 1333 (emphasis added). Similarly, in Fordyce, the Ninth Circuit recognized plaintiff's right to "exercis[e] his

First Amendment right to film *matters of public interest*." <u>Fordyce</u>, at 439 (emphasis added). If Mr. Berge had a right to record his visit to the GPS Administration Office (which defendants deny), such right was limited to matters of public interest. See <u>Demarest v. Athol/Orange Cmty. Television, Inc.</u>, 188 F. Supp. 2d 82, 95 (D. Mass. 2002) ("plaintiffs had a constitutionally protected right to record matters of public interest.") Plaintiff's visit to the Administration Office to (in his own words) "score five tickets" to his daughter's Middle School play[22] was not a matter of public interest. Rather, plaintiff's business was entirely personal. The First Amendment does not protect the recording of such a visit.

Finally, a restriction on the recording of school business activities in the Administration Office leaves ample alternative channels for communication, including face-to-face meetings, telephone conversations, email communications, School Committee meetings, and other public fora. Plaintiff's recording was not protected under the First Amendment and, therefore, could be reasonably restricted by defendants.

**B.    Even if Plaintiff's Alleged Right to Record Was Protected, Defendants Did Not Deprive Plaintiff of Such Right.**

To recover under Section 1983, a plaintiff must show that defendant's conduct deprived him of rights, privileges or immunities protected under the Constitution or

---

[22] Recording, at 06:48.

federal law. 42 U.S.C. § 1983; <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 559 (1st Cir. 1989).[23] To make this showing, there must have been (1) an actual deprivation of a federally-protected right; and (2) a causal connection between defendant's conduct and such deprivation. See <u>Maldonado Santiago v. Velazquez Garcia</u>, 821 F.2d 822, 831 (1st Cir. 1987) ("Section 1983 imposes a causation requirement similar to that of ordinary tort law.") Establishment of a causal connection requires proof that each defendant's *own actions* deprived plaintiff of protected rights. <u>Gutierrez-Rodriguez</u>, at 559. See <u>Rogan v. Menino</u>, 175 F.3d 75, 77 (1st Cir. 1999) ("It is axiomatic that the liability of persons sued in their individual capacities under Section 1983 must be gauged in terms of their own actions.")

Plaintiff cannot show a deprivation of his right to record by Ms. Delisi, Superintendent Lummis or Ms. Eason. Although he was twice asked not to, Mr. Berge successfully recorded his visit to the GPS Administration Office on March 3, 2022. No defendant put a hand over the camera. No defendant directed plaintiff to leave the building. Indeed, no defendant took any steps or measures whatsoever to disrupt or interfere with the recording. When Mr. Berge declined their requests to stop recording, Ms. Delisi and Superintendent Lummis (the only named defendants

---

[23] The First Circuit may affirm the decision below on any ground appearing in the record, including one the District Court did not rely on, <u>Thant v. Karyopharm Therapeutics Inc.</u>, 43 F.4th 214, 222 (1st Cir. 2022); or one not raised below. <u>United States v. George</u>, 886 F.3d 31, 39 (1st Cir. 2018).

present at the time) withdrew to another part of the office to avoid being recorded. (AA022, ¶ 13). Their right to do so – *i.e.*, their right to decline to be recorded – was itself protected under the First Amendment.[24] See Wooley v. Maynard, 430 U.S. 707, 714 (1977) ("The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'") (quoting Board of Educ. v. Barnette, 319 U.S. 624, 637 (1943)). Because defendants did not deprive plaintiff of a right to record, Mr. Berge fails to state a claim under the First Amendment for the violation of such right.

Nor did plaintiff plead sufficient facts to show a causal connection between defendants' alleged acts and a constitutional violation. On March 3, 2022, Mr. Berge received a letter from the GPS H.R. Director, defendant, Roberta A. Eason, advising him that the recording he made was prohibited under the Massachusetts Wiretap Statute, and demanding he remove it from his Facebook account "to prevent the pursuit of legal action in this matter." (AA016). Plaintiff alleged, upon "information and belief," that defendants, Ms. Delisi, Superintendent Lummis and Ms. Eason, "jointly decided to draft and send the letter …" and approved of it being sent "for the specific purpose of silencing Mr. Berge's speech and removing content from the

---

[24] Under no interpretation of the First Amendment should defendants' choice to exit plaintiff's video stage give rise to a cause of action under Section 1983.

internet that they found personally embarrassing or unflattering." (AA024, ¶¶ 23 – 25).

Even if allegations based on "information and belief" can nudge a claim over the line from possible to plausible,[25] plaintiff's allegations regarding the conduct of Ms. Delisi, Superintendent Lummis and Ms. Eason fail to show a causal connection between defendants' individual actions and the deprivation of plaintiff's right to record. Ms. Delisi and Superintendent Lummis "protested" plaintiff's recording, "retreated" to a private office to avoid being recorded, and joined in a subsequent letter (signed by Ms. Eason) requesting plaintiff to remove the recording from his Facebook account. These limited "facts" are insufficient to state a First Amendment claim based on defendants' violation of plaintiff's right to record government officials.

Admittedly, under the First Amendment, an injury may occur if government deters an individual from exercising his expressive rights. In other words, a plaintiff may show a First Amendment violation if his rights to free speech were chilled. See Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989) (to show deprivation of First Amendment rights, plaintiff "must allege that his speech was in fact chilled or intimidated by [government actions]"). But "[w]here a chilling effect is speculative,

---

[25] See Douglas v. Hirshon, 63 F.4th 49, 60 (1st Cir. 2023) (district court did not err in concluding that allegations in complaint made on "information and belief" were insufficient to state a plausible claim of conspiracy).

indirect or too remote, finding an abridgement of First Amendment rights is unfounded." Id. (citing United States v. Harriss, 347 U.S. 612, 626 (1954)). See Laird v. Tatum, 408 U.S. 1, 13-14 (1972) (allegations of "subjective 'chill'" cannot satisfy injury in fact requirement). As plaintiff expressly admits, "his right to record was not chilled" by defendants, as he did, in fact, record his visit to the GPS Administration Office. (Plaintiff's Appellate Brief, at 22).

## IV.    Defendants Did Not Deprive Plaintiff of a First Amendment Right to Publish a Recording on Social Media.

If, as plaintiff insists, protection of his right to record his visit to the GPS Administration Office is a "necessary predicate" to his claim for a right to publish such recording on social media (Plaintiff's Appellate Brief, at 22), the District Court properly dismissed his Verified First Amended Complaint. As set forth above, plaintiff's right to record his visit to the GPS Administration Office was *not* protected by the First Amendment. Nor was his right to publish such recording.

### A.    Plaintiff's Alleged Right to Publish a Recording on Social Media Was Not Protected Under the First Amendment.

In Bartnicki v. Vopper, 532 U.S. 514 (2001), the United States Supreme Court extended constitutional protection to journalists and other publishers for the dissemination of information obtained by illegal means. There, the Court upheld the right of a radio host to broadcast an illegally intercepted and recorded phone conversation between two people involved in a labor dispute between a public school

district and a teachers' union. Id., at 525. The First Amendment, ruled the Court, protects such publication provided (1) the publisher played no part in the illegal interception; (2) the publisher lawfully acquired the information; and (3) the information is on "a matter of public concern." Id., at 534. See Jean v. Massachusetts State Police, 492 F.3d 24, 33 (1st Cir. 2007) (upholding right to post audio/video recording of arrest and warrantless search on website that plaintiff "had reason to know" had been illegally recorded by third person).

Despite the fact that plaintiff's recording was not protected by the First Amendment and may have, in fact, violated the First Amendment rights of Ms. Delisi and Superintendent Lummis, defendants do not take the position that plaintiff's recording was criminal. See E. Ugland & C. Mazzeo, Hacks, Leaks, and Data Dumps: The Right to Publish Illegally Acquired Information Twenty Years After Bartnicki v. Vopper, 96 Wash. L. Rev. 139, 156 (March 2021) (after Bartnicki, it remains uncertain "what constitutes unlawful acquisition of information …." ) At the same time, defendants do not condone plaintiff's publication of a recording taken in a location where such recordings are not permitted. Superintendent Lummis politely asked Mr. Berge to turn off his camera; plaintiff flatly refused.[26] Nor was Mr. Berge wholly innocent in intercepting the information – on the contrary, he was the producer, director, cameraman and protagonist of the posted recording. But, as

---

[26] Recording, at 02:33 – 02:42.

set forth above, the saga of plaintiff's quest for five Middle School theater tickets is not information on a matter of "public concern." Thus, plaintiff's publication of the recording enjoys no First Amendment protection.

Matters of public concern are "matter[s] of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). Whether speech is protected raises a question of law to be determined by the "content, form, and context of a given statement, as revealed by the whole record." Id., at 147-148 & n.7 (questionnaire circulated to coworkers soliciting views on office transfer policy, office morale and confidence in supervisors held not speech on matters of public concern). See Lane v. Franks, 573 U.S. 228, 241 (2014) (speech involves matters of public concern when "it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.") (quoting Snyder v. Phelps, 562 U.S. 443, 453 (2011)).

Speech regarding personal issues and concerns is not so protected. See Rosado-Quinones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008) (police officer's complaint alleging harassment by fellow employees and delay in rearmament held not on matters of public concern); Meaney v. Dever, 326 F.3d 283, 289 (1st Cir. 2003) (personal protest in blowing horn to irritate mayor after union picketing event held not a matter of public concern); Allinova v. Worcester Sch. Comm., 994 F.2d 905, 914 (1st Cir. 1993) (posting letters of reprimand from employer in attempt to resolve

disciplinary problem concerned "purely personal issue" and not matter of public concern); Smith v. Fruin, 28 F.3d 646, 651-52 (7th Cir. 1994) (even if speech concerns a subject of public interest but its expression addresses only the personal effect upon the speaker, it is not speech on a matter of public concern as a matter of law).

Here, plaintiff described his issue as a "ticket snafu,"[27] "kind of an unpleasant situation" and "a very small situation."[28] Specifically: "I'm so in the dog house with everyone because I didn't get these tickets for opening night."[29] This is not the stuff of political, social or other concerns to the community. As revealed by the "whole record," plaintiff's Facebook posting regarding his effort to score tickets to his daughter's sold-out Middle School play was not protected under the First Amendment.

**B.    Even if Plaintiff's Alleged Right to Publish a Recording on Social Media Was Protected, Defendants Did Not Deprive Plaintiff of Such Right.**

Again, recovery under Section 1983 requires a showing that plaintiff was deprived of a federally-protected right and a causal connection between defendants' conduct and such deprivation. Maldonado Santiago, 821 F.2d at 831. To recover for

---

[27] Recording, at 00:13.

[28] Id., at 03:42 – 03:46.

[29] Id., at 05:48.

First Amendment retaliation under 42 U.S.C. § 1983, plaintiff must show that (1) he engaged in constitutionally protected activity; (2) he was subjected to an adverse action by defendants; and (3) the protected activity was a substantial or motivating factor in defendants' adverse action. D.B., *ex rel.* Elizabeth B. v. Esposito, 675 F.3d 26, 42 (1st Cir. 2012); Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir. 2020). If plaintiff makes such a showing, defendants may still avoid liability by showing they would have taken the same action even in the absence of plaintiff's protected activity. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

To be adverse, defendants' action must be more than *de minimis*. See Camona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006) (delay in providing accommodations to disabled person which results in mere inconvenience rather than significant injury or harm does not amount to adverse action); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (plaintiff must show that "defendant's conduct resulted in something more than a 'de minimis inconvenience' to her exercise of First Amendment rights"). Instead, it must be "of a kind that would deter persons of 'ordinary firmness' from exercising their constitutional rights in the future." Starr v. Dube, 334 Fed. Appx. 341, 342 (1st Cir. 2009); Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001). While the standard is objective, plaintiff's actual response to defendant's conduct is relevant to the

determination of whether a person of "ordinary firmness" would be deterred in exercising his First Amendment rights. Constantine, 411 F.3d at 500; Starr v. Moore, 849 F. Supp. 2d 205, 209 (D. N.H. 2012). See Osediacz v. City of Cranston, 414 F.3d 136, 142 (1st Cir. 2005) ("[I]n order to have standing, plaintiff must be within the class of persons potentially chilled.") (citing Laird, 408 U.S. at 12-13); Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003) ("how plaintiff acted might be evidence of what a reasonable person would have done.")

As set forth above, plaintiff failed to allege sufficient facts to show that he engaged in constitutionally protected activity, either by recording his interactions with school administrators on March 3, 2022, or by subsequently posting his private recording on Facebook. Therefore, plaintiff cannot satisfy the first element of a retaliation claim.

Nor can plaintiff show that he was subjected to an adverse action. The letter sent to Mr. Berge (and only Mr. Berge) on Friday, March 3, 2022, advised plaintiff that it was unlawful to record conversations without the other participant's agreement, and "Ms. Delisi unambiguously told you that she was not consenting to being recorded." (AA016). Ms. Eason accordingly demanded that plaintiff "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal action in this matter." Plaintiff did not comply with Ms. Eason's demand. Nor did defendants "pursue" legal action.

Quite the opposite, plaintiff filed this action four days later on Monday, March 7, 2022. (AA163). On March 11, 2022, district counsel for GPS withdrew the letter and, shortly thereafter, confirmed such withdrawal in writing. (AA036). In the letter of withdrawal, district counsel confirmed that GPS would not be taking legal action against Mr. Berge pursuant to the Massachusetts Wiretap Statute.

The letter of March 3, 2022 was no more than a *de minimis* inconvenience to plaintiff's exercise of his First Amendment "rights." It was not an adverse action that would deter a person of "ordinary firmness" from exercising his constitutional rights in the future, especially in light of its prompt withdrawal. Indeed, plaintiff (it appears) did not even take the letter seriously. His speech was not "in fact" chilled or intimidated by defendants' actions. Sullivan, 888 F.2d at 4. Mr. Berge did not remove the post but instead promptly doubled down by filing this action the following Monday. In his Verified First Amended Complaint, plaintiff explains, "[a]ny reasonable person would know" that he (Mr. Berge) did not violate the Wiretap Statute, and "[a]ny level of review of the law would inform the average person that recording a conversation with the knowledge of all participants does not violate [the Wiretap Statute]." (AA023, ¶ 20). Plaintiff's own reaction demonstrates that the March 3, 2022 letter would not deter a person of "ordinary firmness" from exercising his constitutional rights. Plaintiff bears the burden "of put[ting] adequate facts in the record from which a court reasonably could conclude that [he] was

among those whose speech was potentially chilled." <u>Osediacz</u>, 414 F.3d at 142. Mr. Berge failed to meet that burden here. His First Amendment retaliation claim was properly dismissed.

## V.    The Individual Defendants Are Entitled to Qualified Immunity.

The District Court ruled that plaintiff failed to meet his burden of showing the individual defendants violated any clearly-established First Amendment right to publish his recording and, therefore, granted them qualified immunity. (ADD12). This ruling should be affirmed. To determine if a government official enjoys qualified immunity, a court must decide "whether a reasonable official [in the defendant's position] could have believed his actions were lawful in light of clearly established law." <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87, 91 (1st Cir. 1994). The doctrine of qualified immunity "requires a constitutional right to be clearly established so that public officials are on notice that this conduct is in violation of that right." <u>Frazier v. Bailey</u>, 957 F.2d 920, 930 (1st Cir. 1992). The focus is not on the merits of the underlying claim but, instead, on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and the information the official possessed at the time of the allegedly unlawful conduct. <u>Lowinger v. Broderick</u>, 50 F.3d 61, 65 (1st Cir. 1995); <u>Febus-Rodriguez</u>, at 91. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly

violate the law." Lowinger, 50 F.3d at 65; Hunter v. Bryant, 502 U.S. 224, 229 (1991). See Savard v. Rhode Island, 338 F.3d 23, 28 (1st Cir. 2003) ("The bottom line is that the qualified immunity defense prevails unless the unlawfulness of the challenged conduct is 'apparent.'")

The framework for analyzing qualified immunity consists of a two-part inquiry: (1) whether plaintiff's allegations, if true, establish a constitutional violation; and (2) whether the constitutional right at issue was so clearly established at the time of the alleged violation that a reasonable official in defendant's position "should have known how they applied to the situation at hand." Belsito Communications, Inc. v. Decker, 845 F.3d 13, 23 (1st Cir. 2016). The second part of this inquiry involves two related aspects:

> [N]amely: (1) the relative clarity of the governing law to a reasonable official on the date of the alleged wrong and (2) whether the specific characteristics of the situation confronted by the official would have made it clear to a reasonable official how the governing law applied in the given situation.

Lawless v. Town of Freetown, 63 F.4th 61, 67 (1st Cir. 2023) (citing Punsky v. City of Portland, 54 F.4th 62, 66 (1st Cir. 2022)).

"A legal principle can be 'clearly established' without factually identical precedent, although the existing case law must have placed the specific constitutional … question 'beyond debate.'" Pagan-Gonzalez v. Moreno, 919 F.3d 582, 598 (1st Cir. 2019) (quoting Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)). A right is "clearly established" if "the state of the law at the time of the alleged

violation gave the defendant fair warning that his *particular conduct* was unconstitutional." <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 269 (1st Cir. 2009) (citation omitted) (emphasis added). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Mullenix</u>, 136 S.Ct. at 308 (internal citations and quotations omitted).

In the context of First Amendment retaliation claims, the twin aspects of the "clearly established" inquiry – *i.e.*, weighing the "relative clarity of the governing law" to a reasonable official and the "specific characteristics of the situation" confronting such official – are frequently blurred. This is due, in part, to the fact that the public concern analysis, like the <u>Pickering</u> balancing test,[30] "is highly fact specific." <u>Davignon v. Hodgson</u>, 524 F.3d 91, 104 (1st Cir. 2008). See <u>Farhat v. Jopke</u>, 370 F.3d 580, 590 (6th Cir. 2004) ("The difficulty of determining whether speech is of 'public concern' is compounded by the fact that these cases tend, as one might expect, to be highly fact-specific.") As this Court recognized in <u>Curran v. Cousins</u>, 509 F.3d 36 (1st Cir. 2007), whether speech "involves a 'matter of public concern' is a case-specific, fact-dependent inquiry." <u>Id.</u>, at 46. Thus, whether a plaintiff spoke on a matter of public concern can "rarely be considered 'clearly-established' for purposes of the *Harlow* qualified immunity standard." <u>Ballinger v.</u>

---

[30] <u>Pickering v. Board of Educ. of Township High Sch. Dist. 205</u>, 391 U.S. 563, 568 (1968).

Town of Kingston, 2019 WL 6726689, at *17 (D. Mass. Dec. 10, 2019) (quoting

McGunigle v. City of Quincy, 132 F. Supp. 3d 155, 176 (D. Mass. 2015)).

Plaintiff's allegations, even if true, do not establish viable retaliation claims

under the First Amendment. But even if they do, the scope of plaintiff's rights (if

any) to record the business activities of school officials in the GPS Administration

Office on the subject of opening night tickets to his daughter's school play and to

later post such a recording on Facebook was not clearly established at the time of

defendants' conduct. By asking plaintiff to "turn off" the recording and later

instructing plaintiff to remove the posted recording from Facebook, no reasonable

official in the position of a GPS administrator would have understood that he or she

was violating plaintiff's constitutional rights. Glik, Gericke and Project Veritas all

addressed the right to record in the context of videos (open and secret) taken of police

officers performing law enforcement duties in public fora. This Court has not yet

stated, however, under what circumstances the rights to record and publish extend

to non-law enforcement personnel (such as school administrators) performing

official duties in a limited or non-public forum where reasonable, viewpoint-neutral

restrictions on speech are routinely permitted. Nor has this Court addressed the

constitutional significance of a government request (such as the one made here) to

turn off the recording, or the level of protection afforded to a recording made for

personal, non-public purposes.

Where defendants raise the defense of qualified immunity, plaintiff bears the burden of showing the defense does not apply. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). This burden requires plaintiff to spotlight "controlling authority" or "a robust consensus of cases of persuasive authority" (if there is one) that forbade defendants from acting as they did. Belsito, 845 F.3d at 23. Plaintiff made no such showing here. Plaintiff's Verified First Amended Complaint was properly dismissed as against the individual defendants.

## VI. Plaintiff Failed to State a Claim of Municipal Liability Against the School Committee of Gloucester.

This Court has made it "abundantly clear" that the failure to brief an argument constitutes a waiver for purposes of an appeal. Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003). See Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 25 (1st Cir. 2018) (argument not raised in opening brief deemed waived); United States v. Bongiorno, 106 F.3d 1027, 1034 (1st Cir. 1997) (arguments raised in only vague and cryptic terms deemed waived); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("We see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")

In his Verified First Amended Complaint, plaintiff sued defendant, School Committee of Gloucester, under Section 1983 for violation of his First Amendment right to publish a recording. (AA025-26). The District Court dismissed plaintiff's

40

First Amendment claims as against all defendants, including the School Committee. (ADD15). Plaintiff's Appellate Brief contains no developed argument that the District Court erred in rejecting his claims of municipal liability against the School Committee. Therefore, such claims are waived.

Even if plaintiff did not waive his claims of municipal liability, he cannot recover against the School Committee under Section 1983. Municipal entities cannot be held liable under Section 1983 on a theory of *respondeat superior*. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 665 (1978). In order to prevail on a Section 1983 claim against a municipality, plaintiff must demonstrate that his harm was caused by a constitutional violation and that the municipality was responsible for such violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). Furthermore, if no municipal actor violated any protected rights of the plaintiff, he cannot prevail on a Section 1983 claim against the municipality. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Pittsley v. Warish, 927 F.2d 3, 9 n.4 (1st Cir. 1991).

A municipality may, nevertheless, be held liable under Section 1983 if it deprives a person of a constitutional right through "a policy statement, ordinance, regulation, or decision officially adopted or promulgated." Smith v. City of Boston, 413 Mass. 607, 610 (1992) (citing Monell, 436 U.S. at 690). However, out of concern that municipal liability based on fault might collapse into de facto *respondeat*

*superior* liability, the Supreme Court "set a very high bar for assessing municipal liability under Monell." Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). In the absence of a formal government policy, liability may only be imposed if the plaintiff's rights were violated by the existence of a widespread practice that, although not authorized by law or express government policy, was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)). Moreover, a plaintiff must show "a direct link between the municipality's policy and the constitutional violation." Bowen v. City of Manchester, 966 F.2d 13, 18 (1st Cir. 1992).

Here, plaintiff made no showing that the individual defendants committed an underlying constitutional violation. For that reason alone, plaintiff's claims against the School Committee were properly dismissed. Further, plaintiff alleges no unconstitutional custom, policy or practice on the part of the School Committee, nor does he allege sufficient facts to show that he was harmed by the School Committee's enforcement of or adherence to an unconstitutional custom, policy or practice. Absent such allegations, the School Committee was entitled to the dismissal of plaintiff's Section 1983 claims against it. The decision below should be affirmed.

## VII.  Plaintiff's Demands for Declaratory Judgment Are Moot.

Based on the language of the letter to plaintiff's counsel dated March 22, 2022, the District Court concluded it was "clear" that all defendants had withdrawn any alleged threat of legal action based on the publication of Mr. Berge's recording. (ADD13). Absent the presence of a legal threat, no live controversy remained thereby rendering plaintiff's demands for declaratory relief moot. (ADD14). "The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" ACLU of Mass. v. United States Conf. of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (quoting Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003)). "If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." Mangual, 317 F.3d at 60. For declaratory relief to withstand a mootness challenge, the facts alleged must show "a substantial controversy … of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Preiser v. Newkirk, 422 U.S. 395, 402 (1975). Here, where defendants withdrew the demand that plaintiff remove his recording from Facebook (AA036), plaintiff's "need" for declaratory relief was neither immediate nor real. Stated another way, declaratory relief in the form of an order that defendants' past conduct was somehow improper under the Massachusetts Wiretap Statute, FERPA or the First Amendment would be merely advisory.

The District Court also rejected plaintiff's reliance upon the "voluntary cessation" exception to the mootness doctrine articulated in <u>Boston Bit Labs, Inc. v. Baker</u>, 11 F.4th 3, 9-10 (1st Cir. 2021). Under this doctrine, a case is not necessarily moot "when a defendant voluntar[ily] ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated" after the suit's dismissal. <u>Town of Portsmouth, R.I. v. Lewis</u>, 813 F.3d 54, 59 (1st Cir. 2016). The doctrine exists "to stop a scheming defendant from trying to immunize itself from suit indefinitely …." <u>Boston Bit Labs</u>, 11 F.4th at 10 (quotation and citation omitted). See <u>In re Financial Oversight & Mgmt. Bd.</u>, 16 F.4th 954, 962 (1st Cir. 2021) (concerns regarding manipulation to evade judicial review underlie voluntary cessation doctrine).

Withdrawal of defendants' demand that plaintiff remove the posted recording from his Facebook account was not the stuff of judicial avoidance. Plaintiff did not cease publication of the recording, yet defendants agreed to take no further action. Plaintiff (through counsel) expressly acknowledged this agreement. (ADD14). Under such circumstances, the District Court found "little chance" that defendants would send a subsequent letter to "reignite this controversy." (ADD15).

Further, as set forth above, plaintiff's recording and posting were not protected activities under the First Amendment. Further, even if they were constitutionally protected, the individual defendants are entitled to qualified

immunity from any claim under 42 U.S.C. § 1983 and plaintiff failed to adequately plead a claim of municipal liability against the School Committee. Absent viable civil rights claims, plaintiff's requests for a judicial declaration that his past conduct was permissible under the Massachusetts Wiretap Statute, FERPA and/or the First Amendment sought no more than advisory relief. Such relief was appropriately denied.

## VIII. The District Court Properly Denied Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction.

### A. Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction is Moot.

In support of his Motion for a Temporary Restraining Order and a Preliminary Injunction, plaintiff attached as "Exhibit 1" a copy of the March 3, 2022 letter in which the H.R. Director demanded plaintiff remove the recording of GPS personnel from his Facebook account. (AA019). In his Motion, plaintiff described the recording as protected speech and asked the District Court to enter an Order "preventing [defendants] from threatening or attempting to coerce Mr. Berge into removing his First Amendment protected speech." (AA008, AA014). Yet, as plaintiff knows, defendants subsequently withdrew the letter, expressly advising Mr. Berge that they "would not be taking any legal action against [him] …." (AA036). Thus, as the District Court correctly concluded, there was no longer any conduct on the part of defendants for the Court to enjoin. "[W]ithdrawal of the demand letter

resulted in the removal of any live controversy …" (ADD15), thereby rendering plaintiff's request for injunctive relief moot.

In Harris v. University of Mass. Lowell, 43 F.4th 187 (1st Cir. 2022), this Court upheld the denial of an injunction to two students who challenged mandatory vaccination policies at their respective colleges. Because one student had since transferred and the other had graduated, the Court held their requests for injunctive relief were "inescapably moot." Id., at 192. "Where, as here, 'challenged measures [no longer] adversely affect[] any plaintiff's primary conduct,' injunctive relief is unavailable and the attendant claims become moot." Id. (citing Arizonians for Official English v. Arizona, 520 U.S. 43, 67 (1997)).

Normally, courts may not enjoin conduct if "(1) it can be said with assurance that there is  no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the allege violation." Metro-Goldwyn Mayer, Inc. v. 007 Safety Prods., Inc., 183 F.3d 10, 15 (1st Cir. 1999) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (internal quotation and citations omitted)). See Goodwin v. C.N.J., Inc., 436 F.3d 44, 49 (1st Cir. 2006) ("[A] federal court may not grant injunctive relief when … intervening events have eliminated any reasonable anticipation that the aggrieved party will, in the future, be faced with a recurrence of the alleged harm.") (citations omitted).

Here, intervening events eliminated any purported need to enjoin defendants' conduct. No alleged "threats" hung over plaintiff's head and, over one year after plaintiff's Facebook post, no legal action has been brought against him. Plaintiff's unfounded suspicion that defendants may act in the future does not justify the "extraordinary" remedy of an injunction. "It is not enough for a plaintiff to assert that she 'could be' subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant—the prospect of harm must have an 'immediacy and reality.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) (internal citations omitted). Plaintiff's Motion for a TRO and a PI was properly denied.[31]

## B. Plaintiff Failed to Meet the Preliminary Injunction Standard.

To obtain a preliminary injunction, plaintiff bears the burden of demonstrating "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest."

---

[31] If plaintiff's Motion for a TRO and a PI was not moot, neither was defendants' Motion to Extend Time to File Opposition to Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction. (AA145-46). As grounds for their Motion to Extend Time, defendants argued that their failure to file an Opposition to plaintiff's Motion for a TRO and PI within 14 days after service of said Motion was due to excusable neglect – namely, defendants reasonably understood plaintiff was no longer seeking such injunctive relief. (AA149-51). Thus, good cause existed to grant defendants' extension. Fed. R. Civ. P. 6(b)(1)(B). See McIntosh v. Antonino, 71 F.3d 29, 38 (1st Cir. 1995) ("The administration of filing deadlines is a matter of case management that comes within the district court's discretion.")

NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020). For the same reasons the District Court allowed (and this Court should affirm) defendants' Motion to Dismiss, the denial of plaintiff's Motion for a TRO and a PI should likewise be affirmed. See Stevens v. St. Tammany Parish Government, 17 F.4th 563, 576 (6th Cir. 2021) ("Since plaintiffs' claims were properly dismissed, they cannot show a likelihood of success on the merits."); Ho v. City of Boynton Beach, 2023 WL 2293517, at *3 (11th Cir. March 1, 2023) (where plaintiffs fail to allege sufficient facts to defeat defendants' Rule 12(b)(6) motion, "it is unlikely that they would prevail on the merits"); ZigZag, LLC v. Kerry, 2015 WL 1061503, at *6 (D. Mass. Mar. 10, 2015) ("In light of this Court's decision to ALLOW Defendants' motion to dismiss, Plaintiffs cannot demonstrate a likelihood of success on the merits.") If plaintiff cannot show a likelihood of success on the merits, this Court need not address the other requirements for a preliminary injunction. See New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) ("[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.") For the reasons set forth above, plaintiff cannot demonstrate a substantial likelihood of success on the merits. Therefore, the District Court did not abuse its discretion in denying plaintiff's Motion for a TRO and a PI.

Even if plaintiff demonstrated a substantial likelihood of success on the merits (which defendants deny), he failed to show a substantial risk of irreparable harm.

"[A]t least some positive showing of irreparable harm must still be made." Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 43 (1st Cir. 2010). Notably, the assertion of First Amendment rights "does not automatically require a finding of irreparable injury." Rushia v. Town of Ashburnham, Mass., 701 F.2d 7, 10 (1st Cir. 1983). See City of Los Angeles v. Lyons, 461 U.S. 95, 112-13 (1983) (constitutional harm is not necessarily irreparable harm). Moreover, a "finding of irreparable harm must be 'grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.'" City of Lowell v. Enel North America, Inc., 705 F. Supp. 2d 116, 119 (D. Mass. 2010) (quoting Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)). "The threat must be real and immediate." Id. (motion for preliminary injunction denied absent immediate threat of irreparable harm).

In his Motion for a TRO and a PI, plaintiff baldly concluded he had shown a "probability of irreparable harm" merely "[b]ecause there is a strong likelihood of success on the merits of [his] claims …." (AA012). As set forth above, plaintiff's success on the merits was far from "likely"; on the contrary, it was doubtful. More importantly, any future harm to plaintiff was, at best, speculative and remote. Because plaintiff failed to show a significant risk of irreparable harm, his Motion was properly denied.

Finally, where plaintiff's speech was not silenced, and where no threat of prosecution or civil proceedings hung over his head, plaintiff failed to show that the balance of hardships weighed in his favor and/or that his interests outweighed those of defendants. School officials have a legitimate governmental interest in conducting the day-to-day operations of Gloucester Public Schools (portions of which are confidential) without unnecessary disruption or interference. Further, school officials do not lose all privacy interests by virtue of their status as public employees. Certainly, in the confines of the secure Administration Office – where the public admittedly has a right of access to conduct school business – school officials are entitled to some privacy while performing their jobs. See <u>Project Veritas</u>, 982 F.3d at 838 (under certain circumstances, recording of police officers working in public could threaten officers' privacy interests). Because plaintiff failed to make a "clear showing" that he was entitled to the "extraordinary and drastic" relief of a preliminary injunction, his Motion for a TRO and a PI was properly denied.

## <u>CONCLUSION</u>

For the reasons set forth above, the defendants, the School Committee of Gloucester, Stephanie Delisi, Superintendent Ben Lummis and Roberta A. Eason, respectfully request that this Court affirm the decision of the District Court in all respects, together with such other relief as this Court deems appropriate and just.

Respectfully submitted,

/s/ John J. Davis

JOHN J. DAVIS, ESQ.
First Circuit No. 40366
PIERCE DAVIS & PERRITANO LLP
10 Post Office Square – Suite 1100N
Boston, Massachusetts 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: April 27, 2023

## **CERTIFICATE OF COMPLIANCE UNDER FED. R. APP. P. 32(a)(7)**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because: (1) this brief contains 12,012 words excluding the parts of the brief exempted by Fed. R. App. 32(f); and (2) this brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14 point proportionally spaced typeface using Times New Roman font.

/s/ John J. Davis
JOHN J. DAVIS

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th of April, 2023, the foregoing Defendants -

Appellees' Brief was filed electronically with the United States Court of Appeals for

the First Circuit by using the CM/ECF system.  I certify that the following parties or

their counsel of record, if registered as ECF filers, will be served by the CM/ECF

system upon:

> Marc J. Randazza
> Jay M. Wolman
> Robert J. Morris II
> RANDAZZA LEGAL GROUP, LLC
> 30 Western Avenue
> Gloucester, MA 01930
> (888) 887-1776

*/s/ John J. Davis*

JOHN J. DAVIS