No. 22-1954

*In the*

# UNITED STATES COURT OF APPEALS
*for the*
# FIRST CIRCUIT

INGE BERGE

*Plaintiff-Appellant,*

v.

SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, IN HIS PERSONAL CAPACITY; ROBERTA A. EASON, IN HER PERSONAL CAPACITY; AND STEPHANIE DELISI, IN HER PERSONAL CAPACITY

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the District of Massachusetts
No. 1:22-cv-10346
The Honorable Angel Kelley*

## APPELLANT'S REPLY BRIEF

MARC J. RANDAZZA
JAY M. WOLMAN
ROBERT J. MORRIS II
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
ecf@randazza.com

MARK TRAMMELL
JOSHUA DIXON
ERIC SELL
CENTER FOR AMERICAN LIBERTY
1311 South Main Street, Ste. 302
Mount Airy, MD 21771
Tel: (703) 687-6200
MTrammell@libertyCenter.org

# TABLE OF CONTENTS

**ARGUMENT** ................................................................................ **1**

1.0 THE COURT SHOULD IGNORE THE STRAW MAN ARGUMENT OVER BERGE'S PURPORTED WITHDRAWAL OF HIS CLAIM HE HAD THE RIGHT TO RECORD... 1

2.0 APPELLEES INFRINGED UPON BERGE'S RIGHT TO PUBLISH. ........................ 10

3.0 APPELLEES ARE NOT IMMUNE FROM SUIT. ................................................. 12

4.0 BERGE'S CLAIMS ARE NOT MOOT. .............................................................. 14

5.0 A PRELIMINARY INJUNCTION SHOULD ISSUE. ........................................... 16

**CONCLUSION** ......................................................................... **19**

# TABLE OF AUTHORITIES

## CASES

*Alinovi v. Worcester Sch. Comm.*,
  777 F.2d 776 (1st Cir. 1985) ................................................................. 9

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ............................................................................ 13

*Ashcroft v. al-Kidd*,
  131 S. Ct. 2074 (2011) ........................................................................ 13

*Asociación de Educación Privada de Puerto Rico, Inc. v. García-Padilla*,
  490 F.3d 1 (1st Cir. 2007) ................................................................... 18

*Ballinger v. Town of Kingston*,
  2019 U.S. Dist. LEXIS 213122 (D. Mass. Dec. 10, 2019) ................................. 14

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) .......................................................... 1, 2, 12, 13

*Blasko v. Doerpholz*,
  2016 U.S. Dist. LEXIS 185495 (D. Mass. Aug. 22, 2016) ................................. 8

*Boston Bit Labs, Inc. v. Baker*,
  11 F.4th 3 (1st Cir. 2021) .......................................................... 15, 16

*Calvary Chapel of Bangor v. Mills*,
  52 F.4th 40 (1st Cir. 2022) ................................................................ 16

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985) ............................................................................ 5

*Elrod v. Burns*,
  427 U.S. 347 (1976) ...................................................................... 17, 18

*Gericke v. Begin*,
  753 F.3d 1 (1st Cir. 2014) ................................................ 3, 5, 7, 8, 13

*Glik v. Cuniffe*,
  655 F.3d 78 (1st Cir. 2011) ........................................ 2, 4, 5, 7, 8, 13

*Howcroft v. City of Peabody*,
  51 Mass. App. Ct. 573 (2001) ................................................................ 8

*Iacobucci v. Boulter*,
  193 F.3d 14 (1st Cir. 1999) ............................................................... 2, 4

*Jackim v. Sam's East, Inc.*,
  378 Fed. Appx. 556 (6th Cir. 2010) ...................................................... 9

*Kassel v. Gannett Co.*,
  875 F.2d 935 (1st Cir. 1989) ............................................................... 19

*Leathers v. Medlock*,
  499 U.S. 439 (1991) ............................................................................ 7

*Lu v. Hulme,*
  2013 U.S. Dist. LEXIS 46888 (D. Mass. Mar. 30, 2013) .................... 5

*Maceira v. Pagan*,
  649 F.2d 8 (1st Cir. 1981) .................................................................. 18

*Meaney v. Dever*,
  326 F.3d 283 (1st Cir. 2003) ................................................................ 8

*Monell v. New York City Dep't of Soc. Servs.,*
  436 U.S. 658 (1978) ............................................................................ 3

*Nat'l Amusements v. Town of Dedham*,
  43 F.3d 731 (1st Cir. 1995) ................................................................. 7

*Nelle v. Who Tv, LLC*,
  2017 U.S. Dist. LEXIS 216449 (S.D. Iowa Dec. 20, 2017) ................. 9

*New York Times Co. v. United States*,
  403 U.S. 713 (1971) .................................................................... 12, 13

*O'Connor v. Steeves*,
  994 F.2d 905 (1st Cir. 1993) ................................................................ 9

*Parker v. Gerrish*,
  547 F.3d 1 (1st Cir. 2008) ................................................................... 6

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,*
460 U.S. 37 (1983) .................................................................. 6

*Project Veritas Action Fund v. Rollins,*
982 F.3d 813 (1st Cir. 2020) ............................................ 5, 19

*Public Service Co. v. West Newbury,*
835 F.2d 380 (1st Cir. 1987) ............................................... 18

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ................................................................ 7

*Rosado-Quinones v. Toledo,*
528 F.3d 1 (1st Cir. 2008) ..................................................... 8

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
515 U.S. 819 (1995) ................................................................ 6

*Rushia v. Town of Ashburnham,*
701 F.2d 7 (1983) ................................................................. 18

*Schaeffer v. Sequoyah Trading & Transp.,*
273 F.R.D. 662 (D. Kan. Mar. 21, 2011) ............................. 10

*Scott v. Harris,*
550 U.S. 372 (2007) ................................................................ 6

*Sindicato Puertorriqueño de Trabajadores v. Fortuño,*
699 F.3d 1 (1st Cir. 2012) ................................................... 18

*Smith v. Daily Mail Publ'g Co.,*
433 U.S. 97 (1979) ............................................................... 12

*State v. Vaile,*
2023 Wash. App. LEXIS 921 (May 11, 2023) ....................... 6

*Swans v. City of Lansing,*
65 F. Supp. 2d 625 (W.D. Mich. Nov. 9, 1998) ..................... 6

*Teague v. Quarterman,*
482 F.3d 769 (5th Cir. 2007) ............................................... 11

*United States v. Marquardo*,
   149 F.3d 36 (1st Cir. 1998) .................................................................. 14

**STATUTES**

20 U.S.C. § 1232 ........................................................................... 2, 15, 16

42 U.S.C. § 1983 ................................................................................... 1

G.L. c. 272, § 99 ......................................................................... 2, 15, 16

**ARGUMENT**

This is a case about the government and its officials threatening a citizen with criminal prosecution because he published lawfully-acquired information. Nothing in Appellees' Opposition justifies the District Court's dismissal of Berge's complaint. The order and judgment of dismissal and the order denying the preliminary injuction should be reversed.

### 1.0    The Court Should Ignore the Straw Man Argument Over Berge's Purported Withdrawal of his Claim he Had the Right to Record.

Berge was threatened with prosecution and ordered to remove a video from his Facebook account because he exercised his First Amendment Right to Publish. His Verified Complaint (AA001) and First Amended Verified Complaint (AA021) were brought for retaliation under Section 1983, along with related declaratory relief claims. (AA004, ¶¶ 23-32.) Berge sought to enjoin Appellees from threating or coercing him into removing his First Amendment-protected content. (AA008.)

Counsel for Berge made clear that this is a *right to publish* case, without a separate *claim* over right to record. This does not, however, mean that the right to record is not implicated in the claim, no matter how many times the District Court and Appellees attempt to suggest otherwise. (Opp. at 14–17.) In *Bartnicki v. Vopper,* the Supreme Court made clear that "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need ... of the highest

order." 532 U.S. 514, 523 (2001). Thus, a necessary predicate to making the retaliation claim is that the information was lawfully obtained.[1]

Berge lawfully obtained the video at issue, which was on a matter of the adoption and enforcement of public health regulations and restrictions for a forum made open to the public. Neither the Wiretapping Law nor FERPA barred his recording, despite the Appellees claiming alternately that both applied. And, more importantly, even if they did, those statutes yield to Berge's First Amendment right to record in the first instance. Accordingly, while Berge did not make a claim for *damages* with respect to his right to record being infringed (as his right to record was *not* infringed) the right to record exists nonetheless. The fact that he had the right to record establishes that the video was lawfully obtained. At no time did Berge waive the question of whether the video was lawfully obtained, including the First Amendment basis thereof—the email to counsel does no such thing. The District Court's errors flow from the mistaken assertion that an issue was raised and reversal is proper.

Appellees fail in their attempt to demonstrate that the recording here was not protected by the First Amendment. Instead of showing why *Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999), *Glik v. Cuniffe,* 655 F.3d 78 (1st Cir. 2011), and *Gericke*

---

[1] Appellees claim (Opp. at 17) Berge made this assertion in his Opening Brief without citation, but the Opening Brief cited *Bartnicki* on page 17.

*v. Begin*, 753 F.3d 1 (1st Cir. 2014) do not establish a First Amendment-protected right to record government officials discharging their public duties in spaces open to the public, Appellees merely cite to a law student's note asking whether these cases apply in the context of non-law enforcement public officials.  (Opp. at 17–19.)

Appellees claim they can ban open recording in the GPS Administration Office under intermediate scrutiny.  (Opp. at 20–25.)  Maybe they can.  If they had claimed such a ban exists and stopped Berge from recording, then we might have a separate claim over his right to record.  However, there are multiple problems with Appellees' position—chief among them that *no such ban exists*.[2]  Appellees point to nothing in the record to suggest that there is any policy prohibiting recording that predates (or even post-dates) the events giving rise to this litigation.  There has never been notice of such policy.  The City of Gloucester Legal Department admitted that there was no policy "regarding filiming and/or recording by cell phone within the Gloucester Public Schools Administration Office[.]" (AA143–144.)  There is no legislative history to such a policy.  To even suggest that the public's right to record can be infringed by a non-existent policy is risible.  The only "policy" is an *ultra*

---

[2] Appellees admit as much in Section VI of their Opposition Brief. (Opp. 40–42.)  It is precisely because there is no "custom, policy, or practice on the part of the School Committee" that makes the School Committee immune under *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1978).  They cannot have it both ways— either Berge was not prohibited from recording, making his recording lawful, or their was a regulation, undermining *Monell* immunity.  As they have picked the absence of a policy, they must be held to this choice.

*vires* one propounded by Appellees' counsel in their Opposition Brief. Not even Appellees themselves, in originally threatening Berge, made such a preposterous claim that he violated a non-existent policy. But now, they have the audacity to claim one existed, when they know one did not, and they ask that this Court not only overlook the lack of candor, but that this Court reward it.

Even if such a policy existed, it would violate the First Amendment right to record public officials, in public spaces, in the discharge of their offices. *See Glik*, 655 F.3d at 84–85 ("What is particularly notable about *Iacobucci* is the brevity of the First Amendment discussion, a characteristic found in other circuit opinions that have recognized a right to film government officials or matters of public interest in public space. … This terseness implicitly speaks to the fundamental and virtually self-evident nature of the First Amendment's protections in this area.") This is not about another straw-man—*i.e.*, the imagined fear of recording preschoolers who happen to be in a different part of the same building. In fact, the School Committee itself engages in such recordings. *See* School Committee Policy Manual, Policy ECAF, Security Cameras in Schools and Buses.[3] This is only about what goes on in the administrative offices, where the general public is allowed to enter and engage with public officials. Berge may have been "twice asked" not to record (Opp. at 23),

---

[3] Available at https://drive.google.com/drive/folders/13Il4eX-1o9YQzcldhCGv5Asxtg81iWN2 .

but the mere fact that an official, in a public space, in the discharge of their office, does not wish to be recorded is not a basis for a prohibition, let alone a significant one—if it were, then *Glik* and *Gerricke* would have come out differently as well. Appellees lack any legitimate government interest under *Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020). A government employee's distaste for being recorded is a private interest, not a governmental one. Appellees cite to no cases, nor even student-written law review articles, that suggests the right to record public officials in public spaces in the discharge of their duties is limited when the government employee simply expresses displeasure with being recorded.

Appellees attempt to engage in forum analysis (Opp. at 23–25), but there is no record evidence of the nature of the administrative office. This is a decision on a motion to dismiss, not one for summary judgment, and Appellees cannot point to any reason why a court would make a forum determination at this stage. *Compare Lu v. Hulme*, 2013 U.S. Dist. LEXIS 46888, at *14 n.1 (D. Mass. Mar. 30, 2013) (observing nature of forum would be decided at summary judgment or trial, not on motion to dismiss). But, even if it were a limited or non-public forum, the restriction is neither reasonable nor viewpoint neutral. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 806 (1985).

The ban is not permissible. A restriction "may be permissible if it preserves the purpose of that limited forum," while viewpoint-based restrictions are prohibited.

*Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 830 (1995); *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37, 46 (1983).  A ban on recording does not "preserve the purposes" of the public space of an administrative building, where any citizen can go to meet with school administration officials.  To the contrary, it precludes making a record of what those officials do and how they respond to citizens, which is necessary to ensure an irrefutable account of what occurred.  Thus, courts, including appellate courts in their independent review of the record, will give greater weight to video evidence.  *See Parker v. Gerrish*, 547 F.3d 1, 9–10 (1st Cir. 2008) (*quoting Scott v. Harris*, 550 U.S. 372 (2007)).  It is unfortunate, and too common, that government officials do not act with complete candor.  *See, e.g.*, *Swans v. City of Lansing*, 65 F. Supp. 2d 625, 650 (W.D. Mich. Nov. 9, 1998) ("This was almost a case of 'justice denied' because, but for the video, there would have been no contradictory evidence to the testimony of the Defendants. ... This should cause court observers to wonder how many similar cases went unproved without the awful, but truthful eye of the camera.").  As one court recently noted, "[s]ometimes cops lie. … And sometimes there's video proving that they lied." *State v. Vaile*, 2023 Wash. App. LEXIS 921, at \*46 (May 11, 2023) (quoting Adam Serwer, *Deleting the Right to Record the Police*, The Atlantic (Oct. 6, 2022)).[4]

---

[4] https://www.theatlantic.com/ideas/archive/2022/10/arizona-restrict-video-recording-police-aclu-lawsuit/671650/?utm_source=email&utm_medium=social&utm_campaign=share.

And, as sworn police officers will lie, there is no reason to believe politically-motivated officials, like Appellees, would not, but for video.

And the restriction is viewpoint-based targeting. Under the First Amendment, "targeting engenders strict scrutiny only when regulations (1) single out the press, (2) take aim at a small group of speakers, or (3) discriminate on the basis of the content of protected speech." *Nat'l Amusements v. Town of Dedham*, 43 F.3d 731, 739–740 (1st Cir. 1995) (*citing Leathers v. Medlock*, 499 U.S. 439, 447 (1991)). The ban was enacted and implemented, to the extent it exists at all, only at the moment Berge was recording, for the sole purpose of attempting to have him (and only him) cease his otherwise-protected activity. Viewpoint-based regulations "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015). The fictional, *invented-for-the-brief*, restriction would be neither narrowly tailored nor would it serve any state interest, let alone a compelling one. It only bars Berge from recording the particular officials who personally did not want to be recorded. Thus, the ban cannot survive any level of scrutiny, much less strict scrutiny.

Moreover, Appellees wrongly claim Berge was not recording on a matter of public interest. Though it may have been prompted by his interest in seeing his child's performance, Simon Glik asserted no public interest in recording police and Carla Gericke was recording her own, personal traffic stop. But, that does not mean

there is no public interest.  Berge, like Glik and Gericke, is not "disqualified from First Amendment protection merely because [he] had a personal stake in the controversy." *Blasko v. Doerpholz*, 2016 U.S. Dist. LEXIS 185495, at *31 (D. Mass. Aug. 22, 2016) (*quoting Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 587 (2001)).  For example, someone who supports voting rights legislation may do so to protect their own vote, but that does not make speech on the legislation any less a matter of public concern.  The fundamental nature of the recording was so that the public could be informed as to what the government was doing *vis-a-vis* public education, public performances, and public-health regulations, to "do a story on it." (AA002.)  The dismissive manner in which the government tries to handwave this issue speaks volumes about their respect for the First Amendment.

Cases cited by Appellees to suggest the recording was not a matter of public interest (Opp. at 31–32) are inapposite.  *Rosado-Quinones v. Toledo* involved speech about an internal personnel matter; it did "not implicate the ability of [agency] personnel to carry out their responsibility to the public."  528 F.3d 1, 5 (1st Cir. 2008).  In contrast, Berge's speech was about the school's public health policies, *i.e.* the carriage of their responsibilities, as it applied to all potential attendees—the public—even though he also had a personal interest.  In *Meaney v. Dever*, the Court utilized the standard that "conduct intended to express anger at a supervisor towards whom one bears personal animosity because of family history and/or a prior

personnel decision does not relate to a matter of public concern." 326 F.3d 283, 289 (1st Cir. 2003). Here, in contrast, there was no personal animosity or a personnel decision—it was a communication about a government policy restricting access to a public forum. As to *Alinovi v. Worcester Sch. Comm.*, it was uncontested that the sole interest in the speech was "simply in getting her own disciplinary problem resolved." 777 F.2d 776, 787 (1st Cir. 1985). In contrast, Berge was addressing a fundamental issue of government policy that needed to be repealed. Appellees used the case citation for *O'Connor v. Steeves*, 994 F.2d 905, 914 (1st Cir. 1993), which cites *Alinovi*. In *O'Connor*, public concern *was* found because the "revelations directly implicated a topic of inherent concern to the community – official misconduct by an incumbent elected official." Continuation of a public-health policy after the public-health emergency has passed is an abuse of authority by a government official, rendering Berge's inquiry and speech to be on a mater of public concern. Thus, none of the cases support Appellees.

Nor does the ban leave open "ample alternative channels" – none of the potential alernatives suggested by Appellees (all absent from the record) would afford the same measure of memorialization as the recording in person. Courts routinely find recordings to be the "best evidence" of events. *See, e.g., Jackim v. Sam's East, Inc*., 378 Fed. Appx. 556, 565-566 (6th Cir. 2010); *Nelle v. Who Tv, LLC*, 2017 U.S. Dist. LEXIS 216449, at *8 (S.D. Iowa Dec. 20, 2017); *Schaeffer v.*

*Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D. Kan. Mar. 21, 2011). Alternate channels fail to sufficiently memorialize what occurred. Thus, the ban (even if not propounded for, and targeted at, Berge) does not survive constitutional scrutiny.[5] Berge had a right to record and therefore had a right to publish his lawfully-acquired information. The fact that he did not seek damages for violating his right to record is irrelevant—in fact, it would have been frivolous to bring a separate claim since he actually *did record* without being stopped. The violation was later, when government officials decided to abuse their power and authority to threaten Berge with criminal or other sanctions.

### 2.0    Appellees Infringed Upon Berge's Right to Publish.

It is uncontested that Appellees threatened Berge with criminal prosecution for having published his video. (AA0016.) And, upon the appearance of counsel, only *some* of the appellees withdrew this threat. (AA036.) Appellee Delisi did not. (*Id.*) Appellees mislead the Court about this important fact, which the District Court skated over. This Court should not condone either omission.

Appellees' argument that the right to publish was not infringed rests on their flawed premise that the video was unlawfully obtained. (Opp. at 29–32.) Yet, they

---

[5] As Berge does not claim he was injured regarding the right to record, only as to the right to publish, Appellees' Opposition at Section III(B) (Opp. at 25–29) is immaterial and replying to it serves no purpose. Berge does, however, reserve the right to seek to enjoin any attempt by Appellees to ban future recordings, which would infringe his First Amendment right to record.

even admit the recording "was not criminal." (*Id.* at 30.)  Because there was nothing unlawful about Berge's recording, the Opposition evaporates.  Thus, Appellees waived any argument that Berge did not have the right to publish his video.

Berge's right to publish *was* infringed.  Appellees claim that Berge did not allege sufficient facts that he engaged in constitutionally protected activity, but this is false.  (Opp. at 34).  The record shows what he recorded and what he published, and the publication was constitutionally protected, as set forth above.

Appellees claim Berge was not subject to any adverse action because the March 3, 2022, letter "was no more than a *de minimis* inconvenience."  (Opp. at 35.) There is nothing in the record to suggest it was *de minimis*—Berge did not file suit over a *de minimis* slight; he filed suit because Appellees threatened him with criminal prosecution and potential deprivation of liberty if he did not remove the video.  He had two choices: forego his constitutional rights or fight to keep them.

Even a single minute of imprisonment is a more than a *de minimis* injury.  *See Teague v. Quarterman*, 482 F.3d 769, 780 (5th Cir. 2007) (concluding that "no amount of previously earned good-time credit, however slight, can ever be deemed *de minimis*").  There is no evidence in the record—let alone properly considered on a motion to dismiss—that Berge's fear of such injury was *de minimis.*  He is entitled to be compensated for this threat of forceful imprisonment for the exercise of constitutional rights.

Further, although Appellees claim Berge was not chilled in the exercise of his rights, Berge pleaded an intent to "continue to record and publish videos, with audio included, of his anticipated future communications with" Appellees (AA027), and he filed suit and a preliminary injunction motion to ensure he could do so without reprisal (AA001, AA008, & AA021). Thus, Berge properly pleaded a claim for First Amendment retaliation.

### 3.0    Appellees are Not Immune from Suit.

The individual appellees do not enjoy immunity from suit as they violated Berge's clearly-established rights. Absent from Section V of the Opposition is any discussion of *Bartnicki v. Vopper*, 532 U.S. 514 (2001), which Berge highlighted in his Opening Brief at 17. Appellees and the District Court similarly ignored reference to *New York Times Co. v. United States*, 403 U.S. 713 (1971).

Appellees infringed Berge's clearly established right to publish. As set forth in *Bartnicki*, and with no opposition from Appellees, the Supreme Court clearly stated that "state action to punish the publication of truthful information seldom can satisfy constitutional standards." 532 U.S. at 523 (*quoting Smith v. Daily Mail Publ'g Co.*, 433 U.S. 97, 102 (1979)). The Court emphasized that "if a newspaper lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a

need ... of the highest order." *Id*. Berge has no fewer First Amendment rights than the Boston Globe.

> As this Court wrote in *Gericke*:

> under Gericke's version of the facts, any reasonable officer would have understood that charging Gericke with illegal wiretapping for attempted filming that had not been limited by any order or law violated her First Amendment right to film. "'[T]he contours of [the] right [were] sufficiently clear' that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Hence, at this stage of the litigation, the officers are not entitled to qualified immunity.

753 F.3d at 9-10. Here, the right to publish a video protected under *Bartnicki* and *New York Times* was sufficiently clear that every reasonable official would have understood that threatening prosecution over publication violated that right.

Similarly, Berge's right to record was clearly established (though the Court need not reach that issue as there was never any question that the video was unlawfully obtained). In *Gericke*, this Court relied on *Glik, supra*, which held that:

> "though not unqualified, a citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space" was clearly established by the time of the underlying events in the case. *Glik*, 655 F.3d at 85. Our observation that the right to film is not unqualified recognized that the right can be limited by reasonable time, place, and manner restrictions. *Id*. at 84.

753 F.3d at 9. As discussed above, Berge was a citizen filming government officials in the discharge of their duties in a public space, and there were no restrictions

(beyond a single public employee's *ultra vires* request), let alone reasonable time, place, or manner ones.

This Court should not *expand* qualified immunity.[6]  Appellees invite the Court to follow *Ballinger v. Town of Kingston* for the proposition that because a reasonable government official might not think the speech at issue is a matter of public concern, they enjoy immunity for violating the First Amendment.  2019 U.S. Dist. LEXIS 213122, at *49–50 (D. Mass. Dec. 10, 2019).  Courts should not cede their authority to determine what is and what is not a matter of public concern to the very officials who violate constitutional rights, else they risk incentivizing these officials to engage in willful blindness. Moreover, it was not reasonable for the government officials here to threaten Berge with prosecution for publication of speech specifically addressing official policies on public health matters.  Thus, the individual appellees are not entitled to dismissal under qualified immunity.

### 4.0    Berge's Claims are Not Moot.

It is undisputed that Berge's claim for monetary damages is not moot.[7] Neither are his claims for declaratory relief. Appellees claim there is no live

---

[6] A violation of the Constitution is a violation, whether it is "clearly established" or otherwise.  Qualified immunity flies in the face of "the age-old principle that ignorance of the law is not a defense to its violation."  *United States v. Marquardo*, 149 F.3d 36, 42 (1st Cir. 1998).  Qualified immunity simply encourages government officials to violate the constitution in novel ways.

[7] Appellees argue the merits of this claim, not mootness, in the last paragraph of Section VII (Opp. at 44–45).

controversy because it was "clear" all defendants withdrew their threat. (Opp. at

43.) This is false—Appellee Delisi did not and apparently refuses to, to this day.

Moreover, as averred by Berge, he intends to make additional recordings and

publish them without fear of reprisal, necessitating judicial determinations that: a)

they are not barred under the Wiretapping Law; b) they are not barred under FERPA;

and c) they are protected under the First Amendment. Appellees claim that the

withdrawal of the prior threat "was not the stuff of judicial avoidance" (Opp. at 44),

but there is no record evidence it was not. Rather, the District Court's determination

that there was "little chance" of a subsequent threat (ADD15) was out of thin air.

As this Court explained:

> Often described as a mootness exception, the voluntary-cessation
> doctrine exists to stop a scheming defendant from trying to immunize
> itself from suit indefinitely by unilaterally changing its behavior long
> enough to secure a dismissal and then backsliding when the judge is out
> of the picture, repeating this cycle until it achieves all its unlawful ends.
> The doctrine is an evidentiary presumption that the controversy
> continues to exist, based on skepticism that cessation of violation
> means cessation of live controversy. And given this purpose, it is hardly
> surprising that the doctrine — which turns on the circumstances of the
> particular case, — does not apply if the change in conduct is unrelated
> to the litigation.

*Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (cleaned up). Unlike

in *Boston Bit Labs*, where the Court found Gov. Baker issued an order "not to avoid

a court judgment, but in response to the progress made in battling the pandemic"

with the appellant "point[ing] to nothing to the contrary," here, the sole change in

15

Appellees' position was this suit. *Id.* The voluntary cessation doctrine applies because *Appellees*, bearing the burden of proving mootness, have pointed to nothing that contradicts Berge's showing that the change in conduct was litigation related.

Further, the District Court cannot moot a case through fiction and this Court's *de novo* review (*see Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 42 (1st Cir. 2022)) requires reversal. Only some of the appellees withdrew the original threat, and the ones who did withdrew it a mere four days after Berge filed this suit. It is unquestioned they did so upon being sued. As Appellees continue to assert that the recording and publication is unprotected under the First Amendment and refuse to acknowledge that the Wiretapping Law and FERPA do not preclude recording and publication, declaratory relief remains necessary. This case therefore falls under the voluntary cessation exception to mootness.

### 5.0    A Preliminary Injunction Should Issue.

As the District Court erroneously dismissed the case, it also denied the motion for preliminary injunction for which no timely opposition was filed. That denial, too, must be reversed.

At the outset, Appellees' arguments for mootness of the preliminary injunction remain much the same as their arguments on declaratory relief. They willfully ignore that the withdrawal of the threat was not made as to all Appellees. They also provide no assurance that Berge will not be subject to a similar threat the

next time he records and publishes their performance of official activities in a public space.  There is nothing in the record to suggest that Berge's desire to record and publish ceased, only that he has not done so because the fear of prosecution looms over him absent a court ruling on the merits of his claims.  That Appellees have not sought his prosecution during the pendency of this matter is of little comfort. A preliminary injunction remains necessary to preclude future threats of baseless prosecution, chilling his First Amendment-protected activities.  Thus, unlike in the cases cited by Appellees (Opp. at 45–47), the constitutional violation continues to adversely affect Berge.[8]

Appellees fail in their arguments that a preliminary injunction is not otherwise warranted.  Appellees' primary argument is that because the case was dismissed, Berge does not have a likelihood of success on the merits, but they make no specific argument as to likelihood of success were this Court to reverse the order of dismissal. Thus, absent any specific argument as to likelihood of success, this factor favors Berge for the reasons set forth above and in his Opening Brief.

Neither do Appellees succeed as to the other factors.  As to the question of irreparable harm, it is notable that Appellees avoid discussing *Elrod v. Burns*, 427 U.S. 347 (1976).  Although Appellees are correct that this Court determined that a

---

[8] Although Appellees argue in a footnote (Opp. at 47 n.31) that their motion for extension of time was not moot, they have not cross-appealed the denial and, thus, the issue is not before the Court.

finding of irreparable harm is not "automatic" in First Amendment cases (*Rushia v. Town of Ashburnham*, 701 F.2d 7, 10 (1983)), this Court also determined that there is "a sufficient showing of irreparable harm by alleging a deprivation of constitutional right" in "cases involving alleged infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief." *Public Service Co. v. West Newbury*, 835 F.2d 380, 382 (1st Cir. 1987). And, more recently, this Court firmly stated:

> In the First Amendment context, the likelihood of success on the merits is the linchpin of the preliminary injunction analysis. As the Supreme Court has explained, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Asociación de Educación Privada de Puerto Rico, Inc. v. García-Padilla*, 490 F.3d 1, 21 (1st Cir. 2007) (applying *Elrod* to irreparable harm component of permanent injunction analysis); *Maceira v. Pagan*, 649 F.2d 8, 18 (1st Cir. 1981) ("It is well established that the loss of first amendment freedoms constitutes irreparable injury."). Accordingly, irreparable injury is presumed upon a determination that the movants are likely to prevail on their First Amendment claim.

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10–11(1st Cir. 2012). Here, Berge is chilled in the exercise of his rights to record and publish such that the temporary deprivation is irremediable. His irreparable injury is both presumed and actual. Thus, a preliminary injunction is warranted.

As to balance of hardships, Appellees merely rest on their prior, fallacious arguments on the mertis and ongoing threats. (Opp. at 50.) While they claim that

the interests of Appellees outweigh those of Berge, the only one raised is about conducting "day-to-day operations … without unnecessary disruption or interference." *Id.* However, there is nothing disruptive about recording or publishing lawfully recorded material. And, to the extent they imagine it is disruptive, this is *necessary* as a part of their public-facing duties to the citizenry. There is no legitimate interest in avoiding their constitutional obligations. Neither is there any actual invasion of privacy—these are officials performing public functions in a public space. As this Court noted, "[p]ersons who actively seek positions of influence in public life do so with the knowledge that, if successful in attaining their goals, diminished privacy will result." *Kassel v. Gannett Co.*, 875 F.2d 935, 940 (1st Cir. 1989). Notably, in the case cited by Appellees for the proposition that some privacy interests should be considered (Opp. at 50), the prohibition on recording was struck down. *Project Veritas*, 982 F.3d at 838–840. Appellees have no legitimate privacy interest that outweighs Berge's First Amendment freedoms. Appellees also do not argue that the public interest favors them. Thus, on remand, the preliminary injunction should issue.

## CONCLUSION

In light of the foregoing, the order and judgment of dismissal should be reversed and the matter remanded for further proceedings. And, the order denying

the motion for injunctive relief as moot should be reversed, with directions that the

requested injunctive relief enter.

Dated: May 18, 2023.                     Respectfully submitted,

                                         RANDAZZA LEGAL GROUP, PLLC

                                         /s/ Marc J. Randazza
                                         Marc J. Randazza (Bar No. 90629)
                                         Jay M. Wolman (Bar No. 1135959)
                                         Robert J. Morris II (Bar No. 1205891)
                                         30 Western Avenue
                                         Gloucester, MA 01930
                                         Tel: (888) 887-1776
                                         ecf@randazza.com

                                         Mark. Trammell
                                         MTrammell@libertyCenter.org
                                         Joshua W. Dixon
                                         JDixon@LibertyCenter.org
                                         Eric A. Sell
                                         ESell@LibertyCenter.org
                                         CENTER FOR AMERICAN LIBERTY
                                         1311 South Main Street, Suite 302
                                         Mount Airy, MD 21771
                                         Tel: (703) 687-6200

                                         *Attorneys for Appellant,*
                                         *Inge Berge.*

20

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 4,965 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: May 18, 2023.                    RANDAZZA LEGAL GROUP, PLLC

                                        /s/ Marc J. Randazza
                                        Marc J. Randazza

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: May 18, 2023.                    RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza