**No. 22-1954**

*In the*

# UNITED STATES COURT OF APPEALS

*for the*

# FIRST CIRCUIT

INGE BERGE

*Plaintiff-Appellant,*

v.

SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, IN HIS PERSONAL CAPACITY; ROBERTA A. EASON, IN HER PERSONAL CAPACITY; AND STEPHANIE DELISI, IN HER PERSONAL CAPACITY

*Defendants-Appellees.*

*On Appeal from the United States District Court*
*for the District of Massachusetts*
*No. 1:22-cv-10346*
*The Honorable Angel Kelley*

## APPELLANT'S OPENING BRIEF

MARC J. RANDAZZA
JAY M. WOLMAN
ROBERT J. MORRIS II
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (888) 887-1776
ecf@randazza.com

i

# TABLE OF CONTENTS

**STATEMENT IN SUPPORT OF ORAL ARGUMENT** .................................... 1

**STATEMENT OF JURISDICTION** .................................................................. 2

**STATEMENT OF ISSUES** ................................................................................ 3

**STATEMENT OF THE CASE** .......................................................................... 4

    I.    FACTUAL BACKGROUND ................................................... 4

    II.    PROCEDURAL BACKGROUND ........................................... 6

**SUMMARY OF THE ARGUMENT** ................................................................. 9

**STANDARD OF REVIEW** ............................................................................... 10

**ARGUMENT** ..................................................................................................... 11

    1.0    QUALIFIED IMMUNITY DOES NOT PROTECT APPELLEES' CONDUCT ....................................................................................... 11

    1.1    General Principles of Law Provide Sufficient Warning to All Reasonable Actors in Cases Like This One. ................................ 11

    1.2    Over Fifty Years of Supreme Court Precedent Clearly Establishes the Right to Publish Lawfully Obtained, Truthful Information .... 15

        1.2.1    The Right to Publish is Clearly Established...................... 16

        1.2.2    Berge was Threatened with Prosecution for Publication of Lawfully Obtained Information ........................................... 18

        1.2.3    Berge Had the Right to Record........................................... 21

        1.2.4    Neither the Wiretapping Law nor FERPA Prohibited the Recording .......................................................................... 25

    2.0    BERGE'S CLAIMS FOR DECLARATORY RELIEF ARE NOT MOOT ......................................................................................... 27

    3.0    PRELIMINARY INJUNCTIVE RELIEF IS WARRANTED .............. 31

**CONCLUSION** .......................................................................................... 36

# TABLE OF AUTHORITIES

## CASES

*ACLU of Mass. v. United States Conf. of Catholic Bishops*,
  705 F.3d 44 (1st Cir. 2013) ................................................................. 30

*Akebia Therapeutics, Inc. v. Azar*,
  976 F.3d 86 (1st Cir. 2020) ................................................................. 10

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ............................................................................ 14

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...................................................................... 12, 13

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001) ............................................................................ 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 10

*Charlesbank Equity Fund II v. Blinds to Go, Inc.*,
  370 F.3d 151 (1st Cir. 2004) ............................................................... 32

*City & Cnty. of San Francisco, Calif. v. Sheehan*,
  575 U.S. 600 (2015) ............................................................................ 15

*City News & Novelty, Inc. v. City of Waukesha*,
  531 U.S. 278 (2001) ............................................................................ 30

*Clark v. Cmty. for Creative Non-Violence*,
  468 U.S. 288 (1984) ............................................................................ 19

*Comcast of Maine/New Hampshire, Inc. v. Mills*,
  435 F. Supp. 228 (D. Me. 2019) ................................................... 33, 35

*Conservation Law Found. v. Evans*,
  360 F.3d 21 (1st Cir. 2004) ................................................................. 28

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
  473 U.S. 788 (1985) ...................................................................... 19, 21

*D.B. ex rel. Elizabeth B. v. Esposito,*
  675 F.3d 26 (1st Cir. 2012)................................................................. 18

*Demarest v. Athol/Orange Cmty. Television, Inc.,*
  188 F. Supp. 2d 82 (D. Mass. 2002) ................................................ 23

*District of Columbia v. Wesby,*
  138 S. Ct. 577 (2018)................................................................. 13, 15

*Doe v. Trs. of Bos. Coll.,*
  942 F.3d 527 (1st Cir. 2019) ............................................................ 32

*Doran v. Mass. Tpk. Auth.,*
  348 F.3d 315 (1st Cir. 2003) ............................................................ 10

*Elrod v. Burns,*
  427 U.S. 347 (1976)........................................................................ 33

*FEC v. Wis. Right to Life, Inc.,*
  551 U.S. 449 (2007)........................................................................ 30

*Firecross Ministries v. Municipality of Ponce,*
  204 F. Supp. 2d 244 (D.P.R. 2002) ................................................. 34

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC) Inc.,*
  528 U.S. 167 (2000)........................................................... 28, 30, 31

*Gericke v. Begin,*
  753 F.3d 1 ...................................................................................... 25

*Giragosian v. Bettencourt,*
  614 F.3d 25 (1st Cir. 2010)............................................................. 11

*Glik v. Cunniffe,*
  655 F.3d 78 (1st Cir. 2011)..................................................... 9, 22, 25

*Harnett v. Pa. State Educ. Ass'n,*
  963 F.3d 301 (3d Cir. 2020) ............................................................ 30

*Hope v. Pelzer,*
  536 U.S. 730 (2002)............................................................ 12, 14, 16

*Iacobucci v. Boulter*,
    193 F.3d 14 (1st Cir. 1999)............................................................. 23, 25

*Irizarry v. Yehia*,
    No. 21-1247 (10th Cir. July 11, 2022)................................................. 7

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018).................................................................. 13, 14

*Knox v. Serv. Emp. Int'l Union, Local 1000*,
    567 U.S. 298 (2012)......................................................................... 30

*Magriz v. union do Tronquistas de Puerto Rico, Local 901*,
    765 F. Supp. 2d 143 (D.P.R. 2011) ................................................... 36

*Maldonado v. Fontanes*,
    568 F.3d 263 (1st Cir. 2009)............................................................. 11

*Malley v. Briggs*,
    475 U.S. 335 (1986)......................................................................... 13

*McDonald v. Smith*,
    472 U.S. 479 (1985)......................................................................... 15

*McMillan v. Carlson*,
    369 F. Supp. 1182 (D. Mass 1973) .............................................. 17, 20

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)......................................................................... 29

*Miller v. City of Cincinnati*,
    622 F.3d 524 (6th Cir. 2010). ........................................................... 36

*Morgan v. Swanson*,
    659 F.3d 359 (5th Cir. 2011) ............................................................ 13

*Mountain Pure, LLC v. Roberts*,
    814 F.3d 928 (8th Cir. 2016) ............................................................ 15

*N.H. Lottery Comm'n v. Rosen*,
    986 F.3d 38 (1st Cir. 2021)............................................................... 29

*New York Times Co. v. United States*,
    403 U.S. 713 (1971)...................................................................... 9, 16, 17

*Pearson v. Callahan*,
    555 U.S. 223 (2009)....................................................................... 12

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014)....................................................................... 14, 15

*Project Veritas Action Fund v. Rollins*,
    982 F.3d 813 (1st Cir. 2020)...................................... 9, 23, 24, 25, 26

*Quern v. Jordan*,
    440 U.S. 332 (1979)........................................................................ 35

*Ramírez v. Sánchez Ramos*,
    438 F.3d 92 (1st Cir. 2006)............................................................. 27

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155, 135 S. Ct. 2218 (2015)............................................. 21

*Reichle v. Howards*,
    566 U.S. 658 (2012)........................................................................ 16

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017............................................................. 33

*Riley's Am. Heritage Farms v. Elsasser*,
    32 F.4th 707 (9th Cir. 2022) ........................................................... 35

*Rockwell v. Cape Cod Hosp.*,
    26 F.3d 254 (1st Cir. 1994)............................................................. 10

*Se. Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975)........................................................................ 34

*Sindicato Puertorriqueño de Trabajadores v. Fortuño*,
    699 F.3d 1 (1st Cir. 2012)........................................................... 32, 33

*Smith v. City of Cumming*,
    212 F.3d 1332 (11th Cir. 2000) ...................................................... 23

*Smith v. Daily Mail Publishing Co.*,
433 U.S. 97 (1979) ......................................................................... 17

*Steffel v. Thompson*,
415 U.S. 452 (1974) ....................................................................... 29

*Student Press Law Center v. Alexander*,
778 F.Supp. 1227 (D.D.C. Nov. 21, 1991) ..................................... 26

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ....................................................................... 29

*Taylor v. Riojas*,
141 S. Ct. 52 (2020) ....................................................................... 12

*Teague v. Quarterman*,
482 F.3d 769 (5th Cir. 2007) .......................................................... 19

*United Food & Commer. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341(6th Cir. 1998) ....................................................... 36

*United States ex rel. Hutcheson v. Blackstone Med., Inc*.,
647 F.3d 377 (1st Cir. 2011) .......................................................... 10

*United States v. Concentrated Phosphate Export Ass'n*,
393 U.S. 199 (1968) ....................................................................... 28

*United States v. Hope*,
487 F.3d 224 (5th Cir. 2007) .......................................................... 32

*United States v. Lanier*,
520 U.S. 259 ............................................................................ 12, 13

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ....................................................................... 21

*White v. Pauly*,
137 S. Ct. 548 (2017) ................................................................. 13, 16

*Young v. Lepone*,
305 F.3d 1 (1st Cir. 2002) .............................................................. 10

**STATUTES**

20 U.S.C. § 1232........................................................ 7, 9, 20, 21, 25, 26, 28, 29, 34

28 U.S.C. § 1291...................................................................................................... 2

28 U.S.C. § 1331...................................................................................................... 2

28 U.S.C. § 1367...................................................................................................... 2

42 U.S.C. § 1983.................................................................... 2, 3, 6, 7, 18, 27, 33

G.L. c. 272, § 99 ........................................ 5, 7, 9, 19, 20, 21, 24, 25, 26, 28, 29, 34

**RULES**

Fed. R. Civ. P. 12 ............................................................................................. 7, 10

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The District Court improperly invented non-existent facts to avoid declaring that Appellant, Inge Berge, did not violate state or federal law when he made a First Amendment-protected video recording in a government office. The District Court also mis-used the doctrine of qualified immunity to dismiss a claim for retaliation over the publication of First Amendment protected material, ignoring a basic tenet (cited by Appellant) laid down by the Supreme Court over fifty years ago. Oral argument will help the Court understand these important issues and may help lay the groundwork for the Supreme Court's clarifying the qualified immunity doctrine to avoid protecting obviously unconstitutional behavior.

## STATEMENT OF JURISDICTION

Pursuant to Fed. R. App. P. 28(a)(4), Appellant states as follows:

A)    The District Court had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 as this is a civil action arising under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution. The First Amended Complaint under Count I claims First Amendment retaliation, and under Count IV requests declaratory relief for Plaintiff's First Amendment Right to Publish. The District Court had supplemental jurisdiction over the state law declaratory claims pursuant to 28 U.S.C. § 1367.

B)    This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered a final order dismissing the case is in its entirety.  The District Court granted Appellees' motion to dismiss and denied as moot Appellant's motion for temporary restraining order and preliminary injunction.

C)    On December 5, 2022, the District Court enter a final order dismissing the case and denying the motion for injunctive relief. ADD17. On December 5, 2022, that same day Appellant filed his notice of appeal. ADD18.

D)    This appeal is from a final order disposing all parties' claims. AAD15.

## STATEMENT OF ISSUES

1.     Whether the District Court erred when it dismissed the Section 1983/First Amendment retaliation claim under the guise of qualified immunity.

2.     Whether the District Court erred when it dismissed the claims for declaratory relief as moot.

3.     Whether the District Court erred when it dismissed the motion for injunctive relief as moot.

## STATEMENT OF THE CASE

### I.     FACTUAL BACKGROUND

Plaintiff-Appellant Inge Berge is a citizen journalist from Gloucester, Massachusetts. He publicly discusses and reports on local government and politics in Massachusetts.[1] AA002, ¶ 7; AA022, ¶ 7. On March 3, 2022, Berge entered the Gloucester Public School's Superintendent's Office. AA002, ¶ 8; AA022, ¶ 8.  He went there to discuss and report on an issue wherein Gloucester Public Schools were limiting seating capacity at school events purportedly for the purpose of public safety, despite all statewide COVID-19 mandates in Massachusetts having been then-lifted. AA002, ¶ 8; AA022, ¶ 8. The restrictions made it difficult for him (and the public) to purchase tickets and attend his daughter's school play. *Id.*

The Superintendent's Office is open to the general public. AA002, ¶ 9; AA022, ¶ 9. At the time Berge entered the building, there was neither signage nor any other indication that video recording or photography was restricted, not permitted, nor even discouraged.  AA002, ¶ 10; AA022, ¶ 10. At all times, Berge held his camera out in the open, and it was obvious to all parties that he was filming.

---

[1] Except where otherwise shown, facts cited are from Appellant's Amended Complaint, AA021, which were evidenced in the record in his original, verified complaint, AA001. The matter was adjudicated on a motion to dismiss, and Appellees offered no evidence in opposition to the motion for injunctive relief, AA117, (which was timely filed and for which leave to file late was denied as moot).

AA003, at ¶ 16; AA022, ¶ 11. He also verbally confirmed that he was filming. AA003, at ¶ 16; AA0022, ¶ 11.

When Berge entered the building, he was directed to Appellee-Defendant Executive Secretary Stephanie Delisi and began to speak with her. AA002, ¶ 10; AA022, ¶ 12. Berge began his conversation by stating, "I'm filming this, I'm doing a story on it." AA002, ¶ 10; AA022, ¶ 12.

At no point did anyone inform Berge that filming was not permitted. AA022, ¶ 13. Two individuals did not personally wish to be filmed, and they retreated to private office areas and were not filmed after that point. *Id.*

Gregg Bach, an assistant superintendent, approached Berge and spoke with him regarding the attendance policy for the play. AA002, ¶ 11; AA022, ¶ 14. The two had a pleasant conversation that was recorded with no objection from Bach. AA002, ¶ 11; AA022, ¶ 14.

The same day, Berge uploaded the recording of his visit to the Gloucester Superintendent's office, along with commentary, to his publicly accessible Facebook page. AA002, ¶ 12; AA023, ¶ 15.

That very day, after publication, Berge received a letter from Gloucester Public Schools signed by Defendant-Appellee Director of Human Resources Roberta Eason. AA002, ¶ 13; AA023, ¶ 16. Eason, for Appellees, claimed that Berge was in violation of the Massachusetts wiretapping statute, G.L. c. 272, § 99 (the

"Wiretapping Law"), because he recorded his conversations without (non-required) consent and uploaded the video to Facebook. AA002, ¶ 13; AA023, ¶ 16. Eason, for Appellees, demanded that Berge "immediately remove the post from [his] Facebook account and/or any other communications to prevent the pursuit of legal action in this matter." AA003, ¶ 14; AA023, ¶ 17. The letter impliedly threatened criminal prosecution if Berge did not comply.

## II.    PROCEDURAL BACKGROUND

On March 7, 2022, Plaintiff-Appellant Inge Berge filed a Verified Complaint against Defendants-Appellees School Committee of Gloucester, Ben Lummis, Roberta Eason, and Stephanie Delisi. AA001. Berge alleged First Amendment retaliation under § 1983 based on his rights to record and publish his conversations with government officials in the Superintendent's Office. AA004, ¶¶ 23-32.

On March 7, 2022, Berge filed a Motion for a Temporary Restraining Order and a Preliminary Injunction against Defendant-Appellants to enjoin them from threatening or coercing Berge into removing his First Amendment protected content. His Motion was based on Defendants-Appellants March 3 letter. AA008.  No timely opposition was filed, although a belated opposition was filed on August 29, 2022,

without leave of court.[2]  AA117.  Berge filed a reply upon leave of court on September 13, 2022.  AA127.

On March 17, 2022, Berge filed a Verified First Amended Complaint alleging four separate counts against Defendants-Appellees. AA021.  Count I alleged First Amendment retaliation under § 1983; count II claimed declaratory relief that his actions did not violate the Wiretapping law, G.L. c. 272, § 99; count III claimed declaratory relief that his actions did not violate the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; and count IV claimed declaratory relief that he has a right to publish his video. AA025 – AA028.

On April 27, 2022, Appellees moved to dismiss Plaintiff's Verified First Amendment Complaint under Rule 12(b)(6). AA032.  On May 11, 2022, Berge filed his Opposition to Defendants' Motion to Dismiss. AA058. On July 13, 2022, Berge filed a Notice of Supplemental Authority to notify the District Court about the recent ruling in *Irizarry v. Yehia*, No. 21-1247 (10th Cir. July 11, 2022).  AA082.

The District Court ignored the motion for injunctive relief (absent timely opposition).  Further, the then-pending motion to dismiss was precluding the advancement of the case.  Therefore, on November 15, 2022, Berge filed a Notice of Unresolved Motions.  AA160.  On December 5, 2022, the Court angrily issued an

---

[2] On August 24, 2022, Berge filed Notice of Non-Opposition to Motion for Temporary Restraining Order and for a Preliminary Injunction. AA115.

order dismissing the case in its entirety. ADD17.  The Court granted the defendants'

motion to dismiss, denied the plaintiff's injunctive motion as moot, and denied

defendants' motion for an extension of time to file an opposition to Berge's

injunctive motion as moot.  ADD2.  In sum, the Court denied the relief Berge sought.

## SUMMARY OF THE ARGUMENT

It is well-established law that citizens of the Commonwealth of Massachusetts are free to record government employees performing their official duties. *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Project Veritas Action Fund v. Rollins,* 982 F.3d 813, 832 (1st Cir. 2020). It is also well-established law that the government may not force nor coerce a citizen into giving up their First Amendment right to publish lawfully obtained information. *New York Times Co. v. United States*, 403 U.S. 713 (1971). The District Court ignored both well-established principles.

In this case, government employees were angry that Appellant Berge made a video of them while they were working at a public-school. In retaliation for this video, these government employees threatened Berge with criminal prosecution if he did not unpublish his video. The District Court refused to rule on the Motion for a Preliminary Injunction and then committed reversible error by inventing facts that were not in the record, refusing to acknowledge settled law, and dismissing the claims. Mr. Berge is entitled to recover for retaliation against his protected right to publish information he had the right to record, and neither a non-existent policy, the Wiretapping Act, nor FERPA precluded such. While Berge challenges the very notion of qualified immunity, this Court need not deem this ignoble practice no longer valid in order to rule in Berge's favor.

## STANDARD OF REVIEW

This court reviews a grant or denial of a motion to dismiss *de novo*. *Doran v. Mass. Tpk. Auth.*, 348 F.3d 315, 318 (1st Cir. 2003); *Rockwell v. Cape Cod Hosp.*, 26 F.3d 254, 255 (1st Cir. 1994). Under Fed. R. Civ. P. 12(b)(6), a complaint only needs to allege facts sufficient to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must "accept[] as true all well-pleaded facts, analyz[e] those facts in the light most hospitable to the plaintiff's theory, and draw[] all reasonable inferences for the plaintiff." *United States ex rel. Hutcheson v. Blackstone Med., Inc*., 647 F.3d 377, 383 (1st Cir. 2011). In bringing a motion to dismiss for failure to state a claim, a defendant may not rely on evidence or information outside the four corners of the complaint without converting the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *see also Young v. Lepone*, 305 F.3d 1, 10-11 (1st Cir. 2002) (noting that "[t]he fact of a motion to dismiss under Rule 12(b)(6) ordinarily depends on the allegations contained within the four corners of the plaintiff's complaint").

Denials of preliminary injunctions are reviewed for abuse of discretion, though under the rubric, the Court of Appeals reviews "answers to legal questions de novo, factual findings for clear error, and judgment calls with some deference to the District Court's exercise of its discretion." *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020).

10

**ARGUMENT**

In its *de novo* review of the order of dismissal, the Court should find qualified immunity does not bar Appellant's claims against Appellees. *See Giragosian v. Bettencourt,* 614 F.3d 25, 28 (1st Cir. 2010). The District Court was wrong to determine the right to publish was not clearly established, and it was wrong to determine that the declaratory relief claims were moot. Mr. Berge is entitled to prosecute his claim and a preliminary injunction is warranted as all factors are met.

**1.0     APPELLEES' CONDUCT DOES NOT ENJOY QUALIFIED IMMUNITY BECAUSE THEIR CONDUCT VIOLATED CLEARLY ESTABLISHED LAW**

Courts apply a two-prong analysis in determining qualified immunity. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). These prongs are "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Id.*   The District Court did not evaluate the first prong and erred on the second prong. The right to publish a lawfully obtained video on social media free from threat of criminal prosecution is clearly established. ADD12.

**1.1     General Principles of Law Provide Sufficient Warning to All Reasonable Actors in Cases Like This One.**

As is often the case when analyzing a qualified-immunity defense, the primary question the court must answer is whether the asserted constitutional right is "clearly

established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In recent years, the Supreme Court has relaxed the level of factual similarity necessary to clearly establish a constitutional right in cases where the government actor had ample time to consider their conduct. *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (citing *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)). In these cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity," even in novel situations. *Id.* (cleaned up). This is one such case.

While the Supreme Court admonishes lower courts not to define a constitutional right too generally, *see Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) at 742, it also advises that lower courts need not find case law with exactly the same facts to find a constitutional right is clearly established. *See Hope*, 536 U.S. at 731; *United States v. Lanier*, 520 U.S. 259. The ultimate test for a clearly established law in a case *not* involving split-second decision making is whether a reasonable government actor had "fair warning" that their conduct was unlawful at the time. *See Hope*, 536 U.S. at. 731.

General legal principles can provide fair warning in qualified immunity cases that do not involve split-second decision-making by the government actor. *See Hope*, 536 U.S. at 731 (holding that an otherwise questionable right becomes clearly established when the government actor had ample time to consider the legality of their conduct); *Lanier*, 520 U.S. 259 (holding that a government defendant is not

entitled to qualified immunity when they had "fair warning" that their conduct was unlawful); *Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011). Defining a legal right at a higher level of generality still provides adequate notice to all reasonable officers in such scenarios because the government actor has more time to consider their conduct – like in this case, where the government actor had plenty of time to look up a statute and write a letter threatening criminal sanctions.

Moreover, qualified immunity does not protect "obviously unconstitutional" actions by government officials. *See Lanier*, 520 U.S. at 271. The factual similarity required by the body of qualified-immunity case law is premised on protecting all but incompetent government actors. *Malley v. Briggs*, 475 U.S. 335, 342 (1986). But, "incompetence" is relative and easier to define depending on the nature of government conduct at issue, taking into account how long the government had to consider their conduct. *al-Kidd*, 563 U.S. at 735. Because all government actors must behave reasonably in order to receive the protection of qualified immunity, the context in which the offending conduct occurred matters.

The Supreme Court's standard for "clearly established law" largely developed from the Fourth and Fourteenth Amendment contexts when law-enforcement officers must make split-second decisions in the course of their duties. *See, e.g., District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *White v. Pauly*, 137 S. Ct. 548, 551 (2017); *Plumhoff v.*

*Rickard*, 572 U.S. 765 (2014); *Anderson v. Creighton*, 483 U.S. 635 (1987). It makes little sense to judge the reasonableness of a government official's actions when they had ample time to consider the legality of their decision using the same standard as an official making a split-second decision. *See Kisela*, 138 S. Ct. at 1152 ("[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

When a government actor has ample time to consider the legality of their conduct, legal rights become clear at a higher level of generality. *See Kisela*, 138 S. Ct. at 1152 (2018). Factual similarity is necessary to provide fair warning in the "quick decision" scenarios because the government actor has less time to consider whether their conduct falls within the bounds of clearly established law. *Plumhoff*, 572 U.S. at 775. But when a government actor has ample time to consider the legality of their conduct, factual similarity with a prior case is less relevant to provide fair warning. *Hope*, 536 U.S. at 741 ("[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.") (internal quotations omitted).

14

In the First Amendment context where the government actor has ample time to consider their actions, general constitutional principles provide fair warning even in a novel factual scenario. *See Mountain Pure, LLC v. Roberts*, 814 F.3d 928, 932 (8th Cir. 2016). The plaintiff need not point to an analogous case with nearly identical facts to demonstrate that the law was clearly established. *Id.* An important factor in this reasonableness analysis is the amount of time the government actor had to consider their actions. *See City & Cnty. of San Francisco*, *Calif. v. Sheehan*, 575 U.S. 600, 610 (2015).

### 1.2 Over Fifty Years of Supreme Court Precedent Clearly Establishes the Right to Publish Lawfully Obtained Truthful Information

The right to publish lawfully obtained information is clearly established. If Freedom of the Press stands for anything, it stands for a right to publish a video online. *McDonald v. Smith*, 472 U.S. 479, 485 (1985) ("The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, **publish**, and assemble.") (emphasis added).

The District Court found that the right to publish free from the threat of criminal prosecution or other governmental sanction is not clearly established. The court reached this conclusion by (erroneously) applying the heightened qualified-immunity standard used in split-second cases. ADD9. (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (police response to noise complaint); *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)) (police shooting); *Reichle v. Howards*, 566

15

U.S. 658, 665 (2012) (arrest by secret service); *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (police shooting)). This was not a split-second case because Appellees had ample time to consider legality and reasonableness of their conduct. *Hope*, 536 U.S. at 731. Thus, even in the absence of a direct case on point, qualified immunity does not immunize Appellees from the repercussions of their threat to have Berge prosecuted and the damages they caused him. ADD12.

### 1.2.1  The Right to Publish is Clearly Established

The right to publish is clearly established under the First Amendment. Appellant argued to the District Court, citing the Pentagon Papers cases, that the right to publish is clearly established. AA066 ("The government does not get to threaten criminal prosecution from publishing truthful information. Even stolen top secret documents are lawful to publish."). Berge clearly cited to *New York Times Co. v. United States*, at AA066, in his opposition to the motion to dismiss.   In that case, the Supreme Court enshrined "the right of the press to publish information of great public concern obtained from documents stolen by a third party." *Id.* (quoting 403 U.S. 713, 714-15 (1971)).[3]

---

[3] For some unknown reason, the District Court not only ignored the fact that this was cited, but did so with vituperative dismissiveness that was beneath the dignity of a first year associate, much less someone ennobled with a robe. *See* ADD8-ADD12.

Central to the arguments between the Parties on motion to dismiss was whether *Bartnicki v. Vopper*, 532 U.S. 514 (2001) was applicable. *See* AA047 – AA049 & AA061 – AA067.  In *Bartnicki*, the Supreme Court clearly stated that "state action to punish the publication of truthful information seldom can satisfy constitutional standards." 532 U.S. at 523 (quoting *Smith v. Daily Mail Publishing Co.*, 433 U.S. 97, 102 (1979).  The Court then emphasized that "if a newspaper lawfully obtains truthful information about a matter of public significance then *state officials* may not constitutionally punish publication of the information, absent a need . . . of the highest order." *Id.* The Supreme Court then went on to reinforce its holding in *New York Times, supra*.  *Id.* Although Appellees question whether the video was of public significance, no reasonable person would find otherwise:  It was of a citizen speaking with public officials, in a government office, on the topic of a public policy enacted in response to a (waning) public health matter.

The District Court was not an impartial arbiter, but rather was an advocate for state authoritarianism. Appellant cited cases that showed the right to publish was clearly established law. *See McMillan v. Carlson*, 369 F. Supp. 1182, 1185 (D. Mass 1973) ("The right to publish is firmly embedded in the First Amendment and is central to the constitutional guarantee of free speech and a free press.") (collecting cases). The District Court went through each case cited by Appellant to attempt to distinguish them ignoring the legal principles in those cases, and in the face of patent

17

Supreme Court holdings, that the right to publish was not clearly established. ADD8 – ADD12.  The District Court asserted that there must be a case directly on point with identical facts, and then asserted Appellant failed to put forth a case directly on point.  ADD12.  It is true that no other court has ruled that Mr. Berge's particular video could be published on Facebook, but if that is how qualified immunity is implemented, then it immunizes every official for every constitutional violation, for every violation is itself *sui generis*, and if every violation is excused without controlling precedent that holds otherwise, then qualified immunity morphs into a general warrant to violate the Constitution.  This is an abhorrent, but logical, outcome of the District Court's ruling if this Court upholds it.

### 1.2.2  Berge was Threatened with Prosecution for Publication of Lawfully Obtained Information

There were no other grounds to dismiss the first count (and injunctive relief precluding retaliation should have issued). Berge was placed in fear of prosecution by Appellees, and he was forced to incur the expense of counsel to advise him as to whether he must abide Appellees' unlawful mandate. As the District Court noted, a plaintiff making a First Amendment retaliation claim under Section 1983 must show "(1) his actions were constitutionally protected, (2) that he was subjected to an adverse action, and (3) that his protected activity was a substantial or motivating factor in that adverse action."  ADD7 (citing *D.B. ex rel. Elizabeth B. v. Esposito,* 675 F.3d 26 (1st Cir. 2012)).  The District Court did not appear to take issue with

18

the second or third factor.  Though Appellees refer to the threats as "*de minimis,*" it is an adverse action—it placed Mr. Berge in fear of prosecution, a fear no reasonable person would ever want to endure.  Prison (which is a punishment for violation of the Wiretapping Act, G.L. c 272, § 99), by design and practice, is a terrible place— it is never *de minimis*.  *Compare Teague v. Quarterman*, 482 F.3d 769, 780 (5th Cir. 2007) (holding that even the slightest loss of good-time credit "can never be deemed *de minimis*").  And, there is no dispute the letter arose from the publication of the video, which is the claimed protected activity.  Thus, the central concern is whether Mr. Berge's actions were constitutionally protected—they were.

First Amendment claims are analyzed in three steps.  *See Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985).  The plaintiff must first demonstrate that the activity at issue is protected by the First Amendment.  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).  Second, if the activity at issue is protected, the context of the activity is analyzed in order to determine which First Amendment standard or standards apply.  *Cornelius*, 473 U.S. at 797.  And third, the Government's justification for restricting the activity is examined to ensure that it meets the applicable standard.  *Id.*  Under this analysis, the publication was fully protected.

As to the first *Cornelius* step, as discussed above, the publication of the video, *i.e.* lawfully-obtained, truthful governmental information, is a right protected by the

First Amendment and over fifty years of Supreme Court precedent. Publication has not been disputed. That the video contains governmental information is not disputed. The letter, however, identifies the Massachusetts Wiretapping Act and FERPA as suggesting the video was not lawfully obtained, and Appellees, in their arguments, have otherwise suggested Berge's recording the video was illegal. Thus, although the District Court avoided these issues by claiming the first two were "moot" and used statements of Berge's counsel in settlement negotiations to assert Berge was not making an affirmative claim of a right to record in the first count, it must be addressed.[4]

Neither can Appellees survive the second step. When First Amendment protections exist, "claimed justifications for denying or burdening free speech are to be subjected to careful and rigid scrutiny." *McMillan*, 369 F. Supp. at 1186. Here, no content-neutral/time, place or manner restriction has been proffered. Rather, Berge was targeted because of the content of his video. Even facially content-neutral regulations are content-based if they cannot be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791

---

[4] Berge does not believe this use of settlement negotiations, even though the exhibits were submitted to the District Court, was proper, as the documents were submitted for a different purpose. That said, Berge does not need to make a claim for damages arising from retaliation by Appellees over his recording as the threat arose relative to the publication, and the demand was that he cease the publication.

(1989).  A content-based restriction is one that "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 135 S. Ct. 2218, 2227 (2015). In deciding whether a restriction is content-based, a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id*.  Appellees' restriction draws such a distinction.

Content-based restrictions "are presumptively unconstitutional" and subject to strict scrutiny. *Id.* at 2226. That is, they "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*. Appellees can neither show a compelling state interest nor narrow tailoring to survive this third *Cornelius* step.  As with the first step, and as discussed below, neither the Wiretapping Act or FERPA justify the restriction, nor do they transform the recording into an illegal action.  The recording itself was protected under the First Amendment and clear First Circuit case law.

### 1.2.3  Berge Had the Right to Record

The central feature of whether Mr. Berge's right to publish lawfully obtained, truthful government information is whether it was lawfully obtained. The First Amendment makes *that* lawful, if nothing else.  As set forth in Count I, ¶ 36, of the Amended Complaint, "there is a First Amendment right to openly record government officials in publicly-accessible areas acting in the course and scope of

their duties." AA025 at ¶ 36.  Berge does not require declaratory relief on this issue, and as he did, in fact, record, his right to record was not chilled.  Thus, Berge's counsel acknowledged that the amended complaint did not contain a separate claim for relief for violation of the right to record.

The District Court prematurely ended the inquiry there; although Mr. Berge does not state an independent *count* for the right to record, the fact that he had the right to record is a necessary predicate to his claim for the right to publish.  Declining to bring a certain claim for relief does not mean that the legal issue is waived, and the District Court provided no analysis to the contrary.  It simply zealously advocated for the government on grounds that even the government did not raise.

Whether there was a right to record should be examined to the extent Appellees contend that the published video was not lawfully created—and they do, in fact, contend the recording was illegal.  *See* AA042-AA046.  The First Amendment protects "a citizen's right to film government officials ... in the discharge of their duties in a public space...." *Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011).  "The proliferation of electronic devices with video-recording capability means that many of our images of current events come from bystanders with a ready cell phone or digital camera rather than a traditional film crew, and news stories are now just as likely to be broken by a blogger at her computer as a reporter at a major newspaper." *Id*. at 84.  "*Glik* explained in this regard that protecting the right to

collect information about government officials 'not only aids in the uncovering of abuses, but also may have a salutary effect on the functioning of government more generally.'" *Project Veritas Action Fund v. Rollins,* 982 F.3d 813, 832 (1st Cir. 2020) (citations omitted).

Even Appellees admit "the right to record affords protection for recordings on matters of public interest[.]" AA046. And, they cited to relevant case law, including *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest.") and *Demarest v. Athol/Orange Cmty. Television, Inc.*, 188 F. Supp. 2d 82, 95 (D. Mass. 2002) ("plaintiffs had a constitutionally protected right to record matters of public interest."). AA046. In *Iacobucci v. Boulter*, government officials repeatedly told a journalist to turn off his camera and stop filming. 193 F.3d 14, 17-18 (1st Cir. 1999). Because the filmer's "activities were peaceful, not performed in derogation of any law, and done in the exercise of his First Amendment rights," a police officer "lacked the authority" to arrest him for filming in a location where he was lawfully permitted to be. *Id.* at 25. When Mr. Berge has the right to be on public property, in the absence of a constitutional enumerated policy, he has a right to record.

Appellees, however, claim that "[b]arring the recording of school business activities conducted in the Administration Office (whether open or secret) is a

content-neutral restriction of general applicability." AA044.    However, there was no such restriction (and the record below is devoid of such).  They made it up, in court filings, out of thin air.  Gloucester's General Counsel confirmed there was no such policy in response to a public records request. *See* AA138.  Even their demand letter made no such mention of this non-existent restriction.    Based on the Superintendent's own words, questioning Gloucester Public School officials and recording their answers is permitted in the Administrative Building *at least some of the time*. *See* AA040. ("The Superintendent continued: 'I'm happy to speak with you about O'Maley if you turn that off.  *You do not have my permission to film here **right now**.*") (emphasis added).  Nor is it content-neutral: it is not a ban on all recordings in the office, only of school business activities.  For example, an employee recording colleagues singing "Happy Birthday" would apparently not be subject to the ban that they claim existed.

Even if there were an outright ban, it would be unconstitutionally applied like the Wiretapping Law in *Project Veritas Action Fund*, 982 F.3d at 837.  The term "school business activities" is void for vagueness.  Appellees claim recording in the office is disruptive because their work involves confidential information.  AA044-AA045.  But, Mr. Berge did not film student records nor did he interact with confidential information.  He filmed his public conversations with government officials where they spoke about the seating policy, the application thereof, and

24

exceptions or amendments thereto. AA022, ¶¶ 8 & 14. Moreover, there are no legitimate privacy concerns. A camera is not magic—it can only record what can already openly be seen. Presumably, these officials are already making sure that citizens lawfully on the premises are not able to see student records or other confidential information. Recording could *expose* a privacy violation by Appellees, but it would not *cause* it (nor would Mr. Berge be the one *committing* it). And, the area where Mr. Berge was is akin to the town hall hallway where commission members were determined to have been lawfully recorded in *Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999). In fact, that publicly accessible area of a government building was deemed a prototypical "public space" where government officials could be recorded under the First Amendment. *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 827 (1st Cir. 2020) (*citing Iacobucci, supra*). Thus, an outright ban is not narrowly tailored to the purported privacy concerns.

### 1.2.4 Neither the Wiretapping Law nor FERPA Prohibited the Recording

Recording of recording "government officials, including law enforcement officers, in the discharge of their duties in a public space" "triggers First Amendment protection as a type of newsgathering." *Project Veritas,* 982 F.3d at 827 (quoting *Glik*, 655 F.3d at 85). This even extends to secret recording. *Id.,* citing *Gericke v. Begin*, 753 F.3d 1 at 9. Thus, in *Project Veritas,* this Court determined that the Massachusetts Wiretapping Act, G.L. c. 272, § 99, was "not narrowly tailored to

further…the identified government interests", including "protecting individual privacy." 982 F.3d at 836. And, unlike in *Project Veritas*, the recording here was not even secret – it was open and announced. Therefore, it was not prohibited under the Wiretapping Act. Contrast G.L. c. 272, § 99(B)(4) (defining "interception" as to "secretly hear, secretly record" or to aid another in doing so). As a result, the Wiretapping Act was wrongly invoked and the threat of prosecution for publication (*i.e.,* "disclosure" under subsection (C)(3)) was unconstitutional.

Neither was the recording or publication a violation of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. FERPA prohibits the disclosure of "education records" by a federally-funded "educational agency or institution" without consent. 20 U.S.C. § 1232g(b). Mr. Berge is not an "educational agency or institution." FERPA is inapplicable. Moreover, the Video is not an "education record" as it contains no information directly related to a student, and it is not maintained by an educational agency or institution or by a person acting for such agency or institution. *See* 20 U.S.C. § 1232g(a)(4). Further, even if it did apply, FERPA gives way to Mr. Berge's First Amendment protected right to record (*i.e.,* to receive information). *See, e.g., Student Press Law Center v. Alexander*, 778 F.Supp. 1227, 1233-1234 (D.D.C. Nov. 21, 1991) (holding student journalists' right to receive information was not overcome by any government interest in protecting

students accused of criminal activity).  Thus, none of the purported justifications for the ban or the threat of prosecution have any basis in law.

Finally, there is no suggestion that this claim is moot.  Even if the claims for declaratory relief were moot (which they are not, as discussed below), Mr. Berge suffered compensable injuries, and he is entitled to recover his damages under Section 1983 for Appellees' violation of his right.  In light of the foregoing, Mr. Berge should be permitted to pursue his Section 1983 retaliation claim for the unlawful threat of prosecution, which violated his clearly established right to publish lawfully obtained and truthful material.

## 2.0    Berge's Claims for Declaratory Relief are Not Moot

The District Court invented the claim that "Plaintiff has conceded that he has no First Amendment right to record in the Administrative Office for Gloucester Public Schools".  ADD15.  No such concession occurred—Mr. Berge's counsel, as noted above, merely stated that no *affirmative claim* under Section 1983 was being made independently regarding the right to record.  The District Court points to no actual language from Mr. Berge or his counsel in the record to support its advocacy on behalf of the government.  That alone is a basis for a reversal of the finding of mootness, as the District Court relied on its imaginary concession to determine the "voluntary cessation" doctrine did not apply.  Fortunately, mootness is reviewed *de novo.  See Ramírez v. Sánchez Ramos,* 438 F.3d 92, 96 (1st Cir. 2006).

27

Instead, as pleaded (and verified under penalty of perjury), Mr. Berge "desires to continue to record and publish videos, with audio included, of his anticipated future communications with" Appellees, which necessarily would include any and all agents of the School Committee.  AA027-AA028, ¶¶ 47, 55 & 60.  Mr. Berge may seek declaratory relief that his actions comported with the Wiretapping Act and FERPA, and that the First Amendment protects his right to this video.

Unlike the District Court, Appellees, at least, proffered a record-based argument as to why they believe the claims for declaratory relief are moot:  that they withdrew the demand Mr. Berge cease publishing the video.  AA055.  This, however, is insufficient, and Appellees knew it would not suffice, alone, as they then proceeded to argue the "voluntary cessation" doctrine did not apply.  *Id.*  But, as discussed herein, the matter is not moot.

When a defendant asserts mootness, "it bears the heavy burden of persuading the court that there is no longer a live controversy."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC) Inc.*, 528 U.S. 167, 189 (2000); *Conservation Law Found. v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004) (finding that the party invoking the doctrine of mootness has the burden of establishing mootness).

"A claim is not moot unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968).  In *Roman Catholic Diocese v.*

28

*Cuomo*, the Supreme Court clarified that a temporary reprieve from unconstitutional executive order issued by a governor is not grounds for dismissal as moot. 141 S.Ct. 63 (2020). Similarly, the partial withdrawal (or even complete withdrawal) of the letter at issue is but a temporary reprieve, as Mr. Berge intends to continue making such recordings and publishing them. Even if Mr. Berge were to agree that the withdrawal of the letter was on behalf of all Appellees, that withdrawal is silent as to future-published videos. Appellees do not admit Mr. Berge had the right to record or publish. "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (first citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974); and then citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007)). The law does not "require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune*, 549 U.S. at 129. Failure to disavow future prosecution is fatal to a claim of mootness. *See N.H. Lottery Comm'n v. Rosen,* 986 F.3d 38, 54 (1st Cir. 2021). There are no assurances that, the next time Mr. Berge makes and publishes a similar such video, one or more of the appellees will not again make a take-down demand or threat of prosecution in derogation of the First Amendment, raising baseless claims under FERPA and the Wiretapping Act.

In *Roman Catholic Diocese,* the Court relied on *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*  *See* 141 S.Ct. at 68 citing 528 U.S. 167, 189 (2000).[5]  *Friends of the Earth* is a "voluntary cessation" case.  528 U.S. at 189.  The voluntary cessation doctrine "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).  A defendant's "voluntary cessation of challenged conduct does not ordinarily render a case moot."  *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). "This is to avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after."  *ACLU of Mass. v. United States Conf. of Catholic Bishops*, 705 F.3d 44, 54-55 (1st Cir. 2013).   As the Third Circuit explained:

> One scenario in which we are reluctant to declare a case moot is when the defendant argues mootness because of some action it took unilaterally after the litigation began. This situation is often called "voluntary cessation" and it "will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' When a plaintiff seeks declaratory relief, **a defendant arguing mootness must show that there is no reasonable likelihood that a declaratory judgment would affect the**

---

[5] The Supreme Court also relied on *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007), which is a "capable of repetition yet evading review" case.  Mr. Berge does not argue that this is such a case.

**parties' future conduct.** *See Harnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020) (citations omitted) (emphasis added).

When the government claims mootness due to voluntary cessation, it "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190.  Appellees have not met this showing.  To the contrary, they explicitly argue that the "recording and posting *were not* protected activities under the First Amendment."  AA055.  Thus, as much as they attempt to claim the withdrawal was "not the stuff of judicial avoidance", there is nothing other than this lawsuit that fostered the withdrawal.  *Id.*  The declaratory relief claims are not moot and the dismissal must be reversed.

## 3.0    Preliminary Injunctive Relief is Warranted

As the dismissal was improper and should be reversed, the motion for injunctive relief is not moot and, therefore, should not have been denied. Specifically, Mr. Berge sought a temporary restraining order and preliminary injunction barring Appellees from threatening or coercing him into removing his video.  AA008.  As a matter of procedure, no timely opposition was filed, AA115, and Appellees have not cross-appealed the denial (as moot) of their motion to file a

late opposition.[6]   The denial should be reversed, with instructions that the preliminary injunction enter.

There are four factors in deciding whether to grant a preliminary injunction: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, *i.e.,* the hardship to the nonmovant is enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Charlesbank Equity Fund II v. Blinds to Go, Inc*., 370 F.3d 151, 162 (1st Cir. 2004). Likelihood of success on the merits "is the most important of the four preliminary injunction factors." *Doe v. Trs. of Bos. Coll*., 942 F.3d 527, 533 (1st Cir. 2019). Particularly in First Amendment cases, "the likelihood of success on the merits is the linchpin of the preliminary injunction analysis." *Sindicato Puertorrigueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10-11 (1st Cir. 2012). To avoid a preliminary injunction, the government must justify its restriction on speech. *See Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 228, 233 (D. Me.

---

[6] As Appellees' motion to file a late opposition was denied, albeit as moot, it was incumbent upon them to cross-appeal in the event the relief sought in Mr. Berge's appeal was granted. *See United States v. Hope,* 487 F.3d 224, 228 n.7 (5th Cir. 2007) (where motion was denied as moot, relief sought in the motion is not properly before the Court if not cross-appealed). Nevertheless, as discussed herein, injunctive relief is warranted even over Appellees' objections.

2019) (*citing Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017)).   Mr. Berge meets all of these factors.

As to likelihood of success on the merits, for the reasons why Appellees are not entitled to dismissal, so too is Mr. Berge likely to succeed.  The government threatened Mr. Berge for his exercise of his First Amendment protected right to publish the lawfully created video.  Although, as Appellees note in their untimely opposition to the motion, that the demand letter was "withdrawn," it was only withdrawn on behalf of the Committee—the letter makes no mention of the other appellees (Lummis, Eason, and, especially, Delisi) and it only refers to threats of criminal action, not civil.  To the contrary, they stand by their erroneous position that Mr. Berge cannot again lawfully record and publish as he did.  Thus, Mr. Berge is likely to succeed on the merits of his Section 1983 claim.

Absent injunctive relief, Berge does and will suffer irreparable harm. He is in fear that his protected activity and future protected activity will subject him to legal exposure.  Should he comply, and let his speech be chilled, the harm is irreparable. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 374 (1976).  Because of this, if a plaintiff in a First Amendment case demonstrates a likelihood of success, they also establish irreparable harm. *Fortuño*, 699 F.3d at 15.

33

When government action restricts First Amendment-protected speech, the balance of hardships tends to weigh heavily in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) (observing that "insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech") *quoting Freedman v. Maryland*, 380 U.S. 51, 61-62 (1965) (Douglas, J., concurring) ("I do not believe any form of censorship—no matter how speedy or prolonged it may be—is permissible.")[7] The government officials may not enjoy that Mr. Berge can exercise his rights, but there is no harm to them. What they do in a public setting for the public is not private. When they speak to citizens at work, at their offices, on matters of policy, it is of paramount public concern. Recordings such as this are not protected under the Wiretapping Act (nor could they be). Recordings such as this are not protected under FERPA (nor could they be as student records have nothing to do with the facts and circumstances).

Appellees have suggested that that "barring the recording of school business activities conducted in the Administration office (whether open or secret) is a content-neutral restriction of general applicability which serves significant

---

[7] The *Firecross* decision actually cited Justice Douglas's dissent in *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 563 (1975), but Justice Douglas was there quoting his *Freedman* concurrence.

governmental interests." AA122. However, there was no such policy at the time this suit was filed, and to this day, it appears that there is no such policy. Gloucester's General Counsel confirmed the absence of such policy, responding to a public records request. *See* AA138. Even if it existed, it would fail constitutional scrutiny— it flies in the face of the right to record. And, in fact, it is not content-neutral—it would permit recording of other activities there. Appellees falsely asserted that Mr. Berge was recording in a "secure setting" without any evidence whatsoever. AA122. They identified nothing "secure" and it was not actually secure, as the public is invited in. And, no claim of qualified immunity could or should apply. *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 732 (9th Cir. 2022) ("Thus, a plaintiff seeking injunctive relief for an ongoing First Amendment violation (*e.g.,* a retaliatory policy) may sue individual board members of a public school system in their official capacities to correct the violation."); *see also Quern v. Jordan*, 440 U.S. 332, 337 (1979). Qualified immunity is a shield from damages in the event a right is not clearly established—it is not a license to run roughshod over the constitution. As Appellees would suffer no harm by mere sunshine, the balance tips heavily in Berge's favor.

Similarly, "[t]he public interest is served by protecting First Amendment rights from likely unconstitutional infringement." *Comcast of Maine/New Hampshire*, 435 F. Supp. at 250. The public interest is served by issuing an

injunction where "failure to issue the injunction would harm the public's interest in protecting First Amendment rights in order to allow the free flow of ideas." *Magriz v. union do Tronquistas de Puerto Rico, Local 901*, 765 F. Supp. 2d 143, 157 (D.P.R. 2011) (citing *United Food & Commer. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 363 (6th Cir. 1998)). "When a constitutional violation is likely, moreover, the public interest militates in favor of injunctive relief because 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Id*. (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010)). Here, the public interest favors enjoining Appellees' threats, intended to chill Mr. Berge's speech with threat of further legal action. Thus, as all factors are met, the preliminary injunction should issue.[8]

## CONCLUSION

For the foregoing reasons, the order and judgment of dismissal should be reversed and the matter remanded for further proceedings. And, the order denying the motion for injunctive relief as moot should be reversed, with directions that the requested injunctive relief enter.

---

[8] Given the procedural posture, where the District Court simply ignored the motion until the matter was dismissed, and where Appellees have had a full and fair opportunity to brief the matter, a preliminary injunction, rather than a temporary restraining order, is proper.

Date: February 23, 2023.                    Respectfully submitted,

                                            RANDAZZA LEGAL GROUP, PLLC

                                            /s/ Marc J. Randazza
                                            Marc J. Randazza (Bar No. 90629)
                                            Jay M. Wolman (Bar No. 1135959)
                                            Robert J. Morris II (Bar No. 1205891)
                                            30 Western Avenue
                                            Gloucester, MA 01930
                                            Tel: (888) 887-1776
                                            ecf@randazza.com

                                            Mark. Trammell
                                            MTrammell@libertyCenter.org
                                            Joshua W. Dixon
                                            JDixon@LibertyCenter.org
                                            Eric A. Sell
                                            ESell@LibertyCenter.org
                                            CENTER FOR AMERICAN LIBERTY
                                            1311 South Main Street, Suite 302
                                            Mount Airy, MD 21771
                                            Tel: (703) 687-6200

                                            *Attorneys for Appellant,*
                                            *Inge Berge.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 8,161 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Dated: February 23, 2023.

/s/ Marc J. Randazza
Marc J. Randazza

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: February 23, 2023.

/s/ Marc J. Randazza
Marc J. Randazza

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

| Document Description | Pages |
|---|---|
| Memorandum and Order granting Motion to Dismiss, Dkt. No. 32 (Dec. 5, 2022) | ADD1 - ADD16 |
| Order Dismissing Case, Dkt. No. 33 (Dec. 5, 2022) | ADD17 |
| Notice of Appeal, Dkt. No. 34 (Dec. 5, 2022) | ADD18 - ADD19 |

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INGE BERGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SCHOOL COMMITTEE OF GLOUCESTER, | ) |
| | ) |
| BEN LUMMIS, in his personal capacity; | ) |
| | ) |
| ROBERTA A. EASON, in her personal | ) |
| capacity; | ) |
| | ) |
| STEPHANIE DELISI, in her personal | ) |
| capacity; | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No. 22-CV-10346-AK

## MEMORANDUM AND ORDER

**A. KELLEY, D.J.**

Plaintiff Inge Berge (hereinafter "Plaintiff"), a citizen of Gloucester, Massachusetts,

brings this action pursuant to 42 U.S.C. § 1983 against the School Committee of Gloucester

(hereinafter "the Committee"); as well Ben Lummis (hereinafter "Lummis"), Superintendent

of Gloucester Public Schools; Roberta A. Eason (hereinafter "Eason"), Human Resources

Director of Gloucester Public Schools; and Stephanie Delisi (hereinafter "Delisi"), Executive

Secretary of Gloucester Public Schools; each in their individual capacities. Plaintiff alleges that

the defendants retaliated against him in violation of his First Amendment right to freedom of

speech. Plaintiff filed his initial complaint [Dkt. 1], which he timely amended [Dkt. 11 ("Am.

Compl.")], requesting, among other things, that the Court award him damages related to

defendants' alleged violation of his First Amendment right to record and publish a video he

1

**ADD1**

created and subsequently posted to Facebook.  [Id. at ¶¶ 30, 58].  He also requests declaratory relief related to Mass. Gen. Laws ch. 272 § 99 (hereinafter "Massachusetts Wiretap Statute") and 28 U.S.C. § 1282 (hereinafter "FERPA") [id. at ¶¶ 48, 56].  Pending before the Court are Plaintiff's motion for a temporary restraining order [Dkt. 2], which defendants oppose [Dkt. 23], defendants' motion to dismiss [Dkt. 15], which Plaintiff opposes [Dkt. 18], and defendants' motion for extension of time to file their opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction [Dkt. 23], which Plaintiff opposes [Dkt. 29, 30].  For the reasons set forth below, the Court **GRANTS** the defendant's motion to dismiss [Dkt. 15], **DENIES AS MOOT** Plaintiff's motion for temporary restraining order and preliminary injunction [Dkt. 2], and **DENIES AS MOOT** defendant's motion for extension of time to file opposition to Plaintiff's motion for a temporary restraining order and a preliminary injunction [Dkt. 27].

## I.    BACKGROUND

Unless otherwise noted, the facts here are recited as alleged in Plaintiff's Verified First Amended Complaint.  [See generally Am. Compl.].  Plaintiff "is a citizen journalist residing in Gloucester, Massachusetts who publicly discusses Massachusetts and local governments' COVID-19 restrictions and other political issues."  [Id. at ¶ 7].  On March 3, 2022, Plaintiff visited the Administrative Offices for Gloucester Public Schools to speak with and record his interactions with defendant Lummis regarding the district's policy of "limited seating capacity at school events" as part of the district's continued efforts to mitigate the effects of the COVID-19 pandemic, which was "making it difficult to purchase tickets for him to attend his daughter's middle school play."  [Id. at ¶ 8].  The Administrative Office building is accessible to the general

**ADD2**

public.  [Id. at ¶ 9).  When Plaintiff entered the building, there was no "indication that video recording or photography was restricted."  [Id. at ¶ 10).  While filming, Plaintiff "held his camera out in the open," and "verbally confirmed that he was filming."  [Id. at ¶ 11).  After entering, Plaintiff "was directed to [defendant Delisi] and began to speak with her. He began this conversation by stating 'I'm filming this, I'm doing a story on it.'"  [Id. at ¶ 12).

Plaintiff's Verified First Amended Complaint stated, "[a]t no point did anyone inform Mr. Berge that filming was not permitted, although two individuals did protest that they did not personally wish to be filmed. These individuals then retreated to private office areas, and were not filmed after that point."  [Id. at ¶ 13).  However, Plaintiff's video shows defendant Lummis asking Plaintiff, "Can you turn that off, sir?" followed by the instruction, "You do not… You don't have permission to film in this, in this area."  See Inge Berge, FACEBOOK (Mar. 3, 2022, 1:37 PM), https://www.facebook.com/inge.berge.9/videos/1571702173204109 (hereinafter "Recording").  Plaintiff was then approached by Gregg Bach, the Assistant Superintendent of Teaching and Learning, who spoke with him regarding Plaintiff's "attempt to attend his daughter's play," while Plaintiff filmed.  [Am. Compl. at ¶ 14).  After a short conversation, Plaintiff left the building.  [See id.)  Later that day, at 1:37 PM, Plaintiff "uploaded his recording of the above encounter to his publicly accessible Facebook page" and added "commentary."  [Id. at ¶ 15; see also Recording].  Plaintiff later "received a letter from Gloucester Public Schools signed by Roberta A. Eason, its Director of Human Resources," that alleged Plaintiff was in violation of the Massachusetts Wiretap Statute because he recorded his conversation with Delisi without her consent and uploaded the video to Facebook.  [Am. Compl. at ¶ 16).  The letter demanded that Plaintiff "immediately remove the post from [his] Facebook account and/or any

**ADD3**

other communications to prevent the pursuit of legal (sic) in this matter." [Id. at ¶ 17.]  The letter

did not specify what form that legal action would take.  [See id. at ¶ 21.]


## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and

actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court

must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d

100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the complaint to

distinguish factual allegations from conclusory legal statements.  Id.  Factual allegations must be

accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not disregard

properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-

Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the Court must determine

whether the factual allegations present a "reasonable inference that the defendant is liable for the

misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is

generally limited to "the complaint, documents attached to it, and documents expressly

incorporated into it."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014).


## III.    DISCUSSION

Plaintiff claims that pursuant to 42 U.S.C. § 1983, he had a First Amendment right to

record and publish the Recording [see Am. Compl. at ¶ 30], which defendants violated when

4

**ADD4**

they allegedly retaliated against him for protected activity within the scope of those rights [see id. at ¶ 32]. He seeks declaratory relief from this Court stating that his actions did not violate the Massachusetts Wiretap Statute or FERPA. Section 1983 provides that "[e]very person" acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia" who subjects or causes to subject someone "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the injured party. 42 U.S.C. § 1983. An individual asserting a Section 1983 claim must show that the challenged conduct is "attributable to a person acting under color of state law" and that the conduct was a "denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997); see Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation omitted) (explaining that Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred").

### a. Defendants' Motion to Dismiss

Defendants argue that Plaintiff fails to state claims upon which relief may be granted. [See Dkt. 16 at 2]. Alternatively, defendants argue that Plaintiff's act of recording is not protected by the First Amendment; that "because the recording did not involve a 'matter of public concern,' [his] posting on Facebook was likewise unprotected," [id. at 3]; that "defendants did not retaliate against plaintiff for engaging in protected activity," [id.]; that defendants "are entitled to qualified immunity," [id.]; that Plaintiff failed "to state a claim of municipal liability against the Gloucester School Committee," [id.]; and finally, that "because plaintiff fails to state claims under Section 1983, his demands for declaratory relief under the Massachusetts Wiretap Statute and FERPA are moot," [id.]. Conversely, Plaintiff argues that because he had a First Amendment right to both record and publish the video, defendants illegally retaliated against him

**ADD5**

for engaging in protected activity. He further argues that the individual defendants are not entitled to qualified immunity, that the Gloucester School Committee is liable, and that his claims for declaratory relief related to the Massachusetts Wiretap Statute and FERPA are not moot.

### i. Plaintiff's statements regarding a First Amendment right to record

As an initial matter, the Court first untangles Plaintiff's contradictory claims regarding his alleged right to record his video under the First Amendment. Under Rule 12(b)(6), the Court may "augment . . . facts and inferences" from the complaint "with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley, 657 F.3d at 46. The Court may also consider "concessions in plaintiff's response to the motion to dismiss." Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012) (internal quotations omitted). In light of these instructions, the Court finds that Plaintiff has withdrawn his claim that he had a First Amendment right to record his video.

Plaintiff initially claimed he had a "First Amendment right to record and publish" the conversations he had with defendants on March 3, 2022. [Am. Compl. at ¶ 30]. However, in an email attached as an exhibit to his opposition to defendants' motion to dismiss, Plaintiff's counsel conceded that Plaintiff is not making any claim regarding a First Amendment right to record. [See Dkt. 18-2 at 2] (stating "We have accepted, for the sake of peace at this time, your position that there was no First Amendment right to record in that office. (We do disagree, but had not sought your admission of this, *nor do we bring that claim in the amended complaint*).") (emphasis added). Further, in that same email, Plaintiff's counsel stated that Plaintiff "specifically omitt[ed] a First Amendment right to record in the building" from the operative

**ADD6**

complaint.  [Id.]  Regarding Plaintiff's right to record in the Administrative Offices, counsel also stated, "We believe there are other legal reasons that he could do that, but in the interest of compromise, *we backed down from claiming a First Amendment right to record*."  [Id.] (emphasis added).  Because counsel for Plaintiff has been adamant in negotiations with opposing counsel in asserting that his client was not bringing a claim regarding an alleged First Amendment right to record in the Administrative Offices, the Court dismisses the portions of his claim relating to that professed right.

### ii.  Retaliation

Having addressed Plaintiff's alleged First Amendment right to record his video, the Court now turns to his narrowed claim that he had a right to publish it, and that defendants' actions amount to retaliation under the First Amendment.  For Plaintiff to establish that he was subjected to First Amendment retaliation under 42 U.S.C. § 1983, he must show that (1) his actions were constitutionally protected, (2) that he was subjected to an adverse action, and (3) that his protected activity was a substantial or motivating factor in that adverse action.  See D.B., ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43(1st Cir. 2012).  Defendants argue that they did not retaliate against Plaintiff because their actions were *de minimis*, that Plaintiff failed to allege sufficient facts to show that he engaged in constitutionally protected activity, and that Plaintiff failed to show that he was subjected to an adverse action.  They also argue that the individual defendants, Lummis, Delisi, and Eason, are protected by the doctrine of qualified immunity. Plaintiff argues that Defendant's March 3, 2022, demand letter was an adverse action against him that was greater than *de minimis*, and that the individual defendants are not entitled to qualified immunity because Plaintiff's right to publish his video was clearly established.[1]

---

[1] In a footnote, Plaintiff appears to seek this Court's leave to amend his First Verified Amended Complaint.  [See Dkt. 18 at 16, n. 7] ("Although the individual defendants were named in their personal capacities, to the extent

**ADD7**

### 1. Qualified immunity

Defendants argue that defendants Lummis, Delisi, and Eason are entitled to qualified immunity.  [Dkt. 16 at 15].  Qualified immunity provides that "government officials performing discretionary functions" are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The Court must decide "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation."  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)).  To answer the second question, the Court must evaluate whether the law was "sufficiently clear" such that "every reasonable official would understand that what he is doing is unlawful."  Eves v. LePage, 927 F.3d 575, 583 (1st Cir. 2019) (citation and internal quotation marks omitted).  In other words, immunity "exists even where the abstract 'right' invoked by the plaintiff is well-established, so long as the official could reasonably have believed 'on the facts' that no violation existed."  Dirrane v. Brookline Police Dep't., 315 F.3d 65, 69 (1st Cir. 2002) (citations omitted).  Subjective intent is irrelevant to a qualified immunity defense.  See Abreau-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir. 2001) (citing Crawford-El v. Britton, 523 U.S.574, 588 (1998)).  Courts need not follow the two-step analysis sequentially.  Maldonado, 568 F.3d at 270.

---

necessary, Plaintiff would seek leave to amend to name them in their official capacities as well.  This failure was an error, not a willful omission.").  Plaintiff's request is improperly made, untimely and fails to state sufficient factual or legal support that would allow the Court to determine whether justice so requires such an amendment.

**ADD8**

The Court begins at the second prong of the qualified immunity analysis. Though Plaintiff argues "[t]he right to publish without government interference under the First Amendment is clearly established, long-cherished, and jealously guarded" [Dkt. 18 at 16], the Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) (quoting Plumhoff v. Rickard, 572 U.S. 765, 779 (2014)). Instead, "the right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." Reichle v. Howards, 566 U.S. 658, 665 (2012) (internal quotations marks and citations omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." White v. Pauly, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted).

Under these demanding standards, Plaintiff's arguments that the individual defendants should not be afforded qualified immunity fail. None of the cases Plaintiff cites shows an established rule relevant to the particular facts of this case, let alone one that places "the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). To the contrary, Plaintiff's cited passages are inapplicable to the facts of this case, especially considering the Supreme Court's instruction that "[i]t is not enough that the rule is suggested by then-existing precedent." Wesby, 138 S. Ct. at 590 ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.").

Here, Plaintiff has "not cited any cases of controlling authority in [this] jurisdiction at the time in question which clearly established the rule on which [he] seek[s] to rely, nor [has he]

**ADD9**

identified a consensus of cases of persuasive authority such that a reasonable [official] could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 604 (1999).  To support his argument, Plaintiff cites Kleindienst v. Mandel, 408 U.S. 753, 771 (1972) (Douglas, J., dissenting) ("The First Amendment involves not only the right to speak and publish but also the right to hear, to learn, to know"); Branzburg v. Hayes, 408 U.S. 665, 727 (1972) (Stewart, J., dissenting) ("the right to publish is central to the First Amendment and basic to the existence of constitutional democracy"); Red Linon Broadcasting Co., Inc. v. F.C.C., 395 U.S. 367, 390 (1969) ("It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas…. It is the right of the public to receive suitable access to social, political, esthetic, moral and other ideas and experiences."); and McMillan v. Carlson, 369 F. Supp. 1182, 1185 (D. Mass 1973) ("The right to publish is firmly embedded in the First Amendment and is central to the constitutional guarantee of free speech and a free press."). [Dkt. 18 at 16].  The Court analyzes each of these cases in turn.

The Mandel Court addressed the question of whether the Attorney General's "action in refusing to allow an alien scholar to enter the country to attend academic meetings violate[d] the First Amendment rights of American scholars and students who had invited him."  408 U.S. at 754.  Far from meeting the burden of showing "controlling authority in their jurisdiction at the time in question," the language from Mandel that Plaintiff cites is not taken from the precedential majority opinion, but from Justice Douglas' dissent.  Wilson, 526 U.S. at 604; see Mandel, 408 U.S. at 771 (Douglas, J., dissenting).  In fact, the Mandel Court did not even address the First Amendment rights of those scholars and students.  Mandel, 408 U.S. at 770 (majority op.) ("What First Amendment or other grounds may be available for attacking exercise of discretion

**ADD10**

for which no justification whatsoever is advanced is a question we neither address or decide in this case").

Likewise, Plaintiff's cited language from <u>Branzburg</u> is also taken from a dissent, not a controlling authority. <u>See</u> 408 U.S. at 727 (Stewart, J., dissenting). <u>Branzburg</u> was a case about "whether requiring newsmen to appear and testify before state or federal grand juries abridges [their] freedom of speech." <u>Id.</u> at 667 (majority op.). The <u>Branzburg</u> Court's clear language in framing the issue in that case distinguishes itself from Plaintiff's case here: "But these cases involve no intrusions upon speech or assembly, *no prior restraint or restriction on what the press may publish*, and no express or implied command that the press publish what it prefers to withhold." <u>Id.</u> at 681 (emphasis added).

Plaintiff also cites <u>Red Linon Broadcasting</u>, 395 U.S. at 390, as applicable. However, that case involved a challenge to the "constitutional and statutory bases of the [fairness] doctrine and component rules," not a question of whether or not an individual's right to publish was infringed. <u>Id.</u> at 370–71. The "fairness doctrine" refers to the F.C.C.'s "requirement that discussion of public issues be presented on broadcast stations, and that each side of those issues be given fair coverage." <u>Id.</u> at 370. While both Plaintiff's claims and the fairness doctrine do involve the First Amendment, these two cases are not similar in any cognizable way.

Finally, Plaintiff also relies on <u>McMillan</u>, 369 F. Supp. at 1188. Here, Plaintiff finds a case which tracks at least somewhat closer to the issue in his case, though not close enough to have his desired effect. There, the plaintiff George McMillan sought declaratory and injunctive relief regarding his denied request to interview an inmate at the United States Penitentiary at Leavenworth, Kansas for the purpose of writing a biography. <u>See id.</u> at 1184. Far from being a case that established the breadth of the public's right to publish under the First Amendment

**ADD11**

beyond all doubt, the <u>McMillan</u> court held that the Bureau of Prisons' "total ban policy of personal interviews of an inmate by an author is an invalid restriction of First Amendment rights of freedom of speech." <u>Id.</u> at 1188. As is the case with the other decisions referenced by Plaintiff, the two situations are easily distinguishable.  <u>Id</u>.

Taken holistically, Plaintiff's attempts to show that his right to publish his video was clearly established present a picture more akin to a lackadaisical attempt to cite cases that mention the First Amendment somewhere within the document; none of those cases presents a precedent even vaguely applicable to the facts here, let alone a rule where "every reasonable official would understand that what [they were] doing [was] unlawful." <u>Eves</u>, 927 F.3d at 583. At best, they constitute the kind of generality that the Supreme Court has "repeatedly told courts" they should not engage in, by overreaching to "define clearly established law." <u>Plumhoff</u>, 572 U.S. at 779.  Accordingly, because Plaintiff has failed to meet his burden to show that the individual defendants' conduct violated any clearly established right, the Court finds that defendants Lummis, Delisi, and Eason are entitled to the protection of qualified immunity.  As such, Count I of Plaintiff's claim against these individual defendants is dismissed.[2]

### iii. Withdrawal of the demand letter

Defendants argue that because they withdrew the March 3, 2022, letter, Plaintiff's claims for declaratory relief under the Massachusetts Wiretap Statute and FERPA (Counts II and III) are moot.  [Dkt. 16 at 18].  For his part, Plaintiff disputes that defendants' withdrawal of the March

---

[2] The Court notes Plaintiff's arguments that, "[t]o the extent possible, Plaintiff challenges the intertwined doctrines of <u>Monell</u> and qualified immunity." [Dkt. 18 at 15, n. 6].  Since this case, however, is not about whether or not the qualified immunity doctrine and <u>Monell</u> are good law, a fact that Plaintiff alludes to when he "recognizes that this Court must follow these doctrines until the Supreme Court reconsiders its approach," the Court declines to address this argument.  [Id.]

**ADD12**

3, 2022, letter applied to all defendants, instead alleging that the letter applied only to the Committee, and therefore Counts II and III, at least against the individual defendants, should remain. [Dkt. 18 at 18]. "Mootness is a jurisdictional defect, rooted in Article III case or controversy considerations." Horizon Bank & Tr. Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004) (citing United States v. Reid, 369 F.3d 619, 624 (1st Cir.2004)); see also Matt v. HSBC Bank USA, N.A., 783 F.3d 368, 372 (1st Cir. 2015). For an Article III court to have jurisdiction, "an actual controversy" must exist "at all stages of review, not merely at the time the complaint is filed." Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (per curiam) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)) (internal quotation marks omitted). In other words, a case is moot if a court "may not provide any effectual relief to the potentially prevailing party." Matt, 783 F.3d at 372 (quoting Horizon Bank & Tr. Co., 391 F.3d at 53) (internal quotation marks omitted). Where a matter is moot, "dismissal of the action is compulsory." Redfern v. Napolitano, 727 F.3d 77, 83–84 (1st Cir. 2013) (quoting Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001)).

Here, it is clear that counsel for the defendants—all of them—intended to withdraw the letter sent to Plaintiff on March 3, 2022. [See Dkt. 18-1]. In her letter to Plaintiff's counsel on March 22, 2022, counsel for the defendants stated, "I informed you on March 11, 2022 on a conference call . . . that the District would be withdrawing the letter to Mr. Berge dated March 3, 2022." [Id.] She further clarified, "Please accept this as written notice that the letter dated March 3, 2022 *has been revoked*."" [Id.] (emphasis added). The Court finds no merit to

**ADD13**

Plaintiff's argument that "the letter was only withdrawn on the part of one defendant." [Dkt. 18 at 18].  The March 22, 2022, letter sent by defendants' counsel stated that the March 3, 2022, letter was *revoked*, not that only the school committee had disavowed it.  [Dkt. 18-1].  Absent the presence of the threat of legal action within that letter, there remains no live controversy, and subsequently, no availability for the Court to grant relief, thereby rendering Plaintiff's claims moot.[3]

Both parties have set forth arguments on the voluntary cessation doctrine. [See Dkt. 16 at 19; Dkt. 18 at 19].  Similarly, this doctrine does not aid plaintiff with a prevailing argument.  The voluntary cessation doctrine "can apply when a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated after the suit's dismissal."  Boston Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021) (internal quotation marks and citations omitted).  The voluntary cessation doctrine exists primarily to deter a "manipulative litigant from immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after."  Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016)

The Court is unconvinced that the voluntary cessation doctrine applies here.  First, as conceded by the Plaintiff, the gist of defendants' March 3 letter was a legal threat "that he would be prosecuted if he did not cease **publication** of the video."  [Dkt. 18-2] (emphasis in original).  The publication has already occurred, and defendants have agreed to take no further action.  Plaintiff conceded, through counsel, that he agreed the district will "take no further action," so

---

[3] Plaintiff claims that defendants' argument "that the withdrawal of the Demand Letter renders the complaint moot" converts the motion into one for summary judgment.  [Dkt. 18 at 18, n.8].  Because Plaintiff conceded in his opposition that the letter was indeed withdrawn—at least regarding the Committee—the Court declines to convert the motion into one for summary judgment.  [Dkt. 18 at 18].  Given the context and wording of the letter in the exhibit provided by Plaintiff himself, the Court finds that the letter was withdrawn in its entirety.  [See Dkt. 18-1]. at 2].

**ADD14**

the Court finds little chance (let alone any reasonable one) that the district would, after the

dismissal of this case, send a subsequent demand letter to reignite this controversy.   [Dkt. 18-2].

Further, because Plaintiff has conceded that he has no First Amendment right to record in the

Administrative Office for Gloucester Public Schools, the possibility that this entire situation will

be repeated after dismissal is also remote.  Though Plaintiff claims he intends to return to

conduct First Amendment audits in the Administrative office, unless Plaintiff decides to forego

his own stance that he does not have a First Amendment right to record videos in those offices,

there is no reasonable expectation that Defendants will seek to enjoin further publications by

Plaintiff after dismissal.  In light of these findings, and because "the voluntary cessation

exception can be triggered *only* when there is a reasonable expectation that the challenged

conduct will be repeated following dismissal of the case," that exception does not apply here.

ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 56 (1st Cir. 2013).  It therefore

follows that because defendants' withdrawal of the demand letter resulted in the removal of any

live controversy here, and the voluntary cessation exception does not apply, the Court dismisses

the remainder of Plaintiff's claims against all defendants.


IV.   **CONCLUSION**

For the foregoing reasons, the defendants' motion to dismiss [Dkt. 15] is **GRANTED**. In

accordance with that ruling, Plaintiff's motion for temporary restraining order and preliminary

injunction [Dkt. 2] is **DENIED AS MOOT**. Likewise, Defendants' motion to extend time to file

opposition to Plaintiff's motion for a temporary restraining order and preliminary injunction

[Dkt. 27] is **DENIED AS MOOT**.

**SO ORDERED.**

**ADD15**

Dated: December 5, 2022                              /s/ Angel Kelley
                                                     Hon. Angel Kelley
                                                     United States District Judge

**ADD16**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Inge Berge

      Plaintiff

     v.                                       Civil Action No. 1:22-10346-AK

School Committee of Gloucester, et al.

      Defendants

<u>ORDER DISMISSING CASE</u>

December 5, 2022

<u>A. KELLEY, D.J.</u>

      In accordance with the Court's Memorandum and Order [Dkt. # 32] entered on December 5, 2022, granting defendants' motion to dismiss, it is ORDERED that the above-entitled action be, and hereby is, dismissed.

                                                By the Court,

                                              <u>/s/ Arnold Pacho</u>
                                              Deputy Clerk

**ADD17**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

INGE BERGE,

                            Plaintiff,

        v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A. EASON,
in her personal capacity; and STEPHANIE
DELISI, in her personal capacity,

                            Defendants.

Civil Action No. 1:22-CV-10346

**NOTICE OF APPEAL**

Plaintiff Inge Berge hereby gives notice that he appeals to the United States Court of Appeals for the First Circuit from the Order (Dkt. Nos. 32 & 33) dated December 5, 2022, and judgement thereon, and all other interlocutory orders and other rulings.

Dated: December 5, 2022.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
Robert J. Morris II (*pro hac vice*)
mjr@randazza.com, ecf@randazza.com
Randazza Legal Group, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Plaintiff
Inge Berge*

**ADD18**

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2022, the foregoing document was served on all parties

or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

**ADD19**