**No. 22-1954**

*In the*

# UNITED STATES COURT OF APPEALS
*for the*
# FIRST CIRCUIT

INGE BERGE

*Plaintiff-Appellant,*

v.

SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, IN HIS PERSONAL CAPACITY; ROBERTA A. EASON, IN HER PERSONAL CAPACITY; AND STEPHANIE DELISI, IN HER PERSONAL CAPACITY

*Defendants-Appellees.*

*On Appeal from the United States District Court*
*for the District of Massachusetts*
*No. 1:22-cv-10346*
*The Honorable Angel Kelley*

## APPELLANT'S APPENDIX

MARC J. RANDAZZA
ROBERT J. MORRIS II
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: 702-420-2001
ecf@randazza.com

## TABLE OF CONTENTS

| Date Filed | Description | Page |
|---|---|---|
| 03/07/2022 | Plaintiff's Complaint [Dkt. No. 1] | AA001 |
| 03/07/2022 | Plaintiff's Motion for Temporary Restraining Order [Dkt. No. 2] | AA008 |
| 03/07/2022 | Plaintiff's Notice of Errata [Dkt. No. 4] | AA017 |
| 03/07/2022 | Exhibit 1 – Demand Letter from Gloucester Public Schools dated March 3, 2022 [Dkt. No. 4-1] | AA018 |
| 03/08/2022 | Notice [Dkt. No. 6] | AA020 |
| 03/17/2022 | First Amended Complaint [Dkt. No. 11] | AA021 |
| 04/27/2022 | Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. No. 15] | AA032 |
| 04/27/2022 | Exhibit A – Defendants' Letter to Plaintiff's Counsel dated March 22, 2022 [Dkt. No. 15-1] | AA035 |
| 04/27/2022 | Memorandum in Support of Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. No. 16] | AA037 |
| 05/11/2022 | Plaintiff's Opposition to Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. No. 18] | AA058 |
| 05/11/2022 | Exhibit 1 – Letter from Defendants' Counsel dated March 22, 2022 [Dkt. No. 18-1] | AA078 |
| 05/11/2022 | Exhibit 2 – Email Response to Defendants' Counsel dated March 22, 2022 [Dkt. No. 18-2] | AA080 |
| 07/13/2022 | Plaintiff's Notice of Supplemental Authority [Dkt. No. 21] | AA082 |
| 07/13/2022 | Exhibit 1 – *Irizarry v. Yehia* Decision [Dkt. No. 21-1] | AA085 |
| 08/24/2022 | Plaintiff's Notice of Non-Opposition to Motion for Temporary Restraining Order [Dkt. No. 22] | AA115 |

| 08/29/2022 | Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order [Dkt. No. 23] | AA117 |
| 09/13/2022 | Plaintiff's Reply in Support of Motion for Temporary Restraining Order [Dkt. No. 26] | AA127 |
| 09/13/2022 | Exhibit A – Public Records Request [Dkt. No. 26-1] | AA137 |
| 09/13/2022 | Defendants' Motion for Extension of Time to File Opposition to Plaintiff's Motion for Temporary Restraining Order [Dkt. No. 27] | AA145 |
| 09/13/2022 | Memorandum in Support of Defendants' Motion for Extension of Time to File Opposition to Plaintiff's Motion for Temporary Restraining Order [Dkt. No. 28] | AA147 |
| 09/27/2022 | Plaintiff's Amended Opposition to Defendants' Motion for Extension of Time [Dkt. No. 30] | AA153 |
| 11/15/2022 | Plaintiff's Notice of Unresolved Motions [Dkt. No. 31] | AA160 |
| - | Docket Sheet | AA162 |

DocuSign Envelope ID: 236516FC-41E6-45CB-8CA5-752DEE6A28CA

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

INGE BERGE,

Plaintiff,

v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A. EASON,
in her personal capacity; and STEPHANIE
DELISI, in her personal capacity,

Defendants.

Civil Action No. _____

## VERIFIED COMPLAINT

This is a Civil Action brought by Plaintiff Inge Berge against Defendants School Committee of Gloucester, Ben Lummis, Roberta A. Eason, and Stephanie Delisi. Mr. Berge brings a claim under 42 U.S.C. § 1983 for Defendants' violation of Mr. Berge's First Amendment rights, and alleges as follows:

### THE PARTIES

1. Plaintiff Inge Berge is an individual and citizen journalist who resides in Gloucester, Massachusetts.

2. Defendant School Committee of Gloucester is a school committee organized pursuant to G.L. c. 43, sec. 31 and Article 4, Section 4-1(a) of the Code of Ordinance, City of Gloucester, Massachusetts, that exercises control and management of the public schools of the City of Gloucester.

3. Defendant Ben Lummis is the Superintendent of Gloucester Public Schools and, at all relevant times, resided in Gloucester, Massachusetts.

4. Defendant Roberta A. Eason is the Human Resources Director of Gloucester Public Schools and, at all relevant times, resided in Gloucester, Massachusetts.

5. Defendant Stephanie Delisi is the Executive Secretary of Gloucester Public Schools and, at all relevant times, resided in Gloucester, Massachusetts.

AA001

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this civil action per 28 U.S.C. § 1331 as this is a civil action arising under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution. Personal jurisdiction and venue should be obvious.

## FACTUAL BACKGROUND

7.     Inge Berge is a citizen journalist residing in Gloucester, Massachusetts who publicly discusses Massachusetts and local governments' COVID-19 restrictions and other political issues.

8.     On March 3, 2022, Inge Berge entered the office of the Superintendent of Gloucester Public Schools, Ben Lummis. He went there to discuss an issue wherein Gloucester Public Schools were limited seating capacity at school events purportedly for the purpose of public safety, despite all statewide COVID-19 mandates in Massachusetts having been lifted. These restrictions were making it difficult to purchase tickets for him to attend his daughter's middle school play.

9.     The Superintendent's office is a public building that is accessible to the general public.

10.     When Mr. Berge entered the building, he was directed to Executive Secretary Stephanie Delisi and began to speak with her. He began this conversation by stating "I'm filming this, I'm doing a story on it."

11.     Gregg Bach, the Assistant Superintendent of Teaching & Learning, then approached Mr. Berge and spoke with him regarding Mr. Berge's attempt to attend his daughter's play. The two had a pleasant conversation, after which Mr. Berge left the building.

12.     The same day, Mr. Berge then uploaded his recording of the above encounter to his publicly accessible Facebook page, adding commentary .[1]

13.     Also on the same day, Mr. Berge received a letter from Gloucester Public Schools signed by Roberta A. Eason, its Director of Human Resources. This letter claimed that Mr. Berge was in violation of the Massachusetts wiretapping statute, Mass. Ann. Laws ch. 272, § 99 (the

---

[1]     Available at: https://www.facebook.com/inge.berge.9/videos/1571702173204109.

"Wiretapping Law"), because he recorded his conversation with Delisi without her consent and uploaded the video to Facebook.

14.    The letter concludes with a demand that Mr. Berge "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal in this matter." (*See* demand letter from Gloucester Public Schools, attached as **Exhibit 1**.)

15.    Mr. Berge did not violate the Wiretapping Law. The law only forbids the "interception" of communications, which is defined as "to *secretly* hear [or] *secretly* record . . . the contents of any wire or oral communications . . . ." Mass. Gen. Laws ch. 272, § 99(B)(4) (emphasis added). The law thus prohibits only the surreptitious recording of conversations.

16.    There was nothing "secret" about Mr. Berge's recording; he prominently displayed his recording device and informed Ms. Delisi he was recording.

17.    Any reasonable person would know that Mr. Berge did not violate the Wiretapping Law. Any level of review of the law would inform the average person that recording a conversation with the knowledge of all participants does not violate it.

18.    Though the March 3 letter does not specify what legal action Defendants were threatening to take, violation of the Wiretapping Law can bring a fine of $10,000 and up to five years in prison for secretly recording a conversation, and a fine of $5,000 and two years in jail for using such a recording. Mass. Ann. Laws ch. 272, § 99(C)(1) & (3)(b). Furthermore, any aggrieved person may bring a civil action for violation of the law, with possible remedies including (1) actual damages of up to $1,000; (2) punitive damages; and (3) attorneys' fees. *Id*. at § 99(Q).

19.    In short, a government official, on government stationery, demanded that Berge censor his First Amendment protected footage and speech, or further legal action would be taken.  Since the law that they invoked was criminal in nature, this amounts to a threat of criminal prosecution, which would only be foregone if Berge ceased enjoying his First Amendment rights.

20.    On information and belief, Defendants Lummis, Delisi, and Eason jointly decided to draft and send the March 3 letter to Mr. Berge.

21.     On information and belief, Defendants Lummis, Delisi, and Eason were all aware of the March 3 letter and approved of it being sent.

22.     On information and belief, Defendants Lummis, Delisi, and Eason all approved of the March 3 letter being sent for the specific purpose of silencing Mr. Berge's speech and removing content from the internet that they found personally embarrassing or unflattering.

**CAUSES OF ACTION**

***Count I***
**(42 U.S.C. 1983 – First Amendment)**

23.     Plaintiff hereby repeats and realleges the preceding paragraphs of the Complaint as if set out in full herein.

24.     Mr. Berge openly, after announcing that he was doing so, recorded conversations he had with Defendants Lummis and Delisi in a building accessible to the general public, and then published a video of these conversations on his publicly accessible Facebook page. He had a First Amendment right to record and publish these conversations.

25.     Mr. Berge's purpose in publishing this video was to expose and comment on the unreasonableness of a government policy.

26.     Defendants retaliated against Mr. Berge's protected speech by threatening to refer him for criminal prosecution and/or bring a civil suit for violation of the Wiretapping Law, despite no reasonable person possibly thinking Mr. Berge violated the law.

27.     Defendants threatened Mr. Berge for the specific purpose of silencing his protected speech and removing the general public's ability to view this speech. Mr. Berge now fears the possibility of criminal prosecution and defending himself from a civil lawsuit. While such legal proceedings would be frivolous, it would be potentially ruinously expensive to defend himself against such actions.

28.     English is not Mr. Berge's first language, and he is an immigrant unfamiliar with the legal system.  Upon information and belief, the Defendants were aware of this, and attempted to take

advantage of this fact to intimidate him with a bogus legal threat, intended to frighten him into suppressing his own First Amendment rights. This conduct was discriminatory in nature.

29.     Upon information and belief, Defendants each jointly agreed to draft and send the March 3 letter. Each individual Defendant had actual knowledge at the time the letter was sent that Mr. Berge had not violated the Wiretapping Law.

30.     It is clearly established that there is a First Amendment right to openly record government officials in publicly-accessible areas acting in the course and scope of their duties.

31.     Defendants' restriction on Plaintiff's speech, namely threatening him with criminal or civil proceedings for publishing speech protected by the First Amendment, is content- based and is in violation of the Free Speech Clause of the First Amendment.

32.     As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered irreparable harm, including potential loss of his constitutional rights, entitling Mr. Berge to declaratory and injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks this Court:

A.      To declare that Defendants' restriction on Plaintiff's speech violates the First Amendment to the U.S. Constitution as set forth in this Complaint;

B.      To preliminarily and permanently enjoin Defendants' restriction and forbid them from further threats and coercion as set forth in this Complaint;

C.      To award Plaintiff damages for the past loss of his constitutional rights;

D.      To award Plaintiff his reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law; and,

E.      To award such other relief as this Honorable Court may deem just and proper.

AA005

DocuSign Envelope ID: 236516FC-41E6-45C8-9CA5-753DE5A28CA

Dated: March 7, 2022                   Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Attorneys for Plaintiff
Inge Berge

DocuSign Envelope ID: 2365185C-41E6-4E5CB-9CAF-753B2EEAC8CA

Case 1:22-cv-10646D Document 10 Filed 03/07/22 Page 7 of 7

## VERIFICATION OF COMPLAINT

I, Inge Berge am the Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under the penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 3/7/2022

By: _____
Inge Berge

**AA007**

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| INGE BERGE, | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, in his personal capacity; ROBERTA A. EASON, in her personal capacity; and STEPHANIE DELISI, in her personal capacity, | **MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION** |
| Defendants. | **[REQUEST FOR ORAL ARGUMENT]** |

Plaintiff Inge Berge brings this Motion for a Temporary Restraining Order and for a Preliminary Injunction against Defendants School Committee of Gloucester, Ben Lummis, Roberta A. Eason, and Stephanie Delisi from threatening or coercing Mr. Berge into removing his speech protected by the First Amendment.

Mr. Berge believes that the issues are so clear cut that no oral argument should be necessary.

AA008

**MEMORANDUM OF REASONS**

**1.0     INTRODUCTION AND FACTUAL BACKGROUND**

Inge Berge is a citizen journalist residing in Gloucester, Massachusetts who publicly discusses political issues, including Massachusetts and local governments' actions regarding COVID-19 restrictions. (Complaint at ¶ 7.) On March 3, 2022, Inge Berge entered the office of the Superintendent of Gloucester Public Schools, Ben Lummis. (*Id*. at ¶ 8.) He went there to discuss an issue wherein Gloucester Public Schools were limiting seating capacity at school events purportedly for the purpose of public safety, despite all statewide COVID-19 mandates in Massachusetts being lifted. (*Id*. at ¶ 8.) The Superintendent's office is a public building that is accessible to the general public. (*Id*. at ¶ 9.) When Mr. Berge entered the building, he was directed to Executive Secretary Stephanie Delisi and began to speak with her. (*Id*. at ¶ 10.) He began this conversation by stating "I'm filming this, I'm doing a story on it." . (*Id*. at ¶ 10.)

Gregg Bach, the Assistant Superintendent of Teaching & Learning, then approached Mr. Berge and spoke with him . (*Id*. at ¶ 11.) The two had a pleasant conversation, after which Mr. Berge left the building. (*Id*. at ¶ 11.)

Mr. Berge uploaded his recording of the above encounter to his publicly accessible Facebook page, where he publishes his commentary to hundreds of followers, adding commentary about the incident.[1] (*Id*. at ¶ 12.)

Also on the same day, Mr. Berge received a letter from Gloucester Public Schools signed by Roberta A. Eason, its Director of Human Resources. This letter claimed that Mr. Berge was in violation of the Massachusetts wiretapping statute, Mass. Gen. Laws ch. 272, § 99 (the "Wiretapping Law"), because he recorded his conversation with Delisi without her consent and uploaded the video to Facebook. The letter concludes with a demand that Mr. Berge "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal in this matter." (*See* Demand letter from Gloucester Public Schools, attached as **Exhibit 1**.)

---

[1]     Available at: https://www.facebook.com/inge.berge.9/videos/1571702173204109.

**AA009**

## 2.0    LEGAL STANDARDS

A district court must consider four factors in deciding whether to grant a temporary restraining order or preliminary injunction: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant is enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Charlesbank equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). The plaintiff has the burden of establishing these four factors weigh in their favor. *Esso Standard Oil Co. (P.R.) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006).

## 3.0    LEGAL ARGUMENT

### 3.1    Mr. Berge Has Standing

"To qualify as a party with standing to litigate, a person must show, first and foremost, an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997).  In the First Amendment context in particular, a plaintiff has standing to sue if a challenged statute or regulation operates to "chill" the plaintiff's exercise of their First Amendment rights. *Doe v. Bolton*, 410 U.S. 179, 188 (1973).

Here, Mr. Berge's harm is readily apparent. He has been threatened with criminal prosecution and civil litigation in retaliation for engaging in conduct protected under the First Amendment. This creates a true case and controversy sufficient to confer Article III standing, and Mr. Berge has standing.

### 3.2    Likelihood of Success on the Merits

In seeking a preliminary injunction, the plaintiff has the burden to show the state action infringes on their First Amendment rights, at which point the state must then justify its actions. *Comcast of Maine/New Hampshire, Inc. v. Mills*, 435 F. Supp. 228, 233 (D. Me. 2019) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017)).

In any First Amendment claim based on a government restriction on speech, the first question is what level of scrutiny the government must satisfy. This ranges from strict scrutiny, which is the

most difficult to satisfy, to rational basis review, which is the most deferential. Defendants' actions constitute a content-based restriction on speech and cannot survive strict scrutiny.

### 3.2.1   Defendants' Conduct is Subject to Strict Scrutiny

A regulation is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015) (finding that regulation which specified "political signs" and "ideological signs" was content-based). In deciding whether a restriction is content-based, a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id*. Some such restrictions are obvious, while "others are more subtle, defining regulated speech by its function or purpose." *Id*.  Even facially content-neutral regulations will be considered content-based if they cannot be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). To survive strict scrutiny analysis, a restriction on speech must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2817 (2011).

Mr. Berge has a First Amendment right to record public officials performing their public-facing job functions. *Martin v. Gross*, 340 F. Supp. 3d 87, 97-98 (D. Mass. 2018) (citing *Glik v. Cunniffee*, 655 F.3d 78 (1st Cir. 2011)). However, even if the act of recording his exchange with Ms. Delisi was not itself, protected (although it was), he also has a First Amendment right to publish these recordings to the general public. *Id*. Defendants threatened to retaliate against Mr. Berge for this protected activity, whether in the form of referral for criminal prosecution or bringing civil suit. (**__Exhibit 1__**.) These actions made specific reference to the content of Mr. Berge's protected conduct; they are not content-neutral time, place, and manner restrictions. Accordingly, Defendants' actions are subject to strict scrutiny, which they cannot satisfy.

### 3.2.2   Defendants' Conduct Cannot Survive Strict Scrutiny

To survive strict scrutiny, Defendants must show their conduct (1) furthers a compelling government interest and (2) their conduct is narrowly tailored to achieve that interest. *Bennett*, 131 S. Ct. at 2817.

There is no compelling government interest served by threatening Mr. Berge with criminal prosecution. Mr. Berge did not violate the Wiretapping Law. The law only forbids the "interception" of communications, which is defined as "to *secretly* hear [or] *secretly* record . . . the contents of any wire or oral communications . . . ." Mass. Gen. Laws ch. 272, § 99(B)(4) (emphasis added). The law thus prohibits only the surreptitious recording of conversations. There was nothing "secret" about Mr. Berge's recording; he prominently displayed his recording device and informed Ms. Delisi he was recording. Any reasonable person would know that Mr. Berge did not violate the Wiretapping Law. Any level of review of the law would inform the average person that recording a conversation with the knowledge of all participants does not violate it.

Maybe there is a governmental interest in not allowing the surreptitious recording of government officials performing their duties, but that is not what happened here. Defendants are threatening Mr. Berge with prosecution for a crime he did not commit, for the specific purpose of intimidating him into removing protected speech he made available on his publicly accessible Facebook page. This flagrantly censorious motive can only be justified by reference to the government's interest to save itself from embarrassment, which is not even a legitimate interest for government action. Defendants cannot strict scrutiny, nor can they satisfy even rational basis review for lack of a legitimate government interest.

Defendants' actions thus violated Mr. Berge's First Amendment rights, and he has established a strong likelihood of prevailing on his § 1983 claim.

### 3.3    Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 374 (1976).  Because of this, if a plaintiff demonstrates a likelihood of success, they necessarily also establish irreparable harm. *Fortuño*, 699 F.3d at 15. Because there is a strong likelihood of success on the merits of Mr. Berge's claims under the First Amendment, Mr. Berge has shown a probability of irreparable harm in the absence of an injunction.

/ /

Motion for a Temporary Restraining Order and Preliminary Injunction

**AA012**

### 3.4    Balance of Hardships

When a government regulation restricts First Amendment-protected speech, the balance of hardships tends to weigh heavily in a plaintiff's favor. *See Firecross Ministries v. Municipality of Ponce*, 204 F. Supp. 2d 244, 251 (D.P.R. 2002) (holding that "insofar as hardship goes, the balance weighs heavily against Defendants, since they have effectively silenced Plaintiffs' constitutionally protected speech").

Due to the lack of any surreptitious recording of Ms. Delisi, there are no hardships to balance. Mr. Berge is currently under threat of criminal prosecution, while Defendants are embarrassed by a video Mr. Berge published on Facebook. The hardship on Mr. Berge's First Amendment rights is by itself sufficient for this factor to weigh in favor of a temporary restraining order, but the complete lack of any conceivable harm on the part of Defendants makes this conclusion inescapable.

### 3.5    Public Interest

"The public interest is served by protecting First Amendment rights from likely unconstitutional infringement." *Mills*, 435 F. Supp. at 250. The public interest is served by issuing an injunction where "failure to issue the injunction would harm the public's interest in protecting First Amendment rights in order to allow the free flow of ideas." *Magriz v. union do Tronquistas de Puerto Rico, Local 901*, 765 F. Supp. 2d 143, 157 (D.P.R. 2011) (citing *United Food & Commer. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 363 (6th Cir. 1998)). "When a constitutional violation is likely, moreover, the public interest militates in favor of injunctive relief because 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Id*. (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010)).

There is no possibility the public interest would be harmed by issuing the requested temporary restraining order. Indeed, the public would benefit from being able to view Mr. Berge's video demonstrating the unreasonable and unprofessional conduct of public officials in the course of their official duties. This factor weighs in favor of injunctive relief.

/ /

/ /

AA013

## 4.0     CONCLUSION

For the foregoing reasons, the Court should enter a temporary restraining order against Defendants preventing them from threatening or attempting to coerce Mr. Berge into removing his First Amendment-protected speech. The Court should then convert its temporary restraining order into a preliminary injunction.

### REQUEST FOR ORAL ARGUMENT

Plaintiff believes the issues are so simple and straightforward that there is no need for oral argument, but of course the Plaintiff will not object to oral argument if the Court believes it will be helpful.

Dated: March 7, 2022                    Respectfully Submitted,

_/s/ Marc J. Randazza_
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Attorneys for Plaintiff
Inge Berge

AA014

# <u>EXHIBIT 1</u>

Demand letter from Gloucester Public Schools

**AA015**



## The GLOUCESTER PUBLIC SCHOOLS
*Our mission is for all students to be successful, engaged, lifelong learners.*

Roberta A. Eason
Human Resources
2 Blackburn Drive
Gloucester, MA 01930
Phone: 978-281-98014/ Fax 978-281-9899
Email: reason@gloucesterschools.com

March 3, 2022

Mr. Inge Berge
410 Washington Street/ #C
Gloucester, MA 01930

Dear Mr. Berge:

This letter is in response to your Facebook posting of a recording taken by you today without the consent of all parties at the Gloucester Public Schools Administration Building. Please be advised that Massachusetts recording law stipulates that it is a two-party consent state. In Massachusetts, it is a criminal offense to use any device to record and/or disseminate communications, whether the communications are by wire, oral or electronic, without the consent of all contributing parties. Mass. Ann. Laws ch. 272, § 99(C). This means that in Massachusetts you are prohibited from recording a conversation you are taking part in unless all parties are in agreement. Ms. Delisi unambiguously told you that she was not consenting to being recorded.

We demand that you immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal action in this matter.

Sincerely,

Roberta A. Eason
Director of Human Resources

**AA016**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

INGE BERGE,

                Plaintiff,

    v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A. EASON,
in her personal capacity; and STEPHANIE
DELISI, in her personal capacity,

                Defendants.

Civil Action No. 1:22-CV-10346

**NOTICE OF ERRATA**

Plaintiff Inge Berge hereby gives notice that the attached **Exhibit 1** is the exhibit referenced in the Complaint (ECF No. 1), but it was unintentionally omitted from the uploaded filing.

Dated: March 7, 2022

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Attorneys for Plaintiff
Inge Berge

**AA017**

# __Exhibit 1__

Demand Letter from Gloucester Public Schools

**AA018**



# The GLOUCESTER PUBLIC SCHOOLS
*Our mission is for all students to be successful, engaged, lifelong learners.*

Roberta A. Eason
Human Resources
2 Blackburn Drive
Gloucester, MA 01930
Phone: 978-281-98014/ Fax 978-281-9899
Email: reason@gloucesterschools.com

March 3, 2022

Mr. Inge Berge
410 Washington Street/ #C
Gloucester, MA 01930

Dear Mr. Berge:

This letter is in response to your Facebook posting of a recording taken by you today without the consent of all parties at the Gloucester Public Schools Administration Building. Please be advised that Massachusetts recording law stipulates that it is a two-party consent state. In Massachusetts, it is a criminal offense to use any device to record and/or disseminate communications, whether the communications are by wire, oral or electronic, without the consent of all contributing parties. Mass. Ann. Laws ch. 272, § 99(C). This means that in Massachusetts you are prohibited from recording a conversation you are taking part in unless all parties are in agreement. Ms. Delisi unambiguously told you that she was not consenting to being recorded.

We demand that you immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal action in this matter.

Sincerely,

Roberta A. Eason
Director of Human Resources

**AA019**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

INGE BERGE,

              Plaintiff,

     v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A. EASON,
in her personal capacity; and STEPHANIE
DELISI, in her personal capacity,

              Defendants.

Civil Action No. 1:22-CV-10346

**NOTICE**

    While formal service has not yet been effected, the Defendants are on notice of the lawsuit, and counsel for the Defendants reached out to counsel for Plaintiff this morning. Thus, if the court is concerned about notice issues prior to issuing a Temporary Restraining Order, it can be comfortable that the Defendants have actual knowledge of the case, even if formal service may not be effected before the close of business, today.

    Dated: March 8, 2022

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Attorneys for Plaintiff
Inge Berge

**AA020**

DocuSign Envelope ID: B194D737-5983-468C-AC15-7C2839061AD8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INGE BERGE,<br><br>                 Plaintiff,<br><br>    v.<br><br>SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, in his personal capacity; ROBERTA A. EASON, in her personal capacity; and STEPHANIE DELISI, in her personal capacity,<br><br>               Defendants. | Civil Action No. 1:22-CV-10346<br><br><br>**VERIFIED FIRST AMENDED COMPLAINT** |

This is a Civil Action brought by Plaintiff Inge Berge against Defendants School Committee of Gloucester, Ben Lummis, Roberta A. Eason, and Stephanie Delisi. Mr. Berge brings a claim under 42 U.S.C. § 1983 for Defendants' violation of Mr. Berge's First Amendment rights, and alleges as follows:

**THE PARTIES**

1.    Plaintiff Inge Berge is an individual and citizen journalist who resides in Gloucester, Massachusetts.

2.    Defendant School Committee of Gloucester is a school committee organized pursuant to G.L. c. 43, sec. 31 and Article 4, Section 4-1(a) of the Code of Ordinance, City of Gloucester, Massachusetts, that exercises control and management of the public schools of the City of Gloucester.

3.    Defendant Ben Lummis is the Superintendent of Gloucester Public Schools and, at all relevant times, resided in Gloucester, Massachusetts.

4.    Defendant Roberta A. Eason is the Human Resources Director of Gloucester Public Schools and, at all relevant times, resided in Gloucester, Massachusetts.

5.    Defendant Stephanie Delisi is the Executive Secretary of Gloucester Public Schools and, at all relevant times, resided in Gloucester, Massachusetts.

**AA021**

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this civil action per 28 U.S.C. § 1331 as this is a civil action arising under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution. Personal jurisdiction and venue should be obvious.

## FACTUAL BACKGROUND

7.    Inge Berge is a citizen journalist residing in Gloucester, Massachusetts who publicly discusses Massachusetts and local governments' COVID-19 restrictions and other political issues.

8.    On March 3, 2022, Inge Berge entered the office of the Superintendent of Gloucester Public Schools, Ben Lummis. He went there to discuss an issue wherein Gloucester Public Schools were limited seating capacity at school events purportedly for the purpose of public safety, despite all statewide COVID-19 mandates in Massachusetts having been lifted. These restrictions were making it difficult to purchase tickets for him to attend his daughter's middle school play.

9.    The Superintendent's office is a public building that is accessible to the general public.

10.    At the time Berge entered the building, there was neither signage nor any other indication that video recording or photography was restricted, not permitted, nor even discouraged.

11.    At all times, Berge held his camera out in the open, and it was obvious to all parties that he was filming.  He also verbally confirmed that he was filming.

12.    When Mr. Berge entered the building, he was directed to Executive Secretary Stephanie Delisi and began to speak with her. He began this conversation by stating "I'm filming this, I'm doing a story on it."

13.    At no point did anyone inform Mr. Berge that filming was not permitted, although two individuals did protest that they did not personally wish to be filmed.  These individuals then retreated to private office areas, and were not filmed after that point.

14.    Gregg Bach, the Assistant Superintendent of Teaching & Learning, then approached Mr. Berge and spoke with him regarding Mr. Berge's attempt to attend his daughter's play. The two

AA022

DocuSign Envelope ID: B194D737-5993-468C-AC45-7C2899064AD9

had a pleasant conversation, where Berge was clearly filming and Bach had no objection. After which, Mr. Berge left the building.

15. The same day, Mr. Berge then uploaded his recording of the above encounter to his publicly accessible Facebook page, adding commentary.[1]

16. Also on the same day, Mr. Berge received a letter from Gloucester Public Schools signed by Roberta A. Eason, its Director of Human Resources. This letter claimed that Mr. Berge was in violation of the Massachusetts wiretapping statute, Mass. Ann. Laws ch. 272, § 99 (the "Wiretapping Law"), because he recorded his conversation with Delisi without her consent and uploaded the video to Facebook.

17. The letter concludes with a demand that Mr. Berge "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal in this matter." (*See* demand letter from Gloucester Public Schools, attached as **Exhibit 1**.)

18. Mr. Berge did not violate the Wiretapping Law. The law only forbids the "interception" of communications, which is defined as "to *secretly* hear [or] *secretly* record . . . the contents of any wire or oral communications . . . ." Mass. Gen. Laws ch. 272, § 99(B)(4) (emphasis added). The law thus prohibits only the surreptitious recording of conversations.

19. There was nothing "secret" about Mr. Berge's recording; he prominently displayed his recording device and informed Ms. Delisi he was recording.

20. Any reasonable person would know that Mr. Berge did not violate the Wiretapping Law. Any level of review of the law would inform the average person that recording a conversation with the knowledge of all participants does not violate it.

21. Though the March 3 letter does not specify what legal action Defendants were threatening to take, violation of the Wiretapping Law can bring a fine of $10,000 and up to five years in prison for secretly recording a conversation, and a fine of $5,000 and two years in jail for using such a recording. Mass. Ann. Laws ch. 272, § 99(C)(1) & (3)(b). Furthermore, any aggrieved person

---

[1]   Available at: https://www.facebook.com/inge.berge.9/videos/1571702173204109.

**AA023**

may bring a civil action for violation of the law, with possible remedies including (1) actual damages of up to $1,000; (2) punitive damages; and (3) attorneys' fees. *Id*. at § 99(Q).

22.     In short, a government official, on government stationery, demanded that Berge censor his First Amendment protected footage and speech, or further legal action would be taken.  Since the law that they invoked was criminal in nature, this amounts to a threat of criminal prosecution, which would only be foregone if Berge ceased enjoying his First Amendment rights.

23.     On information and belief, Defendants Lummis, Delisi, and Eason jointly decided to draft and send the March 3 letter to Mr. Berge.

24.     On information and belief, Defendants Lummis, Delisi, and Eason were all aware of the March 3 letter and approved of it being sent.

25.     On information and belief, Defendants Lummis, Delisi, and Eason all approved of the March 3 letter being sent for the specific purpose of silencing Mr. Berge's speech and removing content from the internet that they found personally embarrassing or unflattering.

26.     Since, and in apparent retaliation to, the filing of the initial complaint in this matter, the Defendants have continued to falsely insist that Berge's conduct violated the law, including Mass. Gen. Laws, ch. 272, § 99.

27.     Since, and in apparent retaliation to, the filing of the initial complaint in this matter, Defendants have also falsely claimed that Berge's publication of the video violated the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.

28.     Since, and in apparent retaliation to, the filing of the initial complaint in this matter, Defendants have also published false public statements that Berge's publication of the video was not permitted or protected by the First Amendment, and continue to maintain that position, and all Defendants have refused to either repudiate their threats of legal action or to acknowledge that Berge had a First Amendment right to publish the video.

/ / /

## CAUSES OF ACTION

### *Count I*
### (42 U.S.C. 1983 – First Amendment)

29.     Plaintiff hereby repeats and realleges paragraphs 1-28 as if set out in full herein.

30.     Mr. Berge openly, after announcing that he was doing so, recorded conversations he had with Defendants Lummis and Delisi in a building accessible to the general public, and then published a video of these conversations on his publicly accessible Facebook page. He had a First Amendment right to record and publish these conversations.

31.     Mr. Berge's purpose in publishing this video was to expose and comment on the unreasonableness of a government policy.

32.     Defendants retaliated against Mr. Berge's protected speech by threatening to refer him for criminal prosecution and/or bring a civil suit for violation of the Wiretapping Law, despite no reasonable person possibly thinking Mr. Berge violated the law.

33.     Defendants threatened Mr. Berge for the specific purpose of silencing his protected speech and removing the general public's ability to view this speech. Mr. Berge now fears the possibility of criminal prosecution and defending himself from a civil lawsuit. While such legal proceedings would be frivolous, it would be potentially ruinously expensive to defend himself against such actions.

34.     English is not Mr. Berge's first language, and he is an immigrant unfamiliar with the legal system.  Upon information and belief, the Defendants were aware of this, and attempted to take advantage of this fact to intimidate him with a bogus legal threat, intended to frighten him into suppressing his own First Amendment rights.  This conduct was discriminatory in nature.

35.     Upon information and belief, Defendants each jointly agreed to draft and send the March 3 letter. Each individual Defendant had actual knowledge at the time the letter was sent that Mr. Berge had not violated the Wiretapping Law.

36.     It is clearly established that there is a First Amendment right to openly record government officials in publicly-accessible areas acting in the course and scope of their duties.

**AA025**

DocuSign Envelope ID: B194B737-5903-468C-AC45-7C3399061AD9

37.     Defendants' restriction on Plaintiff's speech, namely threatening him with criminal or civil proceedings for publishing speech protected by the First Amendment, is content- based and is in violation of the Free Speech Clause of the First Amendment.

38.     Given the fact that the defendants have continued, despite the filing of the initial complaint, to insist that Berge's filming was prohibited under the wiretapping statute, and that his publication of the video was not permitted under the First Amendment, and they to date have not retracted nor repudiated the legal threat they made, Berge remains fearful of further governmental retaliation in the form of civil claims, criminal claims, or government employees attempting to further censor him with the coordination of private actors.

39.     As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered irreparable harm, including potential loss of his constitutional rights, entitling Mr. Berge to declaratory and injunctive relief.

### *Count II*
### (Declaratory Relief – Non-violation of Mass. Gen. Laws, ch. 272, § 99)

40.     Plaintiff hereby repeats and realleges paragraphs 1-28 as if set out in full herein.

41.     As set forth above, Defendants have continued to assert that Plaintiff's acts of recording and publishing the video a) violated Mass. Gen. Laws, ch. 272, § 99; b) violated FERPA; and c) were neither permitted nor protected by the First Amendment to the United States Constitution.

42.     Mass. Gen. Laws, ch. 272, § 99, prohibits, as relevant here, the willful interception of certain oral communications and willful disclosure of the said oral communications.  M.G.L. c. 272, § 99(C)(1) & (3).

43.     Mass. Gen. Laws, ch. 272, § 99, defines "interception", in relevant part, as meaning "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication".

44.     At no time did Plaintiff record any Defendant secretly; all such recording was open, obvious, and/or disclosed.

45.    Thus, Plaintiffs acts did not violate Mass. Gen. Laws, ch. 272, § 99.

46.    Being falsely accused of violating state and Federal law, and in disregard of his First Amendment rights, places Plaintiff in fear of prosecution and is directly harmful to his reputation.

47.    Plaintiff also desires to continue to record and publish videos, with audio included, of his anticipated future communications with Defendants.

48.    Declaratory relief will be of practical assistance to Plaintiff in settling the controversies of whether he violated state or federal law and whether his activities are otherwise protected by the First Amendment.

### *Count III*
### **(Declaratory Relief – Non-violation of FERPA)**

49.    Plaintiff hereby repeats and realleges paragraphs 1-28 as if set out in full herein.

50.    FERPA prohibits the disclosure of "education records" by a federally-funded "educational agency or institution" without consent.  28 U.S.C. § 1232g(b).

51.    Plaintiff is not an "educational agency or institution" and is, therefore, not governed by FERPA.

52.    Plaintiff's video is also not an "education record" under FERPA as it a) contains no information directly related to a student, and b) it is not maintained by an educational agency or institution or by a person acting for such agency or institution.  28 U.S.C. § 1232g(a)(4).

53.    Thus, Plaintiff's acts did not violate FERPA.

54.    Being falsely accused of violating state and Federal law, and in disregard of his First Amendment rights, places Plaintiff in fear of prosecution and is directly harmful to his reputation.

55.    Plaintiff also desires to continue to record and publish videos, with audio included, of his anticipated future communications with Defendants.

56.    Declaratory relief will be of practical assistance to Plaintiff in settling the controversies of whether he violated state or federal law and whether his activities are otherwise protected by the First Amendment.

*/ / /*

**AA027**

DocuSign Envelope ID: B194D737-5903-468C-AC15-7C2899061AD9

### Count IV
### (Declaratory Relief – First Amendment Protects Plaintiff's Right to Publish)

57.      Plaintiff hereby repeats and realleges paragraphs 1-28 as if set out in full herein.

58.      Even if, hypothetically, Berge did not have a right to record the subject video, he had a First Amendment right to publish it.

59.      Being falsely accused of violating state and Federal law, and in disregard of his First Amendment rights, places Plaintiff in fear of prosecution and is directly harmful to his reputation.

60.      Plaintiff also desires to continue to record and publish videos, with audio included, of his anticipated future communications with Defendants.

61.      Declaratory relief will be of practical assistance to Plaintiff in settling the controversies of whether he violated state or federal law and whether his activities are otherwise protected by the First Amendment.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A.      To declare that Defendants' restriction on Plaintiff's speech violates the First Amendment to the U.S. Constitution as set forth in this Complaint;

B.      To declare that Berge's conduct did not violate Mass. Ann. Laws ch. 272, § 99;

C.      To declare that Berge's publication of the subject video is protected under the First Amendment;

D.      To declare that none of Berge's actions violated FERPA;

E.      To preliminarily and permanently enjoin Defendants' restriction and forbid them from further threats and coercion or any other actions calculated to censor Berge's speech;

F.      To award Plaintiff damages for the past loss of his constitutional rights;

G.      To award Plaintiff his reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law; and,

H.      To award such other relief as this Honorable Court may deem just and proper.

**AA028**

Dated: March 17, 2022

Respectfully Submitted,

/s/ Marc J. Randazza

Marc J. Randazza, BBO# 651477
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

Attorneys for Plaintiff
Inge Berge

Verified First Amended Complaint

**AA029**

## VERIFICATION OF COMPLAINT

I, Inge Berge am the Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under the penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 3/17/2022

By: 

DocuSigned by:

2578F10E4A2344F...

**AA030**

DocuSign Envelope ID: B1945F37-5903-468C-AC45-7C3898081AD0

## CERTIFICATE OF SERVICE

Civil Action No. 1:22-CV-10346

I hereby certify that, on this 17th day of March 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system and by email and U.S. Mail.

Stephanie Delisi
2 Blackburn Drive
Gloucester, Massachusetts 01930

Ben Lummis
2 Blackburn Drive
Gloucester, Massachusetts 01930

Roberta A. Eason
2 Blackburn Drive
Gloucester, Massachusetts 01930

School Committee of Gloucester
2 Blackburn Drive
Gloucester, Massachusetts 01930

And courtesy copy to:
Naomi Stonberg
Brody Hardoon Perkins & Kesten, LLP
699 Boylston Street
Boston, MA 02116
<nstonberg@bhpklaw.com>

/s/ Marc J. Randazza
Marc J. Randazza

AA031

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INGE BERGE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 1:22-cv-10346-AK |
| | ) | |
| SCHOOL COMMITTEE OF GLOUCESTER; | ) | |
| BEN LUMMIS, in his personal capacity; | ) | |
| ROBERTA A. EASON, in her personal capacity; and | ) | |
| STEPHANIE DELISI, in her personal capacity, | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
VERIFIED FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**

Defendants, Gloucester School Committee, Superintendent Ben Lummis, Roberta Eason and Stephanie Delisi, hereby move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss plaintiff's Verified First Amended Complaint for failure to state a claim upon which relief can be granted. As alternative grounds therefor, defendants state:

1.      Plaintiff's recording of his visit to the Administration Office of Gloucester Public Schools on March 3, 2022, was not protected activity under the First Amendment.

2.      Plaintiff's posting of the recording of his visit to the Administration Office of Gloucester Public Schools on March 3, 2022 to his Facebook account was not protected activity under the First Amendment.

3.      Defendants did not retaliate against plaintiff in violation of the First Amendment for engaging in protected activity.

4.      The individual defendants are entitled to qualified immunity.

5.      Plaintiff fails to state a claim of municipal liability against defendant, the Gloucester School Committee.

**AA032**

6.      Plaintiff's demands for declaratory relief are moot.

In support of their Motion to Dismiss, defendants submit district counsel's letter to plaintiff's counsel dated March 22, 2022, a true and accurate copy of which is attached hereto as Exhibit "A." Defendants also submit the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Verified First Amended Complaint Under Rule 12(b)(6).

WHEREFORE, defendants, Gloucester School Committee, Superintendent Ben Lummis, Roberta Eason and Stephanie Delisi, respectfully request that this Honorable Court dismiss plaintiff's Verified First Amended Complaint for failure to state claims upon which relief can be granted. Fed. R. Civ. P 12(b)(6).

### REQUEST FOR ORAL ARGUMENT

Defendants respectfully request that this Honorable Court schedule oral argument on their Motion to Dismiss Plaintiff's Verified First Amended Complaint Under Rule 12(b)(6).

Respectfully submitted,

The Defendants,
SCHOOL COMMITTEE OF GLOUCESTER;
BEN LUMMIS, in his personal capacity;
ROBERTA A. EASON, in her personal capacity; and
STEPHANIE DELISI, in her personal capacity,
By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ John J. Davis*
_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: April 27, 2022

**AA033**

## <u>LOCAL RULE 7.1 CERTIFICATE</u>

I hereby certify, pursuant to Local Rule 7.1(A)(2), that on April 27, 2022, I conferred in good faith with counsel for the plaintiff by telephone in an effort to resolve or narrow the issues regarding defendants' Motion to Dismiss Plaintiff's Verified First Amended Complaint Under Rule 12(b)(6).

*/s/ John J. Davis*

_____

John J. Davis, Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on April 27, 2022.

*/s/ John J. Davis*

_____

John J. Davis, Esq.

**AA034**



# Brody, Hardoon, Perkins & Kesten, LLP

## Attorneys at Law

Richard E. Brody
Laurence E. Hardoon
Samuel Perkins
Leonard H. Kesten
Jocelyn M. Sedney
Jeremy I. Silverfine
Thomas R. Donohue
Gregor A. Pagnini
Evan C. Ouellette
Michael Stefanilo, Jr.

699 Boylston Street
Boston, Massachusetts 02116
Telephone 617 880 7100   Facsimile 617 880 7171

www.bhpklaw.com

Erica L. Brody
Allison L. O'Connell
Francesca M. Papia

OF COUNSEL
Hon. Paul A. Chernoff (Ret.)
Deidre Brennan Regan
Andrew A. Rainer
Naomi R. Stonberg

March 22, 2022,

Re:     Inge Berge

*By Email*

Dear Mr. Randazza:

I informed you on March 11, 2022 on a conference call in which Attorneys Gregor Pagnini and Leonard Kesten of this office also participated, that the District would be withdrawing the letter to Mr. Berge dated March 3, 2022. I also acknowledged that the District would not be taking any legal action against Mr. Berge relating to Massachusetts General Laws, Chapter 272, § 99(C). During our call you consulted with your client and indicated that you had advised him of our position on said statute and all other related matters.

Please accept this as written notice that the letter dated March 3, 2022 has been revoked and the District will not take any criminal action against Mr. Berge relating to the recording that took place inside the school administration building on March 3, 2022. However, this also confirms our position that all school buildings are non-public forums and therefore Mr. Berge's actions on March 3, 2022 were not protected by the First Amendment.

Notwithstanding the above, the District neither waives nor relinquishes any defenses it has or may have to the claims set forth in <u>Berge v. School Committee of Gloucester, et al.</u>, C.A. No. 1:22-cv-10346 (D. Mass.) This letter shall not be construed or interpreted as an admission of liability or wrongdoing on the part of the District, its agents, servants or employees. All liability is expressly denied.

Sincerely,
*nrs*
Naomi R. Stonberg
Counsel for Gloucester School Committee

cc:     Kathy Clancy, Chairperson Gloucester School Committee
        Ben Lummis, Superintendent
        Inge Berge

**AA036**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INGE BERGE,<br>        Plaintiff, | )<br>)<br>) |
| vs. | ) C.A. No. 1:22-cv-10346-AK<br>) |
| SCHOOL COMMITTEE OF GLOUCESTER;<br>BEN LUMMIS, in his personal capacity;<br>ROBERTA A. EASON, in her personal capacity; and<br>STEPHANIE DELISI, in her personal capacity,<br>        Defendants. | )<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)

## I. INTRODUCTION

This action arises out of plaintiff's recorded visit to the Administration Office of Gloucester Public Schools ("GPS"), 2 Blackburn Drive, Gloucester, MA, on March 3, 2022. Inge Berge, a Gloucester resident, visited the Administration Office on personal business – *i.e.,* to obtain five tickets to a sold-out performance of a school play in which his daughter was scheduled to appear. Mr. Berge recorded the visit on his cellphone against the wishes of two GPS administrators, Ben Lummis, Superintendent of Schools, and Stephanie Delisi, Executive Secretary, and subsequently uploaded the recording (together with commentary) onto Facebook.[1] (Verified First Amended Complaint (hereinafter "Am. Compl."), ¶ 15). By letter issued that same day, GPS Director of Human Resources, Roberta Eason, advised Mr. Berge that the recording was prohibited under the Massachusetts Wiretap Statute, M.G.L. c. 272, § 99, and demanded plaintiff to remove the Facebook post or face possible legal action. (Am. Compl., Ex. 1). Plaintiff, however, neither

---

[1] Plaintiff cites and provides a link to the recording in his Verified First Amended Complaint. (Am. Compl., ¶ 15, n. 1). For convenience, defendants will refer to this video as the "Recording."

**AA037**

removed the post nor faced legal action. Instead, he commenced this action. On March 11, 2022, district counsel for GPS advised plaintiff's counsel that the March 3, 2022 letter was withdrawn, a measure confirmed in writing on March 22, 2022.[2]

Plaintiff brings this action against four defendants, the Gloucester School Committee, Superintendent Lummis, Ms. Delisi and Ms. Eason, under 42 U.S.C. § 1983 for the alleged violation of his rights to free speech as protected under the First Amendment. The school officials are sued in their individual capacities only. In his Verified First Amended Complaint, plaintiff claims he engaged in protected activity both when he recorded his interactions with school officials in the Administration Office on March 3, 2022 and when he subsequently posted the recording on Facebook. (Am. Compl., Counts I & IV). The letter to Mr. Berge from the HR Director (so plaintiff alleges) was sent in retaliation for such activity. (Am. Compl., ¶ 26). In addition to damages under Section 1983, plaintiff seeks declaratory relief under the Massachusetts Wiretap Statute and the Family Educational Rights and Privacy Act of 1974 ("FERPA"). (Am. Compl., Counts II & III).

Plaintiff's Verified First Amended Complaint fails to state claims against defendants upon which relief can be granted and, therefore, must be dismissed. Fed. R. Civ. P. 12(b)(6). Defendants' Motion to Dismiss is based on the following alternative grounds. First, plaintiff's recording of school officials in the GPS Administration Office regarding a personal matter was not protected

---

[2] A true and accurate copy of this March 22, 2022 writing is attached to defendants' Motion to Dismiss as Exhibit "A." In ruling on a motion to dismiss, a court may take into consideration certain documents without converting the motion into one for summary judgment, including "documents the authenticity of which are not disputed by the parties; … documents central to plaintiffs' claim; or … documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "When … a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation omitted).

AA038

under the First Amendment. Second, because the recording did not involve a "matter of public concern," plaintiff's posting on Facebook was likewise unprotected. Third, defendants did not retaliate against plaintiff for engaging in protected activity. Fourth, the individual defendants are entitled to qualified immunity. Fifth, plaintiff fails to state a claim of municipal liability against the Gloucester School Committee. Sixth, because plaintiff fails to state claims under Section 1983, his demands for declaratory relief under the Massachusetts Wiretap Statute and FERPA are moot. Defendants submit this Memorandum of Law in support of their Motion to Dismiss.

## II. FACTS[3]

On March 3, 2022, plaintiff entered the GPS Administration Office at 2 Blackburn Drive[4] for the purpose of obtaining five tickets to the opening night performance of "The Little Mermaid, Jr.," a student production to be held at the O'Maley Innovation Middle School.[5] Plaintiff's daughter was playing a lead in the production and Mr. Berge (quite understandably) wished to attend.[6] Mr. Berge, however, had "totally messed up."[7] He was supposed to buy five tickets for opening night, but somehow neglected to do so.[8] Now, on March 3, 2022, all tickets were sold out.[9] As Mr. Berge put it: "I'm so in the dog house with everyone because I didn't get these tickets for opening night."[10] Although Mr. Berge questioned O'Maley's restriction on the number of available seats, he nonetheless admitted his issue was not one of great public importance. "[It's] a

---

[3] The facts below are taken from the allegations of plaintiff's Verified First Amended Complaint and the Recording cited therein. (Am. Compl., ¶ 15, n. 1). Defendants do not admit to plaintiff's facts, but accept them as true (as they must) for the purposes of defendants' Motion to Dismiss.
[4] Two Blackburn Drive is also the location of the GPS Pre-School Program. Recording, at 00:57.
[5] Id., at 00:15, 05:03.
[6] Id., at 03:40, 06:48.
[7] Id., at 05:40.
[8] Id., at 03:40, 06:48.
[9] Id., at 00:22, 04:32.
[10] Id., at 05:48.

AA039

very small situation that should have been solved very quickly and easily ….”[11] Indeed, “it's the smallest thing in the world.”[12]

The public entrance door to the Administration Office is kept locked;[13] upon arrival, Mr. Berge pressed the intercom and was buzzed in.[14] Plaintiff began recording his visit even before entry. (Am. Compl., ¶ 11). After first speaking with the receptionist at the front desk, he was approached by defendant, Stephanie Delisi, in an adjoining office. Ms. Delisi inquired: “What can I help you with?”[15] Mr. Berge informed her: “I'm filming this. I'm doing a story on it. If that's OK with you.” (Am. Compl., ¶12). He then asked: “Is that alright?”[16] Ms. Delisi replied: “No, no I don't want to be filmed.”[17] (Am. Compl., ¶ 13). Mr. Berge kept recording anyway. Ms. Delisi went into Superintendent Lummis's adjacent office. The Superintendent came to his door and spoke to plaintiff. He asked Mr. Berge to shut off the recording: “You do not have permission to film in this area.”[18] Mr. Berge kept recording. The Superintendent continued: “I'm happy to speak with you about O'Maley if you turn that off. You do not have my permission to film here right now.”[19] Mr. Berge kept recording. The Superintendent returned to his office and shut the door.

Assistant Superintendent Gregory Bach then met with Mr. Berge and took down the information regarding plaintiff's so-called “unpleasant situation.”[20] (Am. Compl., ¶ 14). Unlike

---

[11] Id., at 03:40.

[12] Id., at 05:30.

[13] Massachusetts law requires school districts to adopt “standards and procedures to assure school building security and safety of students and school personnel.” M.G.L. c. 71, § 37H.

[14] Id., at 00:58.

[15] Id., at 01:49.

[16] Presumably plaintiff understood he needed Ms. Delisi's permission to record.

[17] Id., at 01:50 – 01:57.

[18] Id., at 02:24.

[19] Id., at 02:33 – 02:42. Despite the video evidence, plaintiff alleges, in his Verified First Amended Complaint, that “[a]t no point did anyone inform Mr. Berge that filming was not permitted.” (Am. Compl., ¶ 13).

[20] Recording, at 03:40.

AA040

Ms. Delisi, Mr. Berge did not ask for Mr. Bach's permission to record their meeting, and Mr. Bach raised no objection to the recording. (Am. Compl., ¶ 14). Following their meeting, Mr. Berge commented: "Well that seemed to go pretty well. Ah, Mr. Bach there. We shall see."[21]

That afternoon, plaintiff uploaded the recording made in the GPS Administration Office to his Facebook page, together with commentary. (Am. Compl., ¶ 15, n. 1). On the same day, HR Director Eason advised Mr. Berge by letter that the recording and/or dissemination of communications without the consent of all contributing parties was prohibited under the Massachusetts Wiretap Statute. (Am. Compl., ¶ 16 & Ex. 1). In her letter, Ms. Eason demanded plaintiff "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal action in this matter." (Am. Compl., Ex. 1). Plaintiff, however, did not comply with Ms. Eason's demand or remove the recording from his Facebook account. Indeed, the letter had no chilling effect on plaintiff whatsoever. As plaintiff explains, "[a]ny reasonable person would know" that he (Mr. Berge) did not violate the Wiretap Statute, and "[a]ny level of review of the law would inform the average person that recording a conversation with the knowledge of all participants does not violate [the Wiretap Statute]." (Am. Compl., ¶ 20). On March 11, 2022, district counsel for GPS withdraw the March 3, 2022 letter, a measure confirmed in writing shortly thereafter. (Ex. A).

Plaintiff filed this suit on March 7, 2022, four days after making and posting his recording.

### III.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading. To survive a Rule 12(b)(6) motion, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the

---

[21] Id., at 08:04. Mr. Berge did not receive the requested tickets. Id., at 08:12.

**AA041**

elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (court should ignore statements "that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). In other words, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Alston v. Spiegel, 988 F.3d 564, 571 (1st Cir. 2021) (quoting Twombly, 550 U.S. at 555). A mere "possibility of misconduct" is not enough. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Hamann v. Carpenter, 937 F.3d 86, 90 (1st Cir. 2019) (conclusory allegations of ill will and spite held insufficient to cross plausibility threshold).

In 2007, the Supreme Court restated the well-known standard that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Two years later, the Supreme Court clarified Twombly by stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id., 556 U.S. at 679.

## IV.  ARGUMENT

### A.    PLAINTIFF'S RECORDING WAS NOT PROTECTED ACTIVITY UNDER THE FIRST AMENDMENT.

In Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011), the First Circuit Court of Appeals held that the First Amendment protects the right of the public to record "government officials, including law enforcement officers, in the discharge of their duties in a public space ...." Id., at 85. The case involved a pedestrian charged under the Massachusetts Wiretap Statute for using his cellphone to

6

**AA042**

record several police officers arresting a young man on Boston Common. The right to record, cautioned the Court, may nonetheless "be subject to reasonable time, place and manner restrictions." Id., at 84. Yet, given the location of the recording at issue – "the oldest city park in the United States and the apotheosis of a public forum" – the Glik Court concluded it had "no occasion to explore those limitations here." Id., at 84. Three years later, the First Circuit extended First Amendment protection to a plaintiff arrested for attempting to record a late night traffic stop on a public way. Gericke v. Begin, 753 F.3d 1, 9 (1st Cir. 2014). Again, recognizing that "[r]easonable restrictions on the exercise of the right to film may be imposed when the circumstances justify them," the Court reaffirmed that "an individual's exercise of her First Amendment right to film police activity carried out in public, including a traffic stop, necessarily remains unfettered unless and until a reasonable restriction is imposed or in place." Id., at 7-8. Notably, in Gericke, the officer in question issued no order to the plaintiff "to stop filming or leave the area …." Id., at 3 & 10 (characterizing such omission as "significant").

The Administration Office is neither a public park nor public way. It is an office where school officials conduct the administrative business of Gloucester Public Schools. Further, the purpose of plaintiff's visit to the Administration Office was (in his own words) to "score five tickets" for his daughter's Middle School play,[22] not to monitor law enforcement officers performing their official duties in a public space. Thus, plaintiff's business was entirely personal. Finally, unlike the plaintiff in Gericke, Mr. Berge *was* asked to stop recording, but he refused.[23] Because GPS school administrators may impose reasonable time, place and manner restrictions on

---

[22] Recording, at 06:48.
[23] Id., at 02:33 – 02:42.

the recording of school business conducted within the Administration Office, Mr. Berge's recording was not protected activity under the First Amendment.

In late 2020, the First Circuit held that the Massachusetts Wiretap Statute's prohibition against secret, nonconsensual recordings of police officers discharging their official duties in public places was overbroad as applied and in violation of the First Amendment. Project Veritas Action Fund v. Rollins, 982 F.3d 813, 836-37 (1st Cir. 2020). In short, the Court extended Glik to secret recordings. In so doing, the First Circuit analyzed the Wiretap Statute under an intermediate level of scrutiny, which provides that a content-neutral restriction shall be upheld if it is "narrowly tailored to serve a significant government interest" and leaves open "ample alternative channels for communication." Id., at 834-35 ("application of intermediate scrutiny … accords with the approach that we took in Glik and Gericke ….") (quotations and citations omitted). After confirming the District Court's conclusion that M.G.L. c. 272, § 99 is a "content-neutral law of general applicability," id., at 834, the First Circuit acknowledged that the interests at stake – i.e., preventing interference with police activities and protecting individual privacy – are legitimate and important governmental interests. Id., at 836-37. Yet, an "outright ban" on the secret recording of police activities conducted in public, concluded the Court, was not narrowly tailored to further such interests and, therefore, unconstitutionally overbroad. Id., at 837.

Barring the recording of school business activities conducted in the Administration Office (whether open or secret) is a content-neutral restriction of general applicability. Further, such restriction serves significant governmental interests. The Superintendent and other administrators share numerous duties and responsibilities, including the day-to-day operation and oversight of

AA044

eight public schools with an enrollment of over 2,800 students in grades Pre-K through 12.[24] The efficient performance of such duties and responsibilities should not be disrupted by the recording of school administrators as they go about their daily business, much of which concerns confidential information regarding minor students and their families.[25] See Glik, 655 F.3d at 84 (upholding peaceful recording of arrest in public "that [did] not interfere with the police officers' performance of their duties"). If plaintiff's interpretation of the First Amendment is correct, anyone with a camera can enter 2 Blackburn Drive – which houses not only the Administration Office but also the GPS Pre-School Program – at any time and record whomever they wish simply by reciting the magic phrase: "I am doing a story." This cannot be the law.

Further, school officials do not lose all privacy interest by virtue of their status as public employees. Project Veritas, 982 F.3d at 838 (under certain circumstances, recording of police officers working in public could threaten officers' privacy interests). See M. Kaminski, "Privacy and the Right to Record," 97 B.U. L. Rev. 167, 203 (Jan. 2017) ("Privacy in the context of recording is the ability of an individual to dynamically manage her social accessibility at a particular moment, given features of the physical environment.") Such privacy interests may be jeopardized without reasonable time, place and manner restrictions on recordings.

While the Project Veritas Court did not conduct a forum analysis, it nonetheless recognized that a governmental interest (such as the interest in privacy) may be more significant in different

---

[24] See Department of Education School District Profiles:
https://profiles.doe.mass.edu/general/general.aspx?topNavID=1&leftNavId=100&orgcode=0107
0000&orgtypecode=5
[25] The First Amendment should not allow speech to interfere with a government employee's ability to perform her job. "[T]he question is not whether the audience can avoid the message by leaving a particular location ... but whether they should have to." C. M. Corbin, "The First Amendment Right Against Compelled Listening," 89 B.U. L. Rev. 939, 946 (June 2009).

AA045

spaces.[26] Project Veritas, 982 F.3d at 838. Superintendent Lummis, for example, should have a greater expectation of privacy in his own office than while attending a School Committee meeting. Also, the right to record affords protection for recordings on matters of public interest, not purely personal matters. See Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); Demarest v. Athol/Orange Cmty. Television, Inc., 188 F. Supp. 2d 82, 95 (D. Mass. 2002) ("plaintiffs had a constitutionally protected right to record matters of public interest.") Plaintiff's visit to "score five tickets" to his daughter's play was not a matter of public interest. Finally, a restriction on the recording of school business activities in the Administration Office leaves ample alternative channels for communication, including face-to-face meetings, telephone conversations, email communications, School Committee meetings, and other public fora. Plaintiff's recording was not protected under the First Amendment and, therefore, could be reasonably restricted.

**B.    PLAINTIFF'S POSTING ON FACEBOOK WAS NOT PROTECTED ACTIVITY UNDER THE FIRST AMENDMENT.**

---

[26] First Amendment law typically recognizes three types of fora: the traditional public forum; the designated public forum; and the limited or non-public forum. Ridley v. MBTA, 390 F.3d 65, 76 (1st Cir. 2004). The traditional public forum consists of "places which by long tradition or by government fiat have been devoted to assembly and debate …," such as streets, parks and public sidewalks. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). A designated public forum consists of public property that government has, by both expressed intention and actual practice, opened up as a place for expressive activity. Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 469 (2009). A limited or non-public forum is created "when the government opens its property only to use by certain groups or for the discussion of certain subjects." Lu v. Hulme, 133 F. Supp. 3d 312, 324-25 (D. Mass. 2015) (citing Christian Legal Soc. Chap. of Univ. of Cal., Hastings Coll. of Law v. Martinez, 561 U.S. 661, 679 n. 11 (2010)). In traditional and designated public fora, restrictions on speech are subject to strict scrutiny. In limited or non-public fora, restrictions based on subject matter and speaker identity are permitted "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 806 (1985). The GPS Administration Office is a limited or non-public forum where reasonable, viewpoint-neutral restrictions are permitted.

**AA046**

In Bartnicki v. Vopper, 532 U.S. 514 (2001), the United States Supreme Court extended constitutional protection to journalists and other publishers for the dissemination of information obtained by illegal means. There, the Court upheld the right of a radio host to broadcast an illegally intercepted and recorded phone conversation between two people involved in a labor dispute between a public school district and a teachers' union. Id., at 525. The First Amendment, ruled the Court, protects such publication provided (1) the publisher played no part in the illegal interception; (2) the publisher lawfully acquired the information; and (3) the information is on "a matter of public concern." Id., at 534. See Jean v. Massachusetts State Police, 492 F.3d 24, 33 (1st Cir. 2007) (upholding right to post audio/video recording of arrest and warrantless search on website that plaintiff "had reason to know" had been illegally recorded by third person).

Here, defendants do not condone plaintiff's publication of a recording taken in a location where such recordings are not permitted.[27] Superintendent Lummis politely asked Mr. Berge to turn off his camera; plaintiff flatly refused.[28] Nor was Mr. Berge wholly innocent in intercepting the information – on the contrary, he was the producer, director, cameraman and lead of the posted recording. But, as set forth above, the story of plaintiff's quest for five Middle School theater tickets is not information on a matter of "public concern." Thus, plaintiff's publication of the recording enjoys no First Amendment protection.

Matters of public concern are "matter[s] of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). Whether speech is protected raises a question of law to be determined by the "content, form, and context of a given statement, as

---

[27] Courts have not yet clearly defined the scope of what constitutes an "illegal" interception of information. Here, plaintiff requested and was denied permission to record his visit.
[28] Recording, at 02:33 – 02:42.

revealed by the whole record." Id., at 147-148 & n. 7 (questionnaire circulated to coworkers soliciting views on office transfer policy, office morale and confidence in supervisors held not speech on matters of public concern). See Lane v. Franks, 573 U.S. 228, 241 (2014) (speech involves matters of public concern when "it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.") (quoting Snyder v. Phelps, 562 U.S. 443, 453 (2011)).

Speech regarding personal issues and concerns is not so protected. See Rosado-Quinones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008) (police officer's complaint alleging harassment by fellow employees and delay in rearmament held not on matters of public concern); Meaney v. Dever, 326 F.3d 283, 289 (1st Cir. 2003) (personal protest in blowing horn to irritate mayor after union picketing event held not a matter of public concern); Allinova v. Worcester Sch. Comm., 994 F.2d 905, 914 (1st Cir. 1993) (posting letters of reprimand concerned "purely personal issue" and not matter of public concern). Here, plaintiff described his issue as a "ticket snafu,"[29] "kind of an unpleasant situation" and "a very small situation."[30] Specifically: "I'm so in the dog house with everyone because I didn't get these tickets for opening night."[31] This is not the stuff of political, social or other concerns to the community. As revealed by the "whole record," plaintiff's Facebook posting regarding his effort to score tickets to his daughter's play was not protected under the First Amendment.

## C.   DEFENDANTS DID NOT RETALIATE AGAINST PLAINTIFF FOR ENGAGING IN PROTECTED ACTIVITY.

---

[29] Id., at 00:13.
[30] Id., at 03:42 – 03:36.
[31] Id., at 05:48.

AA048

To recover for First Amendment retaliation under 42 U.S.C. § 1983, plaintiff must show that (1) he engaged in constitutionally protected activity; (2) he was subjected to an adverse action by defendants; and (3) the protected activity was a substantial or motivating factor in defendants' adverse action. D.B., *ex rel.* Elizabeth B. v. Esposito, 675 F.3d 26, 42 (1st Cir. 2012); Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir. 2020). If plaintiff makes such a showing, defendants may still avoid liability by showing they would have taken the same action even in the absence of plaintiff's protected activity. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

To be adverse, defendants' action must be more than *de minimis*. See Camona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006) (delay in providing accommodations to disabled person which results in mere inconvenience rather than significant injury or harm does not amount to adverse action); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (plaintiff must show that "defendant's conduct resulted in something more than a '*de minimis* inconvenience' to her exercise of First Amendment rights"). Instead, it must be "of a kind that would deter persons of 'ordinary firmness' from exercising their constitutional rights in the future." Starr v. Dube, 334 Fed. Appx. 341, 342 (1st Cir. 2009); Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001). While the standard is objective, plaintiff's actual response to defendant's conduct is relevant to the determination of whether a person of "ordinary firmness" would be deterred in exercising his First Amendment rights. Constantine, 411 F.3d at 500; Starr v. Moore, 849 F. Supp. 2d 205, 209 (D. N.H. 2012). See Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003) ("how plaintiff acted might be evidence of what a reasonable person would have done.")

As set forth above, plaintiff failed to allege sufficient facts to show that he engaged in constitutionally protected activity, either by recording his interactions with school administrators

**AA049**

on March 3, 2022, or by subsequently posting his private recording on Facebook. Therefore, plaintiff cannot satisfy the first element of a retaliation claim.

Nor can plaintiff show that he was subjected to an adverse action. The letter sent to Mr. Berge (and only Mr. Berge) on Friday, March 3, 2022, advised plaintiff that it was a criminal offense to record conversations without the other participant's agreement, and "Ms. Delisi unambiguously told you that she was not consenting to being recorded." (Am. Compl., Ex. 1).[32] Ms. Eason accordingly demanded that plaintiff "immediately remove the post from your Facebook account and/or any other communications to prevent the pursuit of legal action in this matter." Plaintiff did not comply with Ms. Eason's demand. Nor did defendants "pursue" legal action. Quite the opposite, plaintiff filed this action four days later on Monday, March 7, 2022. On March 11, 2022, district counsel for GPS withdrew the letter and, shortly thereafter, confirmed such withdrawal in writing. (Ex. "A"). In the letter of withdrawal, district counsel confirmed that GPS would not be taking legal action against Mr. Berge pursuant to the Massachusetts Wiretap Statute.

The letter of March 3, 2022 was no more than a *de minimis* inconvenience to plaintiff's exercise of his First Amendment "rights." It was not an adverse action that would deter a person of "ordinary firmness" from exercising his constitutional rights in the future, especially in light of its prompt withdrawal. Indeed, plaintiff (it appears) did not even take the letter seriously. He was not chilled. He declined to remove the post and promptly doubled down by filing this action the following Monday. In his Verified First Amended Complaint, plaintiff explains, "[a]ny reasonable person would know" that he (Mr. Berge) did not violate the Wiretap Statute, and "[a]ny level of review of the law would inform the average person that recording a conversation with the

---

[32] Plaintiff expressly requested such consent, but did not receive it. Recording, at 01:50 – 01:57. Plaintiff's continued recording begs the question of why he asked for permission in the first place.

**AA050**

knowledge of all participants does not violate [the Wiretap Statute]." (Am. Compl., ¶ 20). Plaintiff's own reaction demonstrates that the March 3, 2022 letter would not deter a person of "ordinary firmness" from exercising his constitutional rights. Plaintiff's First Amendment retaliation claim must, therefore, be dismissed.

## D.   <u>THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.</u>

To determine whether a government official enjoys qualified immunity, a court must decide "whether a reasonable official [in the defendant's position] could have believed his actions were lawful in light of clearly established law." <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87, 91 (1st Cir. 1994). The doctrine of qualified immunity "requires a constitutional right to be clearly established so that public officials are on notice that this conduct is in violation of that right." <u>Frazier v. Bailey</u>, 957 F.2d 920, 930 (1st. Cir. 1992). The focus is not on the merits of the underlying claim but, instead, on the objective legal reasonableness of the official's conduct as measured by reference to clearly established law and the information the official possessed at the time of the allegedly unlawful conduct. <u>Lowinger v. Broderick</u>, 50 F.3d 61, 65 (1st Cir. 1995); <u>Febus-Rodriguez</u>, 14 F.3d at 91. The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." <u>Lowinger</u>, 50 F.3d at 65; <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991). See <u>Savard v. Rhode Island</u>, 338 F.3d 23, 28 (1st Cir. 2003) ("The bottom line is that the qualified immunity defense prevails unless the unlawfulness of the challenged conduct is 'apparent.'") The framework for analyzing qualified immunity consists of a two-part inquiry: (1) whether plaintiff's allegations, if true, establish a constitutional violation; and (2) whether the constitutional right at issue was so clearly established at the time of the alleged violation that a reasonable official in defendant's position

**AA051**

"should have known how they applied to the situation at hand." Belsito Communications, Inc. v. Decker, 845 F.3d 13, 23 (1st Cir. 2016).

"A legal principle can be 'clearly established' without factually identical precedent, although the existing case law must have placed the specific constitutional … question 'beyond debate.'" Pagan-Gonzalez v. Moreno, 919 F.3d 582, 598 (1st Cir. 2019) (quoting Mullenix v. Luna, 136 S.Ct. 305, 308 (2015)). A right is "clearly established" if "the state of the law at the time of the alleged violation gave the defendant fair warning that his *particular* conduct was unconstitutional." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citation omitted) (emphasis added). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix, 136 S.Ct. at 308 (internal citations and quotations omitted).

As set forth above, plaintiff's allegations, even if true, do not establish viable retaliation claims under the First Amendment. But even if they do, the scope of plaintiff's rights (if any) to record the business of activities of school officials in the GPS Administration Office on the subject of opening night tickets to his daughter's school play and to later post such recording on Facebook was not clearly established at the time of defendants' conduct. By asking plaintiff to "turn off" the recording and later instructing plaintiff to remove the posted recording from Facebook, no reasonable official in the position of a GPS administrator would have understood that he or she was violating plaintiff's constitutional rights. Glik, Gericke and Project Veritas all define the right to record in the context of videos (open and secret) taken of police officers performing law enforcement duties in public fora. The First Circuit has not expressly stated, however, whether the right to record extends to non-law enforcement personnel (such as school administrators) performing official duties in a limited or non-public forum where reasonable, viewpoint-neutral

16

**AA052**

restrictions on speech are permitted. Nor has the First Circuit explained the constitutional significance of a government request (such as the one made here) to turn off the recording, or the level of protection afforded to a recording made for personal, non-public purposes.

Where defendants raise the defense of qualified immunity, plaintiff bears the burden of showing the defense does not apply. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). This burden requires plaintiff to spotlight "controlling authority" or "a robust consensus of cases of persuasive authority" (if there is one) that forbade defendants from acting as they did. Belsito, 845 F.3d at 23. Plaintiff can make no such showing here. Plaintiff's Verified First Amended Complaint should be dismissed as against the individual defendants.[33]

## E.    PLAINTIFF FAILS TO STATE A CLAIM OF MUNICIPAL LIABILITY AGAINST THE GLOUCESTER SCHOOL COMMITTEE.[34]

Municipal entities, such as the City of Gloucester, cannot be held liable under Section 1983 on a theory of *respondeat superior*. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 665 (1978). In order to prevail on a Section 1983 claim against a municipality, plaintiff must demonstrate that his harm was caused by a constitutional violation and that the municipality was responsible for such violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). Furthermore, if no municipal actor violated any protected rights of the plaintiff, he cannot prevail on a Section 1983 claim against the municipality. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Pittsley v. Warish, 927 F.2d 3, 9 n.4 (1st Cir. 1991).

---

[33] The individual defendants reserve the right to raise reliance on the advice of counsel in support of their qualified immunity defense, but decline to do so at the Motion to Dismiss stage.

[34] The Gloucester School Committee is not a separate legal entity subject to suit. Rather, it is an administrative arm of the municipality, City of Gloucester. Mullen v. Tiverton Sch. Dist., 504 F. Supp. 3d 21, 34 (D. R.I. 2020).

AA053

A municipality may, nevertheless, be held liable under Section 1983 if it deprives a person of a constitutional right through "a policy statement, ordinance, regulation, or decision officially adopted or promulgated." Smith v. City of Boston, 413 Mass. 607, 610 (1992) (citing Monell, 436 U.S. at 690). However, out of concern that municipal liability based on fault might collapse into de facto *respondeat superior* liability, the Supreme Court "set a very high bar for assessing municipal liability under Monell." Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). Thus, in the absence of a formal government policy, liability may only be imposed if the plaintiff's rights were violated by the existence of a widespread practice that, although not authorized by law or express government policy, was "so permanent and well settled as to constitute a 'custom or usage' with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)). Moreover, a plaintiff must show "a direct link between the municipality's policy and the constitutional violation." Bowen v. City of Manchester, 966 F.2d 13, 18 (1st Cir. 1992).

Here, plaintiff can make no showing that the individual defendants committed an underlying constitutional violation. For that reason alone, plaintiff's claim against the City should be dismissed. However, plaintiff also alleges no unconstitutional custom, policy or practice on the part of the City, nor does he allege sufficient facts to show that he was harmed by the City's enforcement of or adherence to an unconstitutional custom, policy or practice. Absent such allegations, the City is entitled to the dismissal of plaintiff's Section 1983 claim.

## F.    **PLAINTIFF'S DEMANDS FOR DECLARATORY RELIEF ARE MOOT.**

"The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" ACLU of Mass. v. United States Conf. of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (quoting Mangual v. Rotger-

**AA054**

Sabat, 317 F.3d 45, 60 (1st Cir. 2003)). "If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." Mangual, 317 F.3d at 60. For declaratory relief to withstand a mootness challenge, the facts alleged must show "a substantial controversy … of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Preiser v. Newkirk, 422 U.S. 395, 402 (1975). Here, where defendants withdrew the demand that plaintiff remove his recording from Facebook (Ex. "A"), plaintiff's "need" for declaratory relief is neither immediate nor real. Stated another way, declaratory relief in the form of an order that defendants' past conduct was somehow improper under the Massachusetts Wiretap Statute or FERPA would be merely advisory.

Plaintiff may argue that this case falls into the "voluntary cessation" exception to the mootness doctrine articulated in Boston Bit Labs, Inc. v. Baker, 11 F.4th 3, 9-10 (1st Cir. 2021). Under this doctrine, a case is not necessarily moot "when a defendant voluntar[ily] ceases the challenged practice in order to moot the plaintiff's case and there exists a reasonable expectation that the challenged conduct will be repeated" after the suit's dismissal. Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016). The doctrine exists "to stop a scheming defendant from trying to immunize itself from suit indefinitely …." Boston Bit Labs, 11 F.4th at 10 (quotation and citation omitted). See In re Financial Oversight & Mgmt. Bd., 16 F.4th 954, 962 (1st Cir. 2021) (concerns regarding manipulation to evade judicial review underlie voluntary cessation doctrine).

Withdrawal of defendants' demand that plaintiff remove the posted recording from his Facebook account is not the stuff of judicial avoidance. As set forth above, plaintiff's recording and posting were not protected activities under the First Amendment. Further, even they were constitutionally protected, the individual defendants are entitled to qualified immunity from any claim under 42 U.S.C. § 1983 and plaintiff fails to adequately plead a claim of municipal liability

AA055

against the City. Absent viable civil rights claims, plaintiff's requests for a judicial declaration that his past conduct was permissible under the Massachusetts Wiretap Statute and/or FERPA seek no more advisory relief. Such relief should be denied.

## V. CONCLUSION

For the reasons set forth above, the defendants, the Gloucester School Committee, Superintendent Ben Lummis, Stephanie Delisi and Roberta Eason, hereby request that this Honorable Court allow their Motion to Dismiss plaintiff's Verified First Amended Complaint and thereafter order said Complaint dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted.

Respectfully submitted,

The Defendants,
SCHOOL COMMITTEE OF GLOUCESTER;
BEN LUMMIS, in his personal capacity;
ROBERTA A. EASON, in her personal capacity; and
STEPHANIE DELISI, in her personal capacity;
By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ John J. Davis*
_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

**AA056**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on April 27, 2022.

*/s/ John J. Davis*

_____

John J. Davis, Esq.

**AA057**

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

RANDAZZA | LEGAL GROUP

| | |
|---|---|
| INGE BERGE, | |
| Plaintiff, | Civil Action No. 1:22-CV-10346 |
| v. | |
| SCHOOL COMMITTEE OF GLOUCESTER; BEN LUMMIS, in his personal capacity; ROBERTA A. EASON, in her personal capacity; and STEPHANIE DELISI, in her personal capacity, | **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

This case is about a citizen's right to record public employees in an area that is open to the public and then to publish that recording without the government threatening criminal charges for doing so. Some call Plaintiff Inge Berge ("Mr. Berge") a "gadfly." Others call him a "pain in the ass from Gloucester, Mass." He calls himself a "citizen journalist." We can call him what we like, but he immigrated to the United States to enjoy its civil liberties. When he sees these liberties threatened, he publishes to a wide audience, criticizing these threats. Mr. Berge serves as a watchdog over those dwindling, and now unfashionable (at least in Massachusetts), liberties.

Mr. Berge entered a public building to question government officials about an irrational policy. He brought along a video camera, which he displayed openly, and announced its use. He questioned multiple officials in a public-facing government office. One did not object, another calmly objected, and another flipped-out over it. Whatever the reaction, Mr. Berge had every right to film these individuals as they served in their official capacities in a place where he had every right to be. He then published the video on his publicly accessible Facebook page, along with his commentary. Mr. Berge then received a letter from the government threatening prosecution unless he ceased publication of his video footage and he was forced to retain counsel.

## 1.0    Statement of Relevant Facts in the First Amended Complaint ("FAC")

On March 3, 2022, Mr. Berge entered the Office of the Superintendent of Gloucester Public Schools ("Administrative Building") to discuss a government policy regarding seating at school events purportedly for the purpose of public safety, despite all statewide COVID-19 mandates having been lifted. (FAC at ¶ 8.) The irrational policy limited ticket sales in a 300-seat auditorium to only 175 attendees, which in itself could make some sense. However, then the seating confined those attendees to a dense area in the auditorium's center, rather than spreading them apart. The end result was fewer tickets available, but a crowd density that was likely greater than if it had been open seating throughout the auditorium - a policy that reduced access, but increased risk.

The Administrative Building is fully accessible to the public. (*Id.* at ¶ 9.) It does have private offices therein, but the public-facing reception is neither a restricted area nor private area. (*Id.* at ¶ 13.) Upon entering the building, and at all times, Mr. Berge held his camera out in the open, making it obvious to all that he was filming. (*Id.* at ¶ 11.) When Mr. Berge entered the building, he was directed to Defendant Executive Secretary Stephanie Delisi ("Delisi") and began a conversation with her by stating "I'm filming this, I'm doing a story on it." (*Id.* at ¶ 12.) Gregg Bach, the Assistant Superintendent of Teaching & Learning, then approached Mr. Berge and spoke with him regarding Mr. Berge's attempt to attend his daughter's play and the ticket policy. (*Id.* at ¶ 14.) The two had a pleasant conversation, where Mr. Berge was clearly filming, and Bach had no objection. (*Id.*) After his interview was complete, Mr. Berge left the building. (*Id.*)

At the time that Mr. Berge entered the building, there was neither signage nor any other indication that video recording or photography was restricted, not permitted, nor even discouraged. (*Id.* at ¶ 10.) While in the building, at no point did anyone inform Mr. Berge that filming was not permitted in the Administrative Building. (*Id.* at ¶ 13.) Two officials did state that they *personally*

did not want to be filmed and retreated to private offices.  (*Id.*)  However, what an official personally wants is not law or policy just because they want it.  There is no formal policy prohibiting recording.[1]  Further, when Ms. Delisi responded by screaming, it was a fair presumption that she was not quoting any official policy or law, but rather having a personal episode.

Mr. Berge uploaded the Video[2] on his publicly accessible Facebook page with his commentary.  (*Id.* at ¶ 15.)  Mr. Berge later received a letter (the "Demand Letter") sent on behalf of Defendants.  The Demand Letter, delivered by certified mail, falsely alleged that Mr. Berge was in violation of Mass. Ann. Laws ch. 272, § 99(c) (the "Wiretapping Law") and coercively demanded that the government or its employees would pursue legal action if Berge did not immediately remove the Video from his Facebook account.  (FAC <u>Exhibit 1</u>.)  Mr. Berge presumed that since the Wiretapping Law is a criminal statute, the threat was to prosecute him, criminally.

## 2.0    Legal Standard

FRCP 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).   Under Fed. R. Civ. P. 12(b)(6), a complaint only needs to allege facts sufficient to "state a claim for relief that is plausible on its face."  *Twombly*, 550 U.S. at 555.  A court must "accept[] as true all well-pleaded facts, analyz[e] those facts in the light most hospitable to the plaintiff's theory, and draw[] all reasonable inferences for the plaintiff."  *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383 (1st Cir. 2011).  In bringing a motion to dismiss for failure to state a claim, a defendant may not rely on evidence or information outside the four corners of the complaint without

---

[1] If such a policy existed, it would not survive constitutional scrutiny.
[2] Available at: <<https://www.facebook.com/inge.berge.9/videos/1571702173204109>>.

converting the motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d); *see Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 615 (D. Mass. 2016) (finding that "the Court is limited at this stage to evaluating the four corners of the complaint and certain undisputed or critical documents, not statements made at oral argument").

### 3.0    Argument

Defendants conflate two rights enjoyed by Mr. Berge under the First Amendment. He had the right to record. He had the right to publish. The Demand Letter threatened and infringed upon both of these rights. "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes ... *the manner in which government is operated* or should *be operated....*" *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966) (emphasis added). This suit is brought to vindicate both the right to record how Defendants operate the government and the right to publish about such operations, including the right to publish documentary evidence about how certain government officials behaved when questioned.

First Amendment claims are analyzed in three steps. *See Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985). The plaintiff must first demonstrate that the activity at issue is protected by the First Amendment. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). Second, if the activity at issue is protected, the context of the activity is analyzed in order to determine which First Amendment standard or standards apply. *Cornelius*, 473 U.S. at 797. And third, the Government's justification for restricting the activity is examined to ensure that it meets the applicable standard. *Id.* Under this analysis, the recording and publication were fully protected.

### 3.1    Plaintiff's Recording Was Protected Under the First Amendment

The protections of the First Amendment extend not just to the traditional press embodied by newspapers, television, books, and magazines, "but also humble leaflets and circulars," which were meant to play an important role in the discussion of public affairs.  *Mills v. State of Ala.*, 348 U.S. 24, 219 (1966).  The First Circuit has extended this principle to video recording by recognizing that the First Amendment protects "a citizen's right to film government officials ...  in the discharge of their duties in a public space...." *Glik v. Cunniffe*, 655 F.3d 78, 85 (1st Cir. 2011).  "The proliferation of electronic devices with video-recording capability means that many of our images of current events come from bystanders with a ready cell phone or digital camera rather than a traditional film crew, and news stories are now just as likely to be broken by a blogger at her computer as a reporter at a major newspaper."  *Id.* at 84.  "Such developments make clear why the news-gathering protections of the First Amendment cannot turn on professional credentials or status."  *Id.*  The Supreme Court does not "accord greater First Amendment protection to the institutional media than to other speakers."  *Obsidian Fin. Grp., LLC, v. Cox,* 70 F.3d 1284, 1290 (9th Cir. 2014) (collecting cases).  If it did, one could imagine a chilling effect that would change history: citizen Darnella Frazier had as much right to film Derek Chauvin killing George Floyd as CNN would have.  The government in this case would disagree, requiring the suppression of Frazier's video, if only Derek Chauvin had screamed at her that he didn't want to be filmed.

### 3.1.1    Mr. Berge has the Right to Record

The First Amendment protects the right of the public to record government officials in the discharge of their duties in a public space.  *Glik*, 655 F.3d at 84. "[I]nformation gathering about matters of public interest through audio and audio-visual recording in public spaces is protected by

Response in Opposition to Defendants' Motion to Dismiss

**AA062**

the First Amendment ... subject to reasonable restriction." *Project Veritas Action Fund v. Conley*, 244 F. Supp. 3d 256, 262 (D. Mass. 2017) (citing *Glik*, 655 F.3d at 83-84). "*Glik* explained in this regard that protecting the right to collect information about government officials 'not only aids in the uncovering of abuses, but also may have a salutary effect on the functioning of government more generally.'" *Project Veritas Action Fund v. Rollins,* 982 F.3d 813, 832 (1st Cir. 2020) (citations omitted). "[A]udio and audiovisual recording are uniquely reliable and powerful methods of preserving and disseminating news and information about events that occur in public." *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 607 (7th Cir. 2012). Mr. Berge has a First Amendment right to record and gather information about how his government functions.

Defendants appear to concede as much. Defendants state "the right to record affords protection for recordings on matters of public interest, not purely personal matters." (Motion at 10.)[3] The Defendants even cite case law in support of Mr. Berge's constitutionally protected right to record. *See Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."); *Demarest v. Athol/Orange Cmty. Television, Inc.*, 188 F. Supp. 2d 82, 95 (D. Mass. 2002) ("plaintiffs had a constitutionally protected right to record matters of public interest."). Defendants provide no support for their conclusory statement that the right to record ends when the video is a "purely personal matter." Nevertheless, this lack of support for this bogus argument should not affect the outcome – since Berge's recording was on a matter of public concern.

---

[3] Defendants are dead wrong when they claim that the First Amendment does not protect recording of "purely personal matters." (Motion at 10.) This is why they do not cite a single case supporting this wished-for theory. Mr. Berge heard about the COVID seating policy through a personal experience – but if a journalist writing about their own experiences loses First Amendment protection, then the institutional press would lose its protections as well. There is no legal basis to cleave the First Amendment in half.

### 3.1.2   Mr. Berge's Recording was Legally Proper

The Defendants admit that Mr. Berge was allowed to record, but they appear to argue that he came at the wrong time.  Specifically, the Defendants argue that "[b]arring the recording of school business activities conducted in the Administration Office (whether open or secret) is a content-neutral restriction of general applicability." (Motion at 8.) What restriction? There was neither signage nor any other indication that video recording or photography was restricted.  (FAC ¶ 10.).  At no point while Mr. Berge was recording in the Administrative Building did anyone tell him there was a restriction.  (*Id.* at ¶ 13.)  Further, the Demand Letter made no mention of any formal restriction. (FAC Exhibit 1).  The Defendants cite to no restriction in their motion.  The government doesn't get to just invent a policy out of thin air.  *Child Evangelism v. Montgomery Schools*, 457 F.3d 376, 386 (4th Cir. 2006) ("Thus, there is broad agreement that, even in limited public and nonpublic forums, investing governmental officials with boundless discretion over access to the forum violates the First Amendment.") (collecting cases). If any such policy exists now, it did not exist at the time of filming.  The government does not get to parrot "content-neutral restriction" without such a restriction ever existing until Delisi flipped out at Mr. Berge. A government restriction is not created by a government employee simply shouting at a citizen.

Moreover, even if there were a policy barring the recording of business activities, it would be unconstitutional.  If it were an "outright ban", it would be unconstitutionally overbroad like the Wiretapping Law in *Project Veritas Action Fund*, 982 F.3d at 837.  The term "school business activities" is void for vagueness.  Defendants claim recording in the office is disruptive because their work involves confidential information.  (Motion at 8-9.)  But, Mr. Berge did not film student records nor did he interact with confidential information.  He filmed his public conversations with government officials where they spoke about the seating policy, the application thereof, and

exceptions or amendments thereto.  (FAC at ¶¶ 8 & 14.)  The government is trying to create a smokescreen about privacy when this is not what was at stake.  What was at stake was government officials' pride – hurt by Mr. Berge, they decided to abuse their authority to threaten him.

Based on the Superintendent's own words, questioning Gloucester Public School officials and recording their answers is permitted in the Administrative Building *at least some of the time.* *See* (Motion at 4.) ("The Superintendent continued: 'I'm happy to speak with you about O'Maley if you turn that off.  *You do not have my permission to film here **right now**.*") (emphasis added). The Superintendent's statement indicates unbridled discretion, untethered from any policy, usually aimed at suppressing a particular viewpoint and unconstitutional under any standard of scrutiny. *Child Evangelism*, 457 F.3d at 386 ("[T]he dangers posed by unbridled discretion — particularly the ability to hide unconstitutional viewpoint discrimination[.]").  In *Iacobucci v. Boulter*, government officials repeatedly told a journalist to turn off his camera and stop filming.  193 F.3d 14, 17-18 (1st Cir. 1999).  Because the filmer's "activities were peaceful, not performed in derogation of any law, and done in the exercise of his First Amendment rights," a police officer "lacked the authority" to arrest him for filming in a location where he was lawfully permitted to be. *Id.* at 25. When Mr. Berge has the right to be on public property, in the absence of a constitutional enumerated policy, he has a right to record.  That does not end because someone shouts at him.

Rights do not require permission.  Under the Defendants' purported amorphous policy, no woman could ever record herself asking a Senator their views on abortion in the U.S. Capitol if the Senator arbitrarily says 'you do not have my permission to film here right now.'  The U.S. Constitution provides all the permission that Mr. Berge needed.[4]

---

[4] In the off chance there is a "policy" in existence Defendants must show that it can survive constitutional scrutiny.  But as Defendants are making up the policy as they go, there is no way to evaluate the moving-target policy.

### 3.2    Plaintiff's Publication of the Video Was First Amendment Protected

The government does not get to threaten criminal prosecution for publishing truthful information.  Even stolen top secret documents are lawful to publish.  *See New York Times Co. v. United States*, 403 U.S. 713 (1971).  The right to publish is the bedrock for freedom of speech and of the press.  *See McMillan v. Carlson*, 369 F. Supp. 1182, 1185 (D. Mass. 1973) ("The right to publish is firmly embedded in the First Amendment and is central to the constitutional guarantee of free speech and a free press.") (collecting cases); *Branzburg v. Hayes*, 408 U.S. 665, 727 (1972) ("the right to publish is central to the First Amendment and basic to the existence of constitutional democracy.").  If one can publish The Pentagon Papers, the "School Committee Interview Video" can also see the light of day.

### 3.2.1    A Restriction on Publication Does Not Survive Strict Scrutiny

When First Amendment protections exist, "claimed justifications for denying or burdening free speech are to be subjected to careful and rigid scrutiny."  *McMillan*, 369 F. Supp. at 1186. Defendants have the burden to establish whether their infringement "furthers an important or substantial governmental interest; [that] the governmental interest is unrelated to the suppression of free expression; and [that] the governmental interest is unrelated to the suppression of free expression; and [that] the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 377 (1968).  The Defendant have not, and cannot, meet their burden on strict scrutiny.

### 3.2.2    *Bartnicki* Does Not Support Defendants

Defendants argue incorrectly that *Bartnicki v. Vopper*, 532 U.S. 534 (2001) supports a prohibition of publication. (Motion 11.)  For *Bartnicki* to apply, the Video must have been illegally

obtained.  Even if Mr. Berge's video were made contrary to a "policy" that would not render it "illegally obtained."  The Defendants reliance on *Barnicki* is not persuasive, but it is shameful.

Defendants are estopped from making an argument premised on Mr. Berge committing illegal conduct, where they simultaneously assert in their mootness argument that the Defendants are no longer accusing Mr. Berge of illegal conduct regarding the Video.  *See Fleetboston Financial Corp. v. Alt*, 668 F. Supp. 2d 277, 280 (D. Mass. 2009) ("The First Circuit holds that judicial estoppel applies when a party is "playing fast and loose with the courts.  Judicial estoppel protects the integrity of the judicial process by assuring that litigants cannot manipulate judicial procedure to convenience themselves.'") (citations and internal quotation marks omitted).

Defendants drop a blatantly false footnote stating that "courts have not yet clearly defined the scope of what constitutes an 'illegal' interception of information. Here, the plaintiff requested and was denied permission to record his visit."  (Motion at 11 n. 27.)  The legislature has clearly defined the scope of what constitutes illegal interception of information—the Wiretapping Law. Mr. Berge committed no illegal interception.

### 3.2.2.1 The Wiretapping Law is a Red-Herring

For Defendants to even purport to be able to restrict publication, the Video must have been the product of an *illegal* interception by Mr. Berge.  There was no illegal interception.  The Video was made in full compliance with the Wiretapping Law.   The Wiretapping Law prohibits "Interception" – meaning "to *secretly* hear, *secretly* record, or aid another to *secretly* hear or *secretly* record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication." G.L. c. 272 § (B)(4) (emphasis added).  There was nothing secret about what Mr. Berge did.  The SJC has construed § 99 to only encompass recording not conducted in "plain sight" of the person

recorded, so long as that person has *no actual knowledge* it is occurring.  *Commonwealth v. Hyde*, 434 Mass. 594, 605 (Mass. 2001).  At all times, Mr. Berge held his camera out in the open, and it was obvious to everyone that he was filming.  (FAC at ¶ 11.)  Mr. Berge verbally communicated to persons in the building that he was filming.  (*Id.*)  The Video could never be an "illegal interception."

### 3.2.2.2 The Video was Lawfully Acquired

Mr. Berge lawfully obtained the Video. Accusations of FERPA violations are misplaced. FERPA prohibits the disclosure of "education records" by a federally-funded "educational agency or institution" without consent. 28 U.S.C. § 1232g(b).  Mr. Berge is not an "educational agency or institution." FERPA is inapplicable.  Moreover, the Video is not an "education record" as it contains no information directly related to a student, and it is not maintained by an educational agency or institution or by a person acting for such agency or institution.  *See* 28 U.S.C. § 1232g(a)(4).

### 3.2.2.3 The Video was on a Matter of Public Concern

Gathering information about what public officials do on public property is a matter of public concern.  *See Larsen v. Fort Wayne Police Dep't*, 825 F. Supp. 2d 965, 979 (N.D. Ind. 2010) ("The First Amendment is not implicated because a person uses a camera, but rather, when that camera is used … to gather information about what public officials do.").  In *Glik*, the First Circuit clearly established the public's First Amendment right to record public officials doing their jobs.  *Glik* is not limited to the specific circumstances there, as the First Circuit makes clear that the right is much broader, and merely "particularly true" in the circumstances of that case.  *Id.* at 82.  The court discussed at length the importance of citizen information-gathering to prevent misconduct of government officials.  *Id.* at 82-83.  The court commented that the "terse" manner in which citizen recording of public officials had been discussed in previous opinions "implicitly speaks to the

fundamental and virtually self-evident nature of the First Amendment's protections in this area." *Id.* at 84-895. *See also Pollack v. Reg'l Sch. Unit 75*, 12 F. Supp. 3d 173, 198 (D. Me 2014) (noting that *Glik* is not restricted to police officers and the right to film is not reserved for the press).

If government policies are not a matter of public concern, then nothing is. *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004) ("The Court has recognized the right of employees to speak on matters of public concern, typically matters concerning government policies that are of interest to the public at large, a subject on which public employees are uniquely qualified to comment.") (citations omitted). Mr. Berge published a video to comment on the unreasonableness of a government policy and how government employees acted. (FAC at ¶ 11). Mr. Berge went to a public building to discuss the seating policy. (*Id.* at ¶ 8.) It was a government policy that Defendants enforced. The newsworthy nature of COVID-19 policies is axiomatic as is the employees' gradations of responses to being questioned.

The Defendants disingenuously focus on Mr. Berge's desire for tickets to his daughter's play. But the only reason he could not obtain them was Defendants unreasonable policy. (Motion at 12.) His personal interest in what is otherwise a matter of public concern does not deprive it of its importance. In *Cirelli v. Town of Johnston School Dist.*, a teacher videotaped conditions at the school, originally to obtain evidence for grievances and complaints to state labor officials about the conditions. 897 F. Supp. 663, 665 (D.R.I. 1995). The court noted that Cirelli's "personal interest in an issue that potentially affects all of the members of the staff and student body does not strip such issue of its public nature." *Id.* at 666. Likewise, Mr. Berge's personal interest in getting tickets does not make the policy any less a matter of public concern.

### 3.3    Defendants Retaliated Against Plaintiff for Engaging in Protected Activity

To establish a prima facie case of First Amendment retaliation, a plaintiff must show: (1) that "he or she engaged in constitutionally protected conduct"; (2) that "he or she was subjected to an adverse action by the defendant"; and (3) that "the protected conduct was a substantial or motivating factor in the adverse action." *David B. v. Esposito (In re D.B. ex rel. Elizabeth B.)*, 675 F.3d 26, 43 (1st Cir. 2012).   An adverse action is one that "viewed objectively ... would have a chilling effect on [the plaintiff's] exercise of First Amendment rights," *Barton v. Clancy*, 632 F.3d 9, 29 & n.19 (1st Cir. 2011), or that "would deter a reasonably hardy person from exercising his or her constitutional rights." *D.B.*, 675 F.3d at 43 n.11. Regarding the third element, "'temporal proximity ... may serve as circumstantial evidence of retaliation.'" *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011) (quoting *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002)). "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (noting that government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech"). The First Amendment retaliation doctrine addresses "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental efforts that fall short of a direct prohibition against the exercise of First Amendment rights." *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996).

### 3.3.1   All Defendants are Liable for Retaliation

Mr. Berge engaged in protected constitutional activities.  The Defendants claim no adverse action because the letter threatening legal action under the Wiretapping Law was *de minimis* and

that Mr. Berge refused to be coerced into removing the Video from Facebook.[5]  Government speech is "adverse action" if it is "threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action [would] imminently follow." *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 689 (4th Cir. 2000), *cited in Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013).  "An ... act is not *de minimis* if it would chill or silence a person of ordinary firmness from future First Amendment activities." *Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 81 (D. Me. 2013) (citations and quotation marks omitted); *see also Brown v. Crowley ("Brown")*, 312 F.3d 782, 789 (6th Cir. 2002) (majority decision), *cert. denied*, 540 U.S. 823 (2003).

Mr. Berge received a certified Demand Letter from government officials alleging that he committed a felony, and that they would pursue legal action if he did not immediately remove the Video. (FAC Exhibit 1.)  He was forced to hire a lawyer in response.  A violation of the Wiretapping Law is a felony subject to five years in prison and a $10,000 fine for secretly recording a conversation and subject to 2 years in jail and a $5,000 fine for using such a record.  G.L. c. 272, §§99(C)(1) & (3)(b).  An aggrieved person may also bring a civil action against a violator. *Id.* at § 99(Q).  This threat was more than *de minimis*.  By any objective measure, the Demand Letter would chill a person of ordinary firmness from exercising their future First Amendment rights.  The Letter was sent in retaliation to Mr. Berge's exercise of his First Amendment rights. These government officials used their position of power to chill Mr. Berge's speech.

---

[5]  The Defendants also assert that they withdrew the letter after Mr. Berge filed the complaint, and then confirmed that the Defendants would not take legal action.  (Motion at 14.)  Those assertions are beyond the four corners of the first amended complaint.  Moreover, it is uncertain if this was on behalf of all Defendants and if it would be enforceable.

### 3.4    The Individual Defendants Are Not Entitled to Qualified Immunity

Public officials are given qualified immunity from personal liability for violating the Constitution for actions taken in the exercise of discretionary functions.[6]  *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *Barton v. Clancy*, 632 F.3d 9, 21 (1st Cir. 2011). Courts apply a two-prong analysis in determining qualified immunity. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).  These prongs are "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Id*.  Defendants are not entitled to qualified immunity. Defendants violated clearly established rights.

#### 3.4.1    The Right to Record was Clearly Established

As discussed above, under *Glik* and its progeny, the right to record government officials, including questioning them about their policies, is clearly established.  *See Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Gericke v. Begin*, 753 F.3d 1, 9 (1st Cir. 2014) ("a citizen's right to film government officials…in the discharge of their duties in a public space' was clearly established") (quotation marks omitted); *Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020). The First Circuit expounded that "[g]athering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and

---

[6] To the extent applicable, Plaintiff challenges the intertwined doctrines of *Monell* and qualified immunity to the extent they would combine to make no person or entity liable for a violation of constitutional rights under Section 1983, doctrines which undermine the intent and language of the statute. *See, e.g., Ventura v. Rutledge*, 398 F. Supp. 3d 682, 697 n.6 (E.D. Cal. 2019) ("[T]his judge joins with those who have endorsed a complete re-examination of the doctrine which, as it is currently applied, mandates illogical, unjust, and puzzling results in many cases."); *Manzanares v. Roosevelt Cty. Adult Det. Ctr.*, 331 F. Supp. 3d 1260, 1294 n.10 (D.N.M. 2018) ("Judges and scholars alike have thus increasingly arrived at the conclusion that the contemporary doctrine of qualified immunity is unmoored from any lawful justification.") (citation and quotation marks omitted); *Zadeh v. Robinson*, 928 F.3d 457, 480-81 (5th Cir. 2019) (Willet, J., concurring-in-part and dissenting-in-part) ("Indeed, it's curious how this entrenched, judge-created doctrine excuses constitutional violations by limiting the statute Congress passed to redress constitutional violations."). Plaintiff recognizes that this Court must follow these doctrines until the Supreme Court reconsiders its approach, which Plaintiff would challenge in this case.

promoting the free discussion of governmental affairs." *Glik*, 655 F.3d at 82 (quoting *Mills*, 384 U.S. at 218) (quotation marks omitted). The right to record what officials do on public property is fundamental in an age where smartphones have replaced news vans. Defendants point to no legal authority that would contravene the right to record, let alone show it was not clearly established.

### 3.4.2    The Right to Publish was Even More Clearly Established

The right to publish without government interference under the First Amendment is clearly established, long-cherished, and jealously guarded. *See McMillan*, 369 F. Supp. at 1185 ("The right to publish is firmly embedded in the First Amendment and is central to the constitutional guarantee of free speech and a free press.") (collecting cases); *see also Red Linon Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 390 (1969) ("It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas.... It is the right of the public to receive suitable access to social, political, esthetic, moral and other ideas and experiences...."); *Branzburg v. Hayes*, 408 U.S. 665, 727 (1972) ("the right to publish is central to the First Amendment and basic to the existence of constitutional democracy."); *Kleindienst v. Mandel*, 408 U.S. 753, 771 (1972) ("The First Amendment involves not only the right to speak and publish but also the right to hear, to learn, to know."). The *Bartnicki* test offered by Defendants is a red herring. As discussed above, the Video was not obtained illegally and *Bartnicki* is inapplicable. Defendants have no excuse for violating Plaintiff's clearly-established right to publish.

### 3.5    The Gloucester School Committee is Liable

A suit against a public official in his official capacity is a suit against the government entity.[7] *Wood v. Hancock Cnty. Sheriff's Dep't*, 354 F.3d 57, 58 n. 1 (1st Cir.2003). The reason for this is that "it is when [the] execution of a government's policy or custom, whether made by its lawmakers

---

[7] Although the individual defendants were named in their personal capacities, to the extent necessary, Plaintiff would seek leave to amend to name them in their official capacities as well. This failure was an error, not a willful omission.

or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). A municipal government is liable when it has caused the deprivation of a constitutional right through an official policy or custom. *See Rodríguez v. Municipality of San Juan*, 659 F.3d 168, 181 (1st Cir. 2011).

Defendant School Committee of Gloucester exercises the control and management of public schools of the City of Gloucester. G.L. c. 43, sec. 33 and Article 4, Section 4-1(a) of the Code of Ordinances, City of Gloucester. The Committee's responsibilities include creating reasonable rules and regulations. The Demand Letter was sent on "Gloucester Public Schools" letterhead. (ECF No. 4-1). The purported withdrawal was on behalf of "the District", *i.e.,* the School Committee. (ECF No. 15-2). Because the Demand letter was written, prepared, and sent out on the same day that the Video was created and published, it is plausible that the School Committee failed to properly train its employees on the First Amendment or it has established customs or policies for sending out Demand Letters in the unconstitutional manner that occurred here. As such, the School Committee is directly implicated under the theory of municipal liability for the deprivation and retaliation of Mr. Berge's First Amendment rights to record and to publish.

The School Committee is otherwise liable for the actions of the Superintendent. "One way of establishing a policy or custom is by showing that 'a person with final policy making authority' caused the supposed constitutional injury." *Rodríguez*, 659 F.3d at 181 (quoting *Welch v. Ciampa*, 542 F.3d 927, 941–42 (1st Cir.2008)). Municipal liability may be imposed for a single decision by

a final policy maker. *Rodríguez–García v. Miranda–Marín*, 610 F.3d 756, 770 (1st Cir.2010). Defendant Superintendent Lummis is a final policy decision-maker. Superintendent Lummis, with Defendants Delisi and Eason knew or should have known of the Demand Letter and approved of it being sent. (FAC ¶ 23-25.) Lummis caused constitutional injury - the School Committee is liable.

### 3.6    Plaintiff's Demands for Declaratory Relief Are Not Moot

Defendants claim that the withdrawal of the Demand Letter renders the claim moot.[8] When a defendant asserts that an event has mooted a case, "it bears the heavy burden of persuading the court that there is no longer a live controversy." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC) Inc.*, 528 U.S. 167, 189 (2000); *Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013)*; Conservation Law Found. v. Evans*, 360 F.3d 21, 24 (1st Cir. 2004) (finding that the party invoking the doctrine of mootness has the burden of establishing mootness). Defendants have not met their burden.

Defendants continue, even in their very motion to dismiss, to accuse Mr. Berge of illegal activity in the creation and publication of the Video. Further, the letter was only withdrawn on the part of one defendant – something that Berge's counsel pointed out on March 22, 2022. *See* **Exhibit 1** and **Exhibit 2**. Defendants subsequently accused Plaintiff of violating FERPA.

In retaliation for the filing of the initial complaint, the Defendants published false public statements that Mr. Berge's publication of the Video was illegal. (FAC ¶ 28.). And, Mr. Berge has no intention of ceasing in his activities. Thus, to the extent there is a "new policy", Mr. Berge should have leave to amend to add a challenge to this new policy itself.

---

[8] To the extent applicable, this converts the motion into one for summary judgment, and Defendants have not complied with the local rules for summary judgment. If the Court would convert the motion, Plaintiff would then move per Fed. R. Civ. P. 56(d) to conduct discovery on the issue as to the scope and authority of the withdrawal.

Further, the "voluntary cessation" doctrine serves as an exception to mootness. *Friends of the Earth*, *Inc*. v. *Laidlaw Environmental Services (TOC) Inc*., 528 U.S. 167, 189 (2000). ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice") (citations omitted). When a defendant voluntarily ceases committing the offending activity, courts impose additional requirements to ensure that the defendant is not "temporarily alter[ing] questionable behavior" in order to evade judicial review. *Catholic Bishops*, 705 F.3d at 54 (citation omitted). Voluntary cessation does not render a case moot unless the defendant meets the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 55 (citations omitted).

Defendants do not meet this burden; they merely shrug: this "is not the stuff of judicial avoidance." (Motion at 19.) Only quite some time after Mr. Berge filed a complaint with this court did Defendants purportedly withdrawal the Demand Letter. Defendants went out of their way to harass Mr. Berge by sending the Demand Letter and attempting to chill his speech. Even in their motion to dismiss, Defendants continue to accuse Mr. Berge of illegal conduct in the making the Video and publishing it. Defendants' conduct simply seeks to evade judicial review.

Moreover, Plaintiff suffered an injury, nominal damages remain available, and the action is entitled to proceed. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Diesel v. Town of Lewisboro*, 232 F.3d 92, 108 (2d Cir. 2000) ("Plaintiffs may recover nominal damages under § 1983 'in the absence of proof of actual injury.'") (quoting *Atkins v. New York City*, 143 F.3d 100, 103 (2d Cir. 1998)); *Irish Lesbian Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998); *see also Floyd v. Laws*, 929 F.2d 1390, 1402 (9th Cir. 1991); *Santiago v. Garcia*, 821 F.2d 822, 829 (1st Cir. 1987).

## 4.0    Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Defendants'

Motion to Dismiss in its entirety.

### REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(d), Plaintiff hereby requests hearing on Defendants' motion.  Plaintiff

believes oral argument may assist the Court in addressing the multiple issues and assertions outside

the four-corners of the Amended Complaint and Plaintiff wishes to be heard.

Dated: May 11, 2022.                Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
Robert J. Morris II (*pro hac vice* pending)
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Plaintiff
Inge Berge*

### CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2022, the foregoing document was served on all parties or

their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

**AA077**

# __Exhibit 1__

Correspondence from Naomi R. Stonberg

March 22, 2022

**AA078**

# Brody, Hardoon, Perkins & Kesten, LLP

## Attorneys at Law

Richard E. Brody
Laurence E. Hardoon
Samuel Perkins
Leonard H. Kesten
Jocelyn M. Sedney
Jeremy I. Silverfine
Thomas R. Donohue
Gregor A. Pagnini
Evan C. Ouellette
Michael Stefanilo, Jr.

699 Boylston Street
Boston, Massachusetts 02116
Telephone 617 880 7100   Facsimile 617 880 7171

www.bhpklaw.com

Erica L. Brody
Allison L. O'Connell
Francesca M. Papia

OF COUNSEL
Hon. Paul A. Chernoff (Ret.)
Deidre Brennan Regan
Andrew A. Rainer
Naomi R. Stonberg

March 22, 2022,

Re:   Inge Berge

*By Email*

Dear Mr. Randazza:

I informed you on March 11, 2022 on a conference call in which Attorneys Gregor Pagnini and Leonard Kesten of this office also participated, that the District would be withdrawing the letter to Mr. Berge dated March 3, 2022. I also acknowledged that the District would not be taking any legal action against Mr. Berge relating to Massachusetts General Laws, Chapter 272, § 99(C). During our call you consulted with your client and indicated that you had advised him of our position on said statute and all other related matters.

Please accept this as written notice that the letter dated March 3, 2022 has been revoked and the District will not take any criminal action against Mr. Berge relating to the recording that took place inside the school administration building on March 3, 2022. However, this also confirms our position that all school buildings are non-public forums and therefore Mr. Berge's actions on March 3, 2022 were not protected by the First Amendment.

Notwithstanding the above, the District neither waives nor relinquishes any defenses it has or may have to the claims set forth in <u>Berge v. School Committee of Gloucester, et al.</u>, C.A. No. 1:22-cv-10346 (D. Mass.) This letter shall not be construed or interpreted as an admission of liability or wrongdoing on the part of the District, its agents, servants or employees. All liability is expressly denied.

Sincerely,
*nrs*
Naomi R. Stonberg
Counsel for Gloucester School Committee

cc:   Kathy Clancy, Chairperson Gloucester School Committee
      Ben Lummis, Superintendent
      Inge Berge

**AA079**

# **Exhibit 2**

Email From Marc Randazza to Naomi Stonberg

March 22, 2022

**AA080**



Marc Randazza

---

## Re: Berge correspondence

1 message

**Marc Randazza**                                                                                      Tue, Mar 22, 2022 at 1:50 PM
To: Naomi Stonberg
Cc: Kathy Clancy                                          , Ben Lummis                                                ,                  Gregor Pagnini
                        , John Davis

Thank you.  I think that there may be some confusion as to our position.  In the last version of the settlement agreement we provided to you, we wanted you to acknowledge that his actions in *making* the video were not a violation **of the wiretapping statute**.

We have accepted, for the sake of peace at this time, your position that there was no First Amendment right to record in that office.  (We do disagree, but had not sought your admission of this, nor do we bring that claim in the amended complaint).  We also believe that even absent the First Amendment, he had a right to record.  Nevertheless, we have not sought your capitulation on that point.

We did, however, seek your capitulation to the point that Mr. Berge had a First Amendment right to **publish** the video.  We still maintain that position.  Even if the video was unlawfully made (which it was not - but for the sake of discussion let us just say it was) he would still have a First Amendment right to **publish** it.  The legal threat was that he would be prosecuted if he did not cease **publication** of the video.

We do acknowledge that in your letter, you are now agreeing that the *district* will take no further action, but you do not make any statement in it about your other clients (I presume that you still represent all of the defendants).  Therefore, this letter does not resolve the dispute.  My client still must operate under the cloud that Ms. Delisi or other parties might 1) seek prosecution, 2) seek civil claims, or 3) will take other extra-judicial steps to censor my client.

It is unfortunate that you rejected a settlement agreement in which all you had to do was acknowledge my client's rights as we have claimed them, with us specifically omitting a First Amendment right to record in the building.  (We believe there are other legal reasons that he could do that, but in the interest of compromise, we backed down from claiming a First Amendment right to record).

Accordingly, this case will continue both against the district and against the individuals involved.

Should you decide to re-engage in settlement talks and all parties enter into an agreement that would actually lift all cloud of concern from my client's head, and acknowledge his First Amendment right to **publish**, you could save the district significant litigation costs. However, if you or the district believe that the case should continue rather than acknowledge this clear fact, we are prepared to litigate this case further.

In short, we gratefully acknowledge the ground that you have given here.  Do not think that we lack gratitude for that.  But, we expect the government and its employees to comfort Mr. Inge that the Constitutional rights he emigrated here to enjoy will not be molested by any defendant in any way.

On Tue, Mar 22, 2022 at 4:08 PM Naomi Stonberg                              wrote:
Attached please find correspondence regarding the above-mentioned individual.

Naomi Stonberg
Brody, Hardoon, Perkins and Kesten



--
_____

**Marc John Randazza, JD, MAMC, LLM**\* | **Randazza Legal Group**



\* Licensed to practice law in Arizona, California, Florida, Massachusetts, and Nevada.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

INGE BERGE,

                    Plaintiff,

        v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A. EASON,
in her personal capacity; and STEPHANIE
DELISI, in her personal capacity,

                    Defendants.

Civil Action No. 1:22-CV-10346

**NOTICE OF SUPPLEMENT AUTHORITY**

In further support of his Response in Opposition to Defendants' Motion to Dismiss, Plaintiff Inge Berge, by and through his undersigned counsel, respectfully submits the recent decision in *Irizarry v. Yehia*, No. 21-1247 (10th Cir. July 11, 2022) ("*Irizarry*") (attached as **Exhibit A**).

The *Irizarry* decision is relevant to arguments advanced by Defendants in support of their motion to dismiss, Plaintiff respectfully requests that the Court take notice of this supplemental authority.

In *Irizarry*, a journalist and blogger filmed a DUI traffic stop in Colorado. A police officer arrived on the scene and obstructed the plaintiff's filming. *Irizarry v. Yehia*, No. 21-1247, at *1 (10th Cir. July 11, 2022).

The plaintiff sued under § 1983 for violation of his First Amendment rights. *Id.* at *2. The district court dismissed the complaint for failure to state a claim and held that the police officer was entitled to qualified immunity because "the violation was not one of clearly established law. *Id.* The Tenth Circuit reversed and remanded. *Id.*

In the complaint, plaintiff alleged First Amendment retaliation under clearly established law and that the police officer was not entitled to qualified immunity. *Id.* at *7. The Tenth Circuit noted

that it had not previously recognized a First Amendment right to film police officers performing their duties in public, it was now "recogniz[ing] that the right exists and was clearly established when the incident occurred." *Id.* at *7. The court further noted that "even without Supreme Court or Tenth Circuit precedent, persuasive authority from other circuits may clearly establish the law in this circuit when that authority would have put a reasonable officer on notice that his or her conduct was unconstitutional." *Id.* at *18. Moreover, the Tenth Circuit quoted Supreme Court precedent stating "[f]ilming the police and **other public officials** as they perform their official duties acts as 'a watchdog of government activity' and furthers debate on matters of public concern." *Id.* at *9-10 (quoting *Leathers v. Medlock*, 499 U.S. 439, 447 (1991)) (emphasis added).

Dated: July 13, 2022.                    Respectfully Submitted,

                                          /s/ Marc J. Randazza
                                          Marc J. Randazza, BBO# 651477
                                          Robert J. Morris II (*pro hac vice*)
                                          mjr@randazza.com, ecf@randazza.com
                                          RANDAZZA LEGAL GROUP, PLLC
                                          30 Western Avenue
                                          Gloucester, MA 01930
                                          Tel: (978) 801-1776

                                          *Attorneys for Plaintiff*
                                          *Inge Berge*

RANDAZZA | LEGAL GROUP

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

AA084

# Exhibit A

**AA085**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ABADE IRIZARRY,

     Plaintiff - Appellant,

v.

A. YEHIA,

     Defendant - Appellee.

------------------------------

FIRST AMENDMENT SCHOLARS;
JANE BAMBAUER; ASHUTOSH
BHAGWAT; CLAY CALVERT; ALAN
K. CHEN; MARGOT E. KAMINSKI;
SETH F. KREIMER; JUSTIN F.
MARCEAU; HELEN NORTON; SCOTT
SKINNER-THOMPSON; NATIONAL
POLICE ACCOUNTABILITY PROJECT;
CATO INSTITUTE; ELECTRONIC
FRONTIER FOUNDATION; UNITED
STATES OF AMERICA,

     Amici Curiae.

No. 21-1247

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:20-CV-02881-NYW)**

_____

Andrew T. Tutt, Arnold & Porter Kaye Scholer LLP, Washington, D.C. (Robert Reeves
Anderson and David S. Jelsma, Arnold & Porter Kaye Scholer LLP, Denver, Colorado;
Max Romanow, Arnold & Porter Kaye Scholer LLP, Chicago, Illinois; E. Milo Schwab,

Ascend Counsel, LLC, Denver, Colorado, with him on the briefs) for Plaintiff –
Appellant.

Alexander James Dorotik, City of Lakewood, Lakewood, Colorado, for Defendant –
Appellee.

Natasha N. Babazadeh (Kristen Clarke, Assistant Attorney General, Nicholas Y. Riley,
Attorney, with her on the brief), U.S. Department of Justice, Washington, D.C., filed an
amicus curiae brief for the United States of America.

Mukund Rathi, Sophia Cope, and Adam Schwartz, Electronic Frontier Foundation, San
Francisco, California, filed an amicus curiae brief on behalf of Plaintiff – Appellant, for
the Electronic Frontier Foundation.

Clark M. Neily III and Jay R. Schweikert, Cato Institute, Washington, D.C., filed an
amicus curiae brief on behalf of Plaintiff – Appellant, for the Cato Institute.

Lauren Bonds, National Police Accountability Project, New Orleans, Louisiana, and
David Milton, Boston, Massachusetts, filed an amicus curiae brief on behalf of Plaintiff –
Appellant, for the National Police Accountability Project.

Matthew R. Cushing and Elizabeth Truitt, University of Colorado Law School Appellate
Advocacy Practicum, Boulder, Colorado, filed an amicus curiae brief on behalf of
Plaintiff – Appellant, for the First Amendment Scholars.

———————————————

Before **MATHESON**, **KELLY**, and **McHUGH**, Circuit Judges.

———————————————

**MATHESON**, Circuit Judge.

Early in the morning on May 26, 2019, Abade Irizarry, a YouTube journalist and

blogger, was filming a DUI traffic stop in Lakewood, Colorado.  Officer Ahmed Yehia

arrived on the scene and stood in front of Mr. Irizarry, obstructing his filming of the stop.

When Mr. Irizarry and a fellow journalist objected, Officer Yehia shined a flashlight into

Mr. Irizarry's camera and then drove his police cruiser at the two journalists.

2

**AA087**

Mr. Irizarry sued under 42 U.S.C. § 1983, alleging that Officer Yehia violated his

First Amendment rights.  The district court dismissed the complaint for failure to state a

claim.  It determined that Mr. Irizarry had alleged a constitutional violation but held that

Officer Yehia was entitled to qualified immunity because the violation was not one of

clearly established law.  Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and

remand for further proceedings.

## I.  BACKGROUND

### A.  *Factual Allegations*

"In reviewing a motion to dismiss, we accept the facts alleged in the complaint as

true and view them in the light most favorable to the plaintiff."  *Mayfield v. Bethards*,

826 F.3d 1252, 1255 (10th Cir. 2016).  Because Mr. Irizarry proceeded pro se before the

district court, we liberally construe the pleadings.  *See Diversey v. Schmidly*, 738 F.3d

1196, 1199 (10th Cir. 2013).  Under these standards, we summarize the allegations in the

complaint.

Mr. Irizarry is a "Youtube journalist and blogger" who "regularly publishes stories

about police brutality and conduct or misconduct."  App. at 9 ¶ 10, 11 ¶ 24.  On May 26,

2019, he and three other "YouTube journalists/bloggers" were filming a DUI traffic stop

with their cell phones and cameras "for later broadcast, live-streaming, premiers, and

archiving for their respective social medial channel[s]."  *Id.* at 9 ¶¶ 10-11.[1]

---

[1] The complaint did not allege when the incident occurred.  The parties do not
dispute that it occurred on May 26, 2019.

Officers on the scene contacted Officer Yehia to report that four males were

filming the traffic stop.[2]  Officer Yehia drove to the scene "in full regalia in a Marked

cruiser, with every single light . . . turned on." *Id.* at 9 ¶ 13.  He exited his vehicle and

"intentionally positioned himself directly in front of [Mr. Irizarry] . . . to make sure he

intentionally obstructed the camera view of the D.U.I. Roadside sobriety test." *Id.* at

9 ¶ 14.  Mr. Irizarry and another journalist, Eric Brandt, "voiced their disapproval of the

intentional obstruction" and "began to loudly criticize" Officer Yehia.  *Id.* at 10 ¶ 16.

Officer Yehia shined an "extremely bright flashlight" in Mr. Irizarry's and Mr. Brandt's

cameras, "saturating the camera sensors." *Id.* at 10 ¶ 17.

Officer Yehia continued "harassing" Mr. Irizarry and Mr. Brandt until another

officer told him to stop.  *Id.* at 10 ¶ 19.  Officer Yehia got back into his cruiser, "drove

right at [Mr. Irizarry] and Mr. Brandt, and sped away." *Id.* at 10 ¶ 20.  He made a U-turn,

"gunned his cruiser directly at Mr. Brandt, swerved around him, stopped, then repeatedly

began to blast his air horn at [the two men]." *Id.* at 10 ¶ 21.[3]  Eventually, Officer Yehia

---

[2] The complaint did not indicate how many officers were at the scene.

[3] The district court said that Mr. Irizarry did not state—either in his complaint or
his response to the motion to dismiss—that his claim extended to Officer Yehia's conduct
behind the wheel.  The court therefore addressed only whether Officer Yehia violated Mr.
Irizarry's rights by standing in front of him and shining a flashlight into his camera.

The district court erred in limiting its analysis.  The complaint alleged that all of
Officer Yehia's actions, including driving and honking at Mr. Irizarry, violated his First
Amendment rights.  *See* App. at 11 ¶ 23 ("[Officer] Yehia's actions constituted
substantial interfer[e]nce preventing [Mr. Irizarry] and Mr. Brandt from adequately
collecting meaningful which the[y] intended to, or had already been actively []
attempting to publish.").  We understand the complaint's reference to "collecting
meaningful" to mean collecting meaningful video footage.

**AA089**

was instructed to leave the scene due to his "disruptive and uncontrolled behavior."

*Id.* at 10 ¶ 22.[4]

## B.  *Procedural History*

Mr. Irizarry, proceeding pro se, sued Officer Yehia under § 1983, claiming that the officer violated his First Amendment rights.  He alleged that (1) Officer Yehia's actions amounted to a "blatant prior restraint" and (2) Officer Yehia deprived him of his "rights to freedom of the press."  *Id.* at 11 ¶¶ 27-28.  The complaint also stated that Officer Yehia sought "to punish [Mr. Irizarry] for exercising his rights."  *Id.* at 8 ¶ 7.

Officer Yehia moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting a qualified immunity defense.  The district court granted the motion.[5]  It concluded that the complaint alleged a First Amendment constitutional violation based on prior restraint and retaliation.  Although the Tenth Circuit had not previously recognized a First Amendment right to record police officers performing their official duties in public, the court, relying on out-of-circuit decisions, held that the First Amendment guarantees such a right, subject to reasonable time, place, and manner restrictions.

The district court nonetheless held that Officer Yehia was entitled to qualified immunity because Mr. Irizarry had not shown a violation of clearly established law.  He "failed to direct the court to a case which demonstrates that Officer Yehia was on notice that . . . standing in front of and shining a flashlight into [Mr. Irizarry's]

---

[4] The complaint did not allege who instructed Officer Yehia to leave.

[5] The parties agreed to have all proceedings in the case decided by a magistrate judge under 28 U.S.C. § 636(c).

**AA090**

camera . . . violated Mr. Irizarry's First Amendment rights." *Id.* at 108. The court

therefore dismissed the suit against Officer Yehia with prejudice.

Mr. Irizarry timely appealed.

## C.   *Legal Background*

### 1.   **Rule 12(b)(6) Dismissal**

"We review de novo a district court's ruling on a motion to dismiss a complaint

because of qualified immunity." *Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir.

2022). "We accept all well-pleaded factual allegations in the complaint as true, and we

view them in the light most favorable to the nonmoving party." *Sinclair Wyo. Refin. Co.*

*v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (citation, quotations, and

alterations omitted). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

### 2.   **Qualified Immunity**

Section 1983 of Title 42 provides that a person acting under color of state law who

"subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured." 42 U.S.C. § 1983.

"Individual defendants named in a § 1983 action may raise a defense of qualified

immunity, which shields public officials from damages actions unless their conduct was

unreasonable in light of clearly established law." *Est. of Booker v. Gomez*, 745 F.3d 405,

411 (10th Cir. 2014) (citations, quotations, and alterations omitted). When a defendant

**AA091**

invokes qualified immunity, the plaintiff can overcome it by showing "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021).

3. **First Amendment Retaliation**

To state a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations omitted).[6]

---

[6] In this context, an injury is an adverse consequence that the plaintiff suffers at the hands of the defendant. *See, e.g.*, *Worrell*, 219 F.3d at 1213 (withdrawal of a job offer and adverse impacts to future job prospects could qualify as injuries that would chill a person of ordinary firmness from continuing to engage in protected activity); *Howards v. McLaughlin*, 634 F.3d 1131, 1144 (10th Cir. 2011), *rev'd and remanded on other grounds sub nom.*, *Reichle v. Howards*, 566 U.S. 658 (2012) ("[A]n arrest in retaliation for the exercise of protected speech constitutes an injury cognizable under our First Amendment jurisprudence."); *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007) (physical and verbal intimidation are cognizable injuries under the second element of *Worrell*).

7

**AA092**

## II. **DISCUSSION**

The complaint alleged a First Amendment retaliation claim under clearly established law, so Officer Yehia is not entitled to qualified immunity.[7] We reverse.

Analyzing the three elements of a retaliation claim stated in *Worrell* under the facts alleged in the complaint, we conclude as follows:

First, as to constitutionally protected activity, the Tenth Circuit has not recognized a First Amendment right to film the police performing their duties in public. We recognize that the right exists and was clearly established when the incident occurred. Because Mr. Irizarry has alleged facts showing he was exercising his First Amendment right to film the police, he has met the first element of his retaliation claim under clearly established law.

Second, Mr. Irizarry's allegations also show that Officer Yehia's actions against him would chill a person of ordinary firmness from continuing to engage in protected filming activity. Because these actions obviously infringed protected activity and equaled or exceeded those in comparable Tenth Circuit and out-of-circuit cases, Mr. Irizarry has met the second element of his retaliation claim under clearly established law.

---

[7] The pro se complaint did not use the word "retaliation," but it alleged that Officer Yehia was "motivated . . . to punish [Mr. Irizarry] for exercising his rights." *See* App. at 8 ¶ 7. To the extent the complaint attempted to allege a prior restraint claim, Mr. Irizarry has abandoned that theory on appeal.

Although Officer Yehia does not contest the district court's determination that he violated Mr. Irizarry's First Amendment rights, *see* Aplee. Br. at 5 n.2, 6, we analyze whether the complaint alleged a retaliation claim as a necessary predicate to our discussion of clearly established law.

**AA093**

Third, the complaint alleged that Mr. Irizarry's protected filming activity

motivated Officer Yehia's adverse actions, meeting the third element of the retaliation

claim under clearly established law.

Thus, as to all three elements of First Amendment retaliation, (1) the complaint

alleged a constitutional violation, and (2) Mr. Irizarry has shown the violation is one of

clearly established law.  We expand on these points below.

## A.  *Constitutional Violation*

The complaint plausibly alleged that Officer Yehia retaliated against Mr. Irizarry

for exercising his First Amendment rights.  It alleged facts satisfying all three elements of

a First Amendment retaliation claim under *Worrell*.

## 1.  **Constitutionally Protected Activity**

Mr. Irizarry was engaged in protected First Amendment activity when he filmed

the traffic stop.  We recognize this right based on (a) core First Amendment principles

and (b) relevant precedents from this and other circuits.

### a.  *First Amendment principles*

Three well-established First Amendment principles show that filming the police

performing their duties in public is protected activity.

First, "'[t]here is practically universal agreement that a major purpose of' the First

Amendment 'was to protect the free discussion of governmental affairs.'"  *Ariz. Free

Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) (quoting *Buckley

v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam)).  This purpose enables "the press . . . to

serve as a powerful antidote to any abuses of power by governmental officials."  *Mills v.*

**AA094**

*Alabama*, 384 U.S. 214, 219 (1966). Filming the police and other public officials as they perform their official duties acts as "a watchdog of government activity," *Leathers v. Medlock*, 499 U.S. 439, 447 (1991), and furthers debate on matters of public concern.

Second, "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972). As the First Circuit noted, "An important corollary to this interest in protecting the stock of public information is that 'there is an undoubted right to gather news from any source by means within the law.'" *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) (internal quotations and alterations omitted)). Filming the police is a form of news gathering.

Third, videorecording is "unambiguously" speech-creation, not mere conduct. *Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1228 (10th Cir. 2021), *cert. denied*, No. 21-760, --- S.Ct. ----, 2022 WL 1205840 (Apr. 25, 2022). "If the creation of speech did not warrant protection under the First Amendment, the government could bypass the Constitution by simply proceeding upstream and damming the source of speech." *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) (quotations and alterations omitted); *see also ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) ("The right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of *making* the recording is wholly unprotected.").[8]

---

[8] As the Seventh Circuit explained, "[t]he act of *making* an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and

10

**AA095**

b.  *Relevant precedents*

In *Western Watersheds*, we indicated that the First Amendment protects the

filming of a police encounter.  *W. Watersheds*, 869 F.3d at 1196.  There, plaintiffs

challenged two Wyoming statutes that "imposed heightened penalties above and beyond

Wyoming's general trespass provision" on any person who, "crosses private land to

access adjacent or proximate land where he collects resource data."  *Id.* at 1191 (quoting

Wyo. Stat. §§ 6-3-414(a)-(c); 40-27-101(c)) (alteration omitted).  The statutes defined the

phrase "collects resource data" to include gathering information about "numerous

activities on public lands, such as writing notes on habitat conditions, photographing

wildlife, or taking water samples, so long as an individual also records the location from

which the data was collected."  *Id.* at 1191-92 (citing Wyo. Stat. §§ 6-3-414(e)(i), (iv);

40-27-101(h)(i), (iii)).

Plaintiffs argued that the statutes violated the First Amendment.  *Id.* at 1193.

Relying on decisions from other circuits recognizing a First Amendment right to film the

police in public, we held that the statutes regulated protected speech.[9]  *Id.* at 1197.  We

said that "[a]n individual who photographs animals or takes notes about habitat

---

press rights as a corollary of the right to disseminate the resulting recording."  *Alvarez*,
679 F.3d at 595.

   [9] We remanded to the district court to determine (1) the appropriate level of
scrutiny to be applied, and (2) whether the statutes survived review.  *W. Watersheds*, 869
F.3d at 1197-98.

**AA096**

conditions is creating speech in the same manner as an individual who records a police

encounter." *Id.* at 1196.

Our statement in *Western Watersheds* finds support from every circuit to consider

whether there is a First Amendment right to film the police in public.  We summarize

those opinions.

### i.    *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)

Mr. Fordyce was videotaping police officers working a public protest, and one

officer "attempted physically to dissuade" him from doing so.  *Fordyce*, 55 F.3d at 438.

Mr. Fordyce brought a § 1983 claim against various officers "for interfering with his First

Amendment right to gather news."  *Id.*  The district court granted summary judgment to

the defendants, but the Ninth Circuit reversed, concluding there was "a genuine issue of

material fact . . . regarding whether [Mr.] Fordyce was assaulted and battered by a Seattle

police officer in an attempt to prevent or dissuade him from exercising his First

Amendment right to film matters of public interest."  *Id.* at 439.  Citing *Fordyce*, the

Ninth Circuit has since held that "[t]he First Amendment protects the right to photograph

and record matters of public interest.  This includes the right to record law enforcement

officers engaged in the exercise of their official duties in public places."  *Askins v. U.S.*

*Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (citations omitted).

### ii.    *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000)

Mr. Smith alleged that city police prevented him and his wife from videotaping

their actions.  *Smith*, 212 F.3d at 1332.  The Eleventh Circuit held that there is "a First

Amendment right, subject to reasonable time, manner and place restrictions, to

**AA097**

photograph or videotape police conduct" rooted in the First Amendment right "to gather
information about what public officials do on public property, and specifically, a right to
record matters of public interest." *Id.* at 1333. The court, however, affirmed dismissal of
the suit because the plaintiffs did not demonstrate that the defendants violated their First
Amendment rights. *Id.*

### iii. *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011)

Police arrested Mr. Glik for trying to film officers arresting a young man. *Glik*,
655 F.3d at 79. Mr. Glik sued the officers under § 1983, alleging that they violated his
First Amendment rights by arresting him for filming the arrest. *Id.* at 80. The First
Circuit held that Mr. Glik had a clearly established "right to film government officials,
including law enforcement officers, in the discharge of their duties in a public space."
*Id.* at 85.

The court explained that "[t]he filming of government officials engaged in their
duties in a public place, including police officers performing their responsibilities, fits
comfortably within" established First Amendment principles related to newsgathering
and the public's right to receive information. *Id.* at 82. Relatedly, the court noted that
"[g]athering information about government officials in a form that can readily be
disseminated to others serves a cardinal First Amendment interest in protecting and
promoting 'the free discussion of governmental affairs.'" *Id.* (quoting *Mills*, 384 U.S.
at 218). And that interest is especially prominent in matters involving law enforcement
officials because they "are granted substantial discretion that may be misused to deprive
individuals of their liberties." *Id.*

**AA098**

iv.  *ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)

The ACLU of Illinois brought a pre-enforcement challenge to the Illinois

eavesdropping statute, which made it a class-one felony to create audio or audiovisual

recordings of law enforcement officers performing their duties.  *Alvarez*, 679 F.3d at 586.

The Seventh Circuit, reviewing the denial of a preliminary injunction, held that the

statute was "likely unconstitutional."  *Id.* at 608.  The court explained that "[t]he act of

*making* an audio or audiovisual recording is necessarily included within the First

Amendment's guarantee of speech and press rights as a corollary of the right to

disseminate the resulting recording."  *Id.* at 595.  And because the statute "interferes with

the gathering and dissemination of information about government officials performing

their duties in public. . . . the eavesdropping statute burdens speech and press rights and is

subject to heightened First Amendment scrutiny."  *Id.* at 600.

v.  *Fields v. City of Phila.*, 862 F.3d 353 (3d Cir. 2017)

*Fields* was a consolidated appeal involving two incidents in which police

interfered with the appellants' ability to record the police.  In the first incident, the

appellant was trying to film an arrest during a protest when "[a]n officer abruptly pushed

[her] and pinned her against a pillar for one to three minutes, which prevented her from

observing or recording the arrest."  *Fields*, 862 F.3d at 356.  In the second, the appellant

took a photograph of the police breaking up a house party, and an officer ultimately

"arrested him, confiscated his phone, and detained him."  *Id.*

The Third Circuit joined the "growing consensus" of circuit courts holding that

"there is a First Amendment right to record police activity in public" subject to

14

**AA099**

reasonable time, place, and manner restrictions. *Id.* at 355-56, 360. The court explained

that "[t]he First Amendment protects actual photos, videos, and recordings, . . . and for

this protection to have meaning the Amendment must also protect the act of creating that

material." *Id.* at 358 (citation omitted). Thus, the court concluded that "under the First

Amendment's right of access to information the public has the commensurate right to

record—photograph, film, or audio record—police officers conducting official police

activity in public areas." *Id.* at 360.

               vi. *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017)

Mr. Turner videotaped a police station from a public sidewalk across the street.

*Turner*, 848 F.3d at 683. Two officers approached him, asked for his ID, and detained

him for investigation because they "were concerned about who was walking around with

a video camera." *Id.* The officers eventually released Mr. Turner and returned his

camera, which they had confiscated. *Id.* The Fifth Circuit, echoing the reasoning and

conclusion of every other circuit to address the question, held that the First Amendment

protects the right to record police in public, subject to reasonable time, place, and manner

restrictions. *Id.* at 690 ("We agree with every circuit that has ruled on this question:

Each has concluded that the First Amendment protects the right to record the police.").

\*    \*    \*    \*

Based on First Amendment principles and relevant precedents, we conclude there

is a First Amendment right to film the police performing their duties in public.[10]

---

[10] This right is subject to reasonable time, place, and manner restrictions. *See*
*Glik*, 655 F.3d at 84. But in this case, there is no "time, place, and manner" restriction

**AA100**

2. **Injury That Would Chill Protected Activity**

Mr. Irizarry adequately alleged that Officer Yehia's actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to" film the traffic stop. *Worrell*, 219 F.3d at 1212 (quotations omitted).  As to this second element of the *Worrell* test, "our standard for evaluating th[e] chilling effect on speech is objective, rather than subjective." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (quotations omitted).  Physical and verbal intimidation can chill speech. *Van Deelen v. Johnson* is instructive.  *See* 497 F.3d at 1157-58.

In *Van Deelen*, the plaintiff brought several tax appeals challenging property tax assessments. *Id.* at 1153-54.  At a meeting between the plaintiff and government tax appraisers, a sheriff's deputy "repeatedly and intentionally 'bumped' [the plaintiff]." *Id.* at 1154.  The plaintiff also alleged that the deputy "held his hand on his gun and made menacing looks" during the meeting and that another county official "brow beat" the plaintiff "by scowling and staring" at him. *Id.*  Finally, at the end of the meeting, the deputy told the plaintiff that county officials had instructed the deputy "to do whatever

---

issue because a "peaceful recording" of a traffic stop in "a public space that does not interfere with the police officers' performance of their duties is not reasonably subject to limitation." *Id.*

Based on the allegations in the complaint, Mr. Irizarry did not interfere with the traffic stop or hinder law enforcement.  Although Mr. Irizarry and Mr. Brandt "voiced their disapproval of [Officer Yehia's] intentional obstruction of content gathering . . . [and] loudly criticize[d] [Officer Yehia]," App. at 10 ¶ 16, their protests did not impede officers from performing their duties.  Further, the traffic stop occurred on a public street, a traditional public forum where "the rights of the state to limit the exercise of First Amendment activity are 'sharply circumscribed.'" *Glik*, 655 F.3d at 84 (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

**AA101**

necessary to put a scare into you.  If you show up for another tax appeal hearing, I might

have to shoot you."  *Id.* (quotations omitted).  We held that such "physical and verbal

intimidation . . . surely suffice[s] under our precedents to chill a person of ordinary

firmness from continuing to seek redress for (allegedly) unfair property tax assessments."

*Id.* at 1157.

Officer Yehia's actions would chill a person of ordinary firmness from continuing

to film the traffic stop for two reasons.

First, Mr. Irizarry suffered an injury when Officer Yehia stood in front of his

camera and shined a flashlight into it, making it difficult if not impossible to continue

recording a potentially critical moment of the police activity.  This injury alone would

chill a person of ordinary firmness from continuing to film the traffic stop.  But there was

more.

Second, Officer Yehia did more than threaten violence, as the defendants did in

*Van Deelen.  See* 497 F.3d at 1157.  He directed violence towards Mr. Irizarry by driving

his police cruiser "right at" him and by "gunn[ing]" it at his nearby colleague,

Mr. Brandt.[11]  App. at 10 ¶¶ 20-21; *see United States v. Garcia*, 34 F.3d 6, 13 (1st Cir.

1994) (aiming car at an individual created a substantial risk of bodily injury).  These

actions would be more than sufficient to chill a person of ordinary firmness from

continuing to film the traffic stop.

---

[11] Although Mr. Irizarry does not allege that he was in the path of the cruiser when
Officer Yehia "gunned" it at Mr. Brandt, it is reasonable to infer that such conduct
threatened Mr. Irizarry, who was nearby.  App. at 10 ¶ 21.

**AA102**

Thus, given the allegations in the complaint, Mr. Irizarry has satisfied the second element of the *Worrell* test.

### 3. Protected Activity Substantially Motivated Adverse Action

To satisfy the third element of *Worrell*, Mr. Irizarry needed to allege that Officer Yehia's actions were "substantially motivated as a response to [Mr. Irizarry's] exercise of constitutionally protected conduct." *Worrell*, 219 F.3d at 1213 (quotations omitted). He did so by alleging that Officer Yehia drove to the scene of the traffic stop in response to officers already there advising him that "four males had arrived on [the] scene and were [] recording their D.U.I. traffic stop." App. at 9 ¶ 12. From this, it is reasonable to infer that Officer Yehia came to the scene because Mr. Irizarry was recording the encounter. And because Officer Yehia's physical interference with the filming and his driving the cruiser at Mr. Irizarry served no legitimate law enforcement purpose,[12] it is reasonable to infer that Mr. Irizarry's filming substantially motivated those actions.

\* \* \* \*

Mr. Irizarry has plausibly alleged that Officer Yehia committed a constitutional violation by retaliating against him for engaging in protected First Amendment activity. He has therefore satisfied prong one of qualified immunity.

---

[12] Officer Yehia "was ultimately instructed to dep[a]rt the scene due to his disruptive and uncontrolled behavior," App. 10 ¶ 22, which further supports the inference that his presence at the traffic stop served no legitimate law enforcement purpose.

**AA103**

B. *Prong Two—Clearly Established Law*

Mr. Irizarry also has shown that Officer Yehia violated his clearly established

right to be free from retaliation for filming the police performing their public duties.

1. **Clearly Established Law**

"A clearly established right is one that is sufficiently clear that every reasonable

official would have understood that what he is doing violates that right." *Mullenix v.

Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quotations omitted). "The law is clearly

established when a Supreme Court or Tenth Circuit precedent is on point or the alleged

right is clearly established from case law in other circuits." *Lowe v. Raemisch*, 864 F.3d

1205, 1208 (10th Cir. 2017). Thus, even without Supreme Court or Tenth Circuit

precedent, persuasive authority from other circuits may clearly establish the law in this

circuit when that authority would have put a reasonable officer on notice that his or her

conduct was unconstitutional. *See Ullery v. Bradley*, 949 F.3d 1282, 1291-92 (10th Cir.

2020) (law was clearly established based on the consensus of persuasive authority from

six other circuits); *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 595

(10th Cir. 1999) (same).

To determine whether the law is clearly established, the relevant "precedent is

considered on point if it involves *materially similar conduct* or applies with *obvious

clarity* to the conduct at issue." *Lowe*, 864 F.3d at 1208 (quotations omitted). Thus,

"[g]eneral statements of the law can clearly establish a right for qualified immunity

purposes if they apply with obvious clarity to the specific conduct in question." *Halley v.

Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotations omitted); *see White v. Pauly*,

**AA104**

137 S. Ct. 548, 552 (2017) (per curiam). "When the public official's conduct is egregious, even a general precedent would apply with obvious clarity." *Lowe*, 864 F.3d at 1210.

2. **Analysis**

To overcome qualified immunity here, Mr. Irizarry must show that when the incident occurred, it was clearly established that (1) he was exercising a First Amendment right to film the police performing their duties in public, (2) Officer Yehia's actions would chill a person of ordinary firmness from continuing to film the traffic stop, and (3) Mr. Irizarry's protected activity motivated Officer Yehia's actions. *See Van Deelen*, 497 F.3d at 1159.

In May 2019, when the incident occurred, Mr. Irizarry had a clearly established right to film the traffic stop based on the persuasive weight of authority from six other circuits and our decision in *Western Watersheds*. Officer Yehia's obvious interference with that right, motivated by Mr. Irizarry's protected conduct, was a violation of clearly established law.

a. *Clearly established that Mr. Irizarry was engaged in protected activity*

i. Clearly established First Amendment right to film the police

Although neither the Supreme Court nor the Tenth Circuit has recognized a First Amendment right to record the police performing their duties in public, we hold that the right was clearly established here based on the persuasive authority from six other circuits, which places the constitutional question "beyond debate." *Cummings v. Dean*,

**AA105**

913 F.3d 1227, 1239 (10th Cir. 2019) (quotations omitted).  Our opinion in *Western Watersheds* also supports this conclusion.

As we said in *Ullery*, "In the absence of binding precedent specifically adjudicating the right at issue, the right may still be clearly established based on a 'consensus of cases of persuasive authority' from other jurisdictions."  949 F.3d at 1294 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  And the weight of authority from other circuits may clearly establish the law when at least six other circuits have recognized the right at issue.  *See, e.g.*, *id.* (the constitutional question was "beyond debate" where six other circuits agreed on the issue and there was not "a single decision . . . shedding doubt on" the issue); *Robbins v. Wilkie*, 433 F.3d 755, 770 (10th Cir. 2006) *rev'd and remanded on other grounds*, 551 U.S. 537 (same); *Anaya*, 195 F.3d at 595 (same).  In this case, our source of clearly established law comes largely from other circuits.

As discussed, the First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have all concluded in published opinions that the First Amendment protects a right to film the police performing their duties in public.  Four of those opinions—*Fordyce*, *Glik*, *Fields*, and *Turner*—involved facts materially similar to those here:  the plaintiffs, like Mr. Irizarry, were attempting to film the police performing their official duties but were dissuaded from doing so either because they were arrested, detained, or physically

**AA106**

deterred.[13]  *Alvarez* involved a pre-enforcement challenge to a statute that made it a felony to film police officers in public.  All six decisions held there is a First Amendment right to film the police performing their duties in public, which clearly establishes the law in this circuit.

Moreover, in *Western Watersheds*, we indicated, without reservation, that filming the police performing their duties in public is protected under the First Amendment. 869 F.3d at 1196 ("An individual who photographs animals or takes notes about habitat conditions is creating speech in the same manner as an individual who records a police encounter.").  Although this statement, on its own, may be insufficient to satisfy prong two of qualified immunity, it supports the conclusion that a reasonable officer would have known there was a First Amendment right to film the police performing their duties in public.

Finally, Mr. Irizarry's right to film the police falls squarely within the First Amendment's core purposes to protect free and robust discussion of public affairs, hold government officials accountable, and check abuse of power.[14]  We have no doubt that

---

[13] In *Smith*, the Eleventh Circuit announced there is a right to film police performing their duties in public.  *Smith*, 212 F.3d at 1333.  But, without discussing the underlying facts of the case, the court held that the defendants had not violated that right.

[14] We need not and do not rely, however, on general First Amendment principles to show that clearly established law protects filming the police.  *See Frasier v. Evans*, 992 F.3d 1003, 1021 (10th Cir. 2021) (holding that "general First Amendment principles protecting the creation of speech and the gathering of news" do not clearly establish a First Amendment right to film the police).

**AA107**

Mr. Irizarry had a clearly established First Amendment right to film the traffic stop in May 2019.

      ii.  <u>Officer Yehia's arguments</u>

Officer Yehia argues that the right to film police officers performing their duties in public cannot be clearly established unless a previous Tenth Circuit case has already recognized the right. But we have repeatedly stated that "the weight of authority from other courts can clearly establish a right." *E.g.*, *A.N. by & through Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019) (quotations omitted). And we have held that decisions from other circuits clearly established the law when at least six circuits had recognized the right at issue. *See, e.g.*, *Ullery*, 949 F.3d at 1300-01; *Anaya*, 195 F.3d at 595.

Officer Yehia also argues that *Frasier v. Evans*, shows that the right to film police officers performing their duties in public was not clearly established as of May 2019. We disagree. In *Frasier*, the plaintiff filmed police officers arresting a suspect in 2014. 992 F.3d at 1010. After the arrest, officers allegedly intimidated the plaintiff and threatened to arrest him if he did not hand the video over to them. *Id.* at 1010-11. The plaintiff brought a § 1983 First Amendment claim against the officers, alleging that they retaliated against him for filming the suspect's arrest. *Id.* at 1011.

We held the officers were entitled to qualified immunity because, when the incident occurred on August 14, 2014, the law was not clearly established that the First Amendment protected a right to record police officers performing their official duties in public. *Id.* at 1020. We rejected the plaintiff's argument that "general First Amendment

**AA108**

principles protecting the creation of speech and the gathering of news [] provide[d] clearly established law." *Id.* at 1022. And we were not persuaded by the plaintiff's alternative argument that the weight of authority from other circuits clearly established the law. *Id.* Although we assumed that, as of August 2014, four decisions—*Alvarez*, *Slik*, *Smith*, and *Fordyce*—recognized a right to film police performing their duties in public, we said those cases did not clearly establish the law in our circuit because our sibling circuits had "disagreed regarding whether this purported First Amendment right to record was clearly established around August 2014." *Id.*

    *Frasier* does not undercut our clearly-established-law analysis for two reasons.

    <u>First</u>, the legal landscape has changed since August 2014 when the incident in *Frasier* occurred. Between August 2014 and May 2019, the Third and Fifth Circuits joined the four other circuits in concluding there is a First Amendment right to film the police performing their duties in public. *See Fields*, 862 F.3d at 360; *Turner*, 848 F.3d at 690. And, as noted above, we have held that the weight of authority from other circuits may clearly establish the law when at least six other circuits have recognized the right at issue. *See, e.g.*, *Ullery*, 949 F.3d at 1294.

    <u>Second</u>, when analyzing whether the weight of authority from other circuits clearly establishes the law in this circuit, we have said the relevant inquiry is whether there is consensus regarding the existence of the constitutional right at issue. *See id.* at 1300 (concluding that the weight of authority from other circuits clearly established the law where "persuasive out-of-circuit authority addressing *the constitutional right in question* was not divided or otherwise unclear" (emphasis added)). Courts determine

**AA109**

whether a constitutional right exists and whether it has been violated from holdings made at the first step of qualified immunity.  *See, e.g.*, *Ashaheed v. Currington*, 7 F.4th 1236, 1245 (10th Cir. 2021) (citing *Shrum v. City of Coweta*, 449 F.3d 1132, 1139-44 (10th Cir. 2006)).

   As of May 2019, six circuits had determined that the First Amendment guarantees a right to film the police performing their duties in public.  No other circuit has concluded otherwise.  The substantial weight of this authority, along with our decision in *Western Watersheds*, would have put a reasonable officer in Officer Yehia's position on notice that Mr. Irizarry had a right to film the police conducting the traffic stop.

   b. *Clearly established that Officer Yehia caused injuries sufficient to chill a person of ordinary firmness from continuing to film the traffic stop*

   It also was clearly established that Officer Yehia caused injuries sufficient to chill a person of ordinary firmness from filming the traffic stop.  As of May 2019, a reasonable officer would have known that physically interfering with and intimidating an individual who was filming a DUI traffic stop can chill First Amendment activity.  Officer Yehia's conduct

   (i) infringed Mr. Irizarry's First Amendment right with obvious clarity.

   Also, his conduct was at least as egregious as police conduct found unconstitutional in

   (ii)  our sibling-circuit cases and

   (iii)  this circuit's *Van Deelen* opinion.

**AA110**

i.   Obvious clarity

In *Worrell* we described the objective retaliation element as actions causing injury that would chill a person of ordinary firmness from continuing to engage in protected activity.  Although this is a general statement of the law, it can supply clearly established law here because it applies "with obvious clarity to the specific conduct in question." *Halley*, 902 F.3d at 1149 (quotations omitted).  Because filming police conduct in public is a clearly established First Amendment right, it would be obvious to a reasonable officer that blocking Mr. Irizarry's filming, shining a flashlight into the camera lens, and driving a police car at him in response to that filming would infringe First Amendment protected activity and chill its exercise.

ii.   Sibling circuits

The filming cases from other circuits lend strong support because the retaliating conduct here was at least as egregious as it was in those cases.  The First, Third, and Fifth Circuits held that officers committed constitutional violations when they arrested or detained plaintiffs for filming the police performing their duties in public.  *See Turner*, 848 F.3d at 683-84; *Fields*, 862 F.3d at 356;[15] *Glik*, 655 F.3d at 80.  And the Ninth Circuit has indicated that "attempt[ing] physically to dissuade" a citizen from recording

---

[15] As we discussed above, *Fields* was a consolidated appeal resolving two cases. In one case, a plaintiff used his phone to record police activity.  862 F.3d at 356.  Police arrested the plaintiff, confiscated his phone, and detained him.  *Id.*  In the other case, a plaintiff was filming an arrest when "[a]n officer abruptly pushed [her] and pinned her against a pillar for one to three minutes, which prevented her from observing or recording the arrest."  *Id.*

**AA111**

the police would violate the First Amendment.  *Fordyce*, 55 F.3d at 438.  The police

interference with protected activity in those cases caused a chilling effect that is

materially the same as that caused by the injury here.  Driving his car at Mr. Irizarry was

at least as egregious as arresting an individual or physically interfering with filming in the

other circuit cases.  Apart from the obvious infringing conduct here, the relevant out-of-

circuit cases would put an officer on notice that attempting to deter an individual from

filming the police through physical interference and threats causes injury sufficient to

chill the speech of a person of ordinary firmness.

       iii.  *Van Deelen*

     Our opinion in *Van Deelen* also helps Mr. Irizarry to overcome qualified

immunity.  There, a sheriff's deputy threatened to use lethal force against the plaintiff if

he brought more tax appeals, and the deputy physically "bump[ed]" the plaintiff during a

meeting.  497 F.3d at 1154.  Other county officials "scowl[ed]" and "star[ed]" at the

plaintiff.  *Id.*  We held the defendants who made the alleged threats were not entitled to

qualified immunity because, as of 2005, it was "unremarkabl[e]" that "a reasonable

government official should have clearly understood . . . that physical and verbal

intimidation intended to deter a citizen" from engaging in protected First Amendment

activity violates that citizen's constitutional rights.  *Id.* at 1159.

     Officer Yehia's conduct was at least as serious as the defendants' conduct in *Van

Deelen* for two reasons.  <u>First</u>, rather than merely discouraging Mr. Irizarry from

engaging in protected First Amendment activity—as the defendants did in *Van Deelen*—

Officer Yehia physically interfered with protected conduct by standing in front of Mr.

Irizarry and shining a flashlight into his camera.  App. at 10 ¶¶ 14, 17.  Second, Officer

Yehia went beyond threatening violence against Mr. Irizarry.  When he drove his police

cruiser "right at" him and "gunn[ed]" the vehicle at his colleague, he could have caused

serious injury or even death.  *Id.* at 10 ¶¶ 20-21; *see Thomson v. Salt Lake Cnty.*, 584

F.3d 1304, 1315 (10th Cir. 2009) (acknowledging that an officer's vehicle can inflict

serious bodily harm or even death).  Officer Yehia's conduct was so "disruptive and

uncontrolled" that he was "instructed to dep[a]rt the scene."  App. at 10 ¶ 22.  And as

discussed above, the complaint adequately alleged that Officer Yehia's actions, like the

defendants' conduct in *Van Deelen*, were substantially motivated by the protected

activity.  *Van Deelen* would give a reasonable officer further reason to understand that

Officer Yehia actions caused injuries sufficient to chill a person of ordinary firmness

from continuing to film the traffic stop.

     c.  *Officer Yehia's motivation for retaliation*

     As explained in our prong one qualified immunity discussion, Mr. Irizarry has

plausibly alleged the three elements of a First Amendment retaliation constitutional tort,

including the subjective element that his protected activity motivated Officer Yehia's

conduct.  Because Mr. Irizarry has shown that a reasonable officer would know that this

conduct would chill a person of ordinary firmness from continuing to engage in protected

activity, it follows that a reasonable officer also would know that Officer Yehia

committed a First Amendment retaliation violation when Mr. Irizarry's protected activity

motivated Officer Yehia's actions.

**AA113**

* * * *

Thus, as to all three elements of First Amendment retaliation, Mr. Irizarry has

shown a violation of clearly established law.  Officer Yehia is not entitled to qualified

immunity.

## III.  **CONCLUSION**

We reverse and remand for further proceedings consistent with this opinion.

**AA114**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

INGE BERGE,

                    Plaintiff,

          v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A. EASON,
in her personal capacity; and STEPHANIE
DELISI, in her personal capacity,

                    Defendants.

Civil Action No. 1:22-CV-10346

**NOTICE OF NON-OPPOSITION TO
MOTION FOR TEMPORARY RESTRAINING
ORDER AND FOR A PRELIMINARY
INJUNCTION**

Plaintiff INGE BERGE files this Notice of Non-Opposition in connection with the Motion for a Temporary Restraining Order and for a Preliminary Injunction.  (Doc. No. 2.)  SCHOOL COMMITTEE OF GLOUCESTER, BEN LUMMIS, ROBERTA A. EASON, and STEPHANIE DELISI (Collectively "Defendants") failed to file a motion in opposition within 14 days.  L.R. 7.1(b)(2).  To this date, Defendants have not opposed the Motion for a Temporary Restraining Order and for a Preliminary Injunction ("TRO Motion").  It has been nearly 6 months since the TRO Motion was filed, and with school starting again soon, Plaintiff requests this Court grant its motion, as it is unopposed.

Dated: August 24, 2022.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
Robert J. Morris II (*pro hac vice*)
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Plaintiff
Inge Berge*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

AA116

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INGE BERGE,                                           )
     Plaintiff,                                  )
                                     )
vs.                                                   )   C.A. No. 1:22-cv-10346-AK
                                      )
SCHOOL COMMITTEE OF GLOUCESTER;                       )
BEN LUMMIS, in his personal capacity;                 )
ROBERTA A. EASON, in her personal capacity; and       )
STEPHANIE DELISI, in her personal capacity,           )
     Defendants.                                 )

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

### I. INTRODUCTION

Defendants, Gloucester School Committee, Superintendent Ben Lummis, Roberta Eason and Stephanie Delisi, did not previously oppose plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction because it is clearly moot. On March 7, 2022, plaintiff filed a Motion for a TRO and PI asking this Court to enter an Order against defendants "preventing them from threatening or attempting to coerce Mr. Berge into removing his First Amendment protected speech." (ECF No. 2, at 7). Attached as "Exhibit 1" to plaintiff's Motion was a copy of a letter sent to plaintiff by Gloucester Public Schools ("GPS") on March 3, 2022. In that letter, the Director of Human Resources, Roberta Eason, demanded plaintiff immediately remove a video recording of his interactions that day with GPS personnel inside the Administration Office from his Facebook account or face potential legal action. (Id., at 9). One week later, on March 11, 2022, district counsel for GPS advised plaintiff's counsel that the March 3, 2022 was *withdrawn* and that GPS *"would not be taking any legal action against Mr. Berge ...."* District counsel memorialized this communication by letter to plaintiff's counsel dated March 22, 2022. (ECF, Doc. No. 15-1).

**AA117**

Because the relief sought in plaintiff's Motion for TRO and PI is moot (and has been moot since March 11, 2022), the Motion should be denied.

## II. BACKGROUND

This action arises out of plaintiff's unscheduled visit to the GPS Administration Office at 2 Blackburn Drive, Gloucester, MA, to "score five tickets" to the sold-out opening night performance of "The Little Mermaid, Jr.," a student production to be held at the O'Maley Innovation Middle School.[1] Over the objections of two GPS Administrators, plaintiff recorded the visit on his cell phone. Later that day, plaintiff posted the video recording (with commentary) on his Facebook account. As set forth above, GPS originally demanded plaintiff remove the post, but subsequently withdraw that demand, both orally and in writing. Plaintiff filed this suit on March 7, 2022, four days after making and posting his video recording. In his Verified First Amended Complaint, plaintiff demands compensatory damages, injunctive relief, costs and attorneys' fees for defendants' alleged violation of his First Amendment rights (Counts I & IV), as well as declaratory relief under the Massachusetts Wiretap Statute and the Family Educational Rights and Privacy Act of 1974 ("FERPA"). (Counts II & III) (ECF Doc. No. 11).

On April 27, 2022, defendants filed a Motion to Dismiss all Counts of plaintiffs' Verified First Amended Complaint under Rule 12(b)(6) for failure to state claims upon which relief can be granted, together with a Memorandum of Law in support. (ECF Doc. Nos. 15 & 16). As grounds for dismissal, defendants argued (among other things) that plaintiff's video recording and subsequent posting of the recording on social media were not protected under the First Amendment. (Id., at 6 – 12). Additionally (and alternatively), the individual defendants argued

---

[1] Plaintiff's daughter was playing a lead in the production and Mr. Berge (quite understandably) wished to attend.

**AA118**

they were protected from suit and liability under the doctrine of qualified immunity because it was not clearly established (in March 2022) that plaintiff had a constitutional right to record non-law enforcement personnel in a secure setting on a subject of personal interest to the plaintiff, then post such recording on Facebook. (Id., at 15 – 17). Finally, defendants argued that plaintiff's requests for declaratory relief were moot because the HR Director's letter of March 3, 2022 had been withdrawn and plaintiff's purported "need" for such relief was neither immediate nor real. (Id., at 18 – 20). On May 11, 2022, plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. (ECF Doc. No. 18).

Despite the above, plaintiff, on August 24, 2022 (knowing full-well defendants' position), filed a "Notice of Non-Opposition to Motion for Temporary Restraining Order and for a Preliminary Injunction." (ECF Doc. No. 22). In his Notice, plaintiff requests that this Court grant him a temporary restraining order and preliminary injunction on the grounds such relief is "unopposed" by defendants. Setting aside, for a moment, that there is simply no injunctive relief left to grant, this Court should deny plaintiff's Motion for a TRO and PI.

## III.  ARGUMENT

### A.  PRELIMINARY INJUNCTION STANDARD.

To obtain a preliminary injunction, plaintiff bears the burden of demonstrating "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020). See Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003). Plaintiff bears the burden of demonstrating that each of the four factors weighs in his favor. Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir.

**AA119**

2006). However, "the four factors are not entitled to equal weight in the decisional calculus; rather, '[l]ikelihood of success is the main bearing wall of the four-factor framework.'" <u>Corp. Techs., Inc.</u>, 731 F.3d at 9-10 (quoting <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 16 (1st Cir. 1996)). See <u>CVS Pharmacy, Inc. v. Lavin</u>, 951 F.3d 50, 55 (1st Cir. 2020) (substantial likelihood of success "weighs most heavily in the preliminary injunction analysis.")

Further, a preliminary injunction is an "extraordinary and drastic remedy." <u>Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011) (quoting <u>Munaf v. Geren</u>, 553 U.S. 674, 689-90 (2008)). Such an extraordinary remedy "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 120 (1st Cir. 2003).

**B.**     **<u>PLAINTIFF'S DEMAND FOR INJUNCTIVE RELIEF IS MOOT.</u>**

Plaintiff attaches "Exhibit 1" – the March 3, 2022 letter in which the Director of Human Services demands immediate removal of the video recording of GPS personnel from plaintiff's Facebook account – in support of his Motion for TRO and PI. In the body of his Motion, plaintiff describes the recording as protected speech and asks this Court to enter an Order "preventing [defendants] from threatening or attempting to coerce Mr. Berge into removing his First Amendment protected speech." However, because GPS later withdrew the letter, expressly advising plaintiff that it "would not be taking any legal action against [him] …," there is no longer any conduct on the part of defendants for this Court to enjoin.

In <u>Harris v. University of Mass. Lowell</u>, __ F.4th __, 2022 WL 3095254 (1st Cir. Aug. 4, 2022), the First Circuit recently upheld the denial of an injunction to two students who challenged mandatory vaccination policies at their respective colleges. Because one student had since transferred and the other had graduated, the First Circuit held their requests for injunctive relief

4

**AA120**

were "inescapably moot." Id., 2022 WL 3095254, at *3. "Where, as here, 'challenged measures [no longer] adversely affect[] any plaintiff's primary conduct,' injunctive relief is unavailable and the attendant claims become moot." Id. (citing Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997)).

> Normally, courts may not enjoin conduct if "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the allege violation."

Metro-Goldwyn Mayer, Inc. v. 007 Safety Prods., Inc., 183 F.3d 10, 15 (1st Cir. 1999) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (internal quotation and citations omitted)). See Goodwin v. C.N.J., Inc., 436 F.3d 44, 49 (1st Cir. 2006) ("[A] federal court may not grant injunctive relief when … intervening events have eliminated any reasonable anticipation that the aggrieved party will, in the future, be faced with a recurrence of the alleged harm.") (citations omitted).

Here, intervening events have eliminated any purported need to enjoin defendants' conduct. No alleged "threats" hang over plaintiff's head and, nearly five months after plaintiff's Facebook post, no legal action has been brought against him. Plaintiff's suspicion (if any) that defendants may act in the future does not justify the "extraordinary" remedy of an injunction. "It is not enough for a plaintiff to assert that she 'could be' subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant—the prospect of harm must have an 'immediacy and reality.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) (internal citations omitted). Plaintiff's Motion for a TRO and a PI should be denied.

## C.    PLAINTIFF FAILS TO MEET THE PRELIMINARY INJUNCTION STANDARD AND, THEREFORE, HIS MOTION SHOULD BE DENIED.

### 1.  Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits.

**AA121**

As set forth in defendants' Memorandum of Law in support of their Rule 12(b)(6) Motion, plaintiff's Verified First Amended Complaint fails to state claims against defendants upon which relief can be granted. (ECF Doc. No. 16). Without describing the several grounds for dismissal in detail, a brief description of such grounds is sufficient to illustrate that plaintiff's likelihood of success on the merits is not "substantial" – rather, it is doubtful. First, plaintiff's recording of public school officials conducting administrative business in a secure setting was not protected activity. As the First Circuit has recognized, the right to record government officials may "be subject to reasonable time, place and manner restrictions." Glik v. Cunniffe, 655 F.3d 78, 84 (1st Cir. 2011). See Gericke v. Begin, 753 F.3d 1, 7-8 (1st Cir. 2014). ("Reasonable restrictions on the exercise of the right to film may be imposed when the circumstances justify them.") Here, in light of the nature of the forum, the privacy interests of the officials recorded, the personal purpose for plaintiff's visit to the Administration Office in the first place, and the fact that plaintiff was asked to stop recording (but refused), circumstances justify restricting plaintiff's "right to record." Further, barring the recording of school business activities conducted in the Administration Office (whether open or secret) is a content-neutral restriction of general applicability which serves significant governmental interests – *i.e.*, the day-to-day operation and oversight of eight public schools with an enrollment of over 2,800 students in grades Pre-K through 12.

Second, plaintiffs' posting of his recording on Facebook was not protected activity. The dissemination of information obtained by improper means is protected only if it is on a matter of "public concern." Bartnicki v. Vopper, 532 U.S. 514, 534 (2001). Here, plaintiff visited the Administration Office on purely personal business – to "score five tickets" to his daughter's sold-out Middle School play. In plaintiff's own words, the visit was necessitated by a "ticket snafu," "kind of an unpleasant situation" and "a very small situation." Specifically: "I'm so in the dog

6

**AA122**

house with everyone because I didn't get these tickets for opening night." This is not the stuff of political, social or other concerns to the community. Plaintiff's recording was not on a matter of "public concern."

Third, defendants did not retaliate against plaintiff for engaging in protected activity. The HR Director's letter of March 3, 2022 (which was withdrawn approximately one week later) was no more than a *de minimis* inconvenience to plaintiff's exercise of his First Amendment "rights." It was not an adverse action that would deter a person of "ordinary firmness" from exercising his constitutional rights in the future, especially in light of its prompt withdrawal. Plaintiff himself did not take the letter seriously, nor was his speech ever chilled. Plaintiff declined to remove the Facebook post and promptly doubled down by filing this action four days later.

Fourth, the individual GPS defendants are entitled to qualified immunity. The scope of plaintiff's rights (if any) to record the business of activities of school officials in the GPS Administration Office on the subject of securing opening night tickets to his daughter's Middle School play and to later post such recording on Facebook was not clearly established at the time of defendants' conduct. By asking plaintiff to "turn off" the recording and later instructing plaintiff to remove the posted recording from Facebook, no reasonable official in the position of a GPS administrator would have understood that he or she was violating plaintiff's constitutional rights. While the First Circuit has addressed the recording of police officers performing law enforcement duties in public fora, see Glik, 655 F.3d at 84; Gericke, 753 F.3d at 7-8; Project Veritas Action Fund v. Rollins, 982 F.3d 813, 836-37 (1st Cir. 2020); it has not clarified whether the right to record extends to non-law enforcement personnel (such as school administrators) performing official duties in a limited or non-public forum, nor has it explained the constitutional significance

of a government request (such as the one made here) to turn off the recording. Plaintiff simply cannot meet his burden of showing that the defense of qualified immunity does not apply.

Fifth, plaintiff alleges no unconstitutional custom, policy or practice on the part of the City, nor does he allege sufficient facts to show that he was harmed by the City's enforcement of or adherence to an unconstitutional custom, policy or practice. Absent such allegations, the City is entitled to the dismissal of plaintiff's Section 1983 claim. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 665 (1978); City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Because plaintiff has failed to show a substantial likelihood of success on the merits, injunctive relief must be denied.

### 2. **Plaintiff Fails to Show a Significant Risk of Irreparable Harm.**

Even if plaintiff demonstrates a substantial likelihood of success on the merits (which defendants deny), he cannot dispense with the second requirement for injunctive relief. "[A]t least some positive showing of irreparable harm must still be made." Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 43 (1st Cir. 2010). Notably, the assertion of First Amendment rights "does not automatically require a finding of irreparable injury." Rushia v. Town of Ashburnham, Mass., 701 F.2d 7, 10 (1st Cir. 1983). See City of Los Angeles v. Lyons, 461 U.S. 95, 112-13 (1983) (constitutional harm is not necessarily irreparable harm). Moreover, a "finding of irreparable harm must be 'grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.'" City of Lowell v. Enel North America, Inc., 705 F. Supp. 2d 116, 119 (D. Mass. 2010) (quoting Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004)). "The threat must be real and immediate." Id. (motion for preliminary injunction denied absent immediate threat of irreparable harm).

In his Motion for TRO and PI, plaintiff baldly concludes he has shown a "probability of irreparable harm" merely "[b]ecause there is a strong likelihood of success on the merits of [his] claims …." (ECF Doc. No. 2, at 5). As set forth above, plaintiff's success on the merits is far from "likely." More importantly, any future harm to plaintiff is, at best, speculative and remote. Because plaintiff fails to show a significant risk of irreparable harm, his Motion should be denied.

**3.** **The Balance of Hardships and the Public Interest Weigh Against an Award of Injunctive Relief to Plaintiff.**

As stated above, plaintiff bears the burden of establishing that the four factors of a preliminary injunction weigh in his favor. Esso Std. Oil, 445 F.3d at 18. The standard to be applied is a "stringent" one, requiring a court to carefully weigh the interests on both sides. Rushia, 710 F2d at 10 (citing Doran v. Salem Inc, Inc., 422 U.S. 922, 931 (1975)). Here, where plaintiff's speech is not (and has not been) silenced and where no threat of prosecution or civil proceedings hangs over his head, plaintiff fails to show that the balance of hardships weighs in his favor and/or that his interests outweigh those of defendants. School officials have a legitimate governmental interest in conducting the day-to-day operations of Gloucester Public Schools (portions of which are confidential) without unnecessary disruption or interference. Further, school officials do not lose all privacy interests by virtue of their status as public employees. Certainly, in the confines of the secure Administration Office – where the public admittedly has a right of access to conduct school business – school officials are entitled to some privacy while performing their jobs. See Project Veritas, 982 F.3d at 838 (under certain circumstances, recording of police officers working in public could threaten officers' privacy interests). Plaintiff has failed to make a "clear showing" that he is entitled to the "extraordinary and drastic" relief of a preliminary injunction and, therefore, his Motion should be denied.

**IV. CONCLUSION**

**AA125**

For the reasons set forth above, this Honorable Court should deny plaintiff's Motion for a

Temporary Restraining Order and a Preliminary Injunction.

> Respectfully submitted,
>
> The Defendants,
> SCHOOL COMMITTEE OF GLOUCESTER;
> BEN LUMMIS, in his personal capacity;
> ROBERTA A. EASON, in her personal capacity; and
> STEPHANIE DELISI, in her personal capacity,
>
> By their Attorneys,
>
> **PIERCE DAVIS & PERRITANO LLP**
>
> */s/ John J. Davis*
>
> _____
> John J. Davis, BBO #115890
> 10 Post Office Square, Suite 1100N
> Boston, MA 02109
> (617) 350-0950
> jdavis@piercedavis.com

Dated: August 29, 2022

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on August 29, 2022.

> */s/ John J. Davis*
>
> _____
> John J. Davis, Esq.

**AA126**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

INGE BERGE,

      Plaintiff,

v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A.
EASON, in her personal capacity; and
STEPHANIE DELISI, in her personal
capacity,

      Defendants.

Civil Action No. 1:22-CV-10346

**PLAINTIFF'S REPLY IN SUPPORT
OF MOTION FOR A TEMPORARY
RESTRAINING ORDER AND A
PRELIMINARY INJUNCTION**

**(LEAVE TO FILE GRANTED ON
SEPTEMBER 13, 2022)**

After failing to file a timely response to Plaintiff's Motion for a Temporary Restraining

Order and for a Preliminary Injunction, Defendants now assure us that the issue is moot.

Defendants are incorrect.

Defendants state that "barring the recording of school business activities conducted in

the Administration office (whether open or secret) is a content-neutral restriction of general

applicability which serves significant governmental interests." (Defs.' Opp'n to Pl.'s Mot. for

TRO and a Prelim. Inj. ("Opp. Mot.") at 6.)  However, there was no such policy at the time

this suit was filed, and to this day, it appears that there is no such policy. *See* **Exhibit A**. There

was no policy prior to the incident.  There was no policy established after the incident.  There

is not even discussion of establishing a policy in the School Committee's meeting minutes.  A

government agency can not simply have a "policy" that it makes up out of thin air when it suits

them, with the contours that suit them, simply to react to litigation filed against them, and

which it keeps a secret except when revealing some of its contours just might help defeat a

preliminary injunction.

AA127

Defendants claim that Berge alleges "no unconstitutional custom, policy, or practice on the part of the City." (Opp. Mot. at 8.)  Defendants sent a letter threatening legal action against Berge to silence him.  At a minimum, that is an unconstitutional practice – perhaps a policy – whereby the Defendants conspired to silence Berge for the lawful exercise of his First Amendment Rights.  However, this "policy" does not exist, or if it exists, it only exists on an *ad hoc* basis.

Defendants falsely assert that they completely withdrew their threat to take legal action against Berge. (Opp. Mot. at 1-2.)  Indeed, the School Committee sent a letter on March 22, 2022, stating that *the School Committee* is withdrawing any threats of criminal action against Berge – however, it says nothing of civil action.  Further, the letter is adamant that the School Committee takes the position that *all school buildings* are non-public forums, thus barring his ability to record in school buildings, lest he face further retribution from the School Committee.  Berge stands by his position that he can, and should be permitted to, record in public-facing areas on school property.

Additionally, this letter was sent only on behalf of the Gloucester School Committee.  ECF 18-1.  The three remaining Defendants Lummis, Eason, and Delisi – who took part in writing the letter – and upon whose behalf the original threats were made, have not withdrawn any threats to take legal action against Berge. Defendants admit in their opposition that only the School Committee withdrew its threats to seek to prosecute Berge criminally. (Opp. Mot. at 4).  However, at the very least, Ms. Delisi maintains her claims and has refused to issue a similar withdrawal or waiver of claims.  Plaintiff pointed this out to opposing counsel on March 22, 2022, and if the individuals were making similar withdrawals, it would have been a simple task to respond "this goes for the individuals as well." *See* ECF 18-2.  However, the School

AA128

Committee and the individual defendants have stubbornly refused to do so – rendering the motion decidedly not moot.

If these defendants, personally, want to irrevocably waive any criminal or civil claims, perhaps they can moot this injunction request. But, Defendants Lummis, Eason, and Delisi have not done so, not even now in this opposition to the motion for preliminary injunction. Clearly, this shows that they have no intention of withdrawing it, so, at the very least, the injunction must issue against them. Berge does intend to return to conduct First Amendment audits in the Administrative office. In the absence of an injunction, Berge must be concerned that the Defendants will continue to apply an amorphous *ad hoc* "policy" where none exists.

### 1.0    The Opposition is Untimely

Pursuant to L.R. 7.1(b)(2), Defendant had 14 days to file a response in opposition. Defendants failed to file a motion within the 14 days. As a result, pursuant to L.R. 7.1(b)(3), Defendants were required to obtain leave from this Court before submitting an untimely opposition motion. Therefore, this court should strike Defendants' opposition motion.

There is no good cause to extend the time for Defendants to file an untimely opposition motion. *See* Fed. R. Civ. P. 6(b)(1)(B). Defendants inexcusably neglected to file an opposition motion until prompted by Plaintiff's Notice of Non-Opposition requesting this Court to grant its motion. ECF 22. Defendants failed to provide any argument for why their failure to oppose timely was "excusable neglect."

Defendants' justification for failing to timely file an opposition motion is that they thought the issue was moot. Of course, the government thinks everything is moot, and that as long as they violate the Constitution and then say "just kidding," they can continue to do so

**AA129**

without being reined in by the Courts.  Maybe it is time for a Court to inform them that this is not how it works.

Defendants argue that government employees unconstitutionally threatening a member of the public with legal action for exercising his First Amendment Rights is inconsequential. Defendants argue that there "was no more than a *de minimis* inconvenience to plaintiff's exercise of his First Amendment 'rights'," (Opp. Mot. at 7.), when they retaliated against an immigrant (unfamiliar with American law, who speaks English as a second language) by threatening to prosecute him, criminally, for exercising his constitutionally protected First Amendment Rights. Mr. Berge was fearful of the consequences of facing a government agency, bent on putting him in jail if he did not stop publishing his video, so he retained counsel.  The fact that this counsel may have comforted him that the government was acting ignobly and illegally does not make the violation any less grave.

Defendants' position on the tardiness of their response makes no sense.  Defendants acknowledge in their opposition motion that only one Defendant withdrew the threat of legal action. (Opp. Mot. at 4.)  Plaintiff's counsel put Defendants on notice, in writing, that only one Defendant withdrew their threat of legal action, and asked for clarification. ECF 18-2.  By Defendants' own admission, their justification for submitting an untimely opposition motion is false.

**2.0     Injunctive Relief is Not Moot**

Defendants argue that the issue is moot based on unilateral action taken by the School Committee to withdraw its legal threat. (Opp. Mot. at 4)  However, Defendants Lummis, Eason, and Delisi have not withdrawn their threats despite being on notice that they should do so as far back as March 22, 2022. ECF 18-2.  Defendants admit this. (Opp. Mot. at 4)  Berge

**AA130**

intends to conduct First Amendment audits in the Administrative office.  In the absence of an injunction, Berge must be concerned that the Defendants will continue to apply an amorphous *ad hoc* "policy" where none exists and have the threat of legal action by Defendants hanging over his head.  Therefore, the request for injunctive relief is not moot.

Assuming *arguendo*, if the mootness doctrine applies, then the voluntary cessation doctrine as an exception to the mootness doctrine applies as well.  *O'Connor v. Washburn University*, 416 F.3d 1216, 1221 (10th Cir. 2005) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case unless defendants can show no reasonable expectation that the wrong will recur.") (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)).  Defendants have not met their burden.  With respect to the voluntary cessation doctrine, a court in this District recently summarized its continuing applicability as follows:

> "[T]his exception arises in situations where 'the defendant voluntarily ceases the challenged practice[.]'" [*ACLU of Mass. V. United States Conference of Catholic Bishops*, 705 F.3d 44, 54 (1st Cir. 2013)] (quoting *DHL Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 55 (1st Cir. 1999)). The district court has explained that, "[w]hen a defendant voluntarily ceases committing the offending activity, courts impose additional requirements upon [the defendant] in order to ensure that [it] is not 'temporarily alter[ing] questionable behavior' in order to evade judicial review." [*KG Urban Enters., LLC v. Patrick*, 969 F. Supp. 2d 52, 56 (D. Mass. 2013)] (citing *Catholic Bishops*, 705 F.3d at 54). "[D]efendants bear the formidable burden of demonstrating that it is absolutely clear that the challenged conduct could not reasonably be expected to recur." *Id.* at 57 (internal citations omitted).

*Nat'l Fed'n of the Blind v. Container Store Grp., Inc.*, Civil Action No. 15-12984-NMG, 2020 U.S. Dist. LEXIS 149656, at *23-24 (D. Mass. June 24, 2020).

Defendants rely on *Harris v. Univ. of Mass. Lowell*, No. 21-1770, 2022 U.S. App. LEXIS 21586 (1st Cir. Aug. 4, 2022).  In *Harris*, two students were challenging a vaccine policy at a university and were no longer attending the university by the time the case was reviewed on appeal. *Id.* at *5. The First Circuit held the case was moot because the students

no longer attended the school where they were challenging the vaccination policies. *Id.* at *7. *Harris* is inapposite to Berge.  In *Harris*, the case was moot because the plaintiffs removed themselves from the policy by their actions, rendering the voluntary cessation doctrine inapplicable and not raised.

Here, Berge has not removed himself from Defendants' *ad hoc*, amorphous "policy." Berge intends to continue filming in the Administrative office. The School Committee's unilateral action of withdrawing its threat of taking legal action, this time, as an attempt to evade judicial review does not meet Defendants' burden of showing that their unconstitutional conduct will cease. *Am. Civil Liberties Union of Mass. V. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 54 (1st Cir. 2013) ("[T]his exception arises in situations where "the defendant voluntary ceases the challenged practice[.]")

The issues presented to this Court are live as Berge intends to continue his constitutionally protected conduct. The half-measure actions by Defendants have not evaded the case and controversy.  With school starting again and the Defendants having no official policy in place against recording in the administrative office, Berge must contend with the threat of legal action as he engages in constitutionally protected First Amendment audits.

### 2.1    Plaintiff is Likely to Prevail on the Merits

Defendants proceed to attempt to argue that Berge fails to show a substantial likelihood of success on the merits. First, Defendants argue the right to record government officials may be subject to reasonable time, place and manner restrictions. (Mott. Opp. at 6.)  This argument is disingenuous because there was no policy that prohibited or even limited recording in the administrative building. **Exhibit A** at 1. The government does not get to just invent a policy out of thin air. *Child Evangelism v. Montgomery Schools*, 457 F.3d 376, 386 (4th Cir. 2006)

**AA132**

("Thus, there is broad agreement that, even in limited public and nonpublic forums, investing governmental officials with boundless discretion over access to the forum violates the First Amendment.") (collecting cases). Defendants falsely assert that Berge was recording in a "secure setting" without any evidence whatsoever. (Opp. Mot. at 6.) If this was a "secure setting" then how did Berge simply walk into that "secure setting?" This was not Strategic Air Command. Why the Defendants are so comfortable simply making up facts is unclear.

Second, Defendants argue that Berge posting the video on Facebook was not protected activity. (Opp. Mot. at 6) Then what is the crux of their mootness argument? Is it that Mr. Berge violated some as-yet-un-cited law or new "policy" that the Committee has kept secret? Is it that they could take legal action, but for now they have withdrawn the threat? That the remaining defendants have not withdrawn anything, and Mr. Berge has no right to publish the video, and they expect this Court to infer mootness? Defendants' opposition makes no sense at all.

As outlined in greater detail in Plaintiff's Opposition to the Motion to Dismiss, Defendants incorrectly apply *Bartnicki v. Vopper*, 532 U.S. 514, 534 (2001) to argue that posting a video on Facebook was not protected activity. *Compare* Opp. Mot. at 6 *with* ECF 18 at 9-12. For *Bartniciki* to apply, the video must be acquired by improper means. Defendants do not suggest how Berge acquired the video by improper means, nor could they. Presumably, Defendants argue that there was a policy prohibiting recording but, as highlighted above, there was no policy prohibiting recording at all. *See* **Exhibit A**. Perhaps if the Defendants could bear the loss to their pride by simply admitting that Berge had a First Amendment right to publish the video, they could move a bit further toward mootness, but as long as that stubbornness remains intact, this Court has work to do.

RANDAZZA | LEGAL GROUP

Third, Defendants argue that government officials threatening legal action against Berge for exercising his First Amendment rights was *de minimis* and would not deter a person of ordinary firmness from exercising his constitutional rights. (Opp. Mot. at 7.) Defendants contend that since Berge did not take down the video and submit to the government's attempt to coerce him into silence that he did not take their threat seriously. How much more seriously did he need to take it than to retain counsel to defend himself against the threat of **criminal prosecution** lodged by a government agency and government employees on government letterhead? Berge filed suit to protect himself from these threats. Had he failed to do so, is the Government conceding that it just sends legal threats on official letterhead for the fun of it? Is the Government conceding that it just threatens citizens with criminal prosecution, without any intent to follow through, so citizens should not take them seriously? For a layperson, why should they presume that such a threat is of any less effect than a restraining order from a court? It is hard to see how much more seriously Berge could have taken the Government's threat. The Government can not seriously argue that Berge's failure to comply (once protected by counsel) renders their conduct "no big deal."

Fourth, Defendants argue that qualified immunity may shield them from liability. This argument is inapplicable in a motion for injunctive relief because qualified immunity does not apply to injunctive relief. *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 732 (9th Cir. 2022) ("Thus, a plaintiff seeking injunctive relief for an ongoing First Amendment violation (e.g., a retaliatory policy) may sue individual board members of a public school system in their official capacities to correct the violation."); *see also Quern v. Jordan*, 440 U.S. 332, 337 (1979).

**AA134**

Fifth, Defendants argue that no "unconstitutional custom, policy or practice on the part of the City" was alleged. Plaintiff clearly identifies an unconstitutional practice. Defendants conspired to send a letter threatening legal action against Berge for exercising his First Amendment rights as an effort to silence him. That is an unconstitutional practice by Defendants.

### 3.0     CONCLUSION

For the foregoing reasons, this Honorable Court should enter a preliminary injunction against all Defendants preventing them from threatening or attempting to coerce Berge into exercising his First Amendment Rights and removing his First Amendment protected speech.

Dated: September 13, 2022.                    Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
Robert J. Morris II (*pro hac vice*)
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Plaintiff*
*Inge Berge*

**AA135**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2022, the foregoing document was served on

all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

# Exhibit A

Public Records Request





**City Hall**

**Nine Dale Avenue**

**Gloucester, MA 01930**

TEL **978 281-9727**

FAX **978 281-9734**

# CITY OF GLOUCESTER

### LEGAL DEPARTMENT

June 6, 2022

*Via email mjr@randazza.com*

Marc Randazza, Esq.
Randazza Legal Group
30 Western Avenue
Gloucester, MA 01930

Re:    Public Records Request – #22-249

Dear Attorney Randazza:

I am writing to acknowledge receipt of your letter dated May 26, 2022 in connection with your May 8, 2022 request as follows:

> **Any policies that existed prior to March 3, 2022 regarding filming and/or recording by cell phone within the Gloucester Public Schools Administration Office located at 2 Blackburn Drive Gloucester, MA 01930.**
>
> **Any meeting minutes between January 1, 2022 to the present date that adopt a policy regarding filming and/or recording by cell phone within the Gloucester Public School Administration Office located at 2 Blackburn Drive Gloucester, MA 01930.**
>
> **Any policies after March 3, 2022 regarding filming and/or recording by cell phone within the Gloucester Public Schools Administration Office located at 2 Blackburn Drive Gloucester, MA 01930.**

The School Department has made a diligent search of its records and no documents responsive to your request exist.

**AA138**

You have the right of administrative appeal to the Supervisor of Public Records under 950 CMR 32.08(1) and the right to seek judicial review of an unfavorable decision by commencing a civil action in the superior court.


Sincerely,

/s/
Suzanne P. Egan
General Counsel

**AA139**



**RANDAZZA**
LEGAL GROUP

**Marc J. Randazza, JD, MAMC, LLM**
Licensed in AZ, CA, FL, MA, NV

**26 May 2022**

<u>Via Email and U.S. Mail</u>
segan@gloucester-ma.gov

Suzanne P. Egan
City of Gloucester Legal Department
Nine Dale Avenue
Gloucester, MA 01930

> ### *Re:     Public Records Request – #22-249*

Dear Attorney Egan:

On May 8, 2022, we requested three categories of documents. First, any policies that existed prior to March 3, 2022 regarding filming and/or recording by cell phone within the Gloucester Public Schools Administration Office. Second, any meeting minutes between January 1, 2022 to the present date that adopt a recording policy. Third, any policies adopted after March 3, 2022 regarding filming and/or recording by cell phone within the Gloucester Public Schools Administration Office.

Despite the 10-business day requirement under G.L. c. 66, § 10, we received a letter from you 11-business days later on May 23, 2022 that was largely unresponsive to our request. For example, you cited an exemption to the meeting minutes request, while also stating that "the City does not have any records responsive to your requests" regarding meeting minutes.

The remaining portion of this letter provides a response to your generally cited exemptions. We look forward to a more responsive letter from you that cites "specific reasons" for withholding documents as required by G.L. c. 66, § 10(iv) or, better yet, that you comply with the request and provide the documents.

First, it appears you have denied our requests in the third paragraph asking for any policies after March 3, 2022 regarding filming and/or recording by cell phone within the Gloucester Public Schools Administration Office.

It is somewhat unusual that the City of Gloucester would refuse to disclose public policies. "The primary purpose of G.L. c. 66, § 10, is to give the public broad access to government documents." *Harvard Crimson, Inc. v. President and Fellows of Harvard College*, 445 Mass. 745, 749 (2006). It is even more confounding that your purported justification directly contradicts case law. "The existence of litigation, however, does not eliminate the obligation of a public agency to comply with the Public Records Law, nor are records relevant to pending litigation exempted from the definition of 'public records.'" *Rosario v. Nashoba Reg'l Sch. Dist.*, No. 18-1899D, 2020 Mass. Super. LEXIS 416, at *3 (Feb. 11, 2020). The requests in the third paragraph are not part of active litigation but, even if they were, you are required to provide them under the public records law.

---

2764 Lake Sahara Drive, Suite 109, Las Vegas, Nevada 89117

mjr@randazza.com | 702.420.2001

**AA140**



Second, regarding the request for meeting minutes that **adopt** a policy regarding filming and/or recording by cell phone within the Gloucester Public School Administration Office, it appears you claim that the records are exempt because disclosure would defeat a lawful purpose of the executive session. However, you fail to state or even allude to what that "purpose" might be. We are left merely to conclude that you are hiding something.

There is a presumption that each record sought is public and the agency seeking to withhold the records must prove "by a preponderance of the evidence, that such record **or portion of the record** may be withheld in accordance with state or federal law." G.L. c. 66, §10A(d)(1). The superior court may "award reasonable attorney fees and costs" with a "presumption in favor of an award of fees and costs unless the agency or municipality establishes," among other things, that it "reasonably relied upon" a published opinion of a Massachusetts appellate court or the Attorney General based on substantially similar facts. G.L. c. 66, §10A(d)(2).

Opinions of the Attorney General's Office consistently quote an important part of G.L. c. 30A, §22(f), "when the purpose for a valid executive session has been served, the minutes and any documents or exhibits used at the session **must be** disclosed unless the attorney-client privilege or an exemption to the public records law applies to withhold them, in whole or in part, from disclosure." *See generally* 2021 MASS. AG LEXIS 175, *5 (Mass. Att'y Gen. October 15, 2021). There is no lawful purpose to withhold discussions about adopting a public policy on recording in a government building. Even if there were some lawful purpose, after the policy has been voted on, the purpose is complete and the meeting minutes must be disclosed.

To the extent that you believe that the litigation exception under G.L. c. 30A, § 21 might apply, we are not requesting any discussions about a litigation position. Any positions on litigation can and should be redacted from the meeting minutes. We are requesting the meeting minutes that adopt a recording policy and the discussions therein about the policy. *Foudy v. Amherst-Pelham Regional Sch. Comm.*, 402 Mass. 179, 184, 521 N.E.2d 391 (1988) ("It is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials and *to the way in which the decisions are reached*.") (emphasis added).

Moreover, there are specific requirements that must be followed to receive the litigation exception under G.L. c. 30A, § 21(a)(3). Where the procedures are not properly followed, the Attorney General's Office has ordered the unredacted release of the entire meeting meetings. *See* 2021 MASS. AG LEXIS 33 (Mass. Att'y Gen. March 1, 2021). At this time, we are only requesting the meeting minutes regarding the adoption of a policy on filming and/or recording by cell phone within the Gloucester Public School Administration Office. However, if we are forced to pursue litigation, we may wind up with everything, including litigation positions if the proper protocol was not followed.

We will give you 10 days to fully comply with the public records request before filing a lawsuit against the City of Gloucester to get this information.



In the meantime, you are clearly aware of the lawsuit that Mr. Berge brought, and the strange position that the City has taken – that since there is a "policy" against filming, that both the filming and the publication of the film contents were unlawful.  Meanwhile, you seem to be taking the position that there was no policy at the time, but there is one now.  However, what that policy is, and how it was adopted, is a secret that the public can not know.

This can not be the case, and can not be conduct that is consistent with the open records and open meetings laws.

I understand that taking positions contrary to law is unlikely to cost you personally, and thus your risk profile is not the same as a private entity.  Nevertheless, you do have an ethical obligation to make the right legal decision – not just one that conforms to the emotions of those who are upset at Mr. Berge.  Gloucester's tax dollars are better spent on a stamp and an envelope enclosing the requested materials than they are on a lawsuit that we most certainly will file if you continue on your current course.

You have 10 days in which to reconsider your position.  We expect to receive the requested information by Friday, June 10, 2022.

Sincerely,

Marc J. Randazza

**AA142**



City Hall
Nine Dale Avenue
Gloucester, MA 01930

TEL **978 281-9727**
FAX **978 281-9734**

# CITY OF GLOUCESTER

### LEGAL DEPARTMENT

May 23, 2022

John Morris, Esq.                    *Via Next Request*
Randazza Legal Group
 rjm@randazza.com
 30 Western Ave., Gloucester, MA 01930

Re:    Public Records Request – #22-249

Dear Attorney Morris:

This letter is in response to your public records request received on May 8, 2022.  You have
asked for the following documents:

> **Any policies that existed prior to March 3, 2022 regarding filming and/or recording
> by cell phone within the Gloucester Public Schools Administration Office located at
> 2 Blackburn Drive Gloucester, MA 01930.**

> **Any meeting minutes between January 1, 2022 to the present date that adopt a
> policy regarding filming and/or recording by cell phone within the Gloucester
> Public School Administration Office located at 2 Blackburn Drive Gloucester, MA
> 01930.**

> **Any policies after March 3, 2022 regarding filming and/or recording by cell phone
> within the Gloucester Public Schools Administration Office located at 2 Blackburn
> Drive Gloucester, MA 01930.**

The Public Records Access Regulations, 950 CMR 32.08(2)(b)(1) provides in relevant part that:
the supervisor of public records may deny an appeal if "the public records in question are the
subjects of disputes in active litigation, administrative hearings or mediation;".  Given the nature
of your request and the clear relation between that request and *Inge Berge v. School Committee
of Gloucester et al.,* which is presently being handled by your office, it is the City's position the
records are not subject to a public records request. The Public Records Law is not intended as a
vehicle to circumvent the normal civil discovery processes, where those apply, as they do

**AA143**

here.  Instead, your client's rights and ability to obtain discovery of documentation from the City, if any, is governed by the Massachusetts Rules of Civil Procedure and any other applicable legal rules/limitations given the nature of the cause of action.  Accordingly, as your request does not constitute a public records request, the City is not obligated to respond to same under the provisions of the Public Records Law.

Additionally, The documents requested regarding meeting minutes are exempt from the public records law *G.L. c. 4, § 7(26)(a) materials otherwise exempt by statute*.  G.L. c. 30A, § 22(f) provides: "[t]he minutes of any executive session, the notes, recordings or other materials used in the preparation of such minutes and all documents and exhibits used at the session, may be withheld from disclosure to the public in their entirety under subclause (a) of clause Twenty-sixth of section 7 of chapter 4, as long as publication may defeat the lawful purposes of the executive session, but no longer; provided, however, that the executive session was held in compliance with section 21."

Further, the City does not have any records responsive to your requests listed in paragraphs 1 and 2.

If you wish to challenge any aspect of this response, you may appeal to the Supervisor of Records following the procedure set forth in 950 C.M.R. 32.08, a copy of which is available at http://www.mass.gov/courts/case-legal-res/law-lib/laws-by-source/cmr/.  You may also file a civil action in accordance with M.G.L. c. 66, § 10A.


Sincerely,


Suzanne P. Egan
General Counsel


SPE/kml

**AA144**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
INGE BERGE,                                      )
     Plaintiff,                                )
                                                 )
vs.                                              )  C.A. No. 1:22-cv-10346-AK
                                                 )
SCHOOL COMMITTEE OF GLOUCESTER;                  )
BEN LUMMIS, in his personal capacity;            )
ROBERTA A. EASON, in her personal capacity; and  )
STEPHANIE DELISI, in her personal capacity,      )
     Defendants.                               )
_____          )

**DEFENDANTS' MOTION TO EXTEND TIME TO FILE OPPOSITION
TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING
ORDER AND A PRELIMINARY INJUNCTION**

Defendants, Gloucester School Committee, Superintendent Ben Lummis, Roberta Eason and Stephanie Delisi, hereby move, pursuant to Fed. R. Civ. P. 6(b)(1)(B), to extend the time within they may file an Opposition to plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction up to and including August 29, 2022. As grounds therefor, defendants state that their failure to file an Opposition to plaintiff's Motion for a TRO and PI within 14 days after service of said Motion was due to excusable neglect – namely, defendants reasonably understood plaintiff was no longer seeking injunctive relief because such relief was moot. Defendants submit the accompanying Memorandum of Law in Support of Defendants' Motion to Extend Time to File Opposition to Plaintiff's Motion for a TRO and PI.

WHEREFORE, defendants, Gloucester School Committee, Superintendent Ben Lummis, Roberta Eason and Stephanie Delisi, respectfully request that this Honorable Court extend the time within they may file an Opposition to plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction up to and including August 29, 2022.

**AA145**

Respectfully submitted,

The Defendants,
SCHOOL COMMITTEE OF GLOUCESTER;
BEN LUMMIS, in his personal capacity;
ROBERTA A. EASON, in her personal capacity; and
STEPHANIE DELISI, in her personal capacity;
By their Attorneys,


**PIERCE DAVIS & PERRITANO LLP**

*/s/ John J. Davis*

_____
John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: September 13, 2022

## **LOCAL RULE 7.1 CERTIFICATE**

     I hereby certify, pursuant to Local Rule 7.1(A)(2), that on September 13, 2022, I conferred in good faith with counsel for the plaintiff by telephone in an effort to resolve or narrow the issues regarding defendants' Motion to Extend Time to File Opposition to Plaintiff's Motion for a TRO and PI.

*/s/ John J. Davis*

_____
John J. Davis, Esq.


## **CERTIFICATE OF SERVICE**

     I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on September 13, 2022.

*/s/ John J. Davis*

_____
John J. Davis, Esq.

**AA146**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

INGE BERGE,                                                    )
     Plaintiff,                                             )
                                                              )
vs.                                                           )  C.A. No. 1:22-cv-10346-AK
                                                              )
SCHOOL COMMITTEE OF GLOUCESTER;                               )
BEN LUMMIS, in his personal capacity;                         )
ROBERTA A. EASON, in her personal capacity; and               )
STEPHANIE DELISI, in her personal capacity,                   )
     Defendants.                                            )
_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXTEND
TIME TO FILE OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY
<u>RESTRAINING ORDER AND A PRELIMINARY INJUNCTION</u>**

### I. INTRODUCTION

Plaintiff, Inge Berge, filed his original Verified Complaint against defendants, Gloucester

School Committee, Superintendent Ben Lummis, Roberta Eason and Stephanie Delisi, on March

7, 2022. (ECF Doc. No. 1). In his Verified Complaint, plaintiff sought relief against defendants

under one Count for defendants' alleged violation of his rights to free speech as protected by the

First Amendment. Together with his Verified Complaint, plaintiff also filed a Motion for a

Temporary Restraining Order and Preliminary Injunction. (ECF Doc. No. 2). In the Motion,

plaintiff sought injunctive relief based on a purported "threat" of legal action made against him by

Gloucester Public Schools ("GPS") in a letter sent four days earlier. (<u>Id.</u>, at 7). A copy of the letter

was attached as "Exhibit 1" to plaintiff's Motion. (ECF Doc. No. 4-1). On March 11, 2022, district

counsel withdrew the alleged "threatening" letter, a move she subsequently memorialized in

writing. (ECF Doc. No. 15-1).

On March 17, 2022, plaintiff filed a Verified First Amended Complaint. (ECF Doc. No.

11). In his Verified First Amended Complaint, plaintiff still seeks relief for the alleged violation

**AA147**

of his First Amendment rights (Count I), but also seeks declaratory relief under the Massachusetts Wiretap Statute, the Family Educational Rights and Privacy Act of 1974 ("FERPA"), and the First Amendment (Counts II – IV). (ECF Doc. No. 11). On April 5, 2022, this Court allowed defendants' Motion to Extend Time to Respond to plaintiff's Verified First Amended Complaint by an additional twenty days, up to an including April 27, 2022. (ECF Doc. No. 14).

On April 27, 2022, defendants filed a Motion to Dismiss all Counts of plaintiff's Verified First Amended Complaint under Rule 12(b)(6) for failure to state claims upon which relief can be granted, together with a Memorandum of Law in support. (ECF Doc. Nos. 15 & 16). Defendants, however, did not file an Opposition to plaintiff's Motion for a TRO and PI because they reasonably understood and believed (in light of district counsel's previous withdrawal of Ms. Eason's letter) that plaintiff's request for injunctive relief was moot. On May 11, 2022, plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss. (ECF Doc. No. 18). At present, defendants' Motion to Dismiss remains pending.

On August 24, 2022, plaintiff filed a Notice of Non-Opposition to Motion for Temporary Restraining Order and for a Preliminary Injunction. (ECF Doc. No. 22). In his Notice, plaintiff asked the Court to grant the relief sought in his Motion for a TRO and PI on the grounds said Motion was "unopposed." Four days later, on August 29, 2022, defendants filed an Opposition to Plaintiff's Motion for a TRO and PI. (ECF Doc. No. 23). Defendants now move under Rule 6(b)(1)(B) to extend the time to file said Opposition up to and including August 29, 2022. As set forth below, good cause exists to grant said extension. Further, defendants' failure to file an Opposition to plaintiff's Motion for a TRO and PI within 14 days of service was due to excusable neglect.

**AA148**

## II. ARGUMENT

**DEFENDANTS' FAILURE TO FILE AN OPPOSTION TO PLAINTIFF'S MOTION FOR A TRO AND PI WITHIN 14 DAYS AFTER SERVICE WAS DUE TO EXCUSABLE NEGLECT.**

"The administration of filing deadlines is a matter of case management that comes within the district court's discretion." <u>McIntosh v. Antonio</u>, 71 F.3d 29, 38 (1st Cir. 1995). Under Local Rule 7.1, a party opposing a motion "shall file an opposition within 14 days after the motion is served, unless … (2) another period is fixed by rule or statute, by order of the court." USDC (D. Mass.) LR 7.1(b)(2). Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, a court may nonetheless extend filing deadlines in certain circumstances:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> …
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b)(1). In determining whether a party failed to act within a specified time due to "excusable neglect," a court should consider four factors:

> (1) danger of prejudice to the opposing party; (2) length of delay and its potential impact on judicial proceedings; (3) reason for the delay, including whether it was within the reasonable control of the moving party; and (4) whether moving party acted in good faith.

<u>Hisert on behalf of H2H Assocs., LLC v. Blue Waters Dredging, LLC</u>, 2021 WL 1178301, at *2 (D. Mass. March 29, 2021) (citing <u>Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993)). Principal among such factors is the reason given for the late filing. "While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry." <u>Tubens v. Doe</u>, 976 F.3d 101, 106 (1st Cir. 2020) (quoting <u>Hospital del Maestro v. National Labor Relations Bd.</u>, 263 F.3d 173, 175 (1st Cir. 2001)). The determination of whether a party's actions constitute excusable

**AA149**

neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." <u>Pioneer Investment</u>, 507 U.S. at 395.

Here, defendants' reason for delay in filing an Opposition to plaintiff's Motion for a TRO and PI was their reasonable and good faith belief that the injunctive relief sought in said Motion was moot. Plaintiff attached the March 3, 2022 letter in which GPS demanded immediate removal of the video recording of GPS personnel from plaintiff's Facebook account as "Exhibit 1" in support of his Motion for TRO and PI. In the body of his Motion, plaintiff described the recording as protected speech and asked the Court to enter an Order "preventing [defendants] from threatening or attempting to coerce Mr. Berge into removing his First Amendment protected speech." (ECF Doc. No. 2, at 7). However, because GPS later withdrew the letter, expressly advising plaintiff that it "would not be taking any legal action against [him] …" (ECF Doc. No. 15-1), there was no longer any conduct on the part of defendants for the Court to enjoin. Not until plaintiff filed a Notice of Non-Opposition to Motion for Temporary Restraining Order and for a Preliminary Injunction five months later on August 24, 2022 (ECF Doc. No. 22), did defendants understand that plaintiff was *still* seeking injunctive relief in this action. Upon receipt of plaintiff's Notice, defendants immediately prepared and filed an Opposition to plaintiff's Motion for a TRO and PI on August 29, 2022. (ECF Doc. No. 23). This Court should permit defendants' late filing.

Allowance of defendants' late filing will not prejudice Mr. Berge. Plaintiff has already prepared and filed (by leave of Court) a Reply Brief to defendants' Opposition fully addressing the arguments contained therein. (ECF Doc. 26). Further, plaintiff makes no allegations in his Reply Brief that he has been subjected to any threats or coercion by defendants since the commencement of this action. Further, defendants' delay in filing their Opposition will have no impact on the judicial proceedings in this matter. Defendants' Motion to Dismiss plaintiff's

**AA150**

Verified First Amended Complaint remains pending and will be heard and decided by this Court in due course. Finally, plaintiff makes no allegations in his Reply Brief that defendants acted in bad faith. Defendants' delay was neither intended to delay these proceedings nor calculated to gain some sort of legal "advantage." Rather, it was based on defendants' good faith belief that plaintiff had abandoned his request for injunctive relief as such relief was no longer necessary or appropriate.

### III. CONCLUSION

For the reasons set forth above, this Honorable Court, pursuant to Fed. R. Civ. P. 6(b)(1)(B), should allow defendants' Motion to Extend Time to File Opposition to Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction up to and including August 29, 2022.

Respectfully submitted,

The Defendants,
SCHOOL COMMITTEE OF GLOUCESTER;
BEN LUMMIS, in his personal capacity;
ROBERTA A. EASON, in her personal capacity; and
STEPHANIE DELISI, in her personal capacity;
By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ John J. Davis*
_____

John J. Davis, BBO #115890
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jdavis@piercedavis.com

Dated: September 13, 2022

**AA151**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on September 13, 2022.

*/s/ John J. Davis*

_____

John J. Davis, Esq.

**AA152**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

INGE BERGE,

                    Plaintiff,

        v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in
his personal capacity; ROBERTA A. EASON,
in her personal capacity; and STEPHANIE
DELISI, in her personal capacity,

                    Defendants.

Civil Action No. 1:22-CV-10346

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR EXTENSION
OF TIME TO FILE OPPOSITION TO
MOTION FOR A TEMPORARY
RESTRAINING ORDER AND A
PRELIMINARY INJUNCTION**

**1.0     BACKGROUND**

On March 7, 2022, Plaintiff Inge Berge filed a Motion for a Temporary Restraining Order and

for a Preliminary Injunction ("TRO Motion"). *See* ECF 2.  Pursuant to L.R. 7.1(b)(2), Defendants had

14 days to file an opposition.

On March 22, 2022, Defendant School Committee of Gloucester withdrew its threat of taking

legal action against Mr. Berge via letter by counsel. *See* ECF 18-1.  On March 22, 2022, Plaintiff's

counsel responded that the "letter does not resolve the dispute" because "[m]y client must operate

under the cloud that Ms. Delisi or other parties might 1) seek prosecution, 2) seek civil claims, or 3)

will take other extra-judicial steps to censor my client." ECF 18-2.

On April 4, 2022, Defendants filed a motion requesting an extension of time to respond to

Verified First Amendment Complaint. *See* ECF 13. Plaintiff consented to that extension of time.

On April 27, 2022, Defendants filed a motion to dismiss while ignoring Plaintiff's TRO

Motion. *See* ECF 15. On May 11, 2022, Plaintiff timely filed an opposition to motion to dismiss. *See*

ECF 18.

- 1 -
Plaintiff's Opposition to Defendants' Motion for Extension of Time to File Opposition to
Motion for a Temporary Restraining Order and a Preliminary Injunction
AA153

On August 24, 2022, Plaintiff filed a Notice of Non-Opposition to Plaintiff's TRO Motion. *See* ECF 22. On August 29, 2022, Defendants filed an opposition to the TRO Motion. *See* ECF 23.

On August 31, 2022, Plaintiff filed a motion for leave to file a reply in support of his TRO Motion. *See* ECF 24. On September 13, 2022, this Court granted Plaintiff's motion for leave to file. *See* ECF 25. On September 13, 2022, Defendant filed the instant motion to extend time to file an opposition to Plaintiff's TRO Motion.

## 2.0    ARGUMENT

Under L.R. 7.1, a party "**shall** file an opposition within 14 days after the motion is served[.]" (emphasis added). "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on a motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "A trial court's determination as to whether an instance of neglect is (or is not) excusable **has a significant equitable component** and must give due regard to the totality of the relevant circumstances surrounding the movant's lapse." *Bennett v. City of Holyoke*, 362 F.3d 1, 5 (1st Cir. 2004) (emphasis added). "These include . . . the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether movant acted in good faith." *Pioneer Inv. Servs. V. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Of these four factors, "the excuse given for the late filing must have the greatest import." *Hospital del Maestro v. Nat'l Labor Relations Bd.*, 263 F.3d 173, 175 (1st Cir. 2001) (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)).

In *Hisert v. Blue Waters Dredging*, Plaintiff's filed a motion for attorney's fees approximately eleven months late. The district court refused to extend the time "because the plaintiff has offered no

- 2 -
Plaintiff's Opposition to Defendants' Motion for Extension of Time to File Opposition to
Motion for a Temporary Restraining Order and a Preliminary Injunction
**AA154**

reason for his failure to file a timely motion[.]" 2021 U.S. Dist LEXI 60731, *4 (D. Mass. March 29, 2021).

Similarly, at its essence, Defendants have offered no reason for its failure to file a timely opposition beyond run of the mill error . There is no good cause to grant this extension of time. Defendants ignored Plaintiff's TRO Motion until Plaintiff filed a Notice of Non-Opposition.

On August 24, 2022, in anticipation of the new school year, Plaintiff filed a Notice of Non-Opposition to Plaintiff's TRO Motion. *See* ECF 22.  Presumably upon prompting from Plaintiff's notice, on August 29, 2022, five days later, Defendants filed an opposition motion. *See* ECF 23.

Two days later, on August 31, 2022, Plaintiff quickly filed a Motion for Leave to File Reply in Support of Plaintiff's TRO Motion. *See* ECF 24. In the proposed reply brief, Plaintiff pointed out that Defendants' motion is untimely pursuant to L.R. 7.1(b)(2) and that Defendants failed to seek an extension of time pursuant to Fed. R. Civ. P. 6(b)(1)(B). *See* ECF 24-1 at 3-4. Plaintiff argued that Defendants failed to follow the procedural rules and, therefore, this Court should strike the opposition motion. *Id.*

Only after Plaintiff pointed out these careless procedural errors in his reply motion did the Defendants file the present motion to seek an extension of time. This Court should not incentivize poor lawyering, especially by lawyers representing the government, by granting Defendants' present motion to seek an extension of time. Defendants failed to follow the proper procedure.

Defendants' argument for granting an extension of time is bad faith. Defendants claim that their unilateral action to evade judicial review, a letter sent on March 22, 2022 on behalf of one defendant to withdraw their threat of legal action, *see* ECF 18-1, nullified Plaintiff's motion for

Plaintiff's Opposition to Defendants' Motion for Extension of Time to File Opposition to Motion for a Temporary Restraining Order and a Preliminary Injunction

**AA155**

injunctive relief.[2]  In no uncertain terms, Plaintiff made clear immediately in a response email on March 22, 2022 that the claim is not moot:

> We do acknowledge that in your letter, you are now agreeing that the *district* will take no further action, but you do not make any statement in it about your other clients (I presume that you still represent all of the defendants).  Therefore, this letter does not resolve the dispute. My client still must operate under the cloud that Ms. Delisi or other parties might 1) seek prosecution, 2) seek civil claims, or 3) will take other extra-judicial steps to censor my client.

ECF 18-2.

At a minimum, Defendants should have insisted Plaintiff withdraw his motion for injunctive relief if they really believed the issue was moot. Defendants could have also expressly withdrawn the threat of legal action by all defendants, something they still have not done to this day. Defendants could have also requested this Court to dismiss the pending TRO Motion as moot.  *See Reputation.com v. BirdEye, Inc.*, C. A. 21-129-LPS-CJB (D. Del. April 29, 2021) (writing a letter to the court seeking to dismiss as moot a motion for preliminary injunction and vacate the court's scheduling order).

The inexcusable delay in filing an opposition motion was entirely within Defendant's control. Defendants were put on notice by Plaintiff that Plaintiff's TRO Motion was not moot. Plaintiff is prejudiced by Defendants' inexcusable neglect and inequitable delay.  The new school year is now under way with over six months since the filing of Plaintiff's request for injunctive relief.

---

[2] Defendants' attempted unilateral withdrawal, on March 22, 2022, was on the day their opposition motion to Plaintiff's TRO Motion was due. Defendants' attempted to unilaterally withdrawal their unconstitutional threat of legal action as an effort to evade judicial review. The time for Defendants' to file a motion for extension of time was on or around March 22, 2022, not six months later, after Plaintiff filed a Notice of Non-Opposition. Defendants knew this was an option as they filed a motion for extension of time to respond to the verified complaint. *See* ECF 13.

Plaintiff's Opposition to Defendants' Motion for Extension of Time to File Opposition to Motion for a Temporary Restraining Order and a Preliminary Injunction

**AA156**

### 3.0    Mootness

Plaintiff feels obliged to inform the Court that while the preliminary injunction is far from moot at this point, it is certainly possible for the Defendants to moot it.  Indeed, during the Rule 7.1 conference for the present motion, counsel for Plaintiff laid out precisely how counsel for Defendants could moot it, and invited the Defendants to indeed moot the motion.

The way the Defense could moot the motion would be to simply stipulate that there would be neither civil nor criminal action taken against him by any of the Defendants. At this point, one defendant, School Committee of Gloucester, has withdrawn such threats. *See* ECF 18-1.  However, counsel for Mr. Berge followed up asking about the remaining defendants. *See* ECF 18-2.  To date, that question has remained open, and thus the matter is not moot.  Further, Defendant Stephanie Delisi, in particular, has made extra-judicial comments that suggest strongly that she is maintaining her right, and intent, to take action against Mr. Berge, and but for this case, might have done so already.

Accordingly, instead of all this motion practice, ALL of the Defendants could simply stipulate to withdraw their threats and abandon any actions that would seek to punish Mr. Berge for the exercise of his First Amendment rights.  Instead, they are "playing cute" by withdrawing their threats as to one defendant, but leaving the others free to engage in further censorious action – thus necessitating this Court's intervention.

By spelling this out in this opposition, Plaintiff has provided a roadmap for the Defendants to moot the motion for preliminary injunction (as it did at the 7.1 conference).  If the Defense declines to accept this invitation, this motion should be decided.  Plaintiff has waited six months for this Court to grant injunctive relief.  If this delay is because the Court hoped that Defendants would come to their senses and act to moot the motion – then the Court should observe that its charity has been rejected by the Defendants.

**AA157**

## 4.0    CONCLUSION

Because the Federal Rules of Civil Procedure and this Court's Local Rules require a party to file an opposition motion within 14 days, and because Defendants' have no good cause for their inexcusable neglect, Plaintiff respectfully requests that this Court deny Defendants' Motion for an Extension of Time to File Opposition to Motion for a Temporary Restraining Order and a Preliminary Injunction, strike Defendant's Opposition to Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction, and enter an order granting Plaintiff a preliminary injunction against all Defendants preventing them from threatening or attempting to coerce Berge into refraining from exercising his First Amendment Rights or removing his First Amendment protected speech.

Dated: September 27, 2022.          Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
Robert J. Morris II (*pro hac vice*)
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Plaintiff*
*Inge Berge*

Plaintiff's Opposition to Defendants' Motion for Extension of Time to File Opposition to Motion for a Temporary Restraining Order and a Preliminary Injunction

AA158

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2022, the foregoing document was served on all

parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

Plaintiff's Opposition to Defendants' Motion for Extension of Time to File Opposition to
Motion for a Temporary Restraining Order and a Preliminary Injunction

**AA159**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

INGE BERGE,

               Plaintiff,

    v.

SCHOOL COMMITTEE OF
GLOUCESTER; BEN LUMMIS, in his
personal capacity; ROBERTA A. EASON,
in her personal capacity; and STEPHANIE
DELISI, in her personal capacity,

               Defendants.

Civil Action No. 1:22-CV-10346

**NOTICE OF UNRESOLVED MOTIONS**

LR 7.1(a)(3)

Pursuant to LR 7.1(a)(3), notice is given that two important motions remain outstanding.  The rule cites to the Civil Justice Reform Act, 28 U.S.C. § 476(a)(1), which requires the reporting of motions that have been pending for more than six months.

ECF No. 2, Plaintiff's Motion for a Temporary Restraining Order and for a Preliminary Injunction was filed on March 7, 2022.  No action was taken.

ECF No. 15, Defendant's Motion to Dismiss was filed on April 27, 2022.  It remains unresolved.

Dated: November 15, 2022.   Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, BBO# 651477
Robert J. Morris II (*pro hac vice*)
mjr@randazza.com, ecf@randazza.com
RANDAZZA LEGAL GROUP, PLLC
30 Western Avenue
Gloucester, MA 01930
Tel: (978) 801-1776

*Attorneys for Plaintiff*
*Inge Berge*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ Marc J. Randazza
Marc J. Randazza

AA161

# United States District Court
## District of Massachusetts (Boston)
## CIVIL DOCKET FOR CASE #: 1:22-cv-10346-AK

Berge v. School Committee of Gloucester et al
Assigned to: District Judge Angel Kelley
Case in other court:  USCA - First Circuit, 22-01954
Cause: 42:1983 Civil Rights Act

Date Filed: 03/07/2022
Date Terminated: 12/05/2022
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Inge Berge**                                              represented by    **Marc J. Randazza**
Randazza Legal Group, PLLC
4974 S. Rainbow Blvd.
Suite 100
Las Vegas, NV 89118
702-420-2001
Email: mjr@randazza.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert J. Morris II**
Randazza Legal Group, PLLC
30 Western Avenue
Gloucester, MA 01930
702-420-2001
Email: rjm@randazza.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Joseph Morris , II**
Randazza Legal Group
2764 Lake Sahara
Ste 109
Las Vegas, NV 89117
702-420-2001
Email: rjm@randazza.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**School Committee of Gloucester**               represented by    **John J. Davis**
Pierce Davis & Perritano LLP
10 Post Office Square
Suite 1100
Boston, MA 02109-4603
617-350-0950
Fax: 617-350-7760

**AA162**

Email: jdavis@piercedavis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ben Lummis**                                represented by   **John J. Davis**
*in his personal capacity*                                     (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Roberta A Eason**                          represented by   **John J. Davis**
*in her personal capacity*                                     (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Stephanie Delisi**                         represented by   **John J. Davis**
*in her personal capacity*                                     (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

[ Email All Attorneys ]
[ Email All Attorneys and Additional Recipients ]

| Date Filed | # | Docket Text |
|---|---|---|
| 03/07/2022 | 1 | COMPLAINT against All Defendants Filing fee: $ 402, receipt number AMADC-9213798 (Fee Status: Filing Fee paid), filed by Inge Berge. (Attachments: # 1 Civil Cover Sheet, # 2 Category Form)(Randazza, Marc) (Entered: 03/07/2022) |
| 03/07/2022 | 2 | MOTION for Temporary Restraining Order by Inge Berge.(Randazza, Marc) (Entered: 03/07/2022) |
| 03/07/2022 | 3 | ELECTRONIC NOTICE of Case Assignment. District Judge Angel Kelley assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Judith G. Dein. (Finn, Mary) (Entered: 03/07/2022) |
| 03/07/2022 | 4 | NOTICE by Inge Berge re 1 Complaint (Attachments: # 1 Exhibit 1 - Demand Letter from Gloucester Public Schools)(Randazza, Marc) (Entered: 03/07/2022) |
| 03/07/2022 | 5 | Summons Issued as to All Defendants. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Lara, Miguel) (Entered: 03/07/2022) |
| 03/08/2022 | 6 | NOTICE by Inge Berge (Randazza, Marc) (Entered: 03/08/2022) |
| 03/09/2022 | 7 | SUMMONS Returned Executed School Committee of Gloucester served on 3/9/2022, answer due 3/30/2022. (Randazza, Marc) (Entered: 03/09/2022) |
| 03/09/2022 | 8 | SUMMONS Returned Executed Roberta A Eason served on 3/9/2022, answer due 3/30/2022. (Randazza, Marc) (Entered: 03/09/2022) |

**AA163**

| 03/09/2022 | 9 | SUMMONS Returned Executed Ben Lummis served on 3/9/2022, answer due 3/30/2022. (Randazza, Marc) (Entered: 03/09/2022) |
|---|---|---|
| 03/09/2022 | 10 | SUMMONS Returned Executed Stephanie Delisi served on 3/9/2022, answer due 3/30/2022. (Randazza, Marc) (Entered: 03/09/2022) |
| 03/17/2022 | 11 | AMENDED COMPLAINT against All Defendants, filed by Inge Berge.(Randazza, Marc) (Entered: 03/17/2022) |
| 03/23/2022 | 12 | NOTICE of Appearance by John J. Davis on behalf of Stephanie Delisi, Roberta A Eason, Ben Lummis, School Committee of Gloucester (Davis, John) (Entered: 03/23/2022) |
| 04/04/2022 | 13 | Assented to MOTION for Extension of Time to File Response/Reply as to 11 Amended Complaint -*VERIFIED FIRST AMENDED COMPLAINT* by Stephanie Delisi, Roberta A Eason, Ben Lummis, School Committee of Gloucester.(Davis, John) **Modified on 4/5/2022 to Correct CM/ECF Filing Event (Paine, Matthew).** (Entered: 04/04/2022) |
| 04/05/2022 | 14 | District Judge Angel Kelley: ELECTRONIC ORDER entered **ALLOWING** 13 Assented to MOTION for Extension of Time to File Response/Reply as to 11 Amended Complaint - *VERIFIED FIRST AMENDED COMPLAINT*; Stephanie Delisi answer due 4/27/2022; Roberta A Eason answer due 4/27/2022; Ben Lummis answer due 4/27/2022; School Committee of Gloucester answer due 4/27/2022. (Warnock, Douglas) (Entered: 04/05/2022) |
| 04/27/2022 | 15 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM -*MOTION TO DISMISS PLAINTIFFS VERIFIED FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)* by Stephanie Delisi, Roberta A Eason, Ben Lummis, School Committee of Gloucester. (Attachments: # 1 Exhibit A)(Davis, John) (Entered: 04/27/2022) |
| 04/27/2022 | 16 | MEMORANDUM in Support re 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM -*MOTION TO DISMISS PLAINTIFFS VERIFIED FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)* filed by Stephanie Delisi, Roberta A Eason, Ben Lummis, School Committee of Gloucester. (Davis, John) (Entered: 04/27/2022) |
| 05/11/2022 | 17 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Robert J. Morris II Filing fee: $ 100, receipt number AMADC-9316318 by Inge Berge. (Attachments: # 1 Exhibit A - Robert Morris Certification, # 2 Text of Proposed Order)(Randazza, Marc) (Entered: 05/11/2022) |
| 05/11/2022 | 18 | Opposition re 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM - *MOTION TO DISMISS PLAINTIFFS VERIFIED FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)* filed by Inge Berge. (Attachments: # 1 Exhibit 1 - Letter from Defendants' Counsel, # 2 Exhibit 2 - Email Response from Plaintiff's Counsel)(Randazza, Marc) (Entered: 05/11/2022) |
| 05/19/2022 | 19 | District Judge Angel Kelley: ELECTRONIC ORDER entered granting 17 Assented to Motion for Leave to Appear Pro Hac Vice. Added Robert J. Morris II. **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.** Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm. A Notice of Appearance must be entered on the docket by the newly admitted attorney. |

**AA164**

| | | (Pacho, Arnold) (Entered: 05/19/2022) |
|---|---|---|
| 05/20/2022 | 20 | NOTICE of Appearance by Robert Joseph Morris, II on behalf of Inge Berge (Morris, Robert) (Entered: 05/20/2022) |
| 07/13/2022 | 21 | Notice of Supplemental Authorities re 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM -*MOTION TO DISMISS PLAINTIFFS VERIFIED FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)* (Attachments: # 1 Exhibit A - Irizarry Decision) (Randazza, Marc) (Entered: 07/13/2022) |
| 08/24/2022 | 22 | NOTICE by Inge Berge re 2 MOTION for Temporary Restraining Order *Of Non-Opposition* (Randazza, Marc) (Entered: 08/24/2022) |
| 08/29/2022 | 23 | Opposition re 2 MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by Stephanie Delisi, Roberta A Eason, Ben Lummis, School Committee of Gloucester. (Davis, John) (Entered: 08/29/2022) |
| 08/31/2022 | 24 | MOTION for Leave to File by Inge Berge. (Attachments: # 1 Exhibit 1 - Proposed Reply) (Randazza, Marc) (Entered: 08/31/2022) |
| 09/13/2022 | 25 | District Judge Angel Kelley: ELECTRONIC ORDER entered **granting** 24 Motion for Leave to File.<br><br>Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (Kelly, Danielle) (Entered: 09/13/2022) |
| 09/13/2022 | 26 | REPLY to Response to 2 MOTION for Temporary Restraining Order *Leave to File Granted on September 13, 2022* filed by Inge Berge. (Attachments: # 1 Exhibit A - Public Records Request)(Randazza, Marc) (Entered: 09/13/2022) |
| 09/13/2022 | 27 | MOTION for Extension of Time to File *OPPOSITION TO PLAINTIFFS MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION* by Stephanie Delisi, Roberta A Eason, Ben Lummis, School Committee of Gloucester.(Davis, John) (Entered: 09/13/2022) |
| 09/13/2022 | 28 | MEMORANDUM in Support re 27 MOTION for Extension of Time to File *OPPOSITION TO PLAINTIFFS MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION* filed by Stephanie Delisi, Roberta A Eason, Ben Lummis, School Committee of Gloucester. (Davis, John) (Entered: 09/13/2022) |
| 09/27/2022 | 29 | Opposition re 27 MOTION for Extension of Time to File *OPPOSITION TO PLAINTIFFS MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION* filed by Inge Berge. (Randazza, Marc) (Entered: 09/27/2022) |
| 09/27/2022 | 30 | Amended Opposition re 27 MOTION for Extension of Time to File *OPPOSITION TO PLAINTIFFS MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION* filed by Inge Berge. (Randazza, Marc) (Entered: 09/27/2022) |
| 11/15/2022 | 31 | NOTICE by Inge Berge re 2 MOTION for Temporary Restraining Order , 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM -*MOTION TO DISMISS PLAINTIFFS VERIFIED FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6) Notice of Unresolved Motions* (Randazza, Marc) (Entered: 11/15/2022) |
| 12/05/2022 | 32 | District Judge Angel Kelley: MEMORANDUM AND ORDER entered. |

**AA165**

| | | For the reasons stated in the attached Memorandum and Order, Defendants' 15 Motion to Dismiss is **GRANTED** and this action is dismissed.  The Court **DENIES AS MOOT** Plaintiff's 2 Motion for Temporary Restraining Order and Defendants' 27 Motion for Extension of Time.<br><br>(Pacho, Arnold) (Entered: 12/05/2022) |
|---|---|---|
| 12/05/2022 | 33 | District Judge Angel Kelley: ORDER entered. ORDER DISMISSING CASE. (Pacho, Arnold) (Entered: 12/05/2022) |
| 12/05/2022 | 34 | NOTICE OF APPEAL as to 32 Memorandum & ORDER, 33 Order Dismissing Case by Inge Berge Filing fee: $ 505, receipt number AMADC-9614463 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 12/27/2022. (Randazza, Marc) (Entered: 12/05/2022)** |
| 12/06/2022 | 35 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 34 Notice of Appeal. (Paine, Matthew) (Entered: 12/06/2022) |
| 12/06/2022 | 36 | USCA Case Number 22-1954 for 34 Notice of Appeal, filed by Inge Berge. (Paine, Matthew) (Entered: 12/06/2022) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/23/2023 16:19:59 | | |
| **PACER Login:** | marcorandazza | **Client Code:** | berge |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-10346-AK |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**AA166**